USDC SCAN INDEX SHEET

















RYC   9/26/05   10:59
3:05-CV-01662   QUALCOMM INC V. BROADCOM CORPORATION
*31*
*NTCLDG.*

1  ROBERT S. BREWER, JR. (SBN 65294)
   JAMES S. McNEILL (SBN 201663)
2  MCKENNA LONG & ALDRIDGE LLP
   750 B Street, Suite 3300
3  San Diego, CA 92101
   Telephone:  (619) 595-5400
4  Facsimile:  (619) 595-5450

5  WILLIAM F. LEE
   MARK D. SELWYN
6  STEPHEN M. MULLER
   RICHARD W. O'NEILL
7  WILMER CUTLER PICKERING
     HALE AND DORR, LLP
8  60 State Street
   Boston, MA 02109
9  Telephone:  (617) 526-6000
   Facsimile:  (617) 526-5000

10

11 JAMES L. QUARLES III
   MARIA K. VENTO
   WILMER CUTLER PICKERING
12   HALE AND DORR, LLP
   1455 Pennsylvania Avenue, N.W.
13 Washington, DC 20004
   Telephone:  (202) 942-8400
14 Facsimile:  (202) 942-8484

15 Attorneys for Defendant
   BROADCOM CORPORATION
16

17            **UNITED STATES DISTRICT COURT**

18            **SOUTHERN DISTRICT OF CALIFORNIA**

19

20 QUALCOMM INCORPORATED,           CASE NO.  05 CV 1662 B (JMA)

21              Plaintiff,          **NOTICE OF LODGMENT BY
                                    DEFENDANT BROADCOM
22       v.                         CORPORATION PURSUANT TO COURT
                                    ORDER DATED SEPTEMBER 21, 2005 IN
23 BROADCOM CORPORATION,            THE MATTER ENTITLED** *BROADCOM
                                    CORPORATION V. QUALCOMM
24              Defendant.          INCORPORATED,* **CENTRAL DISTRICT
                                    OF CALIFORNIA, CASE NO. SACV 05-468**
25
                                    Date:      October 7, 2005
26                                  Time:      9:00 a.m.
                                    Judge:     Rudi M. Brewster
27

28

MCKENNA LONG &
ALDRIDGE LLP
ATTORNEYS AT LAW
SAN DIEGO

                    31                              05 CV 1662

**FILED**

SEP 2 3 2005

CLERK U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

ORIGINAL

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that pursuant to the Court Order dated September 21, 2005 in the matter entitled *Broadcom Corporation v. Qualcomm Incorporated*, Central District of California, Case No. SACV 05-468 (attached hereto as Exhibit A), Defendant Broadcom Corporation hereby lodges the following Exhibits filed in the Central District of California, Case No. SACV 05-486 in support of Broadcom Corporation's Motion to Vacate Stay to Enjoin a Duplicative, Later Filed Action (Case No. 05 CV 1662 B (JMA) in the Southern District of California).

| | | |
|---|---|---|
| **Exhibit A** | A true and correct copy of the Order to Lodge Documents in the Southern District of California; |
| **Exhibit B** | A true and correct copy of Broadcom Corporation's *Ex Parte* Application to Expedite Hearing of Motion to Vacate Stay to Enjoin a Duplicative, Later Filed Action; Memorandum of Points and Authorities and Declaration of Thomas P. Olson in Support Thereof; |
| **Exhibit C** | A true and correct copy of the Order Granting Broadcom Corporation's *Ex Parte* Application to Expedite Hearing of Motion to Vacate Stay to Enjoin Duplicative, Later Filed Action; |
| **Exhibit D** | A true and correct copy of Broadcom Corporation's Notice of Motion and Motion to Vacate Stay to Enjoin a Duplicative, Later Filed Action (Case No. 05 CV 1662 B (JMA) in the Southern District of California); |
| **Exhibit E** | A true and correct copy of Broadcom Corporation's Memorandum in Support of its Motion to Vacate Stay to Enjoin a Duplicative, Later-Filed Action (Case No. 05 CV 1662 B (JMA) in the Southern District of California); |
| **Exhibit F** | A true and correct copy of the Notice of Errata Concerning Broadcom Corporation's Memorandum in Support of its Motion to Vacate Stay to Enjoin a Duplicative, Later-Filed Action (Case No. 05 CV 1662 B (JMA) in the Southern District of California); |

| | | |
|---|---|---|
| 1 | **Exhibit G** | A true and correct copy of the Declaration of Maria K. Vento in Support of |
| 2 | | Broadcom's Motion to Vacate Stay to Enjoin a Duplicative, Later Filed |
| 3 | | Action (Case No. 05 CV 1662 B (JMA) in the Southern District of |
| 4 | | California); |
| 5 | **Exhibit H** | A true and correct copy of the [Proposed] Order Granting Broadcom |
| 6 | | Corporation's Motion to Vacate Stay to Enjoin a Duplicative, Later Filed |
| 7 | | Action (Case No. 05 CV 1662 B (JMA) in the Southern District of |
| 8 | | California); |
| 9 | **Exhibit I** | A true and correct copy of Broadcom Corporation's Reply Memorandum |
| 10 | | in Further Support of its Motion to Vacate Stay and Enjoin a Duplicative, |
| 11 | | Later Filed Action (Case No. 05 CV 1662 B (JMA) in the Southern District |
| 12 | | of California); and |
| 13 | **Exhibit J** | A true and correct copy of the Declaration of Maria K. Vento in Support of |
| 14 | | Broadcom Corporation's Reply Memorandum in Further Support of its |
| 15 | | Motion to Vacate Stay to Enjoin a Duplicative, Later Filed Action (Case |
| 16 | | No. 05 CV 1662 B (JMA) in the Southern District of California). |

17   Dated: September 23, 2005

WILMER CUTLER PICKERING
HALE AND DORR LLP
and
McKENNA LONG & ALDRIDGE LLP

By:
Robert S. Brewer, Jr.

Attorneys for Defendant
BROADCOM CORPORATION

SD:22139396.1

**Qualcomm Incorporated v. Broadcom Corporation**
United States District Court (Southern District) Case No. 05 CV 1662 B (JMA)

### CERTIFICATE OF SERVICE

I, Jim McNeill, attorney for Defendant Broadcom Corporation certify that I caused to be served upon the following counsel a copy of the following document(s) entitled

• **NOTICE OF LODGMENT BY DEFENDANT BROADCOM CORPORATION PURSUANT TO COURT ORDER DATED SEPTEMBER 21, 2005 IN THE MATTER ENTITLED *BROADCOM CORPORATION V. QUALCOMM INCORPORATED*, CENTRAL DISTRICT OF CALIFORNIA, CASE NO. SACV 05-468**

via personal service, overnight mail (VIA FEDERAL EXPRESS), facsimile or first class mail, as indicated below:

William K. West, Jr., Esq.                    **Attorneys for Plaintiff**
Cecilia H. Gonzalez, Esq.                     **QUALCOMM INCORPORATED**
Bert D. Reiser, Esq.
Howrey LLP
1299 Pennsylvania Avenue, N.W.
Washington, DC 20004
Phone: (220) 783-0800/**Fax: (202) 383-6610**

**VIA FACSIMILE AND**
**FEDERAL EXPRESS SATURDAY DELIVERY**
**(W/O ENCLOSURES)**

Peter J. Chassman, Esq.                       **Attorneys for Plaintiff**
Howrey LLP                                    **QUALCOMM INCORPORATED**
750 Bering Drive
Houston, TX 77057-2198
Phone: (713) 787-1400/**Fax: (713) 787-1440**

**VIA FACSIMILE AND**
**FEDERAL EXPRESS SATURDAY DELIVERY**
**(W/O ENCLOSURES)**

Christopher L. Kelley, Esq.                   **Attorneys for Plaintiff**
Howrey LLP                                    **QUALCOMM INCORPORATED**
301 Ravenswood Avenue
Menlo Park, CA 94025
Phone: (650) 463-8100/**Fax: (650) 463-8400**

**VIA FACSIMILE AND**
**FEDERAL EXPRESS SATURDAY DELIVERY**
**(W/O ENCLOSURES)**

Gregory S. Cordrey, Esq.                      **Attorneys for Plaintiff**
Elizabeth Hoult Fontaine                      **QUALCOMM INCORPORATED**
Howrey LLP
2020 Main Street
Irvine, CA 92614
Phone: (949) 759-3934/**Fax: (949) 721-6910**

**VIA FACSIMILE AND**
**FEDERAL EXPRESS SATURDAY DELIVERY**
**(W/O ENCLOSURES)**

| | | |
|---|---|---|
| 1 | David E. Kleinfield, Esq. | **Attorneys for Plaintiff** |
| | E. Joshua Rosenkranz Esq. | **QUALCOMM INCORPORATED** |
| 2 | Barry J. Tucker, Esq. | |
| | HELLER EHRMAN LLP | |
| 3 | 4350 La Jolla Village Drive, 7th Floor | |
| | San Diego, CA 92122 | |
| 4 | Phone: (858) 450-8400/**Fax: (858) 450-8499** | |

**VIA FACSIMILE AND**
**FEDERAL EXPRESS SATURDAY DELIVERY**
**(WITH ENCLOSURES)**

Louis M. Lupin, Esq.                    **Attorneys for Plaintiff**
Alexander H. Rogers, Esq.               **QUALCOMM INCORPORATED**
Thomas R. Rouse, Esq.
Roger W. Martin, Esq.
QUALCOMM INCORPORATED
5775 Morehouse Drive
San Diego, CA 92121
Phone:  (858) 587-1121/**Fax:  (858) 658-2100**

**VIA FACSIMILE AND**
**FEDERAL EXPRESS SATURDAY DELIVERY**
**(WITH ENCLOSURES)**

Maria K. Vento, Esq.                    **Attorneys for Defendant**
WILMER CUTLER PICKERING               **BROADCOM CORPORATION**
 HALE AND DORR, LLP
1455 Pennsylvania Avenue, N.W.
Washington, DC 20004
Phone:  (202) 942-8400/**Fax:  (202) 942-8484**

**VIA FEDERAL EXPRESS SATURDAY**
**DELIVERY**
**(W/O ENCLOSURES)**

Michael Ermer, Esq.                     **Attorneys for Defendant**
Irell & Manella                         **BROADCOM CORPORATION**
840 Newport Center Drive, Suite 400
Newport Beach, California 92660-6324
Phone:  (949) 760-0991/**Fax:  (949) 760-5200**

**VIA FEDERAL EXPRESS SATURDAY**
**DELIVERY**
**(W/O ENCLOSURES)**

Executed **September 23, 2005**, at San Diego, California.

Jim McNeill

SD:22139426.1

- 2 -

05 CV 1662

09/21/2005 14:31 FAX  714 338 4728       USDC SOUTHERN DIVISION                    ☒001/002

ORIGINAL



# UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA
### RONALD REAGAN FEDERAL BUILDING AND
### UNITED STATES COURTHOUSE
### 411 WEST FOURTH STREET
### SANTA ANA, CALIFORNIA 92701

| | | |
|---|---|---|
| TO: | Michael G. Ermer | (949) 760-5200 |
| | Elizabeth Hoult Fontaine | (949) 721-6910 |
| FROM | Karla J. Tunis | |
| | Courtroom Clerk for Hon. James V. Selna | |
| | Phone (714) 338-2848 | |
| DATE: | September 21, 2005 | |
| NUMBER OF PAGES: | 2 | |
| (INCLUDING THIS PAGE) | | |
| NOTES: | SACV 05-468-JVS(RNBx) | |
| | Broadcom Corp. v. Qualcomm Inc. | |

The Court directs counsel receiving this document to serve this order, by fax, on all other counsel for their respective sides in this action.

EXHIBIT  A-1

09/21/2005 14:31 FAX  714 338 4728      USDC SOUTHERN DIVISION                    ☒002/002

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | SACV 05-468-JVS(MLGx) | Date | September 21, 2005 |
| Title | Broadcom Corp. V. Qualcomm Inc. | | |

Present: The Honorable   James V. Selna

| Karla J. Tunis | Not Present | None |
|---|---|---|
| Deputy Clerk | Court Reporter | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**Proceedings:**   (In Chambers)   ORDER TO LODGE DOCUMENTS IN THE
SOUTHERN DISTRICT OF CALIFORNIA

     The parties are directed to lodge with the United States District Court for
the Southern District of California in Qualcomm Inc. v. Broadcom Corp., Case No. 05
CV 1662, a copy of this Minute Order and copies of all papers filed in support of and in
opposition to Broadcom's motion to lift stay and to enjoin Qualcomm's prosecution of
the San Diego suit within five days.

I HEREBY CERTIFY THAT THIS DOCUMENT WAS SERVED
BY FAX DELIVERY ON PLAINTIFF/DEFENDANT (OR PARTIES)
AT THEIR RESPECTIVE MOST RECENT FAX NUMBER OF RECORD
IN THIS ACTION ON THIS DATE.

DATE: 9-21-05

DEPUTY CLERK

Initials of Preparer

---

CV-90 (06/04)                          CIVIL MINUTES - GENERAL                          Page 1 of 1

EXHIBIT A-2

COPY

IRELL & MANELLA LLP
Layn R. Phillips (103857) (lphillips@irell.com)
Michael G. Ermer (110496) (mermer@irell.com)
Andra Barmash Greene (123931) (agreene@irell.com)
Richard de Bodo (128199) (rdebodo@irell.com)
840 Newport Center Drive, Suite 400
Newport Beach, CA 92660-6324
Telephone: (949) 760-0991

WILMER CUTLER PICKERING HALE AND DORR LLP
William F. Lee (william.lee@wilmerhale.com)
Mark Selwyn (mark.selwyn@wilmerhale.com)
Richard W. O'Neill (richard.o'neill@wilmerhale.com)
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Facsimile: (617) 526-5000

WILMER CUTLER PICKERING HALE AND DORR LLP
James L. Quarles III (james.quarles@wilmerhale.com)
Thomas P. Olson (thomas.olson@wilmerhale.com)
Maria K. Vento (maria.vento@wilmerhale.com)
1455 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Telephone: (202) 942-8400
Facsimile: (202) 942-8484

Attorneys for Plaintiff and Counter-Defendant
BROADCOM CORPORATION

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | | |
|---|---|---|
| BROADCOM CORPORATION, | ) | Case No. SACV05-468-JVS (RNBx) |
| Plaintiff, | ) | **BROADCOM CORPORATION'S** |
| vs. | ) | ***EX PARTE* APPLICATION TO EXPEDITE HEARING OF MOTION TO VACATE STAY TO ENJOIN A DUPLICATIVE, LATER FILED ACTION; MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATION OF THOMAS P. OLSON IN SUPPORT THEREOF** |
| QUALCOMM INCORPORATED, | ) | |
| Defendant. | ) | |
| | ) | |
| AND RELATED CROSS-ACTION. | ) | Hon. James V. Selna |
| | ) | Date: September 8, 2005 |
| | ) | Time: To Be Submitted |
| | ) | Courtroom: 10C |

SEP - 8 2005

Broadcom's Ex Parte Application To Expedite Hearing Of
Motion To Vacate Stay To Enjoin A Duplicative, Later Filed
Action; Memo Of P's & A's; Olson Declaration

EXHIBIT ___B-1___

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that Plaintiff and Counter-Defendant Broadcom Corporation ("Broadcom") hereby applies to this Court *ex parte*, pursuant to Local Rule 7-19, for an order expediting the briefing and hearing of Broadcom's Motion To Vacate Stay To Enjoin A Duplicative, Later Filed Action (the "Motion"). Broadcom requests that the Motion be heard on September 26, 2005; that Defendant and Counter-Plaintiff Qualcomm, Inc.'s ("Qualcomm") opposition to the Motion be filed and served no later than September 16, 2005; and that Broadcom's reply to the opposition be filed and served no later than September 22, 2005.

The Motion for which an expedited hearing is requested relates to the improper filing by Qualcomm of duplicative litigation (initiated three months after Broadcom filed this case) in the Southern District of California (entitled *Qualcomm Inc. v. Broadcom Corp.*, Case No. 05-CV-1662 B) (the "San Diego Case"). Under Local Rule 6-1, the earliest date that Broadcom's current Motion would normally be heard by this Court is the same date that Qualcomm's application for preliminary injunction is scheduled to be heard in the San Diego Case – October 3, 2005. Thus, unless Broadcom's Motion is considered by this Court *prior* to that date, it may be rendered moot insofar as the Motion seeks, among other things, to enjoin Qualcomm from proceeding with the San Diego Case. If the Court concludes (as we believe it will) that Qualcomm's effort to pursue duplicative, parallel litigation is improper, this Court will be able to prevent Qualcomm from doing so and avoid the unseemly possibilities of a ruling on the merits before the jurisdictional issues are fully considered or of conflicting rulings from two different District Courts.

Pursuant to Local Rule 7-19, Broadcom hereby notifies the Court that the name and contact information of Qualcomm's counsel is as follows: William K. West, Cecilia H. Gonzalez, and Bert C. Reiser, Howrey LLP, 1299 Pennsylvania Avenue, Washington, DC 20004; telephone (202) 783-0800; facsimile (202) 383-6610. As set forth in the Declaration of Thomas P. Olson attached hereto,

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

1351333

Broadcom's Ex Parte Application To Expedite Hearing Of
Motion To Vacate Stay To Enjoin A Duplicative, Later Filed
Action; Memo Of P's & A's; Olson Declaration

-1-

EXHIBIT B-2

1 Qualcomm's counsel was provided advance notice of this application by telephone.

2 *See* Declaration of Thomas P. Olson ¶ 7. Qualcomm's counsel informed

3 Broadcom's counsel that Qualcomm will oppose the application. *Id.*

4     In support of its application, Broadcom relies on this *Ex Parte* Application,

5 the attached Memorandum of Points and Authorities, the attached Declaration of

6 Thomas P. Olson, the Motion, all other pleadings, papers, documents, and records

7 on file with the Court, and any such other and further arguments and evidence as

8 may properly be presented to the Court.

9 Dated: September 8, 2005          Respectfully submitted,

10                                 IRELL & MANELLA LLP

13 By: *Michael G. Ermer*

14                   Michael G. Ermer
                  Attorneys for Plaintiff and
                  Counter-Defendant

15                   BROADCOM CORPORATION

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

1351333

-2-

Broadcom's Ex Parte Application To Expedite Hearing Of
Motion To Vacate Stay To Enjoin A Duplicative, Later Filed
Action; Memo Of P's & A's; Olson Declaration

EXHIBIT  B-3

## MEMORANDUM OF POINTS AND AUTHORITIES

1
2     Plaintiff and Counter-Defendant Broadcom Corporation ("Broadcom") has
3 filed before this Court a Motion To Vacate Stay To Enjoin A Duplicative, Later
4 Filed Action (the "Motion"). By this application, Broadcom respectfully requests
5 that the hearing of this Motion, and related briefing, be expedited to resolve the
6 issues in the Motion as promptly as possible and to prevent further harm and
7 prejudice to Broadcom.

8     Broadcom's Motion is required in response to Defendant and Counter-
9 Plaintiff Qualcomm Incorporated's ("Qualcomm") attempt to wrest control of the
10 present suit from this Court and effectively effect a transfer of venue (without this
11 Court's knowledge or involvement) to the Southern District of California.
12 (Qualcomm had previously advised this Court, in its Answer, that it intended to ask
13 this Court for a transfer under Section 1404(a). *See* Declaration of Maria K. Vento
14 In Support of Broadcom Corporation's Motion To Vacate Stay To Enjoin A
15 Duplicative, Later Filed Action, Ex. 4 at p. 1. Qualcomm has not done so.)
16 Qualcomm initiated this attempt by filing a lawsuit against Broadcom in the
17 Southern District of California on August 22, 2005 (*Qualcomm Inc. v. Broadcom*
18 *Corp.*, Case No. 05-CV-1662 JAH) (the "San Diego Case"). *See* Declaration of
19 Thomas P. Olson In Support of Broadcom Corporation's *Ex Parte* Application To
20 Expedite Hearing Of Motion To Vacate Stay To Enjoin A Duplicative, Later Filed
21 Action ("Olson Decl."), ¶ 3. Qualcomm then contemporaneously filed in the San
22 Diego Case an application to preliminarily enjoin Broadcom from asserting before
23 the United States International Trade Commission ("ITC") U.S. Patent Nos.
24 5,682,379 and 6,359,872 (the "Wireless Subnetwork Patents")— two of the patents
25 at issue in the present suit before this Court. *Id.*

26     Qualcomm's application for an injunction is scheduled to be heard in the San
27 Diego Case on October 3, 2005. *Id.* Under Local Rule 6-1, the earliest date that
28 Broadcom's present Motion could normally be heard by this Court is the same date

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

1351333

-3-

Broadcom's Ex Parte Application To Expedite Hearing Of
Motion To Vacate Stay To Enjoin A Duplicative, Later Filed
Action; Memo Of P's & A's; Olson Declaration

EXHIBIT B-4

1  that Qualcomm's application for preliminary injunction is scheduled to be heard in

2  the San Diego Case – October 3, 2005. *Id.* ¶ 4. Thus, unless Broadcom's Motion

3  can be considered by this Court *prior* to that date, the Motion may be rendered moot

4  insofar as it seeks to enjoin the San Diego Case from proceeding on the Wireless

5  Subnetwork Patents. In addition, by staying Qualcomm's improper pursuit of the

6  duplicative, later-filed suit, this Court can protect against the undesirable

7  possibilities of a ruling on the merits before the jurisdictional issues are fully

8  considered or of conflicting rulings from two different District Courts.

9       Broadcom will be prejudiced if Qualcomm is permitted to circumvent the

10  orderly proceedings of this Court by seizing control of a portion of this lawsuit

11  before an opportunity for briefing and a hearing on Broadcom's Motion.

12  Broadcom's claims for infringement of the Wireless Subnetwork Patents were filed

13  long before Qualcomm filed its duplicative case in San Diego. *Id.* ¶ 5. Qualcomm,

14  in turn, filed counterclaims relating to these patents in this Court and, invoked the

15  power of this Court to stay these proceedings pending the outcome of the related

16  action before the ITC. *Id.* Now Qualcomm seeks to essentially transfer this suit to

17  the Southern District of California without allowing this Court to consider whether

18  such a transfer is appropriate pursuant to 28 U.S.C. §1404(a) (or other statutory

19  authority), as Qualcomm had assured the Court it would ask this Court to do.

20       Broadcom will be subject to immediate and irreparable harm if Qualcomm is

21  permitted to derail the ongoing patent litigation in this Court and the ITC by way of

22  its improper filing in San Diego. Months of discovery have already taken place in

23  connection with the ITC proceedings. *Id.* ¶ 6. The parties have produced tens of

24  thousands of pages of documents, served voluminous written discovery, and are

25  currently preparing to take and defend many fact and expert depositions during the

26  few months that remains before discovery closes. *Id.* Qualcomm seeks to render

27  moot these efforts, causing further irretrievable delay to Broadcom in its endeavor to

28  vindicate its intellectual property rights. Moreover, this Court's intervention is

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership including
Professional Corporations

Broadcom's Ex Parte Application To Expedite Hearing Of
Motion To Vacate Stay To Enjoin A Duplicative, Later Filed
Action; Memo Of P's & A's; Olson Declaration

EXHIBIT  B-5

1   necessary to protect the integrity of the judicial process by rejecting Qualcomm's

2   improper procedural maneuvering.  The issuance of an order to expedite is

3   especially warranted in cases of "temporal urgency" such as this.  *See Mission*

4   *Power Eng'g Co. v. Continental Casualty Co.*, 883 F. Supp. 488, 492 (C.D. Cal.

5   1995).

6          Qualcomm will not suffer any prejudice in having the Motion heard and

7   briefed on an expedited basis.  Qualcomm's counsel already has been made aware of

8   the issues presented in Broadcom's Motion.  *See* Olson Decl., ¶ 7.  Moreover, under

9   the briefing schedule set forth in the Proposed Order (filed concurrently herewith),

10  Qualcomm's counsel will have eight days to respond to the Motion.  Broadcom's

11  time for reply has similarly been reduced under the Proposed Order.

12         For all of the reasons stated above, Broadcom respectfully requests that its

13  Motion be heard on September 26, 2005; that Qualcomm's opposition to the Motion

14  be filed and served no later than September 16, 2005; and that Broadcom's reply to

15  the opposition be filed and served no later than September 22, 2005.

16  Dated:  September 8, 2005                    Respectfully submitted,

17                                              IRELL & MANELLA LLP

18

19

20  By: _____

21                                              Michael G. Ermer
                                                Attorneys for Plaintiff and
22                                              Counter-Defendant
                                                BROADCOM CORPORATION

23

24

25

26

27

28

Broadcom's Ex Parte Application To Expedite Hearing Of
Motion To Vacate Stay To Enjoin A Duplicative, Later Filed
Action; Memo Of P's & A's; Olson Declaration

EXHIBIT  B-6

1                    **DECLARATION OF THOMAS P. OLSON**

2          I, Thomas P. Olson, declare as follows:

3          1.      I am a partner at the law firm of Wilmer Cutler Pickering Hale and

4    Dorr LLP, co-counsel for Plaintiff and Counter-Defendant Broadcom Corp.

5    ("Broadcom") in the above-entitled action.  I am duly licensed to practice in the

6    state of New York and the District of Columbia and am admitted *pro hac vice*

7    before this Court in this matter.  I am familiar with the facts set forth herein, and if

8    called as a witness, I could and would testify competently to those facts under oath.

9          2.      Wilmer Cutler Pickering Hale and Dorr LLP was retained by

10   Broadcom to serve as trial counsel in this matter and other related matters

11   proceeding concurrently.  I have reviewed the various pleadings and motions filed

12   over the last several months, both by Broadcom as well as Defendant and Counter-

13   Plaintiff Qualcomm Inc. ("Qualcomm").

14         3.      On August 22, 2005, Qualcomm filed suit against Broadcom in the

15   Southern District of California, in a case entitled *Qualcomm Inc. v. Broadcom*

16   *Corp.*, Case No. 05-CV-1662 B (S.D. Cal. filed August 22, 2005) (the "San Diego

17   Case").  Contemporaneously, Qualcomm filed an application for a preliminary

18   injunction enjoining Broadcom from asserting U.S. Patent Nos. 5,682,379 and

19   6,359,872 (the "Wireless Subnetwork Patents") against Qualcomm in the United

20   States International Trade Commission ("ITC").  The hearing on Qualcomm's

21   motion for a preliminary injunction in the San Diego Case has been scheduled for

22   October 3, 2005.

23         4.      With regard to the present action, Broadcom has filed a motion

24   requesting that the Court vacate the stay currently in place for the purpose of

25   enjoining the duplicative, later filed action in San Diego (the "Motion").  The

26   earliest date permitted by the Local Rules for a regular hearing on the Motion is

27   October 3, 2005.

28

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

1351333

-6-

Broadcom's Ex Parte Application To Expedite Hearing Of
Motion To Vacate Stay To Enjoin A Duplicative, Later Filed
Action; Memo Of P's & A's; Olson Declaration

EXHIBIT ___B-7___

5.   The Wireless Subnetwork Patents at issue in the San Diego Case are two of the patents asserted by Broadcom against Qualcomm in the present action before this Court. This action was filed months prior to the San Diego Case. Qualcomm has filed counterclaims relating to these patents in this Court and has invoked the power of the Court to stay these proceedings pending the outcome of the related action before the ITC.

6.   Discovery in the ITC investigation relating to the Wireless Subnetwork Patents has been ongoing for several months. In that action, the parties have produced tens of thousands of pages of documents, served voluminous written discovery, and are currently preparing to take and defend many fact and expert depositions during the few months that remains before discovery closes. The parties have accordingly incurred significant expenses in connection with this ITC investigation.

7.   Qualcomm's counsel has already been made aware of the issues presented in Broadcom's Motion. On September 8, 2005, I telephoned Qualcomm's counsel, Bert C. Reiser, and advised him of the *ex parte* application and the requested relief. I asked Mr. Reiser whether Qualcomm would oppose the application. He informed me that Qualcomm will oppose the application.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 8th day of September, 2005, at Washington D.C.

_Thomas P Ulson_
Thomas P. Olson

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations
1351333

Broadcom's Ex Parte Application To Expedite Hearing Of Motion To Vacate Stay To Enjoin A Duplicative, Later Filed Action; Memo Of P's & A's; Olson Declaration

EXHIBIT B-8

1    **PROOF OF SERVICE**

2          I am employed in the County of Orange, State of California. I am over the
age of 18 and not a party to the within action. My business address is 840 Newport
3    Center Drive, Suite 400, Newport Beach, California 92660-6324.

4          On September 8, 2005, I served the foregoing document described as
**BROADCOM CORPORATION'S *EX PARTE* APPLICATION TO**
5    **EXPEDITE HEARING OF MOTION TO VACATE STAY TO ENJOIN A**
**DUPLICATIVE, LATER FILED ACTION; MEMORANDUM OF POINTS**
6    **AND AUTHORITIES AND DECLARATION OF THOMAS P. OLSON IN**
**SUPPORT THEREOF** on each interested party, as stated on the attached service
7    list.

8          ☒     (BY OVERNIGHT DELIVERY SERVICE) I served the foregoing
document by FedEx/Overnite Express, an express service carrier
9                which provides overnight delivery, as follows. I placed a true copy
of the foregoing document in sealed envelopes or packages
10               designated by the express service carrier, addressed, as stated on the
attached service list, with fees for overnight delivery paid or
11               provided for.

12                      ☒     (BOX DEPOSIT) I deposited such envelopes or
packages in a box or other facility regularly maintained
13                            by the express service carrier.

14                      ☐     (CARRIER PICK-UP) I delivered such envelopes or
packages to an authorized carrier or driver authorized
15                            by the express service carrier to receive documents.

16          ☒     (BY FAX) I caused the foregoing document to be served by
facsimile transmission from sending facsimile machine telephone
17               number (949) 760-5200 to each interested party at the facsimile
machine telephone number shown on the attached service list. Each
18               transmission was reported as complete without error. A transmission
report was properly issued by the sending facsimile machine for each
19               interested party served.

20          Executed on September 8, 2005, at Newport Beach, California.

21          I declare under penalty of perjury under the laws of the State of California
that the foregoing is true and correct.
22

23

24    _____          _____
            Sheryl L. Knight                              (Signature)
25          (Type or print name)

26

27

28

1351333

EXHIBIT ___B-9___

| | |
|---|---|
| 1 | William K. West, Jr., Esq. | Counsel For Defendant Qualcomm |
| 2 | Cecilia H. Gonzalez, Esq. |
| | Bert C. Reiser, Esq. |
| 3 | Howrey LLP |
| | 1299 Pennsylvania Avenue, N.W. |
| 4 | Washington, DC 20004 |
| | Phone:    (202) 783-0800 |
| 5 | Fax:        (202) 383-6610 |

1   William K. West, Jr., Esq.                    Counsel For Defendant Qualcomm
2   Cecilia H. Gonzalez, Esq.
    Bert C. Reiser, Esq.
3   Howrey LLP
    1299 Pennsylvania Avenue, N.W.
4   Washington, DC 20004
    Phone:    (202) 783-0800
5   Fax:        (202) 383-6610

6   Peter J. Chassman, Esq.                       Counsel For Defendant Qualcomm
    Howrey LLP
7   750 Bering Drive
    Houston, TX 77057-2198
8   Phone:    (713) 787-1400
    Fax:  .     (713) 787-1440

9   Christopher L. Kelley, Esq.                   Counsel For Defendant Qualcomm
    Howrey LLP
10  301 Ravenswood Avenue
    Menlo Park, CA 94025
11  Phone:    (650) 463-8100
    Fax:        (650) 463-8400

12  Gregory S. Cordrey, Esq.                      Counsel For Defendant Qualcomm
13  Elizabeth Hoult Fontaine
    Howrey LLP
14  2020 Main Street
    Irvine, CA 92614
15  Phone:    (949) 759-3934
    Fax:        (949) 721-6910

16
17
18
19
20
21
22
23
24
25
26
27
28

1351333

EXHIBIT  B-10

```
                          ******************************
                          ***   MULTI TX/RX REPORT   ***
                          ******************************

TX/RX NO          3387
PGS.              11
TX/RX INCOMPLETE  -----
TRANSACTION OK    (1)   2#106#12023836610
                  (2)   2#106#17137871440
                  (3)   2#106#16504638400
                  (4)   2#106#7216910
ERROR INFORMATION -----
```

# IRELL & MANELLA LLP

840 Newport Center Drive, Suite 400
Newport Beach, CA 92660-6324
Facsimile No.: (949) 760-5200
Telephone No.: (949) 760-0991

This communication may contain confidential or privileged information and may constitute inside information. It is intended only for the addressee. Any distribution, reading, copying, or use of this communication by anyone other than the addressee is strictly prohibited and may be unlawful. If you received this in error, please notify us immediately by telephone, and return the original communication to us at the above address by mail. You will be reimbursed for your reasonable expenses. Thank you.

**Multiple Facsimile Cover Sheet**                                    **VIA FACSIMILE**

**Date:**   September 8, 2005

**From:**   Michael G. Ermer

**No. of Pages:**   11
(including cover page)

**To the Following:**

| Name: | Company Name: | Facsimile No.: | Office/Home No.: |
|-------|---------------|----------------|------------------|
| William K. West, Jr. | | (202) 383-6610 | |
| Cecilia H. Gonzalez | | | |
| Peter J. Chassman | | (713) 787-1440 | |
| Christopher L. Kelley | | (650) 463-8400 | |
| Gregory S. Cordrey | | (949) 721-6910 | |
| Elizabeth Hoult Fontaine | | | |

EXHIBIT B-11

From:   Origin ID:  (949)760-0991
Michael Ermer
IRELL & MANELLA LLP
840 NEWPORT CENTER DRIVE, SUITE 400

NEWPORT BEACH, CA 92660



Ship Date: 08SEP05
Actual Wgt: 2 LB
System#: 3950686/INET2200
Account#: S *********

REF: 159405-0001 ermr/slk

Delivery Address Bar Code

SHIP TO:  (202)783-0800        BILL SENDER
**William K. West, Jr., Esq.**
**Howrey LLP**
**1299 Pennsylvania Avenue, N.W.**

**Washington, DC 20004**

**PRIORITY OVERNIGHT**                    **FRI**
                                    Deliver By:
TRK#  **7911  9791  2523**   FORM   09SEP05
                             0201
                                     **IAD**    A1

**20004**   -DC-US

## XC NHKA



Shipping Label: Your shipment is complete

1. Use the 'Print' feature from your browser to send this page to your laser or inkjet printer.

2. Fold the printed page along the horizontal line.

3. Place label in shipping pouch and affix it to your shipment so that the barcode portion of the label can be read and scanned.

**Warning: Use only the printed original label for shipping. Using a photocopy of this label for shipping purposes is fraudulent and could result in additional billing charges, along with the cancellation of your FedEx account number.**

Use of this system constitutes your agreement to the service conditions in the current FedEx Service Guide, available on fedex.com. FedEx will not be responsible for any claim in excess of $100 per package, whether the result of loss, damage, delay, non-delivery, misdelivery, or misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim. Limitations found in the current FedEx Service Guide apply. Your right to recover from FedEx for any loss, including intrinsic value of the package, loss of sales, income interest, profit, attorney's fees, costs, and other forms of damage whether direct, incidental, consequential, or special is limited to the greater of $100 or the authorized declared value. Recovery cannot exceed actual documented loss. Maximum for items of extraordinary value is $500, e.g. jewelry, precious metals, negotiable instruments and other items listed in our Service Guide. Written claims must be filed within strict time limits, see current FedEx Service Guide.

EXHIBIT __B-12__

FedEx | Ship Manager | Label 7901 4704 9709

Page 1 of 1

From:   Origin ID:   (949)760-0991
Michael Ermer
IRELL & MANELLA LLP
840 NEWPORT CENTER DRIVE, SUITE 400

NEWPORT BEACH, CA 92660

**FedEx**
Express

**E**

CL 08613 546973

Ship Date: 08SEP05
Actual Wgt: 2 LB
System#: 3950686/INET2200
Account#: S ********

REF: 159405-0001 ermr/slk

Delivery Address Bar Code

SHIP TO:   (713)787-1400          BILL SENDER
**Peter J. Chassman, Esq.**
**Howrey LLP**
**750 Bering Drive**

**Houston, TX 77057**

**PRIORITY OVERNIGHT**                    **FRI**

Deliver By:
TRK#   **7901  4704  9709**   FORM   09SEP05
                                        0201
                              **IAH**   A1

**77057**   -TX-US

**A9 IAHA**

Shipping Label: Your shipment is complete

1. Use the 'Print' feature from your browser to send this page to your laser or inkjet printer.
2. Fold the printed page along the horizontal line.
3. Place label in shipping pouch and affix it to your shipment so that the barcode portion of the label can be read and scanned.

**Warning: Use only the printed original label for shipping. Using a photocopy of this label for shipping purposes is fraudulent and could result in additional billing charges, along with the cancellation of your FedEx account number.**

Use of this system constitutes your agreement to the service conditions in the current FedEx Service Guide, available on fedex.com. FedEx will not be responsible for any claim in excess of $100 per package, whether the result of loss, damage, delay, non-delivery, misdelivery, or misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim. Limitations found in the current FedEx Service Guide apply. Your right to recover from FedEx for any loss, including intrinsic value of the package, loss of sales, income interest, profit, attorney's fees, costs, and other forms of damage whether direct, incidental, consequential, or special is limited to the greater of $100 or the authorized declared value. Recovery cannot exceed actual documented loss. Maximum for items of extraordinary value is $500, e.g. jewelry, precious metals, negotiable instruments and other items listed in our Service Guide. Written claims must be filed within strict time limits, see current FedEx Service Guide.

**EXHIBIT** B-13

**SHIPMENT NUMBER: 20733-011326-**  | **1 of 1**

INTERNAL BILLING REFERENCE
**159405-0001 ermr/slk**

ACCOUNT NUMBER
**20733**

3rd PARTY BILLING ACCOUNT # (OPTIONAL)

DATE
**09/08/2005**

# OVERNITE EXPRESS

**(800) OVERNITE**

www.overniteexpress.com

1.1.2.0

FROM (YOUR NAME)
**Michael G. Ermer**

YOUR PHONE #
**(949) 760-0991**

DELIVER TO
**Christopher L. Kelley, Esq.**

PHONE #
**(650) 463-8100**

COMPANY
**Irell & Manella LLP**

COMPANY
**Howrey LLP**

STREET
**840 Newport Center Drive**

FLOOR OR SUITE
**400**

STREET (WE CANNOT DELIVER TO PO BOXES)
**301 Ravenswood Avenue**

FLOOR OR SUITE

CITY
**Newport Beach**

STATE **CA** ZIPCODE (REQUIRED) **92660**

CITY
**Menlo Park**

STATE **CA** ZIPCODE **94025**

### Service Required

Morning Overnite ☑

Residence ☐

Declared Value ☐

COD AMOUNT
**$**

I AUTHORIZE RELEASE OF THIS
SHIPMENT WITHOUT SIGNATURE
OF RECIPIENT.

RELEASE SIGNATURE:

**20733-011326-313**



SPECIAL INSTRUCTIONS:

Please fold this form on the dotted line and place it in the pouch on your shipment. Only one copy is required by Overnite Express.
WARNING: Use only the printed label for shipping. Using a photocopy of this label for shipping purposes is fraudulent and could
result in additional billing charges, along with cancellation of your Overnite Express account. Shipments with invalid
account numbers will not be delivered.

EXHIBIT ___B-14___

**SHIPMENT NUMBER: 20733-011327-**          1 of 1

INTERNAL BILLING REFERENCE
**159405-0001 ermr/slk**

ACCOUNT NUMBER
**20733**

3rd PARTY BILLING ACCOUNT # (OPTIONAL)

DATE
**09/08/2005**

# OVERNITE EXPRESS

**(800) OVERNITE**

www.overniteexpress.com

1.1.2.0

FROM (YOUR NAME)
**Michael G. Ermer**

YOUR PHONE #
**(949) 760-0991**

DELIVER TO
**Gregory S. Cordrey, Esq.**

PHONE #
**(949) 759-3934**

COMPANY
**Irell & Manella LLP**

COMPANY
**Howrey LLP**

STREET
**840 Newport Center Drive**

FLOOR OR SUITE
**400**

STREET (WE CANNOT DELIVER TO PO BOXES)
**2020 Main Street**

FLOOR OR SUITE

CITY
**Newport Beach**

STATE
**CA**

ZIPCODE (REQUIRED)
**92660**

CITY
**Irvine**

STATE
**CA**

ZIPCODE
**92614**

### Service Required

Morning Overnite ☑

Residence ☐

Declared Value ☐

COD AMOUNT
$

I AUTHORIZE RELEASE OF THIS SHIPMENT WITHOUT SIGNATURE OF RECIPIENT.

RELEASE SIGNATURE:

20733-011327-313



SPECIAL INSTRUCTIONS:

Please fold this form on the dotted line and place it in the pouch on your shipment. Only one copy is required by Overnite Express.
WARNING: Use only the printed label for shipping. Using a photocopy of this label for shipping purposes is fraudulent and could result in additional billing charges, along with cancellation of your Overnite Express account. Shipments with invalid account numbers will not be delivered.

EXHIBIT  B-15

ORIGINAL

1

2  IRELL & MANELLA LLP
   Layn R. Phillips (103857) (lphillips@irell.com)
3  Michael G. Ermer (110496) (mermer@irell.com)
   Andra Barmash Greene (123931) (agreene@irell.com)
4  Richard de Bodo (128199) (rdebodo@irell.com)
   840 Newport Center Drive, Suite 400
5  Newport Beach, CA 92660-6324
   Telephone:  (949) 760-0991

6  WILMER CUTLER PICKERING HALE AND DORR LLP
   William F. Lee (william.lee@wilmerhale.com)
7  Mark Selwyn (mark.selwyn@wilmerhale.com)
   Richard W. O'Neill (richard.o'neill@wilmerhale.com)
8  60 State Street
   Boston, MA 02109
9  Telephone:  (617) 526-6000
   Facsimile:  (617) 526-5000

10 WILMER CUTLER PICKERING HALE AND DORR LLP
   James L. Quarles III (james.quarles@wilmerhale.com)
11 Thomas P. Olson (thomas.olson@wilmerhale.com)
12 Maria K. Vento (maria.vento@wilmerhale.com)
   1455 Pennsylvania Avenue, N.W.
13 Washington, D.C. 20004
   Telephone:  (202) 942-8400
14 Facsimile:  (202) 942-8484

15 Attorneys for Plaintiff and Counter-Defendant
   BROADCOM CORPORATION

16

17              UNITED STATES DISTRICT COURT

18              CENTRAL DISTRICT OF CALIFORNIA

19                   SOUTHERN DIVISION

20 BROADCOM CORPORATION,            )  Case No. SACV05-468-JVS (RNBx)
                                    )
21            Plaintiff,            )  [PROPOSED] ORDER GRANTING
                                    )  BROADCOM CORPORATION'S
22       vs.                        )  *EX PARTE* APPLICATION TO
                                    )  EXPEDITE HEARING OF MOTION
23 QUALCOMM INCORPORATED,           )  TO VACATE STAY TO ENJOIN
                                    )  DUPLICATIVE, LATER FILED
24            Defendant.            )  ACTION
                                    )
25 _____  )  Hon. James V. Selna
                                    )
26 AND RELATED CROSS-ACTION.        )  Date:        September 8, 2005
                                    )  Time:        To Be Submitted
27 _____  )  Courtroom:   10C

28

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

1351158

FILED
CLERK, U.S. DISTRICT COURT
SEP - 8 2005
CENTRAL DISTRICT OF CALIFORNIA
BY                    DEPUTY

FILED
CLERK, U.S. DISTRICT COURT
SEP - 9 2005
CENTRAL DISTRICT OF CALIFORNIA
BY                    DEPUTY

EXHIBIT  C-1

1    Upon consideration of Plaintiff and Counter-Defendant Broadcom

2  Corporation's ("Broadcom") *Ex Parte* Application To Expedite Hearing Of Motion

3  To Vacate Stay To Enjoin A Duplicative, Later Filed Action:

4    **IT IS HEREBY ORDERED THAT:**

5    1.    Broadcom's Motion To Vacate Stay To Enjoin A Duplicative, Later

6  Filed Action shall be heard by the Court on September 26, 2005 at 1:30 p.m. in

7  Courtroom 10C.

8    2.    Defendant and Counter-Plaintiff Qualcomm Incorporated's

9  ("Qualcomm") opposition to Broadcom's Motions shall be filed and served no later

10  than September 16, 2005.

11    3.    Broadcom's reply to Qualcomm's opposition shall be filed and served

12  no later than September 22, 2005.

13

14

15  Dated: _____ 9.19.05

16                                    Hon. James V. Selna
                                     Judge, United States District Court
17

18

19

20

21

22

23

24

25

26

27

28

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

13511SA                          -1-                [Proposed] Order Granting Broadcom's Application To
                                                              Expedite Hearing

EXHIBIT  C-2

1

## PROOF OF SERVICE

2          I am employed in the County of Orange, State of California. I am over the
age of 18 and not a party to the within action. My business address is 840 Newport
3 Center Drive, Suite 400, Newport Beach, California 92660-6324.

4          On September 8, 2005, I served the foregoing document described as
**[PROPOSED] ORDER GRANTING BROADCOM CORPORATION'S** *EX*
5 *PARTE* **APPLICATION TO EXPEDITE HEARING OF MOTION TO
VACATE STAY TO ENJOIN DUPLICATIVE, LATER FILED ACTION** on
6 each interested party, as stated on the attached service list.

7     ☒     (BY OVERNIGHT DELIVERY SERVICE) I served the foregoing
              document by FedEx/Overnite Express, an express service carrier
8             which provides overnight delivery, as follows. I placed a true copy
              of the foregoing document in sealed envelopes or packages
9             designated by the express service carrier, addressed, as stated on the
              attached service list, with fees for overnight delivery paid or
10            provided for.

11            ☒     (BOX DEPOSIT) I deposited such envelopes or
                    packages in a box or other facility regularly maintained
12                  by the express service carrier.

13            ☐     (CARRIER PICK-UP) I delivered such envelopes or
                    packages to an authorized carrier or driver authorized
14                  by the express service carrier to receive documents.

15    ☒     (BY FAX) I caused the foregoing document to be served by
              facsimile transmission from sending facsimile machine telephone
16            number (949) 760-5200 to each interested party at the facsimile
              machine telephone number shown on the attached service list. Each
17            transmission was reported as complete without error. A transmission
              report was properly issued by the sending facsimile machine for each
18            interested party served.

19        Executed on September 8, 2005, at Newport Beach, California.

20        I declare under penalty of perjury under the laws of the State of California
that the foregoing is true and correct.

21

22

23     Sheryl L. Knight                              _____
          (Type or print name)                              (Signature)
24

25

26

27

28

[Proposed] Order Granting Broadcom's Application To File
Certain Documents Under Seal

1351158

EXHIBIT __C-3__

| | | |
|---|---|---|
| 1 | William K. West, Jr., Esq. | Counsel For Defendant Qualcomm |
| 2 | Cecilia H. Gonzalez, Esq.<br>Bert C. Reiser, Esq. | |
| 3 | Howrey LLP<br>1299 Pennsylvania Avenue, N.W. | |
| 4 | Washington, DC 20004<br>Phone:   (202) 783-0800 | |
| 5 | Fax:      (202) 383-6610 | |
| 6 | Peter J. Chassman, Esq.<br>Howrey LLP | Counsel For Defendant Qualcomm |
| 7 | 750 Bering Drive<br>Houston, TX 77057-2198 | |
| 8 | Phone:   (713) 787-1400<br>Fax:      (713) 787-1440 | |
| 9 | Christopher L. Kelley, Esq. | Counsel For Defendant Qualcomm |
| 10 | Howrey LLP<br>301 Ravenswood Avenue<br>Menlo Park, CA 94025 | |
| 11 | Phone:   (650) 463-8100<br>Fax:      (650) 463-8400 | |
| 12 | Gregory S. Cordrey, Esq. | Counsel For Defendant Qualcomm |
| 13 | Elizabeth Hoult Fontaine<br>Howrey LLP | |
| 14 | 2020 Main Street<br>Irvine, CA 92614 | |
| 15 | Phone:   (949) 759-3934<br>Fax:      (949) 721-6910 | |
| 16 | | |
| 17 | | |
| 18 | | |
| 19 | | |
| 20 | | |
| 21 | | |
| 22 | | |
| 23 | | |
| 24 | | |
| 25 | | |
| 26 | | |
| 27 | | |
| 28 | | |

[Proposed] Order Granting Broadcom's Application To File
Certain Documents Under Seal

1351151

EXHIBIT  C-4



# UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA
### RONALD REAGAN FEDERAL BUILDING AND
### UNITED STATES COURTHOUSE
### 411 WEST FOURTH STREET
### SANTA ANA, CALIFORNIA 92701

ORIGINAL

| | | |
|---|---|---|
| TO: | Michael G. Ermer | (949) 760-5200 |
| FROM | Karla J. Tunis Courtroom Clerk for Hon. James V. Selna Phone (714) 338-2848 | |
| DATE: | September 9, 2005 | |
| NUMBER OF PAGES: (INCLUDING THIS PAGE) | 3 | |
| NOTES: | SACV 05-468-JVS(RNBx) Broadcom Corp. v. Qualcomm Inc. | |

EXPEDITE

    The Court directs Mr. Ermer's Office to serve this order, by fax, on all other counsel in this action.

EXHIBIT  C-5

COPY

1

2  IRELL & MANELLA LLP
   Layn R. Phillips (103857) (lphillips@irell.com)
   Michael G. Ermer (110496) (mermer@irell.com)
3  Andra Barmash Greene (123931) (agreene@irell.com)
   Richard de Bodo (128199) (rdebodo@irell.com)
4  840 Newport Center Drive, Suite 400
   Newport Beach, CA 92660-6324
5  Telephone:  (949) 760-0991

6  WILMER CUTLER PICKERING HALE AND DORR LLP
   William F. Lee (william.lee@wilmerhale.com)
7  Mark Selwyn (mark.selwyn@wilmerhale.com)
   Richard W. O'Neill (richard.o'neill@wilmerhale.com)
8  60 State Street
   Boston, MA 02109
9  Telephone:  (617) 526-6000
   Facsimile:   (617) 526-5000

10

11  WILMER CUTLER PICKERING HALE AND DORR LLP
    James L. Quarles III (james.quarles@wilmerhale.com)
12  Thomas P. Olson (thomas.olson@wilmerhale.com)
    Maria K. Vento (maria.vento@wilmerhale.com)
13  1455 Pennsylvania Avenue, N.W.
    Washington, D.C. 20004
14  Telephone:  (202) 942-8400
    Facsimile:   (202) 942-8484

15  Attorneys for Plaintiff and Counter-Defendant
    BROADCOM CORPORATION
16

17           UNITED STATES DISTRICT COURT

18           CENTRAL DISTRICT OF CALIFORNIA

19                SOUTHERN DIVISION

20  BROADCOM CORPORATION,          ) Case No. SACV05-468-JVS (RNBx)
                                    )
21           Plaintiff,            ) **BROADCOM CORPORATION'S**
                                    ) **NOTICE OF MOTION AND**
22       vs.                       ) **MOTION TO VACATE STAY TO**
                                    ) **ENJOIN A DUPLICATIVE, LATER**
23  QUALCOMM INCORPORATED,         ) **FILED ACTION (CASE NO. 05 CV**
                                    ) **1662 B (JMA) IN THE SOUTHERN**
24           Defendant.            ) **DISTRICT OF CALIFORNIA)**
                                    )
25                                 ) [Ex Parte Application For Expedited
                                    ) Hearing Filed Concurrently]
26                                 )
                                    ) Hon. James V. Selna
27  AND RELATED CROSS-ACTION.      )
                                    ) Date:        September 26, 2005
28                                 ) Time:        1:30 p.m.
                                    ) Courtroom:   10C

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

1351248

Broadcom's Notice Of Motion And Motion To Vacate Stay
To Enjoin A Duplicative, Later Filed Action

EXHIBIT _D-1_

1     **TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

2     PLEASE TAKE NOTICE that on September 26, 2005, at 1:30 p.m., or as

3 soon thereafter as counsel may be heard by the above-entitled Court, located at 411

4 West Fourth Street, Santa Ana, CA 92701, Plaintiff and Counter-Defendant

5 Broadcom Corporation ("Broadcom"), will and hereby does move the Court to

6 vacate the stay of these proceedings previously entered on August 4, 2005, to enjoin

7 the proceedings in the duplicative, later-filed case entitled *Qualcomm Inc. v.*

8 *Broadcom Corp.*, Case No. 05 CV 1662 B (JMA) in the Southern District of

9 California (the "San Diego Lawsuit").

10     On August 22, 2005, Defendant and Counter-Plaintiff Qualcomm

11 Incorporated ("Qualcomm") filed the San Diego Lawsuit along with a motion for a

12 preliminary injunction asking the San Diego court to enjoin Broadcom from

13 pursuing several patent infringement claims pending before the U.S. International

14 Trade Commission.  These patent infringement claims are also at issue in this

15 action, which was stayed by the Court pursuant to 28 U.S.C. § 1659.

16     In support of its motion, Broadcom relies on this Notice of Motion and

17 Motion, Broadcom's Memorandum Of Points And Authorities In Support Of Its

18 Motion To Vacate Stay To Enjoin A Duplicative, Later Filed Action (Case No. 05

19 CV 1662 B (JMA) In The Southern District Of California), the Declaration of Maria

20 K. Vento, all other pleadings, papers, documents, and records on file with the Court,

21 and any such other and further arguments and evidence as may properly be

22 presented to the Court.

23 Dated:  September 8, 2005          Respectfully submitted,

24                                IRELL & MANELLA LLP

25

26                          By: *Michael G. Ermer*

27                          Michael G. Ermer
                              Attorneys for Plaintiff and

28                               Counter-Defendant
                              BROADCOM CORPORATION

Broadcom's Notice Of Motion And Motion To Vacate Stay
To Enjoin A Duplicative, Later Filed Action

EXHIBIT _D-2_

## PROOF OF SERVICE

1

2       I am employed in the County of Orange, State of California. I am over the age of 18 and not a party to the within action. My business address is 840 Newport

3  Center Drive, Suite 400, Newport Beach, California 92660-6324.

4       On September 8, 2005, I served the foregoing document described as **BROADCOM CORPORATION'S NOTICE OF MOTION AND MOTION TO**

5  **VACATE STAY TO ENJOIN A DUPLICATIVE, LATER FILED ACTION (CASE NO. 05 CV 1662 B (JMA) IN THE SOUTHERN DISTRICT OF**

6  **CALIFORNIA)** on each interested party, as stated on the attached service list.

7    [X]    (BY OVERNIGHT DELIVERY SERVICE) I served the foregoing document by FedEx/Overnite Express, an express service carrier

8           which provides overnight delivery, as follows. I placed a true copy of the foregoing document in sealed envelopes or packages

9           designated by the express service carrier, addressed, as stated on the attached service list, with fees for overnight delivery paid or

10          provided for.

11          [X]    (BOX DEPOSIT) I deposited such envelopes or packages in a box or other facility regularly maintained

12              by the express service carrier.

13          [ ]    (CARRIER PICK-UP) I delivered such envelopes or packages to an authorized carrier or driver authorized

14              by the express service carrier to receive documents.

15    [X]    (BY FAX) I caused the foregoing document to be served by facsimile transmission from sending facsimile machine telephone

16           number (949) 760-5200 to each interested party at the facsimile machine telephone number shown on the attached service list. Each

17           transmission was reported as complete without error. A transmission report was properly issued by the sending facsimile machine for each

18           interested party served.

19      Executed on September 8, 2005, at Newport Beach, California.

20       I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

21

22

23      Sheryl L. Knight                                  

      (Type or print name)                  (Signature)

24

25

26

27

28

Broadcom's Notice Of Motion And Motion To Vacate Stay
To Enjoin A Duplicative, Later Filed Action

**EXHIBIT** D-3

| | | |
|---|---|---|
| 1 | William K. West, Jr., Esq. | Counsel For Defendant Qualcomm |
| 2 | Cecilia H. Gonzalez, Esq.<br>Bert C. Reiser, Esq. | |
| 3 | Howrey LLP<br>1299 Pennsylvania Avenue, N.W. | |
| 4 | Washington, DC 20004<br>Phone:   (202) 783-0800 | |
| 5 | Fax:       (202) 383-6610 | |
| 6 | Peter J. Chassman, Esq.<br>Howrey LLP | Counsel For Defendant Qualcomm |
| 7 | 750 Bering Drive<br>Houston, TX 77057-2198 | |
| 8 | Phone:   (713) 787-1400<br>Fax:       (713) 787-1440 | |
| 9 | Christopher L. Kelley, Esq. | Counsel For Defendant Qualcomm |
| 10 | Howrey LLP<br>301 Ravenswood Avenue | |
| 11 | Menlo Park, CA 94025<br>Phone:   (650) 463-8100 | |
| | Fax:       (650) 463-8400 | |
| 12 | Gregory S. Cordrey, Esq. | Counsel For Defendant Qualcomm |
| 13 | Elizabeth Hoult Fontaine<br>Howrey LLP | |
| 14 | 2020 Main Street<br>Irvine, CA 92614 | |
| 15 | Phone:   (949) 759-3934<br>Fax:       (949) 721-6910 | |
| 16 | | |
| 17 | | |
| 18 | | |
| 19 | | |
| 20 | | |
| 21 | | |
| 22 | | |
| 23 | | |
| 24 | | |
| 25 | | |
| 26 | | |
| 27 | | |
| 28 | | |

Broadcom's Notice Of Motion And Motion To Vacate Stay
To Enjoin A Duplicative, Later Filed Action

1351248

EXHIBIT  D-4

09/08/2005 17:06 FAX 949 760 5200          IRELL & MANELLA LLP          ☐001

```
*******************************
***   MULTI TX/RX REPORT   ***
*******************************
TX/RX NO            3389
PGS.                5
TX/RX INCOMPLETE    -----
TRANSACTION OK      (1)   2#668#12023836610
                    (2)   2#668#17137871440
                    (3)   2#668#16504638400
                    (4)   2#668#7216910
ERROR INFORMATION   -----
```

# IRELL & MANELLA LLP
840 Newport Center Drive, Suite 400
Newport Beach, CA 92660-6324
Facsimile No.: (949) 760-5200
Telephone No.: (949) 760-0991

This communication may contain confidential or privileged information and may constitute inside information. It is intended only for the addressee. Any distribution, reading, copying, or use of this communication by anyone other than the addressee is strictly prohibited and may be unlawful. If you received this in error, please notify us immediately by telephone, and return the original communication to us at the above address by mail. You will be reimbursed for your reasonable expenses. Thank you.

135 1248

**Multiple Facsimile Cover Sheet**                                    **VIA FACSIMILE**

**Date:**  September 8, 2005

**From:**  Michael G. Ermer

**No. of Pages:**  5
(including cover page)

**To the Following:**

| Name: | Company Name: | Facsimile No.: | Office/Home No.: |
|-------|---------------|----------------|------------------|
| William K. West, Jr. | | (202) 383-6610 | |
| Cecilia H. Gonzalez | | | |
| Peter J. Chassman | | (713) 787-1440 | |
| Christopher L. Kelley | | (650) 463-8400 | |
| Gregory S. Cordrey | | (949) 721-6910 | |
| Elizabeth Hoult Fontaine | | | |

EXHIBIT  D-5



1  IRELL & MANELLA LLP
   Layn R. Phillips (103857) (lphillips@irell.com)
2  Michael G. Ermer (110496) (mermer@irell.com)
   Andra Barmash Greene (123931) (agreene@irell.com)
3  Richard de Bodo(128199) (rdebodo@irell.com)
   840 Newport Center Drive, Suite 400
4  Newport Beach, CA 92660-6324
   Telephone:  (949) 760-0991
5
   WILMER CUTLER PICKERING HALE AND DORR LLP
6  William F. Lee (william.lee@wilmerhale.com) (admitted *pro hac vice*)
   Mark D. Selwyn (mark.selwyn@wilmerhale.com) (admitted *pro hac vice*)
7  Richard W. O'Neill (richard.o'neill@wilmerhale.com) (admitted *pro hac vice*)
   60 State Street
8  Boston, MA 02109
   Telephone:  (617) 526-6000
9  Facsimile:  (617) 526-5000

10 WILMER CUTLER PICKERING HALE AND DORR LLP
   James L. Quarles III (james.quarles@wilmerhale.com) (admitted *pro hac vice*)
11 Thomas P. Olson (thomas.olson@wilmerhale.com) (admitted *pro hac vice*)
   Maria K. Vento (maria.vento@wilmerhale.com) (admitted *pro hac vice*)
12 1455 Pennsylvania Avenue, N.W.
   Washington, D.C. 20004
13 Telephone:  (202) 942-8400
   Facsimile:  (202) 942-8484
14
   Attorneys for Plaintiff and Counter-Defendant
15 Broadcom Corporation

16              UNITED STATES DISTRICT COURT
17          CENTRAL DISTRICT OF CALIFORNIA
18                   SOUTHERN DIVISION
19
   BROADCOM CORPORATION,              )   Case No. SACV05-468-JVS (RNBx)
20                                     )
                 Plaintiff,            )   **BROADCOM CORPORATION'S**
21      vs.                            )   **MEMORANDUM IN SUPPORT OF**
                                       )   **ITS MOTION TO VACATE STAY**
22 QUALCOMM INCORPORATED,              )   **TO ENJOIN A DUPLICATIVE,**
                                       )   **LATER-FILED ACTION (CASE**
23              Defendant.             )   **NO. 05 CV 1662 B (JMA) IN THE**
                                       )   **SOUTHERN DISTRICT OF**
24 ─────────────────────────────       )   **CALIFORNIA)**
                                       )
25 AND RELATED CROSS-ACTION.           )   [Ex Parte Application For Expedited
                                       )   Hearing Filed Concurrently]
26 ─────────────────────────────       )
                                       )   Hon. James V. Selna
27                                     )   Date:        September 26, 2005
                                       )   Time:        1:30 p.m.
28 ─────────────────────────────       )   Courtroom:   10C

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

1351480                                Broadcom's Motion to Vacate Stay To Enjoin A Duplicative,
                                       Later-Filed Action

EXHIBIT ___E-1___

## **Table of Contents**

I.    INTRODUCTION ................................................................. 1

II.   PROCEDURAL HISTORY ................................................ 3

    A.   May 18, 2005: Broadcom Sues Qualcomm for Patent
        Infringement in this Court (the "*Santa Ana I*" and "*Santa
        Ana II*" Cases). ............................................................. 3

    B.   May 19, 2005: Broadcom Files an Infringement
        Complaint with the ITC. .............................................. 4

    C.   July 13, 2005: Qualcomm Requests a Stay of *Santa Ana I*
        and *Santa Ana II* and Assures This Court That It Will
        Litigate the Validity of the Wireless Subnetwork Patents
        Before the ITC. ............................................................. 5

    D.   August 22, 2005: Three Months After the Santa Ana and
        ITC Complaints Are Filed, Qualcomm Files a Complaint
        in the Southern District of California And An Application
        to Enjoin the ITC Investigation. .................................. 6

III.  ARGUMENT .................................................................... 8

    A.   Qualcomm May Not Pursue Claims In San Diego
        Involving The Very Same Parties And Issues Before This
        Court. ............................................................................ 9

        1.   Under the "First To File" Rule, a Later-Filed Case
            Should Be Enjoined When Disposition of the First-
            Filed Case Would Resolve the Later-Filed Case As
            Well. ....................................................................... 9

        2.   Qualcomm Raised, or Was Required To Raise, Its
            *San Diego* Claims in This Court and Before the
            ITC. ...................................................................... 11

            a.   First Cause of Action (Declaratory Relief—
                Non-infringement). ...................................... 12

            b.   Second Cause of Action (Declaratory
                Relief—Invalidity). ...................................... 13

            c.   Third Cause of Action (Declaratory Relief—
                Inequitable Conduct). .................................. 15

            d.   Fourth Cause of Action (Declaratory Relief—
                Implied License by Legal Estoppel). ............ 16

            e.   Fifth Cause of Action (Declaratory Relief—
                Implied License by Equitable Estoppel). ...... 17

            f.   Sixth Cause of Action (License). .................. 17

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

1351480

EXHIBIT  E-2

1            g.     Qualcomm's State Law Claims (Breach of Contract and Permanent Injunction)...............................19

2    B.    The Asserted Presence Of A Forum Selection Clause Changes Nothing. ...............................................................19

4        1.     Qualcomm Was Required to Raise Its Forum Selection Clause Argument With *This* Court ...........................19

6        2.     Qualcomm Has Waived Any Right to Rely on the Forum Selection Clause. ........................................20

7    C.    The Equities Strongly Favor An Injunction. .......................................21

8 IV.   CONCLUSION.......................................................................23

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

1351480

ii

EXHIBIT  E-3

## Table of Authorities

### Federal Cases

*Adam v. Jacobs,*
    950 F.2d 89 (2d Cir. 1991) ................................................................ 11

*Am. Home Assurance Co. v. TGL Container Lines, Ltd.,*
    347 F. Supp. 2d 749 (E.D. Cal. 2004) ........................................ 20

*Am. Patriot Ins. Agency v. Mutual Risk Mmgt., Ltd.,*
    364 F.3d 884 (7th Cir. 2004) ................................................... 21

*Am. Soc. for Testing & Materials v. Corrpro Companies, Inc.,*
    254 F.2d 578 (E.D. Pa. 2003) ................................................... 10

*Asset Allocation & Mmgt. Co. v. W. Employers Ins. Co.,* 892 F.2d 566
    (7th Cir. 1989) ............................................................................... 10

*Bryant v. Oxxford Express, Inc.,*
    181 F. Supp. 2d 1045 (C.D. Cal. 2000) .................................... 10

*Colortyme Fin. Servs., Inc. v. Kivalina Corp.,*
    940 F. Supp. 269 (D. Haw. 1996) ............................................. 11

*Daewoo Motor Am., Inc. v. Dongbu Fire Ins. Co.,*
    289 F. Supp. 2d 1127 (C.D. Cal. 2001) .................................... 20

*Decker Coal Co. v. Commonwealth Edison Co.,*
    805 F.2d 834 (9th Cir. 1986) ....................................................... 8

*E.&J. Gallo Winery v. Andina Licores,* 2005 WL 1554001,
    at *9 (E.D. Cal. June 24, 2005) ............................................ 19-20

*E.&J. Gallo Winery v. Encana Energy Serv., Inc.,*
    2005 WL 1657063, at *11 (E.D. Cal. July 6, 2005) .................. 21

*Elect. For Imaging, Inc. v. Coyle,*
    394 F.3d 1341 (Fed. Cir. 2005) ................................................. 21

*Hoffman v. Blaski,*
    363 U.S. 335 (1960) ................................................................... 20

*Hydranautics v. FilmTec Corp.,*
    70 F.3d 533 (9th Cir. 1995) ....................................................... 15

*IMS Health, Inc. v. Vality Tech. Inc.,*
    59 F. Supp. 2d 454 (E.D. Pa. 1999) .......................................... 11

*In re Van Geuns,*
    946 F.2d 845 (Fed. Cir. 1991) ................................................... 10

*Katz v. Lear Siegler, Inc.,*
    909 F.2d 1459 (Fed. Cir. 1990) ....................................... 2, 9-11

*Kahn v. General Motors Corp.,*
    889 F.2d 1078 (Fed. Cir. 1989) ................................................... 8

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

1351480

Broadcom's Motion to Vacate Stay to Enjoin A Duplicative,
Later-Filed Action

iii

EXHIBIT  E-4

*Lab. Corp. of Am. Holdings v. Chiron Corp.*,
    384 F.3d 1326 (Fed. Cir. 2004) ........................................ 8, 9

*Martin v. Graybar Elec. Co.*,
    266 F.2d 202 (7th Cir. 1959) ............................................. 10

*Nat'l Equip. Rental, Ltd. v. Fowler*,
    287 F.2d 43 (2d Cir. 1961) ............................................... 10

*Northwest Airlines, Inc. v. Am. Airlines, Inc.*,
    989 F.2d 1002 (8th Cir. 1993) ........................................... 10

*Pacesetter Sys., Inc. v. Medtronic, Inc.*,
    678 F.2d 93 (9th Cir. 1982) ................................................ 8

*Polymer Indus. Prods. Co. v. Bridgestone/Firestone, Inc.*,
    347 F.3d 935 (Fed. Cir. 2003) .......................................... 15

*R.A. Argueta v. Banco Mexicano, S.A.*,
    87 F.3d 320 (9th Cir. 1996) .............................................. 20

*Sega of Am., Inc. v. Signal Apparel Co., Inc.*,
    1997 WL 414196, at *1 (N.D. Cal. 1997) ................. 9, 11, 19, 20

*S. Const. Co. v. Pickard*,
    371 U.S. 57 (1962) .......................................................... 11

**Federal Statutes**

Fed. R. Civ. P. 8(c) ............................................................... 7, 17

Fed. R. Civ. P. 13 ..................................................................... 11

Fed. R. Civ. P. 13(a) ......................................................... *passim*

**Other Authorities**

6 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE
    AND PROCEDURE § 1418 (2d ed. 2005) ............................. 11

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

1351480

iv

EXHIBIT  E-5

# I.   INTRODUCTION

This motion seeks to prevent Qualcomm's attempt to make an end run around this Court's jurisdiction.

On May 18, 2005, Broadcom brought two actions against Qualcomm in this Court for patent infringement and simultaneously began parallel proceedings (with respect to the five patents in this case, No. 468) before the United States International Trade Commission ("ITC"). Qualcomm did not move to dismiss for improper venue or any other reason. Instead, Qualcomm not only answered but also asserted a variety of counterclaims.

In July 2005, Qualcomm asked this Court to stay both Case No. 467 and Case No. 468 in purported deference to the parallel ITC proceedings, representing to the Court that "the ITC investigation will be completed, and the benefits of that case available for use here, in a very short while."[1] On August 4, 2005, this Court stayed this case, involving the same five patents as the ITC investigation, but denied a stay in the companion case, involving five patents different from the ones at issue in the ITC. Since that motion was filed, almost half the time allotted for discovery in the ITC investigation has passed. The parties have exchanged tens of thousands of pages of documents, served and responded to extensive written discovery, and are preparing to take and defend many fact and expert depositions during the short time that remains before discovery closes.

Despite the fact that it has already invoked the jurisdiction of this Court, and notwithstanding its request that this Court stay its hand while the ITC Investigation ran its course, Qualcomm has now gone to its home forum – the U.S. District Court for the Southern District of California, sitting in San Diego – to try (1) to re-allege the same declaratory judgment claims it already asserted with respect to two of the

---

[1]   *See* Declaration of Maria K. Vento in Support of Broadcom Corp.'s Motion to Vacate Stay To Enjoin A Duplicative, Later-Filed Action ("Vento Decl."), Ex. 1 at 15.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

1351480

1

Broadcom's Motion to Vacate Stay to Enjoin A Duplicative.
Later-Filed Action

EXHIBIT __E-6__

1   five patents in this case – the "Wireless Subnetwork Patents," U.S. Patent Nos.

2   5,682,379 and 6,359,872 – and (2) to divest the ITC of all jurisdiction with respect

3   to these same two patents.

4       Specifically, on August 22, 2005, Qualcomm filed a complaint and a motion

5   for a preliminary injunction in San Diego alleging that Broadcom's claims here and

6   in the ITC relating to the Wireless Subnetwork Patents are "[i]nextricably

7   [i]ntertwined" with a 2001 "Bluetooth RF" agreement between Qualcomm and

8   Broadcom. Qualcomm belatedly contends that this agreement contains a forum

9   selection clause making San Diego the exclusive venue for the counterclaims

10   Qualcomm asserted here. Qualcomm has asked the San Diego court to enjoin

11   Broadcom from pursuing its ITC claims on the Wireless Subnetwork patents; that

12   motion is set for hearing on October 3, 2005.

13       It is against this procedural background that Broadcom asks this Court to lift

14   the stay in this case and enjoin Qualcomm from attempting to pursue duplicative

15   litigation in what Qualcomm apparently sees as a more favorable forum.

16       Every one of Qualcomm's claims in the new San Diego case either was or

17   should have been raised in this case. This fact alone provides this Court with

18   sufficient basis to issue the requested injunction. *See Katz v. Lear Siegler, Inc.*, 909

19   F.2d 1459, 1463 (Fed. Cir. 1990) (injunction is proper where "the issues and parties

20   are such that the disposition of [the first-filed] case would be dispositive of the

21   other"). Moreover, the equities tip sharply in favor of Broadcom. Qualcomm chose

22   to answer and file counterclaims against Broadcom's complaint in this Court; it

23   elected to forego filing a motion to dismiss under Fed. R. Civ. P. 12(b)(3); and it

24   sought to stay proceedings here based on its representation that it would litigate the

25   ITC proceedings to quick completion. Now that the parties are almost halfway

26   through fact discovery before the ITC, Qualcomm not only asserts that the dispute is

27   "inextricably intertwined" with an agreement it never thought worth mentioning

28   before, but has run to another court to assert the same claims it asked this Court to

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

1351480

2

Broadcom's Motion to Vacate Stay to Enjoin A Duplicative,
Later-Filed Action

EXHIBIT  E-7

1    stay. Accordingly, Broadcom requests that this Court vacate its previously-entered

2    stay for the limited purpose of enjoining Qualcomm from pursuing the claims

3    asserted in the San Diego case.[2]

4    **II.    PROCEDURAL HISTORY**

5          **A.    May 18, 2005: Broadcom Sues Qualcomm for Patent Infringement
           in this Court (the "*Santa Ana I*" and "*Santa Ana II*" Cases).**

6

7          On May 18, 2005, Broadcom filed two complaints against Qualcomm in this

8    Court, alleging that Qualcomm's cell phone chips and chipsets infringe ten

9    Broadcom patents. The first case, No. 467 ("*Santa Ana I*"), involves five patents not

10   at issue before the ITC. This case, No. 468 ("*Santa Ana II*"), involves the five

11   patents that are also the subject of the parallel ITC proceeding, including the two

12   Wireless Subnetwork Patents about which Qualcomm has filed suit in San Diego.

13         In its filings in this Court, Qualcomm never mentioned the forum selection

14   clause it now purports to rely on in San Diego or the "Bluetooth RF Agreement"

15   that contains that clause. Nor did it file a motion to dismiss for improper venue

16   under Fed. R. Civ. P. 12(b)(3), or for any other reason. Instead, on July 11, 2005,

17   Qualcomm filed answers and counterclaims in both cases.[3]

18         Qualcomm's counterclaims in this case sought, *inter alia*, declarations that it

19   does not infringe the two Wireless Subnetwork Patents and that those patents are

20   invalid. Qualcomm also asserted affirmative defenses of non-infringement (Second

21   Defense), invalidity (Third Defense), and license (Sixth Defense). As discussed

22   below, Qualcomm has recycled all of these claims in its belated San Diego lawsuit.

23   _____

     [2]   Broadcom requests this stay *not* to address the merits in Case No. 468

24   simultaneously with the ITC proceeding – which is what Section 1659 is designed to
     prevent. Rather, the purpose is to simply to prevent an attempt to defeat this Court's

25   jurisdiction. For the same reasons, Broadcom has also moved in the Southern
     District of California to dismiss or stay the San Diego case. *See* Vento Decl., Ex. 2.

26
     [3]   *See* Vento Decl., Ex. 3; Vento Decl., Ex. 4. Qualcomm denied Broadcom's

27   venue allegations, but did not raise a defense of lack of venue, and alleged in its
     counterclaims that venue was proper for those counterclaims, stating "venue is

28   proper." *See* Vento Decl., Ex. 3 at 1, 4-5; Vento Decl., Ex. 4 at 1, 4-6.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

Broadcom's Motion to Vacate Stay to Enjoin A Duplicative,
Later-Filed Action

1351480                                    - 3 -

**EXHIBIT ___K-8___**

**B.    May 19, 2005:  Broadcom Files an Infringement Complaint with the ITC.**

On May 19, 2005, Broadcom filed a complaint with the ITC pursuant to 19 U.S.C. § 337, alleging that Qualcomm infringes the five patents at issue in *Santa Ana II* (including the two Wireless Subnetwork Patents) and asking the Commission to begin an investigation.  On June 16, 2005, the ITC issued a Notice of Investigation and named Qualcomm as a respondent.

Qualcomm filed its Response to the Complaint and Notice of Investigation on July 11, 2005.[4]  As with its answers in this Court, Qualcomm's ITC response never mentioned the Bluetooth RF Agreement or its supposedly crucial forum selection clause.

As the Court is aware, ITC proceedings move with great speed.  On June 22, 2005, the parties began discovery in the ITC Investigation.  To date, Broadcom has served three sets of requests for production and three sets of interrogatories upon Qualcomm.  Qualcomm has served four sets of requests for production and two sets of interrogatories upon Broadcom, as well as more than 500 requests for admission.  Much of Qualcomm's discovery focuses on issues related to the Wireless Subnetwork Patents.  The Commission Investigative Staff has also served requests for production and interrogatories on both Broadcom and Qualcomm, including requests relating to the Wireless Subnetwork Patents.  Both sides have already devoted extensive efforts to locating and gathering responsive documents, producing tens of thousands of pages of documents, and preparing to produce many more.  The parties are also in the midst of working with experts and planning for and scheduling many fact and expert witness depositions.

Pursuant to the ITC's scheduling order, fact discovery in the ITC Investigation will close on November 18, 2005.  Thus, the parties are almost

---

[4]    Vento Decl., Ex. 5.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

1351480

EXHIBIT   E-9

1   halfway through the five-month fact discovery period.  Expert discovery will end

2   December 20, 2005, and a ten-day trial will begin on January 31, 2006.

3          C.   **July 13, 2005:  Qualcomm Requests a Stay of *Santa Ana I* and**

4                 ***Santa Ana II* and Assures This Court That It Will Litigate the**

5                 **Validity of the Wireless Subnetwork Patents Before the ITC.**

6           On July 13, 2005, Qualcomm filed a separate motion in this Court to stay

7   *Santa Ana II* pursuant to 28 U.S.C. § 1659, pending completion of the ITC

8   proceedings.  Broadcom did not oppose that motion – since the ITC case involves

9   the same patents – and this Court granted the stay on August 4, 2005.

10           On July 13, 2005, Qualcomm separately moved to stay *Santa Ana I*.

11   Qualcomm argued it would be inefficient to conduct simultaneous discovery on the

12   five patents being litigated at the ITC and the five other patents at issue in *Santa Ana*

13   *I*.  Qualcomm did not argue (as it now does in San Diego) that the ITC is not a

14   proper venue in which to litigate the validity of the Wireless Subnetwork Patents.

15   To the contrary, it affirmatively represented to the Court that it intended to litigate

16   the validity of those patents, among others, at the ITC, and to do so very quickly.  In

17   Qualcomm's words:

18         •   "[A]s both parties recognize, there will be exhaustive discovery of

19             Qualcomm concerning its products as they relate to the claims asserted

20             in the ITC investigation.  *Such discovery in the ITC is already*

21             *underway and will likely be completed by November 18, 2005.*"[5]

22         •   "[T]he Broadcom-initiated ITC investigation is scheduled to proceed to

23             trial in January 2006, no matter how this Court decides the instant

24             motion.  Whether or not this motion is granted, the tactical advantage

25             of having its case heard first still belongs to Broadcom in the ITC."[6]

26

27     [5]   *See* Vento Decl., Ex. 6 at 3 (emphasis added).

28     [6]   *See* Vento Decl., Ex. 6 at 14.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

1351480

Broadcom's Motion to Vacate Stay to Enjoin A Duplicative,
Later-Filed Action

EXHIBIT   E-10

1      •     "[T]he ITC investigation will be completed, and the benefits of that

2           case available for use here, in a very short while."[7]

3       This Court denied Qualcomm's motion to stay *Santa Ana I* on August 16,

4  2005.

5       **D.**    **August 22, 2005:  Three Months After the Santa Ana and ITC**

6           **Complaints Are Filed, Qualcomm Files a Complaint in the Southern District of California And An Application to Enjoin Part**

7           **of the ITC Investigation.**

8       On August 22, 2005 — more than three months after Broadcom filed the

9  complaints in *Santa Ana I* and *II* and in the ITC, and more than a month after

10  Qualcomm filed its responses in those cases — Qualcomm filed a complaint in the

11  U.S. District Court for the Southern District of California, sitting in San Diego.[8]

12  Qualcomm also moved for a preliminary injunction to stop – midstream – the

13  ongoing ITC investigation as to the Wireless Subnetwork Patents.[9]

14       Qualcomm's San Diego complaint raises six claims for declaratory judgment

15  on federal law claims related to the Wireless Subnetwork Patents.  All six arise out

16  of the same dispute about Qualcomm's infringement of these patents, which

17  underlie this case and the ITC case.  Indeed, most of the causes of action are

18  *identical* to the counterclaims and defenses Qualcomm raised in this case and the

19  ITC case:

20      •    **Declarations of Noninfringement:**  Qualcomm's First Cause of

21           Action (Declaratory Relief – Non-Infringement) in San Diego

22           corresponds with its Fifth and Seventh Counterclaims in this case and

23           overlaps with its Second Defense in this case.[10]

---

24  [7]  *See* Vento Decl., Ex. 1 at 15.

25  [8]  *See* Vento Decl., Ex. 7.

26  [9]  *See* Vento Decl., Ex. 8.

27  [10]  *Compare* Vento Decl., Ex. 7 at 3 *with* Vento Decl., Ex. 4 at 4-5, 8 and 9. Qualcomm's First Cause of Action in the San Diego case also overlaps with its

28  Sixth Affirmative Defense in the ITC Investigation (Non-Infringement).  *Compare* Vento Decl., Ex. 7 at 3 *with* Vento Decl., Ex. 5 at 23.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

Broadcom's Motion to Vacate Stay to Enjoin A Duplicative,
Later-Filed Action

1351480

EXHIBIT  E-11

1  • **Declarations of Invalidity:** Qualcomm's Second Cause of Action

2  (Declaratory Relief – Invalidity) in San Diego is essentially the same as

3  its Sixth and Eighth Counterclaims in this case and overlaps with its

4  Third Defense in this case.[11]

5  • **Inequitable Conduct:** Qualcomm's Third Cause of Action

6  (Declaratory Relief — Inequitable Conduct) in San Diego is essentially

7  the same as the Eighth Affirmative Defense in the ITC (Inequitable

8  Conduct), which is a compulsory counterclaim here.[12]

9  • **License Defense:** Qualcomm's Sixth Cause of Action in San Diego

10  and the Sixth Defense in this case both claim that Broadcom has

11  granted Qualcomm a license to practice the two patents.[13]

12  The remaining two federal law causes of action ("Declaratory Relief—Implied

13  License by Legal Estoppel" and "Declaratory Relief—Implied License by Equitable

14  Estoppel") seek declarations that Broadcom's patent claims are barred because of

15  implied licenses.[14]  These claims are squarely grounded in the same dispute between

16  the parties as in *Santa Ana II* – and Fed. R. Civ. P. 8(c) and 13(a) requires that they

17  be filed as counterclaims or affirmative defenses in this Court.

18  Qualcomm's San Diego complaint also raises two state law causes of action

19  ("Breach of Contract – Bluetooth RF Agreement" and "Permanent Injunction") that

20  are nothing more than efforts to enforce what Qualcomm now contends is an

21  applicable forum selection clause in a 2001 document called the "Bluetooth RF

22  [11]  *Compare* Vento Decl., Ex. 7 at 3 *with* Vento Decl., Ex. 4 at 5, 9 and 10.

23  Qualcomm's Second Cause of Action in the San Diego case also overlaps with its
Third and Fourth Affirmative Defenses in the ITC Investigation. *Compare* Vento

24  Decl., Ex. 7 at 3 *with* Vento Decl., Ex. 5 at 21-22.

25  [12]  *Compare* Vento Decl., Ex. 7 at 4 *with* Vento Decl., Ex. 5 at 24.

26  [13]  *Compare* Vento Decl., Ex. 7 at 5 *with* Vento Decl., Ex. 5 at 5.  Qualcomm's
Sixth Cause of Action in the San Diego case is also the same as its Seventh

27  Affirmative Defense in the ITC Investigation. *Compare* Vento Decl., Ex. 7 at 5 *with*
Vento Decl., Ex. 5 at 23.

28  [14]  *See* Vento Decl., Ex. 7 at 4-5.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

1351480                          · 7                    Broadcom's Motion to Vacate Stay to Enjoin A Duplicative,
Later-Filed Action

EXHIBIT  E-12

1  Agreement." (Although Qualcomm depicts this agreement as a license from

2  Broadcom to Qualcomm, to the extent any license is given it is from Qualcomm to

3  Broadcom.)   The two state law causes of action in the San Diego complaint allege

4  that Broadcom breached the forum selection clause by filing the ITC complaint and

5  seek to enjoin Broadcom from participating in the ITC Investigation as to the

6  Wireless Subnetwork Patents.

7  **III.   ARGUMENT**

8       This Court can, and should, enjoin Qualcomm's belated attempt to forum

9  shop and derail litigation that is well underway.

10       The law of the Federal Circuit governs how district courts should manage

11  parallel patent infringement proceedings pending in multiple courts.  *See Lab. Corp.*

12  *of Am. Holdings v. Chiron Corp.*, 384 F.3d 1326, 1331 (Fed. Cir. 2004).  The

13  Federal Circuit has explained that, when one lawsuit has been filed substantially

14  before the second and the issues and parties are the same, the first-filed case should

15  – absent exceptional circumstances – proceed while the second-filed case should be

16  halted.  *Kahn v. General Motors Corp.*, 889 F.2d 1078, 1081 (Fed. Cir. 1989) (first-

17  filed action should have been given priority; reversing district court order

18  finding that special circumstances favored second-filed action).  This can happen in

19  two ways:  the first court can enjoin the "runaway" party from proceeding in the

20  second court, or the second court can dismiss or stay the later-filed suit.  *See, e.g.,*

21  *Lab. Corp. of Am. Holdings*, 384 F.3d at 1333 (affirming district court decision to

22  enjoin parties from proceeding in later-filed action); *Decker Coal Co. v.*

23  *Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986) ("When a district

24  court has jurisdiction over all parties involved, it may enjoin later filed actions.");

25  *Pacesetter Sys., Inc. v. Medtronic, Inc.*, 678 F.2d 93, 97 (9th Cir. 1982) (affirming

26  district court's decision to dismiss later-filed action).

27       Here, the case for enjoining Qualcomm from pursuing its months-too-late

28  lawsuit in San Diego is exceptionally strong.  *First*, and dispositively, the issues that

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

1351480

8

Broadcom's Motion to Vacate Stay to Enjoin A Duplicative,
Later-Filed Action

EXHIBIT ___6-13___

1  Qualcomm raises in San Diego are identical to the ones it has raised, or was required

2  to raise, here. *Second*, the fact that Qualcomm belatedly relies on a supposed forum

3  selection clause changes nothing:  it is up to the court hearing the *first*-filed case to

4  interpret any forum selection clause, even if one side claims that the clause "selects"

5  a different court. *See Sega of America, Inc. v. Signal Apparel Co.*, No. C-97-1392-

6  VRW, 1997 WL 414196, at *1 (N.D. Cal. July 14, 1997) (first-to-file rule demanded

7  that court in first action decide whether forum selection clause required transfer or

8  dismissal). *Third*, the equities strongly favor an injunction, particularly when (i)

9  Qualcomm chose to say *nothing* to this Court about a supposedly binding "forum

10  selection" clause, and (ii) Qualcomm instead assured this Court that the ITC

11  proceeding (which Qualcomm now claims must be halted) would quickly resolve

12  the parties' disputes about the Wireless Subnetwork Patents. *Fourth*, this Court

13  ought to act swiftly to avoid the jurisdictional tangle that would be created if

14  Qualcomm were permitted to continue to pursue its preliminary injunction motion

15  (which is scheduled for a hearing on October 3, 2005, along with Broadcom's

16  Motion to Dismiss) before the jurisdictional issues are resolved.

17      **A.**    **Qualcomm May Not Pursue Claims In San Diego Involving The**

18               **Very Same Parties And Issues Before This Court.**

19             **1.**    **Under the "First To File" Rule, a Later-Filed Case Should Be**

                    **Enjoined When Disposition of the First-Filed Case Would**

20                      **Resolve the Later-Filed Case As Well.**

21         When, as here, parallel patent infringement and declaratory judgment lawsuits

22  are pending in two different district courts, "injunctions arbitrating between [the]

23  cases … are reviewed under the law of the Federal Circuit." *Lab. Corp. of America*

24  *Holdings*, 384 F.3d at 1331.  The Federal Circuit has made clear that such

25  injunctions are *not* typical preliminary injunctions governed by the traditional four-

26  factor test. *See Katz*, 909 F.2d at 1463 (internal citations omitted) (traditional test

27  for preliminary injunction, "which was developed to test the grant of the requested

28  remedy before the case has been tried on the merits, does not apply to the different

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

1351480

9

Broadcom's Motion to Vacate Stay to Enjoin A Duplicative.
Later-Filed Action

EXHIBIT E-14

1   question of whether to enjoin the prosecution of concurrent litigation.").[15]  Rather,

2   the "primary question" as to whether to enjoin a duplicative later-filed case "is

3   whether the issues and parties are such that the disposition of one case would be

4   dispositive of the other."  *See id.*  If they are, the "first to file" rule holds that the

5   "runaway" party should be enjoined from pursuing the later-filed case.  *See id.*

6   Other circuits follow the same principle in non-patent cases.  *See Northwest*

7   *Airlines, Inc. v. Am. Airlines, Inc.*, 989 F.2d 1002, 1004 (8th Cir. 1993) (injunction

8   against duplicative, second-filed action in another forum is not subject to typical

9   four-factor preliminary injunction standard); *Asset Allocation & Mgmt. Co. v. W.*

10   *Employers Ins. Co.*, 892 F.2d 566, 572 (7th Cir. 1989) (power to enjoin a

11   second…lawsuit is based on the court's inherent ability to manage complex

12   litigation economically); *Nat'l Equip. Rental, Ltd. v. Fowler*, 287 F.2d 43, 46 (2d

13   Cir. 1961) ("an injunction should issue enjoining the prosecution of the second suit

14   to prevent the economic waste involved in duplicating litigation which would have

15   an adverse effect on the prompt and efficient administration of justice…"); *Martin v.*

16   *Graybar Elec. Co.*, 266 F.2d 202, 204 (7th Cir. 1959) (absent "unusual

17   circumstances…'the party filing later in time should be enjoined from further

18   prosecution of his suit'" (internal citations omitted)).

19        The "first to file" rule applies when the later-filed lawsuit involves the same

20   parties and issues as the first-filed case.  *See In re Van Geuns*, 946 F.2d 845, 849

21   (Fed. Cir. 1991); *Katz*, 909 F.2d at 1463; *see also Bryant v. Oxxford Express, Inc.*,

22   181 F. Supp. 2d 1045, 1048 (C.D. Cal. 2000) (enjoining second action where parties

23   and issues were similar); *Am. Soc. for Testing & Materials v. Corrpro Cos., Inc.*,

24   254 F. Supp. 578, 580 (E.D. Pa. 2003) (court has power to enjoin second action

25   ———————————————

26   [15] In *Katz*, the Federal Circuit upheld the district court's decision to enjoin a plaintiff
already suing for infringement from initiating a second suit, which raised the same

27   infringement claims plus contract and fraud claims that could not be resolved by

28   disposition of first infringement litigation.  *Id.* at 1463.  By contrast, disposition of
the *Santa Ana* cases will certainly dispose of Qualcomm's *San Diego* claims.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

1351480

10

Broadcom's Motion to Vacate Stay to Enjoin A Duplicative,
Later-Filed Action

EXHIBIT  E-15

1  involving same parties and same issues); *IMS Health, Inc. v. Vality Tech. Inc.*, 59 F.

2  Supp. 2d 454, 473 (E.D. Pa. 1999) (same).  It also applies to bar later-filed claims

3  that *should have been raised* as compulsory counterclaims in the first-filed

4  litigation, even if they were not actually raised.  *See* 6 CHARLES ALAN WRIGHT &

5  ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1418 (2d ed. 2005)

6  (hereinafter "WRIGHT AND MILLER") (when "an action … involves a claim that

7  should be a compulsory counterclaim in another pending federal suit," the action

8  should be enjoined, dismissed, or stayed); *Sega*, 1997 WL 414196, at *1; *Colortyme*

9  *Fin. Servs., Inc. v. Kivalina Corp.*, 940 F. Supp. 269, 272 (D. Haw. 1996).  Any

10  other rule would gut the compulsory counterclaim provisions of Fed. R. Civ. P. 13.

11  *See* FED. R. CIV. P. 13(a) ("A pleading shall state as a counterclaim any claim which

12  at the time of serving the pleading the pleader has against any opposing party, if it

13  arises out of the transaction or occurrence that is the subject matter of the opposing

14  party's claim and does not require for its adjudication the presence of third parties of

15  whom the court cannot acquire jurisdiction.").  "Indeed by granting an injunction in

16  this context, the [first-filed] court furthers the general federal policy against

17  multiplicity of litigation embodied in Rule 13(a) itself." 6 WRIGHT AND MILLER

18  § 1418; *see also Adam v. Jacobs*, 950 F.2d 89, 93 (2d Cir. 1991) ("As the Supreme

19  Court has stated, Rule 13(a) 'was designed to prevent multiplicity of actions and to

20  achieve resolution in a single lawsuit of all disputes arising out of common

21  matters.'") (*citing S. Const. Co. v. Pickard*, 371 U.S. 57, 60 (1962)).

22                     2.     **Qualcomm Raised, or Was Required To Raise, Its *San Diego***
23                            **Claims in This Court and Before the ITC.**

24         Qualcomm's months-late lawsuit in San Diego involves the same parties as

25  this case, and asserts six federal claims that are either identical to those in this case

26  or were compulsory counterclaims here under Fed. R. Civ. P. 13(a).[16]  In addition,

27  _____

28  [16]   The San Diego Court would lack federal jurisdiction to hear the remaining state
    law claims absent these improperly pled federal court claims.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

EXHIBIT  E-16

1 Qualcomm's two *San Diego* state law causes of action merely present a forum-
2 selection argument that Qualcomm was obliged to raise in *this* Court if Qualcomm
3 thought it merited consideration.

4 　　We consider each of the *San Diego* causes of action in turn.

　　　　　　a.　　**First Cause of Action (Declaratory Relief—Non-**
　　　　　　　　　**infringement).**

7 　　As the following side-by-side comparison shows, Qualcomm's First Cause of
8 Action in the *San Diego* case is substantively identical to two of its counterclaims in
9 this case.

| San Diego | Santa Ana II |
|---|---|
| "Qualcomm has not infringed, contributorily infringed, or induced infringement of the asserted claims of the Subnetwork Patents." [The '379 and '872 Patents collectively] (Qualcomm Complaint at ¶ 17.) | "Qualcomm does not infringe, has not infringed, and does not and has not induced infringement or contributed to infringement of the '379 patent under any theory, including literal infringement or infringement under the doctrine of equivalents." (Qualcomm Answer/Counterclaims at ¶ 66.)[17] |

---

[17]　In Paragraph 67 of its Answer and Counterclaims, Qualcomm asserts that "No claim of the '379 patent can validly be construed to cover any product made, used, sold, offered for sale, or imported by Qualcomm." (Qualcomm Answer/Counterclaims at ¶ 67.)

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

1351480

Broadcom's Motion to Vacate Stay to Enjoin A Duplicative, Later-Filed Action

**EXHIBIT** _E·17_

| | "Qualcomm does not infringe, has not infringed, and does not and has not induced infringement or contributed to infringement of the '872 patent under any theory, including literal infringement or infringement under the doctrine of equivalents." (Qualcomm Answer/Counterclaims at ¶ 76.)[18] |
|---|---|
| "Qualcomm is entitled to a declaratory judgment that Qualcomm does not infringe the asserted claims of the Subnetwork Patents." (Qualcomm Complaint at ¶ 18) | "Qualcomm requests declaratory judgment that Qualcomm does not infringe, directly or indirectly, any claim of the '379 patent." (Qualcomm Answer/Counterclaims at ¶ 68.) |
| | "Qualcomm requests declaratory judgment that Qualcomm does not infringe, directly or indirectly, any claim of the '872 patent." (Qualcomm Answer/Counterclaims at ¶ 78.) |

### b.   Second Cause of Action (Declaratory Relief— Invalidity).

Qualcomm's claim for a declaratory judgment of invalidity in the *San Diego* case is likewise virtually identical to two of its counterclaims here.

---

[18]   In Paragraph 77 of its Answer and Counterclaims, Qualcomm asserts that "no claim of the '872 patent can validly be construed to cover any product made, used, sold, offered for sale, or imported by Qualcomm." (Qualcomm Answer/Counterclaims at ¶ 77.)

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

1351480

13

Broadcom's Motion to Vacate Stay to Enjoin A Duplicative,
Later-Filed Action

EXHIBIT  E-18

| San Diego | Santa Ana II |
|---|---|
| "Each of the asserted claims of the Subnetwork Patents is invalid for failure to comply with the conditions and requirements of patentability set forth in the patent statues, including 35 U.S.C. §§ 101, 102, 103 and/or 112." [The '379 and '872 Patents collectively] (Qualcomm Complaint at ¶ 20.) | "To the extent any claims of the '379 patent is found to be infringed by Qualcomm, that claim of the patent is invalid for failure to comply with one or more provisions of Title 35, United States Code, including but not limited to 35 U.S.C. §§ 101, 102, 103 and/or 112." (Qualcomm Answer/Counterclaims at ¶ 71.) |
| | "To the extent any claims of the '379 patent is found to be infringed by Qualcomm, that claim of the patent is invalid for failure to comply with one or more provisions of Title 35, United States Code, including but not limited to 35 U.S.C. §§ 101, 102, 103 and/or 112." (Qualcomm Answer/Counterclaims at ¶ 81.) |
| "Qualcomm is entitled to a declaratory judgment that each of the asserted claims in the Subnetwork Patents is invalid." (Qualcomm Complaint at ¶ 21.) | "Qualcomm requests declaratory judgment that to the extent any claims of the '379 patent is infringed by Qualcomm, those claims of the '379 patent are invalid." (Qualcomm Answer/Counterclaims at ¶ 72.) |

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

1351480

14

Broadcom's Motion to Vacate Stay to Enjoin A Duplicative,
Later-Filed Action

EXHIBIT __E-19__

| | |
|---|---|
| | "Qualcomm requests declaratory judgment that to the extent any claim of the '872 patent is infringed by Qualcomm, those claims of the '872 patent are invalid." (Qualcomm Answer/Counterclaims at ¶ 82.) |

### c. Third Cause of Action (Declaratory Relief— Inequitable Conduct).

Qualcomm's Third Cause of Action in the *San Diego* case pleads inequitable conduct, and is strikingly similar to its Eighth Affirmative Defense raised in the ITC. While Qualcomm did not plead this as a counterclaim here, it is a compulsory counterclaim in this case – about the identical patents – under Rule 13. *See* FED. R. CIV. P. 13(a); *see also Polymer Indus. Prods. Co. v. Bridgestone/Firestone, Inc.*, 347 F.3d 935, 938 (Fed. Cir. 2003) (under uniform national rule in patent cases, a claim for a declaration of noninfringement makes a counterclaim for patent infringement compulsory); *Hydranautics v. FilmTec Corp.*, 70 F.3d 533, 536 (9th Cir. 1995) ("answer must state as counterclaim a claim that 'arises out of the same transaction or occurrence'" (internal citations omitted)).

| San Diego | ITC |
|---|---|
| The '872 patent is unenforceable due to inequitable conduct of the applicants and patentees before the United States Patent and Trademark Office. (Qualcomm Complaint at ¶ 23.) | The '872 patent is unenforceable due to inequitable conduct of Complainant's patentees and applicants before the United States Patent and Trademark Office. The application which led to the |

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

1351480

EXHIBIT 6-20

| | |
|---|---|
| The application that led to the '872 patent was subject to a statutory double patenting rejection and a non-statutory double patenting rejection. The Applicants were obligated to disclose to the examiner not only the patent that triggered the double patenting rejection, U.S. Patent No. 6,006,100, but also the prior art to that patent, which led to multiple office action rejections. The applicants failed to comply with their obligations. (Qualcomm Complaint at ¶ 24.) | '872 patent was subject to a statutory double patenting rejection and a non-statutory double patenting rejection. That Applicant was obligated, but failed, to disclose to the examiner not only the patent it was aware of and which triggered the double patenting rejection, U.S. Patent No. 6,006,100, but also the prior art to that patent which led to multiple office action rejections. (ITC Response, ¶ 137.) |
| Qualcomm is entitled to declaratory judgment that all the claims of the '872 patent are invalid, void and unenforceable. (Qualcomm Complaint at ¶ 25.) | |

> ### d. Fourth Cause of Action (Declaratory Relief—Implied License by Legal Estoppel).

Qualcomm's Fourth Cause of Action in the *San Diego* case alleges that it is entitled to declaratory relief "that it has an implied license by legal estoppel to use, or promote the use of, or contribute to the system(s) or method(s) allegedly described in the Subnetwork Patents."[19]  (Qualcomm Complaint at ¶ 31.)

---

[19] Qualcomm's Sixth Affirmative Defense in *Santa Ana II* also alleges "Qualcomm has an implied license to use the technology claimed in one or more of the patents in issue." (Qualcomm Answer/Counterclaims at ¶ 35.)

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

1351480

16

Broadcom's Motion to Vacate Stay to Enjoin A Duplicative, Later-Filed Action

EXHIBIT _E-21_

1   Qualcomm's claim is based, in part, on allegations that "Broadcom, with full

2   knowledge, granted Qualcomm the right to use, or promote the use of, the system(s)

3   or method(s) allegedly claimed in the Subnetwork Patents" and that "Broadcom is

4   trying to negate Qualcomm's rights by use of later-acquired patents." (Qualcomm

5   Complaint at ¶¶ 28, 30.)  This claim plainly arises out of the same transaction or

6   occurrence as Broadcom's claims that Qualcomm infringes those same patents.

7   *See id.*  Indeed, under Fed. R. Civ. P. 8(c), "license" is an affirmative defense that

8   must be pled by the defendants.

9            e.      **Fifth Cause of Action (Declaratory Relief—Implied**
10                   **License by Equitable Estoppel).**

11          Qualcomm's Fifth Cause of Action in the *San Diego* case requests a

12   declaratory judgment that "it has an implied license by equitable estoppel to use, or

13   promote the use of, or contribute to the system(s) or method(s) allegedly described

14   in the Subnetwork Patents." (Qualcomm Complaint at ¶ 34.)  This claim likewise

15   arises out of the same transaction or occurrence as Broadcom's claims that

16   Qualcomm infringes the Wireless Subnetwork Patents, and is therefore a

17   compulsory counterclaim.  *See id.*

18            f.      **Sixth Cause of Action (License).**

19          As the side-by-side comparison below shows, Qualcomm's Sixth Cause of

20   Action (License) in the *San Diego* case is substantively identical to its Sixth

21   Affirmative Defense here.  As a matter of law, *see* Fed. R. Civ. P. 8(c) & 13(a), and

22   logic, a claim for a declaratory judgment that a party has a license to practice a

23   patent arises out of the same transaction or occurrence as the infringement claim that

24   gives rise to the defense, and is, therefore, a compulsory counterclaim.  *See id.*

25

26

27

28

Broadcom's Motion to Vacate Stay to Enjoin A Duplicative,
Later-Filed Action

EXHIBIT   B-22

| San Diego | Santa Ana |
|---|---|
| "Qualcomm and Broadcom are members of the Bluetooth Special Interest Group (SIG) trade association.  The membership rules of the Bluetooth SIG require that members, including Broadcom, must allow other members to practice Bluetooth technology royalty-free." (Qualcomm Complaint at ¶ 36.) | "Qualcomm, Broadcom, Samsung, Motorola and LG Electronics are members of the Bluetooth Special Interest Group (SIG) trade association.  The membership rules of the Bluetooth SIG require that members, such as Broadcom, must allow other members to practice Bluetooth technology royalty-free.  Without admitting that Qualcomm or its products practice what is claimed in the '379 and/or '872 patent, to the extent that practice of Bluetooth technology would require practice of such patents, that practice is licensed, royalty-free, according to the terms of the Bluetooth SIG distributors, and customers have an express license to practice those patents." (Qualcomm Counterclaims at ¶ 37.) |
| "Without admitting that Qualcomm or its products practice what is claimed in the Subnetwork Patents, to the extent that practice of Bluetooth technology would require practice of such patents, that practice is licensed, royalty free, according to the terms of the Bluetooth SIG." (Qualcomm Complaint at ¶ 37.) | |
| "Qualcomm is entitled to declaratory judgment that it has a license to use, or promote the use of, or contribute to the system(s) or method(s) allegedly described in the Subnetwork Patents, to the extent those patents describe the practice of Bluetooth technology." (Qualcomm Complaint at ¶ 38.) | |

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

1351480

EXHIBIT  E-23

g.      **Qualcomm's State Law Claims (Breach of Contract and Permanent Injunction).**

Qualcomm's two state law claims are grounded in its (long-delayed) contention that a forum selection clause in an old contract is controlling here. Specifically, Qualcomm's Seventh Cause of Action alleges that Broadcom breached the agreement by filing complaints in the ITC and in this Court, and its Eighth Cause of Action seeks to permanently enjoin Broadcom from participating in the ITC Investigation. But as explained immediately below, if Qualcomm believed that Broadcom had sued it in the wrong forum over the Wireless Subnetwork Patents, it was obliged to raise this "forum" issue with the court hearing the *first-filed* case — that is, *this Court. See infra* at p. 20 (discussing *E.&J. Gallo Winery v. Andina Licores*, No. CVF05-0101 AWILJO, 2005 WL 1554001, at *9 (E.D. Cal. June 24, 2005); *Sega*, 1997 WL 414196, at *1). Since the issue at the heart of Qualcomm's state law claims was required to be raised in this lawsuit, the "same issues" standard is satisfied for these claims as well.

B.      **The Asserted Presence Of A Forum Selection Clause Changes Nothing.**

1.      **Qualcomm Was Required to Raise Its Forum Selection Clause Argument With *This* Court.**

Qualcomm's newly-minted contention that Broadcom's Santa Ana and ITC claims are "inextricably intertwined" with a certain agreement — and therefore are subject to the agreement's forum selection clause — changes nothing. It is well settled that the court *in which the first action is filed* should decide the effect, if any, of the forum selection clause and transfer the case if necessary. The defendant may not race to have a second court decide where the first case should have been brought, even if it contends that the second court is the one in which the substantive litigation should be brought. Rather, "[t]he remedy for a party who is called to defend a complaint in a forum other than the one designated by the forum selection

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

1351480

19

Broadcom's Motion to Vacate Stay to Enjoin A Duplicative,
Later-Filed Action

EXHIBIT _E ₁24_

1  clause is by petition to the court where the action was brought for change of venue."

2  *E.&J. Gallo Winery*, 2005 WL 1554001, at *9.

3      *Sega*, 1997 WL 414196, at *1, is likewise directly on point.  There, a

4  licensing agreement stated that "[a]ny action or proceeding brought to enforce the

5  terms of [that] Agreement shall be brought in … the Northern District of California

6  (if under Federal law)."  *Id.*  Signal nevertheless sued Sega for breach of the

7  agreement in Tennessee.  Sega then sued Signal for breach in California.  Signal

8  moved the Northern District of California to dismiss the case under the "first to file"

9  rule, and the court granted the motion, *notwithstanding that it was the court named*

10 *in the forum selection clause.*  As the Northern District explained, "[t]he first filed

11 rule demands that the Tennessee court, not this one, decide whether the forum

12 selection of the Licensing Agreement requires transfer or dismissal" of the first-filed

13 action.  *Id.*

14      **2.     Qualcomm Has Waived Any Right to Rely on the Forum**
                 **Selection Clause.**
15

16      Even in the *proper* court – this one – the time for Qualcomm to raise

17 improper venue resulting from a forum selection clause has long since passed.

18 Under settled case law, a claim that a lawsuit has been filed in violation of a forum

19 selection clause ought to be raised by a motion to dismiss under Rule 12(b)(3).  *See*

20 *R.A. Argueta v. Banco Mexicano, S.A.*, 87 F.3d 320, 324 (9th Cir. 1996) (motion to

21 dismiss premised on enforcement of forum selection clause should be treated as a

22 12(b)(3) motion to dismiss for improper venue).  Critically, "venue…may be

23 waived.  A defendant … waives venue by failing seasonably to assert it…."

24 *Hoffman v. Blaski*, 363 U.S. 335, 343 (1960); *see Am. Home Assurance Co. v. TGL*

25 *Container Lines, Ltd.*, 347 F. Supp. 2d 749, 765 (N.D. Cal. 2004) (defendant waived

26 defense of improper venue based on forum selection clause by failing to assert

27 defense in first responsive pleading); *Daewoo Motor Am., Inc. v. Dongbu Fire Ins.*

28 *Co., Ltd.*, 289 F. Supp. 2d 1127, 1131-32 (C.D. Cal. 2001) (same).  Here, instead of

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

1351480

20

Broadcom's Motion to Vacate Stay to Enjoin A Duplicative,
Later-Filed Action

EXHIBIT  6-25

1  filing a 12(b)(3) motion based on the supposedly applicable forum selection clause,

2  Qualcomm answered and counterclaimed.[20]

3         Such actions give rise to the principles of waiver and estoppel:

4             "[i]f the defendant … by words or actions misleads the

5             plaintiff into thinking [that he is content with the venue] or

6             the court into becoming involved in the case so that there

7             would be wasted judicial effort were the case to be

8             dismissed to another forum, or if he stalls in pleading

9             improper venue because he wants to find out which way

10            the wind is blowing, then conventional principles of

11            waiver or equitable estoppel come into play and if invoked

12            by the plaintiff block the challenge to venue."

13  *See Am. Patriot Ins. Agency v. Mutual Risk Mgmt., Ltd.*, 364 F.3d 884, 887 (7th Cir.

14  2004) (citations omitted).  Simply put, a party cannot, as Qualcomm did here, "sit on

15  its forum selection rights, allowing a court to invest its resources in the resolution of

16  the action, until such time as things go unfavorably.  To allow late invocation of a

17  forum selection clause would be to countenance forum shopping at its most

18  wasteful."  *E.&J. Gallo Winery v. Encana Energy Serv., Inc.*, 2005 WL 1657063, at

19  *11 (E.D. Cal. July 6, 2005).

20         **C.   The Equities Strongly Favor An Injunction.**

21         The "first to file" rule applies absent exceptional circumstances.  *See Elec.*

22  *For Imaging, Inc. v. Coyle*, 394 F.3d 1341, 1346 (Fed. Cir. 2005) (internal citations

23  omitted).  The first-filed action should control "unless considerations of judicial and

24  litigant economy, and the just and effective disposition of disputes, require

25  otherwise."  *Id.*

26         No such extraordinary circumstances are present here; to the contrary, the

27  circumstances of this case strongly favor an injunction.  *First,* Qualcomm delayed

28  [20] *See* Vento Decl., Ex. 5.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

1351480

21

Broadcom's Motion to Vacate Stay to Enjoin A Duplicative.
Later-Filed Action

EXHIBIT  E-26

1   raising its forum selection clause until after it (1) answered and counterclaimed in
2   this Court; (2) filed an answer in the ITC investigation; (3) moved to stay both cases
3   pending in this Court; and (4) engaged in months' worth of significant and expensive
4   discovery in the ITC.

5       *Second*, Qualcomm *specifically represented to this Court* that the ITC
6   proceeding – which it now claims may not lawfully be continue – was the proper
7   forum for litigating the Wireless Subnetwork Patents.  For example, Qualcomm
8   assured this Court that "*the ITC investigation will be completed, and the benefits of*
9   *that case available for use here, in a very short while.*"[21]  We await with interest
10  Qualcomm's explanation of that statement.

11      *Third*, during the months that Qualcomm has delayed in raising its "forum"
12  issue, the parties have been intensively litigating the ITC proceeding that Qualcomm
13  seeks (in the *San Diego* action) to halt.  Because ITC proceedings move with such
14  extraordinary speed, the months that Qualcomm has sat on this issue are of critical
15  importance and amount to almost half the five-month fact discovery period.  The
16  following timeline graphically illustrates the point:

17
18
19
20
21
22
23
24
25
26
27

28  [21]   *See* Vento Decl., Ex. 1 at 15.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

1351480

Broadcom's Motion to Vacate Stay to Enjoin A Duplicative,
Later-Filed Action

EXHIBIT _E-27_



**Blue line: ITC**
**Green line: Central District**

earlier and before the parties were in the thick of discovery. Under the first-to-file rule, as well as principles of judicial and litigant economy this Court should reject such obvious and belated forum shopping. Instead, this Court should vacate the stay for the purpose of enjoining the later-filed, duplicative San Diego Case from proceeding.

Dated: September 8, 2005

Respectfully submitted,

IRELL & MANELLA LLP

By: _Michael G. Erme_
Michael G. Ermer
Attorneys for Plaintiff and
Counter-Defendant
BROADCOM CORPORATION

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

1351480

23

Broadcom's Motion to Vacate Stay to Enjoin A Duplicative,
Later-Filed Action

EXHIBIT E-28

1

## PROOF OF SERVICE

2   I am employed in the County of Orange, State of California.  I am over the
age of 18 and not a party to the within action.  My business address is 840 Newport
3   Center Drive, Suite 400, Newport Beach, California 92660-6324.

4   On September 8, 2005, I served the foregoing document described as
**BROADCOM CORPORATION'S MEMORANDUM IN SUPPORT OF ITS
5   MOTION TO VACATE STAY TO ENJOIN A DUPLICATIVE, LATER-
FILED ACTION (CASE NO. 05 CV 1662 B (JMA) IN THE SOUTHERN
6   DISTRICT OF CALIFORNIA)** on each interested party, as stated on the attached
service list.

7

8   [X]   (BY OVERNIGHT DELIVERY SERVICE)  I served the foregoing
document by FedEx/Overnite Express, an express service carrier
9   which provides overnight delivery, as follows.  I placed a true copy
of the foregoing document in sealed envelopes or packages
10   designated by the express service carrier, addressed, as stated on the
attached service list, with fees for overnight delivery paid or
11   provided for.

12   [X]   (BOX DEPOSIT)  I deposited such envelopes or
packages in a box or other facility regularly maintained
13   by the express service carrier.

14   [ ]   (CARRIER PICK-UP)  I delivered such envelopes or
packages to an authorized carrier or driver authorized
15   by the express service carrier to receive documents.

16   [X]   (BY FAX)  I caused the foregoing document to be served by
facsimile transmission from sending facsimile machine telephone
17   number (949) 760-5200 to each interested party at the facsimile
machine telephone number shown on the attached service list.  Each
18   transmission was reported as complete without error.  A transmission
report was properly issued by the sending facsimile machine for each
19   interested party served.

20   Executed on September 8, 2005, at Newport Beach, California.

21   I declare under penalty of perjury under the laws of the State of California
that the foregoing is true and correct.

22

23   _____
Sheryl L. Knight
24   (Type or print name)

25

26

27

28

1351480

EXHIBIT   B-29

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

William K. West, Jr., Esq.                    Counsel For Defendant Qualcomm
Cecilia H. Gonzalez, Esq.
Bert C. Reiser, Esq.
Howrey LLP
1299 Pennsylvania Avenue, N.W.
Washington, DC 20004
Phone:    (202) 783-0800
Fax:      (202) 383-6610

Peter J. Chassman, Esq.                       Counsel For Defendant Qualcomm
Howrey LLP
750 Bering Drive
Houston, TX 77057-2198
Phone:    (713) 787-1400
Fax:      (713) 787-1440

Christopher L. Kelley, Esq.                   Counsel For Defendant Qualcomm
Howrey LLP
301 Ravenswood Avenue
Menlo Park, CA 94025
Phone:    (650) 463-8100
Fax:      (650) 463-8400

Gregory S. Cordrey, Esq.                      Counsel For Defendant Qualcomm
Elizabeth Hoult Fontaine
Howrey LLP
2020 Main Street
Irvine, CA 92614
Phone:    (949) 759-3934
Fax:      (949) 721-6910

1351480

EXHIBIT  E-30

09/08/2005 17:14 FAX 949 760 5200          IRELL & MANELLA LLP                                    ☒001

```
                    ********************************
                    ***    MULTI TX/RX REPORT    ***
                    ********************************

TX/RX NO             3390
PGS.                 31
TX/RX INCOMPLETE     -----
TRANSACTION OK       (1)   2#402#12023836610
                     (2)   2#402#17137871440
                     (3)   2#402#16504638400
                     (4)   2#402#7216910

ERROR INFORMATION    -----
```

## IRELL & MANELLA LLP
840 Newport Center Drive, Suite 400
Newport Beach, CA 92660-6324
Facsimile No.: (949) 760-5200
Telephone No.: (949) 760-0991

This communication may contain confidential or privileged information and may constitute inside information. It is intended only for the addressee. Any distribution, reading, copying, or use of this communication by anyone other than the addressee is strictly prohibited and may be unlawful. If you received this in error, please notify us immediately by telephone, and return the original communication to us at the above address by mail. You will be reimbursed for your reasonable expenses. Thank you.

**Multiple Facsimile Cover Sheet**                                     **VIA FACSIMILE**

**Date:**   September 8, 2005

**From:**   Michael G. Ermer

**No. of Pages:**   31
**(including cover page)**

**To the Following:**

| Name: | Company Name: | Facsimile No.: | Office/Home No.: |
|---|---|---|---|
| William K. West, Jr. | | (202) 383-6610 | |
| Cecilia H. Gonzalez | | | |
| Peter J. Chassman | | (713) 787-1440 | |
| Christopher L. Kelley | | (650) 463-8400 | |
| Gregory S. Cordrey | | (949) 721-6910 | |
| Elizabeth Hoult Fontaine | | | |

EXHIBIT __6-31__

COPY

1

IRELL & MANELLA LLP
2  Layn R. Phillips (103857) (lphillips@irell.com)
Michael G. Ermer (110496) (mermer@irell.com)
3  Andra Barmash Greene (123931) (agreene@irell.com)
Richard de Bodo (128199) (rdebodo@irell.com)
4  840 Newport Center Drive, Suite 400
Newport Beach, CA 92660-6324
5  Telephone:  (949) 760-0991

6  WILMER CUTLER PICKERING HALE AND DORR LLP
William F. Lee (william.lee@wilmerhale.com)
7  Mark Selwyn (mark.selwyn@wilmerhale.com)
Richard W. O'Neill (richard.o'neill@wilmerhale.com)
8  60 State Street
Boston, MA 02109
9  Telephone:  (617) 526-6000
Facsimile:  (617) 526-5000
10

WILMER CUTLER PICKERING HALE AND DORR LLP
11  James L. Quarles III (james.quarles@wilmerhale.com)
Thomas P. Olson (thomas.olson@wilmerhale.com)
12  Maria K. Vento (maria.vento@wilmerhale.com)
1455 Pennsylvania Avenue, N.W.
13  Washington, D.C. 20004
Telephone:  (202) 942-8400
14  Facsimile:  (202) 942-8484

15  Attorneys for Plaintiff and Counter-Defendant
Broadcom Corporation
16

17                    UNITED STATES DISTRICT COURT

18                    CENTRAL DISTRICT OF CALIFORNIA

19                              SOUTHERN DIVISION

20  BROADCOM CORPORATION,            )  Case No. SACV05-468-JVS (RNBx)
                                     )
21              Plaintiff,           )  **NOTICE OF ERRATA**
                                     )  **CONCERNING BROADCOM**
22        vs.                        )  **CORPORATION'S**
                                     )  **MEMORANDUM IN SUPPORT OF**
23  QUALCOMM INCORPORATED,           )  **ITS MOTION TO VACATE STAY**
                                     )  **TO ENJOIN A DUPLICATIVE,**
24              Defendant.           )  **LATER-FILED ACTION (CASE**
                                     )  **NO. 05 CV 1662 B (JMA) IN THE**
25                                   )  **SOUTHERN DISTRICT OF**
                                     )  **CALIFORNIA)**
26 _____ )
                                     )
27  AND RELATED CROSS-ACTION         )  Hon. James V. Selna
                                     )
28

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

1380571

Notice Of *Errata* Concerning Broadcom Corporation's
Memorandum In Support of Its Motion To Vacate Stay to
Enjoin A Duplicative, Later-Filed Action (Case No. 05 CV
1662 B (JMA) in the Southern District of California

EXHIBIT   E-1

1   PLEASE TAKE NOTICE that the Broadcom Corporation's Memorandum In

2   Support Of Its Motion To Vacate Stay To Enjoin A Duplicative, Later-filed Action

3   (Case No. 05 CV 1662 B (JMA) In The Southern District Of California)

4   ("Broadcom's brief"), filed on September 8, 2005, contains the following error:

5   The graphical timeline at page 23 of Broadcom's brief inadvertently obscured

6   the first fourteen lines of text from that page in the brief.  The inadvertently

7   obscured text should read as follows:

8   ***

9   *As the timeline makes clear, much has occurred during the intervening*

10  *months.  Motions have been filed and decided and discovery has proceeded at a*

11  *rapid pace.  Broadcom – and no doubt Qualcomm – has invested thousands of hours*

12  *and hundreds of thousands of dollars in the ITC investigation.  Similarly, this Court*

13  *– as well as the ITC's Investigative Staff – have invested significant time in these*

14  *cases.  All the while, Qualcomm sat silently, saying nothing about the forum*

15  *selection clause it now says strips any other forum of the ability to address the*

16  *Wireless Subnetwork Patents.  Judicial and litigant economy – as well as principles*

17  *of waiver and estoppel – dictate that such improper conduct not be rewarded.*

18  *IV.*   *CONCLUSION*

19  *Qualcomm's Complaint in the San Diego Case is, at its core, a thinly veiled*

20  *attempt to contravene the efficient and orderly administration of litigation.  Such*

21  *gamesmanship should not be rewarded – particularly when Qualcomm could have*

22  *raised its arguments about the putative forum selection clause in* this *Court much*

23  ***

24  The graphical timeline has been reformatted so that it no longer obscures the

25  underlying text.  This formatting change affects the pagination of the Broadcom' s

26  brief so that the brief is now 24 pages long.  Broadcom Corporation respectfully

27

28

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

1380571

-1-

Notice Of *Errata* Concerning Broadcom Corporation's
Memorandum in Support of Its Motion To Vacate Stay to
Enjoin A Duplicative, Later-Filed Action (Case No. 05 CV
1662 B (JMA) in the Southern District of California

EXHIBIT  F-2

1  requests that this Court substitute pages 23-24 (attached as Exhibit A hereto) for the

2  page originally included as page 23 in Broadcom's brief.

3  Dated:  September 19, 2005                    Respectfully submitted

4                                                                 IRELL & MANELLA LLP

5

6

7                                              By: _Michael G. Ermer_____

8                                                   Michael G. Ermer
                                                    Attorneys for Plaintiff and
9                                                   Counter-Defendant
                                                    Broadcom Corporation

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28                                                      EXHIBIT _F-3___

& MANELLA LLP
stered Limited Liability
Partnership Including
ssional Corporations

1380571                                    -2-

Notice Of *Errata* Concerning Broadcom Corporation's
Memorandum in Support of Its Motion To Vacate Stay to
Enjoin A Duplicative, Later-Filed Action (Case No. 05 CV
1662 B (JMA) in the Southern District of California



As the timeline makes clear, much has occurred during the intervening months. Motions have been filed and decided and discovery has proceeded at a rapid pace. Broadcom – and no doubt Qualcomm – has invested thousands of hours and hundreds of thousands of dollars in the ITC investigation. Similarly, this Court – as well as the ITC's Investigative Staff – have invested significant time in these cases. All the while, Qualcomm sat silently, saying nothing about the forum selection clause it now says strips any other forum of the ability to address the Wireless Subnetwork Patents. Judicial and litigant economy – as well as principles of waiver and estoppel – dictate that such improper conduct not be rewarded.

## IV.   CONCLUSION

Qualcomm's Complaint in the San Diego Case is, at its core, a thinly veiled attempt to contravene the efficient and orderly administration of litigation. Such gamesmanship should not be rewarded – particularly when Qualcomm could have raised its arguments about the putative forum selection clause in *this* Court much earlier and before the parties were in the thick of discovery. Under the first-to-file rule, as well as principles of judicial and litigant economy this Court should reject such obvious and belated forum shopping. Instead, this Court should vacate the stay

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

Broadcom's Motion to Vacate Stay to Enjoin A Duplicative,
Later-Filed Action

23

EXHIBIT  F 4

1    for the purpose of enjoining the later-filed, duplicative San Diego Case from

2    proceeding.

3    Dated: September 8, 2005          Respectfully submitted,

4                                 IRELL & MANELLA LLP

6

7                           By: _____

8                                Michael G. Ermer
                                 Attorneys for Plaintiff and

9                                  Counter-Defendant
                                 BROADCOM CORPORATION

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28                                                  EXHIBIT ___F-5___

ELL & MANELLA LLP
Registered Limited Liability
Law Partnership Including
Professional Corporations

1351480

## PROOF OF SERVICE

I am employed in the County of Orange, State of California. I am over the age of 18 and not a party to the within action. My business address is 840 Newport Center Drive, Suite 400, Newport Beach, California 92660-6324.

On September 19, 2005, I served the foregoing document described as **NOTICE OF ERRATA CONCERNING BROADCOM CORPORATION'S MEMORANDUM IN SUPPORT OF ITS MOTION TO VACATE STAY TO ENJOIN A DUPLICATIVE, LATER-FILED ACTION (CASE NO. 05 CV 1662 B (JMA) IN THE SOUTHERN DISTRICT OF CALIFORNIA)** on each interested party, as stated on the attached service list.

[X]     (BY OVERNIGHT DELIVERY SERVICE) I served the foregoing document by FedEx/Overnite Express, an express service carrier which provides overnight delivery, as follows. I placed a true copy of the foregoing document in sealed envelopes or packages designated by the express service carrier, addressed, as stated on the attached service list, with fees for overnight delivery paid or provided for.

         [X]     (BOX DEPOSIT) I deposited such envelopes or packages in a box or other facility regularly maintained by the express service carrier.

         [ ]     (CARRIER PICK-UP) I delivered such envelopes or packages to an authorized carrier or driver authorized by the express service carrier to receive documents.

[X]     (BY FAX) I caused the foregoing document to be served by facsimile transmission from sending facsimile machine telephone number (949) 760-5200 to each interested party at the facsimile machine telephone number shown on the attached service list. Each transmission was reported as complete without error. A transmission report was properly issued by the sending facsimile machine for each interested party served.

Executed on September 19, 2005, at Newport Beach, California.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Sheryl L. Knight
(Type or print name)

_(Signature)_

EXHIBIT _F-6_

1380571

1   William K. West, Jr., Esq.                        Counsel For Defendant Qualcomm
2   Cecilia H. Gonzalez, Esq.
    Bert C. Reiser, Esq.
3   Howrey LLP
    1299 Pennsylvania Avenue, N.W.
4   Washington, DC 20004
    Phone:    (202) 783-0800
5   Fax:      (202) 383-6610

6   Peter J. Chassman, Esq.                           Counsel For Defendant Qualcomm
    Howrey LLP
7   750 Bering Drive
    Houston, TX 77057-2198
8   Phone:    (713) 787-1400
    Fax:      (713) 787-1440

9   Christopher L. Kelley, Esq.                       Counsel For Defendant Qualcomm
    Howrey LLP
10  301 Ravenswood Avenue
    Menlo Park, CA 94025
11  Phone:    (650) 463-8100
    Fax:      (650) 463-8400

12  Gregory S. Cordrey, Esq.                          Counsel For Defendant Qualcomm
    Elizabeth Hoult Fontaine
13  Howrey LLP
14  2020 Main Street
    Irvine, CA 92614
15  Phone:    (949) 759-3934
    Fax:      (949) 721-6910

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT _E-7_

Notice Of *Errata* Concerning Broadcom Corporation's
Memorandum in Support of Its Motion To Vacate Stay to
Enjoin A Duplicative, Later-Filed Action (Case No. 05 CV
1662 B (JMA) in the Southern District of California

1380571

COPY

1

IRELL & MANELLA LLP
2   Layn R. Phillips (103857) (lphillips@irell.com)
Michael G. Ermer (110496) (mermer@irell.com)
3   Andra Barmash Greene (123931) (agreene@irell.com)
Richard de Bodo (128199) (rdebodo@irell.com)
4   840 Newport Center Drive, Suite 400
Newport Beach, CA 92660-6324
5   Telephone:  (949) 760-0991

6   WILMER CUTLER PICKERING HALE AND DORR LLP
William F. Lee (william.lee@wilmerhale.com)
7   Mark Selwyn (mark.selwyn@wilmerhale.com)
Richard W. O'Neill (richard.o'neill@wilmerhale.com)
8   60 State Street
Boston, MA 02109
9   Telephone:  (617) 526-6000
Facsimile:   (617) 526-5000

10

WILMER CUTLER PICKERING HALE AND DORR LLP
11   James L. Quarles III (james.quarles@wilmerhale.com)
Thomas P. Olson (thomas.olson@wilmerhale.com)
12   Maria K. Vento (maria.vento@wilmerhale.com)
1455 Pennsylvania Avenue N.W.
13   Washington, D.C. 20004
Telephone:  (202) 942-8400
14   Facsimile:   (202) 942-8484

15   Attorneys for Plaintiff and Counter-Defendant
BROADCOM CORPORATION
16

17             UNITED STATES DISTRICT COURT

18             CENTRAL DISTRICT OF CALIFORNIA

19                  SOUTHERN DIVISION

20   BROADCOM CORPORATION,          )   Case No. SACV05-468-JVS (RNBx)
                                    )
21            Plaintiff,            )   DECLARATION OF MARIA K.
                                    )   VENTO IN SUPPORT OF
22       vs.                        )   BROADCOM'S MOTION TO
                                    )   VACATE STAY TO ENJOIN A
23   QUALCOMM INCORPORATED,         )   DUPLICATIVE, LATER FILED
                                    )   ACTION (CASE NO. 05 CV 1662 B
24            Defendant.            )   (JMA) IN THE SOUTHERN
                                    )   DISTRICT OF CALIFORNIA)
25   _____ )
                                    )   [Ex Parte Application For Expedited
26   AND RELATED CROSS-ACTION.      )   Hearing Filed Concurrently]
                                    )
27                                  )   Hon. James V. Selna
                                    )   Date:      September 26, 2005
28                                  )   Time:      1:30 p.m.
                                    )   Courtroom: 10C

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

1351296

Declaration Of Maria K. Vento In Support Of Broadcom's
Motion To Vacate Stay To Enjoin Duplicative Action

EXHIBIT 61

## DECLARATION OF MARIA K. VENTO

I, Maria K Vento, declare as follows:

1.      I am an associate at the law firm of Wilmer Cutler Pickering Hale and Dorr LLP, co-counsel for Plaintiff and Counter-Defendant Broadcom Corporation ("Broadcom") in the above-entitled action. I am licensed to practice law in the Commonwealths of Virginia and Massachusetts and the District of Columbia, and am admitted *pro hac vice* before this Court in this matter. I am familiar with the facts set forth herein, and if called as a witness, I could and would testify competently to those facts under oath.

2.      Attached hereto as Exhibit 1 is a true and correct copy of Qualcomm Incorporated's Memorandum in Support of Qualcomm's Motion to Consolidate Case Nos. 467 and 468 and to Stay Case No. 467 (Broadcom Corporation v. Qualcomm Incorporated, Case. No. SACV05-467-JVS (MLGx)).

3.      Attached hereto as Exhibit 2 is a true and correct copy of Broadcom Corporation's Memorandum Of Points and Authorities In Support Of Motion To Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6), Or, In the Alternative, To Stay Pending Resolution of a Prior Pending Case (Qualcomm Incorporated v. Broadcom Corporation, Case No. 05 CV 1662 B (JMA) (S.D. Cal. filed August 22, 2005)).

4.      Attached hereto as Exhibit 3 is a true and correct copy of the Answer and Counterclaims of Defendant Qualcomm Incorporated and Demand for Jury Trial filed in Broadcom Corporation v. Qualcomm Incorporated, Case. No. SACV05-467-JVS (MLGx).

5.      Attached hereto as Exhibit 4 is a true and correct copy of the Answer and Counterclaims of Defendant Qualcomm Incorporated and Demand for Jury Trial filed in Broadcom Corporation v. Qualcomm Incorporated, Case. No. SACV05-468-JVS (MLGx).

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

1351296

Declaration Of Maria K. Vento In Support Of Broadcom's
Motion To Vacate Stay To Enjoin Duplicative Action

-1-

EXHIBIT  6-2

1      6.      Attached hereto as Exhibit 5 is a true and correct copy of the Public

2   Version of the Response of Respondent Qualcomm Incorporated To The Complaint

3   and Notice of Investigation in the United States International Trade Commission

4   Investigation No. 337-TA-543.

5      7.      Attached hereto as Exhibit 6 is a true and correct copy of the Reply

6   Memorandum in Support of Qualcomm's Motion to Consolidate Case Nos. 467 and

7   468 and to Stay Case No. 467 (Broadcom Corporation v. Qualcomm Incorporated,

8   Case. No. SACV05-467-JVS (MLGx)).

9      8.      Attached hereto as Exhibit 7 is a true and correct copy of Qualcomm's

10  Complaint for Declaratory Relief and Breach of Contract (Demand for Jury Trial)

11  filed in Qualcomm Incorporated v. Broadcom Corporation, Case No. 05 CV 1662 B

12  (JMA) (S.D. Cal. filed August 22, 2005).

13     9.      Attached hereto as Exhibit 8 is a true and correct copy of Qualcomm

14  Incorporated's Application for Preliminary Injunction to Enforce Forum Selection

15  Agreement filed on August 22, 2005 (Qualcomm Incorporated v. Broadcom

16  Corporation, Case No. 05 CV 1662 B (JMA) (S.D. Cal. filed August 22, 2005)).

17     I declare under penalty of perjury under the laws of the United States of

18  America that the foregoing is true and correct.

19     Executed this 8th day of September, 2005, at Palo Alto, California.

20

21                                                    Maria K. Vento

22

23

24

25

26

27

28

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

1351296                                    -2-

Declaration Of Maria K. Vento In Support Of Broadcom's
Motion To Vacate Stay To Enjoin Duplicative Action

EXHIBIT 6-3

1   William K. West, Jr. (*Pro Hac Vice*)
    Cecilia H. Gonzalez (*Pro Hac Vice*)
2   Bert C. Reiser (*Pro Hac Vice*)
    HOWREY LLP
3   1299 Pennsylvania Avenue, N.W.
    Washington, DC  20004
4   Telephone:  (202) 783-0800
    Facsimile: (202) 383-6610
5   Email: westw@howrey.com
    Email: gonzalezc@howrey.com
6   Email: reiserb@howrey.com

7   Peter J. Chassman (*Pro Hac Vice*)
    HOWREY LLP
8   750 Bering Drive
    Houston, TX  77057-2198
9   Telephone:  (713) 787-1400
    Facsimile: (713) 787-1440
10  Email: chassmanp@howrey.com

11  Christopher L. Kelley (SBN 166608)
    HOWREY LLP
12  301 Ravenswood Avenue
    Menlo Park, California  94025
13  Telephone:  (650) 463-8100
    Facsimile: (650) 463-8400
14  Email: kellyc@howrey.com

15  Gregory S. Cordrey (SBN 190144)
    Elizabeth Hoult Fontaine (SBN 207557)
16  HOWREY LLP
    2020 Main Street
17  Irvine, California  92614
    Telephone: (949) 721-6900
18  Facsimile: (949) 721-6910
    Email: cordreyg@howrey.com
19  Email: fontainee@howrey.com

20  Attorneys for Defendant and Counterclaimant
    QUALCOMM INCORPORATED

21                UNITED STATES DISTRICT COURT

22                CENTRAL DISTRICT OF CALIFORNIA

23                     SOUTHERN DIVISION

24  BROADCOM CORPORATION,            )   Case No. SACV05-467-JVS (RNBx)
                                     )   Case No. SACV05-468-JVS (MLGx)
25             Plaintiff,            )
                                     )   **MEMORANDUM IN SUPPORT OF**
26      vs.                          )   **QUALCOMM'S MOTION TO**
                                     )   **CONSOLIDATE CASE NOS. 467 AND**
27  QUALCOMM INCORPORATED,           )   **468 AND TO STAY CASE NO. 467**
                                     )
28             Defendant.            )

HOWREY LLP

DM_US\226665.v2

**EXHIBIT** ___1___

– 3 –

EXHIBIT _6-4_

| | | |
|---|---|---|
| 1 | QUALCOMM INCORPORATED, | ) Date:        August 8, 2005 |
| 2 | Counterclaimant, | ) Time:        1:30 p.m. |
| | | ) Courtroom:  10C |
| 3 | vs. | ) Hon. James V. Selna |
| 4 | BROADCOM CORPORATION, | ) |
| 5 | Counterdefendant. | ) |
| 6 | | ) |
| 7 | | |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

HOWREY LLP

DM US\8226665.v2

-4-

EXHIBIT 6-5



1

## TABLE OF CONTENTS

2

Page

3  I.   INTRODUCTION ................................................................... 1

4  II.  FACTUAL BACKGROUND .................................................... 2

5  III. LEGAL STANDARDS ............................................................ 6

6       A.   Consolidation Under Fed. R. Civ. P. 42(a) ........................ 6

7       B.   The Court Has Authority to Stay Both Case Nos. 467 and
            468 ................................................................................. 6

8  IV.  DISCUSSION ...................................................................... 10

9        A.   The Two Cases Filed Should Be Consolidated ................... 10

10       B.   Stay of Case No. 467 is Warranted Under the Court's
11            Inherent Authority .......................................................... 11

12 V.   CONCLUSION ..................................................................... 15

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

HOWREY LLP

DM US\8226665.v2

EXHIBIT G-6



# TABLE OF AUTHORITIES

## CASES

*Alloc, Inc. v. Unilin Decor N.V.*, Case No. Civ.A. 03-253-GMS, 2003 WL 21640372 (D. Del. July 11, 2003) ............................................................................9

*Flexsys Americas, LP v. Kumho Tire, U.S.A., Inc.*, Case No. 5:05CV156, 2005 WL 1126750 (N.D. Ohio Apr. 29, 2005) ........................9

*In re Innotron Diagnostics*, 800 F.2d 1077 (Fed. Cir. 1986)........................................................................7

*Johnson v. Manhattan Railway, Co.*, 289 U.S. 479 (1933) ...............................................................................7

*Landis v. N. America Co.*, 299 U.S. 248 (1936)................................................................................8, 9

*Perez-Funzes v. INS*, 611 F. Supp. 990 (C.D. Cal. 1984) .....................................................7

*Pod-Ners, LLC v. Tutuli Produce Corp.*, No. CV 99-10172, 2001 U.S. Dist. LEXIS 25945 (C.D. Cal. Aug. 17, 2001)............................8

*Rohan v. Woodford*, 334 F.3d 803 (9th Cir. 2003).............................................................8

*Takeda v. Turbodyne Tech., Inc.*, 67 F. Supp. 2d 1129 (C.D. Cal. 1999) .......................................................7

## STATUTES

28 U.S.C. § 1659(a)........................................................................2, 8, 9, 12, 13

19 U.S.C. § 1337 ................................................................................3, 6

Fed. R. Civ. P. 42(a)........................................................................1, 6, 7

HOWREY LLP

DM_US\8226665.v2

EXHIBIT 6-7

## I.   INTRODUCTION

On May 18, 2005, Plaintiff Broadcom Corporation ("Broadcom"), without warning or serious attempt at pursuing negotiation, commenced a series of patent litigations against defendant Qualcomm Incorporated ("Qualcomm"). On that date Broadcom filed two actions in this Court alleging infringement of ten Broadcom patents by Qualcomm. Five of these patents were asserted in Case No. 467 and another five were asserted in Case No. 468. On May 19 Broadcom also filed a Complaint against Qualcomm in the U.S. International Trade Commission ("ITC") alleging infringement of the same five patents asserted in Case No. 468. Because Broadcom asserted the same five patents in Case No. 468 as in the ITC investigation, 28 U.S.C. § 1659 mandates this Court to stay Case No. 468. Broadcom's attorneys have conceded that Qualcomm is entitled to a stay of Case No. 468 under section 1659 and have stated that they will not oppose it.[1]

Qualcomm respectfully submits that the Court should also stay Case No. 467 pending resolution of the ITC investigation. Although the patents asserted in Case No. 467 are not the very same patents as those asserted in Case No. 468, the cases are, in all important respects, practically identical. As described in much greater detail below, the patents asserted in both cases are highly related. For example:

- All of the asserted patents relate to radio communication networking and networks and thus cover similar and inter-related subject matter.
- Three of the patents in Case No. 467 are in the same patent family as four of the patents asserted in Case No. 468.
- One of the patents asserted in Case No. 467 is the parent of one of the patents asserted in Case No. 468.

---

[1] The mandatory stay of Case No. 468 is not in issue in this motion. Rather, Qualcomm separately requests a stay of Case No. 468 in an unopposed motion filed simultaneously herewith.

EXHIBIT G-8

1       • Two of the patents asserted in Case No. 467 share inventors with four of

2          the patents asserted in Case No. 468.

3       • The same Qualcomm products that will be in issue in Case No. 468 and in

4          the ITC investigation will also be in issue in Case No. 467.

5   Thus it is clear that the two cases will have very substantial overlap and that discovery

6   in the ITC investigation will likely inform and narrow, if not dispose of, many issues

7   that this Court will eventually address in Case No. 467.  Indeed, the two cases are so

8   related that it is clear that the only reason Broadcom filed two cases dividing its patents

9   between them was to circumvent the mandatory stay provision of section 1659.

10       Under these circumstances, and where the requested stay would conserve the

11   resources of the Court and the parties while causing no prejudice to Broadcom,

12   Qualcomm respectfully submits that its motion be granted and that Case No. 467 be

13   consolidated with Case No. 468 and stayed pending completion of the ITC

14   investigation.

15   **II.      FACTUAL BACKGROUND**

16       On May 18, 2005, Broadcom filed two lawsuits against Qualcomm in this Court,

17   both of which were served on Qualcomm by hand on May 20, 2005.  In its Complaint in

18   Case No. SACV05-467 JVS (RNBx) ("Case No. 467") Broadcom alleges that

19   Qualcomm infringes each of five U.S. patents,[2] and in its Complaint in Case No.

20   SACV05-468 JVS (MLGx) ("Case No. 468") Broadcom alleges that Qualcomm also

21   infringes another group of five patents.[3]  On May 19, 2005, Broadcom also filed a

22

23   [2] The patents Broadcom alleges are infringed in Case No. 467 are U.S. Patent Nos.
6,847,686 B2; 6,285,865 B1; 5,425,051; 5,657,317; and 6,389,010 B1.  A copy of the

24   Complaint in Case No. 467 is attached to the accompanying Declaration of Elizabeth
Hoult Fontaine ("Fontaine Declaration") as Exhibit A.  Copies of these patents are

25   attached to the Fontaine Declaration as Exhibits B, C, D, E and F, respectively.

26   [3] The patents Broadcom alleges are infringed in Case No. 468 are U.S. Patent Nos.
6,374,311 B1; 6,714,983 B1; 5,682,379; 6,359,872 B1; and 6,583,675 B2.  A copy of
the Complaint in Case No. 468 is attached to the accompanying Fontaine Declaration as

27   Exhibit G.  Copies of these patents are attached to the Fontaine Declaration as Exhibits
H, I, J, K and L, respectively.

28

HOWREY LLP

-2-

EXHIBIT  6 - 9

1  Complaint in the United States International Trade Commission ("ITC") alleging a

2  violation of 19 U.S.C. § 1337 by reason of importation of Qualcomm chips and

3  chipsets, as well as products containing such chips and chipsets, that infringe certain

4  claims of the same five patents asserted against Qualcomm in Case No. 468.[4]  The

5  presiding Administrative Law Judge in that investigation has issued an order

6  establishing August 22, 2006 as the date for its completion and has ordered the parties

7  to submit a proposed procedural schedule scheduling a hearing to begin no later than

8  January 30, 2006.[5]

9          Three of the patents asserted in Case No. 467 (the '051, '317, and '010 patents) are

10  in the same family of patents as four of the patents asserted in Case No. 468 (the '311,

11  '983, '379, and '872).[6]  Indeed, the '317 patent asserted in Case No. 467 is actually the

12  parent to the '983 patent that Broadcom has asserted in Case No. 468/ ITC

13  investigation.[7]  As such, the two patents share many common features, including at least

14  a common specification, certain key concepts, and an inventor.  Moreover, many of the

15  claims asserted in Case No. 468/ITC share claim terms and limitations with the patent

16  claims asserted in Case No. 467.  These claim terms and limitations include "power

17  saving,"[8] "slave,"[9] "processing circuitry,"[10] and "wireless communication network."[11]

18

19  [4] A copy of Broadcom's ITC Complaint (without its voluminous accompanying

20  exhibits) is attached to the Fontaine Declaration as Exhibit M.

[5] See *Certain Baseband Processor Chips and Chipsets, Transmitter and Receiver*

21  *(Radio) Chips, Power Control Chips, and Products Containing Same, Including*

*Cellular Telephone Handsets*, Inv. No. 337-TA-543, Order No. 2 (June 21, 2005) at 1.

22  A copy of Order No. 2 is attached to the Fontaine Declaration as Exhibit Q.  Completion

of the investigation includes completion of all discovery, the evidentiary hearing before

23  and initial determination of the issues by the Administrative Law Judge, and any review

and final determination by the Commission itself.

24  [6] Each of these patents have at least one priority patent application in common.

25  [7] See Fontaine Declaration Exs. E ('317 patent) and I ('983 patent).

26  [8] Compare Fontaine Declaration Ex. E ('317 patent, claim 11) to Ex. H ('311 patent, claims 1-5, 7, 8, 13-14).

27  [9] Compare Fontaine Declaration Ex. E ('317 patent, claim 13) to Ex. J ('379 patent, claim 2).

28

HOWREY LLP

-3-

-9-

EXHIBIT 6-10

1   The patents asserted in the two cases also share a number of name inventors.

2   Specifically, Ronald L. Mahany, Alan G. Bunte and Guy J. West are each listed as

3   inventors on patents in both Case Nos. 467[12] and 468.[13]

4        As might be expected from such overlap of concepts and inventors, the patents

5   asserted by Broadcom in the two cases are directed to substantially the same area of

6   technology, which is, broadly speaking, radio communication networking and networks.

7   The titles of the patents themselves illustrate their essential relatedness.  For example,

8   the titles of the '051, '317 and '010 patents, which Broadcom asserted in Case No. 467,

9   are "Radio Frequency Communication Network Having Adaptive Parameters",

10  "Hierarchical Communication System Using Premises, Peripheral and Vehicular Local

11  Area Networking", and "Hierarchical Data Collection Network Supporting Packetized

12  Voice Communications Among Wireless Terminals and Telephones", respectively.[14]

13  The titles of the '311, '983, '379 and '872 patents, in issue in Case No. 468, are

14  "Communication Network Having a Plurality of Bridging Nodes Which Transmit a

15  Beacon to Terminal Nodes in a Power Saving State That it Has Messages Awaiting

16  Delivery",[15] "Modular, Portable Data Processing Terminal for Use in a Communication

17

18

19

20  (...Continued)

21  [10] Compare Fontaine Declaration Ex. F ('010 patent, claims 1-7) to Ex. I ('983 patent, claims 1, 4, 8, 9, 11).

22  [11] Compare Fontaine Declaration Ex. E ('317 patent, claims 6-11) to Ex. K ('872 patent, claims 8-11, 13).

23  [12] Fontaine Declaration Exs. D. ('051 patent) and Ex. E (the '317 patent).

24  [13] Fontaine Declaration Ex. H (the '311 patent), I (the '983 patent), J (the '379 patent) and K (the '872 patent).

25  [14] See Fontaine Declaration Exs. D, E and F, respectively.  (Emphasis in titles added for illustrative purposes).

26

27  [15] The Abstract of the '311 patent describes the invention, in part, as "[a]n apparatus and a method for *routing data* in a *radio data communication system* . . ."  Fontaine Declaration Ex. H (Abstract) (emphasis added).

28

HOWREY LLP

EXHIBIT  6-1

1  Network", "Wireless Personal Local Area Network", and "Wireless Personal Local
2  Area Network", respectively.[16]

3      Broadcom's allegations in its complaints also underscore the extent to which the
4  two actions are related in terms of the subject matter of the asserted patents. In
5  characterizing the subject matter of the patents asserted in Case No. 467, Broadcom
6  stated in its complaint that the patents "relate generally to baseband chipsets and cellular
7  phones and other electronic devices that incorporate these items."[17] Similarly, in
8  characterizing the subject matter of the patents asserted in Case No. 468, Broadcom
9  alleged in its complaint that the patents asserted in that case "relate generally to
10  baseband chips and chipsets, transmitter and receiver (radio) chips and data cards,
11  power control chips, and cellular phones and other electronic devices that incorporate
12  these items."[18]

13      Significantly, the same groups of Qualcomm products are accused of infringing
14  the asserted patents in each case. Indeed, Broadcom's allegations identifying the
15  allegedly infringing Qualcomm products are practically identical. In Case No. 467, and
16  with respect to each of the five asserted patents, Broadcom alleges that Qualcomm
17  infringes through activities relating to "baseband chipsets and cellular phones and other
18  electronic devices that incorporate these items."[19] In Case No. 468, Broadcom alleges
19  that Qualcomm infringes each of the asserted patents through the identical activities.[20]
20  The only exception is that, in connection with its allegations of infringement of the '311
21  patent, Broadcom omitted the phrase "cellular phones."[21]

22

23  16 See Fontaine Declaration Exs. H, I, J and K, respectively. (Emphasis in titles added
24  for illustrative purposes).
    17 Fontaine Declaration Ex. A, ¶ 13.
25  18 Fontaine Declaration Ex. G, ¶ 13.
26  19 Fontaine Declaration Ex. A, ¶¶ 17, 20, 23, 26 and 29.
27  20 Fontaine Declaration Ex. G, ¶¶ 20, 23, 26 and 29.
    21 Id. at ¶ 17.
28

HOWREY LLP

-5-

-11-

EXHIBIT 6-12

1    Thus, the scope of the Qualcomm products that are accused of infringement and

2  that will be subject to discovery in the two cases as well as in the ITC, will be identical.

3  III.   **LEGAL STANDARDS**

4      A.   **Consolidation Under Fed. R. Civ. P. 42(a)**

5      When common questions of fact or law arise in separately filed actions, a court

6  has discretion to consolidate them pursuant to Fed. R. Civ. P. 42(a):

7              When actions involving a common question of law or fact are

8              pending before the court, it may order a joint hearing or trial

9              of any or all the matters in issue in the actions; it may order

10             all the actions consolidated; and it may make such orders

11             concerning proceedings therein as may tend to avoid

12             unnecessary costs or delay.[22]

13  In evaluating whether to consolidate actions, precedent requires courts to balance the

14  savings of time and effort that consolidation will bring against any inconvenience,

15  delay, confusion, or prejudice that may result.[23]  Consolidation of cases does not merge

16  cases into a single cause or change the rights of parties.[24]

17      B.   **The Court Has Authority to Stay Both Case Nos. 467 and 468**

18      Section 1659(a) of Title 28 requires a federal district court to stay its action, upon

19  motion of the party that is also a respondent in the ITC investigation. That provision

20  states as follows:

21

22

23  [22] Fed. R. Civ. P. 42(a); *See also Perez-Funzes v. INS*, 611 F. Supp. 990, 993-994 (C.D.
     Cal. 1984) (exercise of discretion is favored; identical facts presented relating to
24   whether INS coerces unaccompanied minors to consent to voluntary departure).

25  [23] *Takeda v. Turbodyne Tech., Inc.*, 67 F. Supp. 2d 1129, 1132-33 (C.D. Cal. 1999)
     (citing *Burros v. Turbo*, 743 F.2d 693, 694 (9th Cir. 1984), *vacated on other grounds
26   sub nom. Hijar v. Burrus*, 474 U.S. 1016 (1985)); *In re Innotron Diagnostics*, 800 F.2d
     1077, 1084 (Fed. Cir. 1986) (severing issues related to antitrust and patent
27   infringement).

28  [24] *Johnson v. Manhattan Railway, Co.*, 289 U.S. 479 (1933).

HOWREY LLP

-6-

-12-

DM_US\8226663.v2

EXHIBIT  6-13

1        (a) Stay. – In a civil action involving parties that are also

2     parties to a proceeding before the United States International

3     Trade Commission under section 337 of the Tariff Act of

4     1930, at the request of a party to the civil action that is also a

5     respondent in the proceeding before the Commission, the

6     district court shall stay, until the determination of the

7     Commission becomes final, proceedings in the civil action

8     with respect to any claim that involves the same issues

9     involved in the proceeding before the Commission, but only if

10    such request is made within –

11        (1) 30 days after the party is named as a respondent in

12    the proceeding before the Commission, or

13        (2) 30 days after the district court action is filed,

14    whichever is later.[25]

15    The Court must stay Case No. 468 because such a stay is mandatory under

16 Section 1659. Inasmuch as Case Nos. 467 and 468 are practically identical, the Court

17 should also stay Case No. 467. It is well recognized that district courts have inherent

18 authority to stay proceedings before them.[26] "[T]he power to stay proceedings is

19 incidental to the power inherent in every court to control the disposition of the cause on

20 its docket with economy of time and effort for itself, for counsel, and for the litigants.

21 How this best can be done calls for the exercise of judgment, which must weigh

22 competing interests and maintain an even balance."[27] In exercising its inherent

23 authority a court weighs several factors including possible damage resulting from the

24 stay, hardship a party may suffer in being required to go forward, and the orderly course

25

26 [25] 28 U.S.C. § 1659(a).

27 [26] See, e.g., Rohan v. Woodford, 334 F.3d 803, 817 (9th Cir. 2003).

28 [27] Landis v. N. Am. Co., 299 U.S. 248, 254 (1936).

HOWREY LLP

-7-

DM_US\8226665.v2

EXHIBIT C-14

1  of justice measured in terms of simplifying or complicating of issues, proof and

2  questions of law that could be expected to result from a stay.[28]  A stay is favored if a

3  decision in a separate proceeding may "narrow the issues in the pending case and assist

4  in the determination of the questions of law involved."[29]

5       A stay of a district court case is warranted where the patents in issue are

6  sufficiently <u>related</u> to patents asserted in an ITC investigation, even if the patents in

7  issue in the district court case may not be the <u>same</u> patents asserted in the ITC

8  investigation.[30]  For example, in *Flexsys*, the district court stayed its proceedings under

9  both its inherent jurisdiction and under 28 U.S.C. § 1659.[31]  The plaintiff in that case

10  alleged infringement of four patents in the district court action while asserting three of

11  the same four patents in an investigation pending before the ITC.[32]  The plaintiff in

12  *Flexsys* did not dispute that section 1659 required the court to stay its proceeding as to

13  the three patents in common with the ITC investigation, but contended that the case

14  should proceed as to the patent (a '541 patent) that was not asserted in the ITC.[33]  The

15  court found that the '541 patent was part of a series of continuation patents that included

16  the patents asserted in the ITC, and was thus sufficiently related to those patents to

17

---

18  [28] *Pod-Ners, LLC v. Tutuli Produce Corp.*, No. CV 99-10172, 2001 U.S. Dist. LEXIS
19  25945 at *4 (C.D. Cal. Aug. 17, 2001) (citing *Filtrol Corp. v. Kelleher*, 427 F.2d 242,
    244 (9th Cir. 1972) (patent infringement suit stayed where patent was subject of
20  reexamination proceeding at the PTO and while the U.S. Supreme Court assessed
    whether Plant Variety Protection Act preempted utility patents for plant/seed varieties –
21  holding that a stay would substantially reduce the number of legal issues, narrow
    discovery, and the need to reconsider issues in light of decision at the Supreme Court
22  and PTO).

    [29] *Landis*, 299 U.S. at 253.
23
    [30] *See e.g., Flexsys Americas, LP v. Kumho Tire, U.S.A., Inc.*, Case No. 5:05CV156,
24  2005 WL 1126750 (N.D. Ohio Apr. 29, 2005) (a copy of the *Flexsys* case is attached to
    the Fontaine Declaration as Exhibit N); *Alloc, Inc. v. Unilin Decor N.V.*, Case No.
25  Civ.A. 03-253-GMS, 2003 WL 21640372 (D. Del. July 11, 2003) (a copy of the *Alloc*
    case is attached to the Fontaine Declaration as Exhibit O).

26  [31] *Flexsys*, 2005 WL 1126750.

27  [32] *Id.* at *1.

28  [33] *Id.* at *2-3.

HOWREY LLP

-8-

DM US\8226665.v2

EXHIBIT C-15

1  warrant a stay.[34]  The court found that adjudication of the '541 patent would involve the
2  same facts and issues relating to claim construction, validity, and infringement, before
3  the ITC, and that witnesses and relevant discovery would overlap extensively with the
4  discovery before the ITC.[35]  Although the district court noted that it would not be bound
5  by the ITC's determinations, it also recognized that it would benefit from a narrowing of
6  the complex issues.[36]  Further, the court found a stay of the case would not prejudice the
7  plaintiff, but requiring defendants to litigate this case in two different fora would result
8  in substantial prejudice, including two different rounds of discovery.[37]  Finally, the
9  court noted that a temporary stay would result in saving of judicial resources: "Absent a
10  stay, a Court will hold status conferences and address discovery disputes only to be
11  faced with many of the same issues after the stay is lifted."[38]
12      In *Alloc*, plaintiffs alleged infringement of a '579 patent, which was a
13  continuation of patents that were in issue in a parallel ITC proceeding and that were
14  subject to reexamination at the PTO.[39]  Defendant moved to stay the case and plaintiffs
15  opposed because the '579 patent was not itself pending at the ITC nor subject to
16  reexamination.  The Court rejected the plaintiff's argument and entered the stay:

17          [P]laintiffs themselves admit that the patents in question do
18          have some terms in common.  Therefore, even though the
19          '579 patent does not contain precisely the same claims of the
20          other patents that are under review for reexamination, there is
21          sufficient correlation among all of the patents for the court to
22          conclude that a stay is appropriate.  Additionally, with regard
23  
24  [34] *Id.* at *3.
25  [35] *Id.* at *2-3.
26  [36] *Id.* at *3.
27  [37] *Id.*
28  [38] *Id.* at *4.
   [39] *Alloc, Inc.*, 2003 WL 21640372.

HOWREY LLP

DM_US\8226665.v2

-9.-

-/5-

EXHIBIT  C-16

1       to issues of efficiency, it is beyond dispute that the court

2       would benefit from a narrowing of the numerous complex

3       issues relating to claims, which if clearly defined, would

4       streamline discovery and subsequent litigation . . . Finally,

5       the court notes that discovery in this case has not yet begun,

6       nor has a discovery schedule been entered at this time.

7       Likewise, the court has not yet set a trial date.  Therefore, the

8       stay will be entered before any party incurs substantial

9       litigation-related expenses.[40]

10  Thus, a district court may exercise its inherent jurisdiction to stay an entire proceeding

11  where it would result in the narrowing of issues, reduce duplicative discovery, and save

12  judicial resources.

13  **IV.    DISCUSSION**

14      **A.    The Two Cases Filed Should Be Consolidated**

15      As noted above, the patents in issue in both cases cover substantially the same

16  areas of technology, share many inventors, and are being asserted by Broadcom against

17  the same groups of Qualcomm products.  As such, the cases both arise out of the same

18  set of operative facts, will involve much of the same documentary evidence and

19  witnesses, both in terms of discovery and trial, and will involve very similar, if not

20  largely redundant, legal analysis and reasoning.  In all meaningful respects, the two

21  cases are really one.  Consolidation of the cases will permit the Court to more

22  economically manage its docket and will conserve the resources of both the Court and

23  the parties.

24

25

26

27

28

[40] *Id.* at *6-7.

HOWREY LLP

~16~

DM_US\8226665.v2

EXHIBIT  G-17

1    **B.    Stay of Case No. 467 is Warranted Under the Court's Inherent**
2    **Authority**

3    In determining whether a stay is of a district court case in view of proceedings in
4    the ITC, the court in *Alloc* considered the following factors:

5           (1) whether a stay would unduly prejudice or present a clear
6           tactical disadvantage to the non-moving party; (2) whether a
7           stay will simplify the issues in question and trial of the case;
8           and (3) whether discovery is complete and whether a trial date
9           has been set.[41]

10   The court in the *Flexsys* case, considering the same issue, adopted a similar analysis in
11   determining to stay its action both as the same patents as those in issue in the ITC and
12   another patent related to those in issue in the ITC.[42] Here, as in those cases, the balance
13   of the relevant factors overwhelmingly favors entry of an order staying Case No. 467 for
14   the duration of the highly related ITC investigation.

15   Broadcom would suffer no prejudice in the event that Case No. 467 is stayed
16   pending disposition of the ITC investigation. The only conceivable prejudice that
17   Broadcom could argue it may suffer from a stay of Case No. 467 is a delay in
18   determining damages for Qualcomm's alleged continued infringement of the patents
19   asserted in Case No. 467. This argument, however, should be rejected here as it was in
20   *Flexsys*.[43] The *full* extent of Broadcom's damages, if any, cannot be determined until
21   trial of Broadcom's infringement allegations relating to all of the asserted patents – both
22   those in Case No. 467 and Case No. 468/ITC investigation. Inasmuch as Case No. 468
23   must be stayed pursuant to the mandatory stay provision of 28 U.S.C. § 1659, a
24   complete calculation of Broadcom's damages, if any, is not possible until after the ITC

25

26   [41] *Id* at *5 (citations omitted).
27   [42] *See Flexsys*, 2005 WL 1126750 at *3-4.
28   [43] *Id*. at *3.

HOWREY LLP

-11-

*-17-*

EXHIBIT 6-18

1 | investigation has been completed.  A stay of Case No. 467 would be thus consistent
2 | with, and would add no additional prejudice to, the mandatory stay under section 1659.
3 | Accordingly, the balance of potential prejudice if the instant motion were granted, in
4 | which Broadcom would suffer no prejudice, favors imposition of the requested stay of
5 | Case No. 467.

6 | Broadcom's tactical decision to split its patent action into two separate cases is
7 | clearly intended to circumvent the mandatory stay requirements of 28 U.S.C. § 1659.
8 | Forcing Qualcomm to fight what is essentially the same action in the ITC and in Case
9 | No. 467 is unfair to Qualcomm and ignores the intended effect of section 1659.  Indeed,
10 | the risk of having to defend related litigations simultaneously before the ITC and a
11 | district court is precisely the situation that Congress sought to avoid in enacting the stay
12 | provision of section 1659:

13 | The GAAT panel found that the possibility that importers or
14 | producers of imported goods might have to defend their
15 | products simultaneously before the ITC and in Federal district
16 | court, whereas no corresponding exposure exists with respect
17 | to domestically produced goods, constitutes a violation of the
18 | GAAT's national treatment obligations.  To remedy the
19 | problem, section 321 [28 U.S.C. § 1659] requires a district
20 | court hearing an infringement case to stay its proceedings, if
21 | requested to do so by the respondent in a section 337
22 | investigation, with respect to any claim that involves the same
23 | issues that are pending before the ITC. [44]

---

[44] *See* Sen. Rep. No. 103-412, 103d Cong., 2d Sess. at 119 (1994).  The relevant portion of Senate Report No. 103-412 is attached to the Fontaine Declaration as Exhibit P.

HOWREY LLP

-18-

DM_US\8226665.v2

EXHIBIT 6-19

1    Broadcom's two-district-court-case strategy has placed Qualcomm in the exact

2  position anticipated by Congress – having simultaneously to defend the very <u>same</u>

3  <u>products</u> in the ITC and in a district court.  Indeed, Broadcom chose to divide its

4  asserted patents, pursuing alleged infringement of some but not others in the ITC,

5  simply to circumvent the mandatory section 1659 stay provision.  In *Flexsys*, the court

6  refused to allow the plaintiff to benefit from such machinations, noting that "[i]t is

7  entirely unclear to this Court why plaintiff would opt to pursue only two of the three

8  continuation patents before the ITC, <u>other than in an attempt to avoid the mandatory</u>

9  <u>stay requirements of 28 U.S.C. § 1659(a)</u>."[45]  Here too the Court should deny Broadcom

10  any benefit from such tactical manipulation of the clear statutory mandate of section

11  1659.

12    Issuance of the requested stay will also likely simplify and streamline discovery

13  and trial of the issues in Case No. 467.  As discussed above, the issues involved in Case

14  No. 467 and Case No. 468/ITC investigation are strikingly similarly and closely related.

15  As a result, much of the discovery and factual and legal analysis the parties would

16  undertake in connection with Case No. 467 will later be relevant to Case No. 468 when

17  the ITC investigation is completed and the mandatory stay of Case No. 468 is dissolved.

18  In the absence of the requested stay, and in view of the pervasive similarity between the

19  two cases, the parties might undergo *three complete iterations of potentially repetitive*

20  *discovery* – one in the ITC, another in Case No. 467 in parallel with discovery in the

21  ITC investigation, and a third in Case No. 468 after the mandatory stay is lifted.  The

22  potential, indeed likelihood, of such needless and repetitive discovery and attendant

23  expense would be minimized if both Case Nos. 467 and 468 were stayed pending

24  completion of the ITC investigation.  This is because resolution of the ITC matter would

25  potentially resolve or, at a minimum, narrow many issues in the district court cases.

26

27  _____

[45] *Flexsys*, 2005 WL 1126750 at *3 (emphasis added).

28

HOWREY LLP

-13-

~19~

EXHIBIT _G-2D_

1     As noted above, three patents in Case No. 467 are in the same family as four

2 patents in Case No. 468, and the '983 patent asserted in Case No. 468/ITC investigation

3 is actually a continuation of the '317 patent asserted in Case No. 467. Similar facts that

4 were particularly noted by the courts in both the *Flexsys* and *Alloc* cases where the

5 continuation of a patent asserted in the ITC was also in issue in the district court.[46] The

6 '983 and '317 patents share a common specification and address and employ similar

7 concepts. Discovery and trial in the ITC investigation in connection with the '983

8 patent will very likely shed light on, and perhaps narrow or resolve, issues relating to

9 the '317 patent. Similarly, as discussed above, the claims of the patents asserted in Case

10 No. 467 share certain elements and terms with claims asserted in Case No. 468/ITC

11 investigation. These claim terms will be the subject of discovery, expert analysis and,

12 ultimately, construction by the Administrative Law Judge and the Commission in the

13 ITC investigation. The court in *Flexsys* correctly noted the value of such proceedings in

14 staying its case in favor of the ITC investigation:

15         This Court recognizes that it is not bound by the rulings made

16         by the ITC. As in *Alloc*, however, the Court finds that it would

17         benefit tremendously from a narrowing of the complex issues

18         in this case. It is more likely that after the ITC ruling, the

19         parties in this case will have fewer issues for this Court to

20         resolve.[47]

21 Even if the Court is not bound by the determinations of the ITC, the overlap of claim

22 language, named inventors, and the technical subject matter addressed by the two

23 groups of patents will very likely, and at a minimum, shed significant light on the issues

24 this Court will have to decide.

25

26 ———————————

27 [46] *Flexsys*, 2005 WL 1126750 at *3; *Alloc*, 2003 WL 21640372 at *2.

28 [47] *Flexsys*, 2005 WL 1126750 at *3.

HOWREY LLP

-14-

-20-

DM US\8226665.v2

EXHIBIT C-21

1    In addition to the issues that the two cases share that relate directly to the patent-
2  in-issue, the body of accused Qualcomm products appear to be identical in both cases.
3  Thus, all the discovery relating to Qualcomm's products in the ITC investigation, the
4  significant expert analysis that will be brought to bear on those products, and the
5  Commission's deliberations relating to those products, may be of tremendous assistance
6  to the Court in eliminating or resolving issues before it.  Whether or not the Court is
7  ultimately bound by the ITC determinations relating to the relevant structures, functions
8  and operations of Qualcomm's products, the analyses and determinations in ITC
9  investigation will certainly benefit the Court.  Given the tremendous attention
10  Qualcomm's products will receive in the ITC, there is no reason to proceed with
11  duplicative discovery in connection with Case No. 467.  For all of these reason, the
12  second factor considered by the court in *Flexsys* favors imposition of the stay requested
13  by Qualcomm.

14    Finally, as in both *Flexsys* and *Alloc*, Case No. 467 is presently in its earliest
15  stages.  No discovery has been taken in Case No. 467, the Court has established no
16  procedural dates, has held no conferences, and has not yet scheduled a trial date.  On the
17  other hand, discovery in the ITC investigation is proceeding at full throttle with the
18  parties each having served and responded to discovery requests of the other.  Indeed, as
19  noted above, the entire ITC investigation will be completed in little more than thirteen
20  months.  Thus, while the parties and the Court have invested almost no resources in
21  Case No. 467 to date, the ITC investigation will be completed, and the benefits of that
22  case available for use here, in a very short while.  This factor too favors issuance of the
23  requested stay.

24  V.    CONCLUSION

25    For the foregoing reasons, Qualcomm respectfully requests that the Court grant
26  the requested relief and enter an order consolidating Case Nos. 467 and 468 and staying
27  the Case No. 467 pending resolution of the related ITC investigation between Broadcom
28  and Qualcomm.

HOWREY LLP

-15-

EXHIBIT  6-22

1    In addition to the issues that the two cases share that relate directly to the patent-

2  in-issue, the body of accused Qualcomm products appear to be identical in both cases.

3  Thus, all the discovery relating to Qualcomm's products in the ITC investigation, the

4  significant expert analysis that will be brought to bear on those products, and the

5  Commission's deliberations relating to those products, may be of tremendous assistance

6  to the Court in eliminating or resolving issues before it.  Whether or not the Court is

7  ultimately bound by the ITC determinations relating to the relevant structures, functions

8  and operations of Qualcomm's products, the analyses and determinations in ITC

9  investigation will certainly benefit the Court.  Given the tremendous attention

10  Qualcomm's products will receive in the ITC, there is no reason to proceed with

11  duplicative discovery in connection with Case No. 467.  For all of these reason, the

12  second factor considered by the court in *Flexsys* favors imposition of the stay requested

13  by Qualcomm.

14    Finally, as in both *Flexsys* and *Alloc*, Case No. 467 is presently in its earliest

15  stages.  No discovery has been taken in Case No. 467, the Court has established no

16  procedural dates, has held no conferences, and has not yet scheduled a trial date.  On the

17  other hand, discovery in the ITC investigation is proceeding at full throttle with the

18  parties each having served and responded to discovery requests of the other.  Indeed, as

19  noted above, the entire ITC investigation will be completed in little more than thirteen

20  months.  Thus, while the parties and the Court have invested almost no resources in

21  Case No. 467 to date, the ITC investigation will be completed, and the benefits of that

22  case available for use here, in a very short while.  This factor too favors issuance of the

23  requested stay.

24

25

26

27

28

HOWREY LLP

DM US\8226665.v2

-15-

-22 -

EXHIBIT G·23

1   ROBERT S. BREWER, JR. (SBN 65294)
    JAMES S. McNEILL (SBN 201663)
2   McKENNA LONG & ALDRIDGE LLP
    750 B Street, Suite 3300
3   San Diego, CA 92101
    Telephone (619) 595-5400
4   Facsimile (619) 595-5450

5   WILLIAM F. LEE
    MARK D. SELWYN
6   RICHARD W. O'NEILL
    WILMER CUTLER PICKERING
7    HALE AND DORR LLP
    60 State Street
8   Boston, MA 02109
    Telephone (617) 526-6000
9   Facsimile (617) 526-5000

10  JAMES L. QUARLES III
    THOMAS P. OLSON
11  MARIA K. VENTO
    WILMER CUTLER PICKERING
12   HALE AND DORR LLP
    1455 Pennsylvania Avenue, N.W.
13  Washington, DC 20004
    Telephone (202) 942-8400
14  Facsimile (202) 942-8484

15  Attorneys for Defendant
    BROADCOM CORPORATION

16

17              UNITED STATES DISTRICT COURT

18             SOUTHERN DISTRICT OF CALIFORNIA

19

20  QUALCOMM INCORPORATED,          Case No.  05 CV 1662 B (JMA)

21          Plaintiff,              MEMORANDUM OF POINTS AND
                                    AUTHORITIES IN SUPPORT OF
22      v.                          MOTION TO DISMISS PURSUANT TO
                                    FEDERAL RULE OF CIVIL PROCEDURE
23  BROADCOM CORPORATION,           12(B)(1) AND 12(B)(6), OR, IN THE
                                    ALTERNATIVE, TO STAY PENDING
24          Defendant.              RESOLUTION OF A PRIOR PENDING
                                    CASE

25                                  Date:    October 3, 2005
26                                  Time:    10:30 a.m.
                                    Judge:   Hon. Rudi M. Brewster

27

28

RECEIVED

SEP  2 2005

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                        DEP

McKENNA LONG &
ALDRIDGE LLP
ATTORNEYS AT LAW
SAN DIEGO

05 CV 1662

EXHIBIT____ _α_   -24-

EXHIBIT  C-24

1   V.    **CONCLUSION**

2        For the foregoing reasons, Qualcomm respectfully requests that the Court grant

3 the requested relief and enter an order consolidating Case Nos. 467 and 468 and staying

4 the Case No. 467 pending resolution of the related ITC investigation between Broadcom

5 and Qualcomm.

6 Dated: July 13, 2005                  HOWREY LLP

7

8                        By: *Elizabeth Hoult Fontaine*

9                          Elizabeth Hoult Fontaine (SBN 207557)

10                          Attorneys for Defendant and Counterclaimant

11                          QUALCOMM INCORPORATED

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

HOWREY LLP

-16-

-23-

DM US\8226665.v2

EXHIBIT   6-25

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................. iii

INTRODUCTION ............................................................................................... 1

PROCEDURAL HISTORY ................................................................................. 3

    A.    Broadcom Sues Qualcomm for Patent Infringement in the Central
          District of California (the "Santa Ana" Case) ............................................. 3

    B.    Broadcom Files an Infringement Complaint with the International Trade
          Commission (the "ITC" Investigation) ..................................................... 5

    C.    Qualcomm Requests a Stay of Another Case in Santa Ana and
          Represents to the Central District That Qualcomm Will Litigate the
          Validity of Broadcom's Wireless Subnetwork Patents Before the ITC ........ 6

    D.    Three Months After the Santa Ana and ITC Complaints, Qualcomm
          Files a Complaint in this Court Seeking To Halt the Two Earlier-Filed
          Cases (the "San Diego" Case) ................................................................. 7

ARGUMENT ..................................................................................................... 9

    I.    Qualcomm's Federal Law Claims Should Be Dismissed in Favor of the
        First-Filed Action in Santa Ana and Before the ITC ................................... 10

        A.    The "First to File" Rule Directs Dismissal of Declaratory
            Judgment Actions Presenting Issues the Plaintiff Has Raised (or
            Should Have Raised) As Counterclaims in a Prior-Filed Case ........ 10

        B.    Each of Qualcomm's Six Declaratory Judgment Claims Is (or
            Should Have Been Raised As) a Counterclaim or Defense in
            Santa Ana, and Each Should be Dismissed ..................................... 13

            1.    First Cause of Action (Declaratory Relief –
                 Non-infringement) ................................................................ 14

            2.    Second Cause of Action (Declaratory Relief –
                 Invalidity) .......................................................................... 15

            3.    Third Cause of Action (Declaratory Relief – Inequitable
                 Conduct) ............................................................................ 16

            4.    Fourth Cause of Action (Declaratory Relief – Implied
                 License by Legal Estoppel) ................................................... 17

            5.    Fifth Cause of Action (Declaratory Relief – Implied
                 License by Equitable Estoppel) .............................................. 18

            6.    Sixth Cause of Action (License) ........................................... 18

McKENNA LONG &
ALDRIDGE LLP
ATTORNEYS AT LAW
SAN DIEGO

i

05 CV 1662

EXHIBIT  G-26

1

TABLE OF CONTENTS (cont.)

2

Page

3
    C.    There Is No Exception to the "First to File" Rule When a Forum
4
          Selection Clause Is Involved ............................................................ 19

5
II.    Qualcomm's Remaining State Law Claims (Causes of Action Seven
       and Eight) Should Be Dismissed For Lack of Jurisdiction ......................... 20

6
III.   Qualcomm's Third Cause of Action (Declaratory Relief – Inequitable
7
      Conduct) Should Be Dismissed For the Additional Reason That It Is
      Not Pled With the Requisite Particularity ..................................................... 20

8
CONCLUSION.............................................................................................................. 22

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT  C·27

TABLE OF AUTHORITIES

Page

Federal Cases

Adam v. Jacobs,
    950 F.2d 89 (2d Cir. 1991)........................................................................12

American Home Assurance Co. v. TGL Container Lines, Ltd.,
    347 F. Supp.2d 749 (N.D. Cal. 2004) .......................................................4

Burlington Industries, Inc. v. Dayco Corp.,
    849 F.2d 1418 (Fed. Cir. 1988)................................................................20

Chiron Corp. v. Abbott Laboratories,
    156 F.R.D. 219 (N.D. Cal. 1994)..............................................................21

Colortyme Financial Services, Inc. v. Kivalina Corp.,
    940 F. Supp. 269 (D. Haw. 1996).............................................................11

Competitive Technologies v. Fujitsu Ltd.,
    286 F. Supp. 2d 1118 (N.D. Cal. 2003) ........................................16, 17, 18

E. & J. Gallo Winery v. Andina Licores,
    No. CVF05-0101 AWILJO, 2005 WL 1554001 (E.D. Cal. June 24,
    2005)...........................................................................................................19

Electronics Imaging, Inc. v. Coyle,
    394 F.3d 1341 (Fed. Cir. 2005)................................................................11

Falkowski v. Imation Corp.,
    309 F.3d 1123 (9th Cir. 2002)..................................................................20

Ferguson Beauregard/Logic Controls, Division of Dover Resources, Inc. v.
    Mega Systems, LLC,
    350 F.3d 1327 (Fed. Cir. 2003)................................................................21

FMC Corp. v. Manitowoc Co.,
    835 F.2d 1411 (Fed. Cir. 1987)...........................................................20-21

Frazier v. Roessel Cine Photo Tech, Inc.,
    417 F.3d 1230 (Fed. Cir. 2005)................................................................22

Hydranautics v. FilmTec Corp.,
    70 F.3d 533 (9th Cir. 1995)........................................................16, 17, 18

Molins PLC v. Textron, Inc.,
    48 F.3d 1172 (Fed. Cir. 1995)..................................................................22

Pacesetter Systems, Inc. v. Medtronic, Inc.,
    678 F.2d 93 (9th Cir. 1982)......................................................................11

McKENNA LONG &
ALDRIDGE LLP
ATTORNEYS AT LAW
SAN DIEGO

EXHIBIT  G-28

1

<u>TABLE OF AUTHORITIES</u> (cont.)

2

Page

*Polymer Industrial Products Co. v. Bridgestone/Firestone, Inc.,*
3     347 F.3d 935 (Fed. Cir. 2003)....................................................................16, 17, 18

4 *Pumpelly v. Cook,*
    106 F.R.D. 238 (D.D.C. 1985).....................................................................20
5

*Qualcomm, Inc. v. GTE Wireless, Inc.,*
6     79 F. Supp.2d 1177 (S.D. Cal. 1999) ....................................2, 10, 11, 12, 13

7 *R.A. Argueta v. Banco Mexicano, S.A.,*
    87 F.3d 320 (9th Cir. 1996)........................................................................4
8

*SAES Getters S.p.A. v. Aeronex, Inc.,*
9     219 F. Supp. 2d 1081 (S.D. Cal. 2002) .....................................................11

10 *Sega of America, Inc. v. Signal Apparel Co.,*
    No. C-97-1392-VRW, 1997 WL 414196 (N.D. Cal.
11     July 1997).......................................................................2, 11, 19, 20

12 *Serco Servs. Co., L.P. v. Kelley Co., Inc.,*
    51 F.3d 1037 (Fed. Cir. 1995)...............................................................1, 11
13

*Southern Const. Co. v. Pickard,*
14     371 U.S. 57 (1962)..................................................................................12

15 *Syntex (U.S.A.) LLC v. Apotex, Inc.,*
    407 F.3d 1371 (Fed. Cir. 2005)..................................................................22
16

*Timberlane Lumber Co. v. Bank of Am. Nat'l Trust & Savs. Ass'n,*
17     549 F.2d 597 (9th Cir. 1976)....................................................................4

18 <u>Federal Statutes</u>

19
19 U.S.C. § 337..............................................................................................5
20

28 U.S.C. § 1404(a) ......................................................................................4
21

22 28 U.S.C. § 1659............................................................................................6

23 28 U.S.C. § 2201..........................................................................................10

24

25

26

27

28

McKenna Long &
Aldridge LLP
Attorneys at Law
San Diego

iv                                   05 CV 1662

EXHIBIT 629

TABLE OF AUTHORITIES (cont.)

Page

Federal Rules

Fed. R. Civ. P. Rule 9(b)........................................................................2, 10, 21

Fed. R. Civ. P. Rule 12(b)(3).........................................................................13

Fed. R. Civ. P. Rule 13 ..............................................................................9, 11

Fed. R. Civ. P. Rule 13(a)........................................................................11, 16

Other

6 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND
    PROCEDURE § 1418 (2d ed. 2005)............................................................11

MCKENNA LONG &
ALDRIDGE LLP
ATTORNEYS AT LAW
SAN DIEGO

v

05 CV 1662

EXHIBIT  6-30

## INTRODUCTION

1

2          In May 2005, Broadcom filed complaints against Qualcomm for patent

3    infringement in the U.S. District Court for the Central District of California and the

4    International Trade Commission.  Qualcomm answered those complaints and raised

5    counterclaims, but never moved to dismiss for improper venue or any other reason.  To

6    the contrary, in its own counterclaims, Qualcomm alleged (and thereby admitted) "venue

7    is proper" in the Central District.  The ITC proceeding is now well underway, with fact

8    discovery nearly half complete and a ten-day trial set to begin on January 31, 2006.

9          More than three months after Broadcom filed these complaints — and long after

10   Qualcomm chose to forego the opportunity to move for dismissal in the Central District

11   — Qualcomm has come to this Court to try to derail these first-filed cases.  Qualcomm

12   now claims that Broadcom's patent claims are "[i]nextricably [i]ntertwined" with an

13   agreement that Qualcomm *never even mentioned* in its responsive pleading in the Central

14   District or ITC response, and it asserts that a forum selection clause in that agreement

15   requires Broadcom to litigate two of the patents only in a San Diego court.[1]  Qualcomm's

16   complaint asserts six federal law claims for declaratory relief that are either identical to its

17   counterclaims in the Central District litigation or are compulsory counterclaims in that

18   case, along with two pendent state law claims.

19         Qualcomm's case is an improper and untimely attempt to wrest away litigation that

20   is close to trial in another forum, and it should be dismissed.  The "first to file" rule holds

21   that a district court should decline to hear federal law claims, including those for

22   declaratory relief, that duplicate claims or defenses pending in earlier-filed litigation, or

23   that would be compulsory counterclaims in the first-filed case.  *See e.g., Serco Servs. Co.,*

24   *L.P. v. Kelley Co., Inc.,* 51 F.3d 1037, 1038 (Fed. Cir. 1995).  Qualcomm's invocation of

25   the forum selection clause changes nothing:  the "first to file" rule makes clear that the job

26

27   ---
     [1] *See* Qualcomm's Memorandum of Points and Authorities in Support of Qualcomm's
     Application for Preliminary Injunction to Enforce Forum Selection Clause ("PI Motion") at 15.

28

MCKENNA LONG &
ALDRIDGE LLP
ATTORNEYS AT LAW
SAN DIEGO

EXHIBIT _C-31_

1 of interpreting a forum selection clause falls to the court where the first litigation is filed,

2 even if that clause appears to refer to the second court.  *See Sega of America, Inc. v.*

3 *Signal Apparel Co.*, No. C-97-1392-VRW, 1997 WL 414196, at *1 (N.D. Cal. July 1997).

4 All six of Qualcomm's federal law causes of action should be dismissed under the "first to

5 file" rule, at which point the Court's supplemental jurisdiction over the remaining two

6 state law causes of action would disappear.[2]

7   This is not the first time that Qualcomm has tried this kind of procedural gambit in

8 a patent case before this Court.  In *Qualcomm, Inc. v. GTE Wireless, Inc.*, 79 F. Supp.2d

9 1177 (S.D. Cal. 1999) (Brewster, J.), as here, Qualcomm waited three months after being

10 sued for patent infringement in another court, then brought a declaratory judgment action

11 in this Court seeking a declaration of non-infringement.  The Court dismissed

12 Qualcomm's suit on the ground that its "claims should be adjudicated in the forum of the

13 first-filed action," citing "judicial economy" on the one hand, and the need to discourage

14 efforts at "forum shopping and positioning" like Qualcomm's on the other.  *Id.* at 1179.

15   Because this suit should immediately be dismissed (or at the very least stayed

16 while the first-filed cases proceed), even before Broadcom is required to answer

17 Qualcomm's complaint and preliminary injunction application, no response to the

18 substance of Qualcomm's allegations is yet required.  For now, it suffices to say that

19 Qualcomm's attempt to recast itself as a hapless innocent that would never have promoted

20 Bluetooth in the absence of being "encouraged, urged, [and] prodded" by Broadcom to

21 "d[o its] bidding," fails the straight-face test.[3]  Qualcomm did not enter into even a

22 *preliminary* agreement with Broadcom (a mere nondisclosure agreement) relating to

23 Bluetooth technology until May 2000[4] — and yet fully three months *before* (in February

---

[2] In addition, this Court should dismiss Qualcomm's Third Cause of Action (Declaratory Relief—Inequitable Conduct) for the separate and independent reason that Qualcomm has failed to plead this claim with the particularity that the case law and Fed. R. Civ. P. 9(b) require.

[3] *See* PI Motion at 1.

[4] *See* PI Motion at 4; *see also id.* at 5 (citing the parties' May 18, 2000 non-disclosure agreement as the "first step toward their eventual collaboration").

EXHIBIT 6-32

1   2000), Qualcomm issued press releases boasting about its agreement with *another*

2   company (Ericsson Microelectronics) "to jointly develop and market the world's first

3   wireless technology solution[] supporting both the Bluetooth standard and the CDMA

4   digital wireless standard,"[5] and trumpeting its introduction of a chipset (the MSM3300)

5   "integrating Bluetooth digital baseband processing into a comprehensive CDMA chipset

6   and system software solution."[6]  Qualcomm's contention that it was lured into the world

7   of Bluetooth technology by Broadcom is thus flatly contradicted by its own public

8   statements.  If Broadcom's motion to dismiss or stay the case is denied, Broadcom will

9   respond in detail to Qualcomm's erroneous allegations at the appropriate time.[7]

10                          PROCEDURAL HISTORY

11      A.   **Broadcom Sues Qualcomm for Patent Infringement in the Central**

12           **District of California (the "Santa Ana" Case).**

13      On May 18, 2005, Broadcom filed a complaint against Qualcomm in the Southern

14   Division of the United States District Court for the Central District of California (sitting in

15   Santa Ana), alleging that Qualcomm's cell phone chips and chipsets infringe five

16   Broadcom patents.[8]  Two of these patents (U.S. Patent Nos. 5,682,379 and 6,359,872 —

17   the '379 and '872 patents, or collectively the "Wireless Subnetwork Patents") are also at

18   issue in the present case.

19

20   [5] *See* Declaration of Maria Kathleen Vento in Support of Broadcom Corporation's Motion to
21   Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) or, In The Alternative, to Stay Pending
     Resolution of a Prior Pending Case ("Vento Decl."), Ex. 1.

22   [6] *See* Vento Decl., Ex. 2.

23   [7] Broadcom also intends to file a motion in the Central District asking that court to enjoin
     Qualcomm from pursuing this later filed, duplicative action.

24   [8] *See* Complaint, *Broadcom Corp. v. Qualcomm, Inc.*, No. SAC05-468-JVS (MLGx) (D. Cal.
     filed May 18, 2005).  A copy of the Complaint is attached to the Vento Declaration as Exhibit 3.

25   Broadcom filed a second complaint against Qualcomm in the same court on the same day
     alleging infringement of five additional patents not at issue here or in the ITC Investigation.
26   Qualcomm's motion to stay this second case was denied, and litigation is proceeding.  *See* Vento
     Decl., Ex. 4. (Civil Minute Order denying stay in *Broadcom, Corp. v. Qualcomm, Inc.* No.
27   SAC05-467-JVS (MLGx) (D.Cal. filed May 18, 2005).

28

MCKENNA LONG &
ALDRIDGE LLP
ATTORNEYS AT LAW
SAN DIEGO

EXHIBIT  6-33

1    In its filings in the Santa Ana lawsuit, Qualcomm never mentioned the "Bluetooth

2  RF Agreement" that it now says is critically important. Nor did it move to dismiss the

3  Santa Ana lawsuit for improper venue based on the claimed applicability of a forum

4  selection clause.[9] Instead, Qualcomm filed a responsive pleading in the Santa Ana Case

5  on July 11, 2005[10] in which it failed to cite either the Bluetooth RF Agreement or that

6  Agreement's supposedly controlling forum selection clause.[11]

7    Qualcomm's answer in Santa Ana raised a number of counterclaims and

8  affirmative defenses that – as we explain in detail below – are essentially the same as its

9  federal law claims in this case. For example, Qualcomm sought a declaration in Santa

10  Ana that it does not infringe the *Wireless Subnetwork Patents* and that *those two patents*

11  *are invalid.*[12] These are the same declaratory rulings that Qualcomm seeks in its First and

12  Second Causes of Action in the present case. Qualcomm's counterclaims in Santa Ana

13  admit that "Venue is proper [in Santa Ana] because Broadcom brought this action and

14  consented to venue."[13]

15    Qualcomm's responsive pleading in Santa Ana also asserted affirmative defenses

16  of non-infringement (Second Defense) and invalidity (Third Defense), as well as a license

17

18  [9] Well-settled law holds that a claim that a lawsuit has been filed in violation of a forum selection
19  clause is a motion to dismiss under Rule 12(b)(3). *See R.A. Argueta v. Banco Mexicano, S.A.*, 87
   F.3d 320, 324 (9th Cir. 1996) (motion to dismiss premised on enforcement of forum selection
20  clause should be treated as a 12(b)(3) motion to dismiss for improper venue).

21  [10] A copy of the Answer and Counterclaims of Defendant Qualcomm Incorporated and Demand
   for Jury Trial in the Santa Ana Case is attached to the Vento Declaration as Exhibit 5.

22  [11] Qualcomm's responsive pleading generically "denies that venue is proper in this judicial
   district," (*See* Vento Decl. Ex. 5 at ¶ 5), and asserts that "pursuant to 28 U.S.C. § 1404(a) this
23  case *should be transferred* to the United States Court for the Southern District of California." (*See*
   Vento Decl. Ex. 5 at ¶ 5 (emphasis added).) But under settled law, a transfer under Section
24  1404(a) is possible only if venue is *proper* in the first forum. *See American Home Assurance Co.
   v. TGL Container Lines, Ltd.*, 347 F. Supp.2d 749, 766 (N.D. Cal. 2004) (for the discretionary
25  doctrine of forum non conveniens to apply, venue must already be proper under the federal venue
   statutes); *Timberlane Lumber Co. v. Bank of Am. Nat'l Trust & Savs. Ass'n*, 549 F.2d 597, 616
26  (9th Cir. 1976) (in applying doctrine of forum non conveniens, proper venue is assumed).

   [12] *See* Vento Decl., Ex. 5 at Counterclaims 5-8.

27  [13] *See* Vento Decl., Ex. 5 at ¶ 42.

28

McKENNA LONG &
ALDRIDGE LLP
ATTORNEYS AT LAW
SAN DIEGO

4                                              05 CV 1662

-33-

EXHIBIT _6.34_

1  defense (Sixth Defense).[14]  As shown in the side-by-side comparison below, these

2  defenses raise the same issues as Qualcomm's First, Second, and Sixth Causes of Action

3  in the present case.

    **B.**  **Broadcom Files an Infringement Complaint with the International**

4

5          **Trade Commission (the "ITC" Investigation).**

6        On May 19, 2005, Broadcom filed a complaint with the U.S. International Trade

7  Commission pursuant to 19 U.S.C. § 337 alleging that Qualcomm infringed the same five

8  Broadcom patents at issue in the Santa Ana Case, including the two Wireless Subnetwork

9  Patents at issue here, and requesting that the Commission institute an investigation.[15]  On

10  June 16, 2005, the ITC issued a Notice of Investigation and named Qualcomm as a

11  respondent.  As the Court is aware, ITC proceedings move with great speed, and both

12  Broadcom and Qualcomm are now devoting massive efforts to the ITC investigation.

13        Qualcomm filed its Response to the Complaint and Notice of Investigation on

14  July 11, 2005.[16]  The Response asserts a number of affirmative defenses that overlap with

15  Qualcomm's claims in this case.  As with its answer in Santa Ana, Qualcomm's ITC

16  response never mentions the Bluetooth RF Agreement.

17        On June 22, 2005, the parties began discovery in the ITC investigation.  To date,

18  Broadcom has served three sets of Requests for Production and three sets of

19  Interrogatories upon Qualcomm.  Qualcomm has served four sets of Requests for

20  Production and two sets of Interrogatories upon Broadcom, as well as over 300 Requests

21  for Admission.  Much of Qualcomm's discovery, including its Fourth Set of Requests For

22  Production, Second Set of Interrogatories, and more than a third of its 322 Requests for

---

23  [14] In the Santa Ana Case, Qualcomm's license defense is premised on the Bluetooth Special

24  Interest Group (SIG) Association rules, which require members to license certain patent claims.

   [15] A copy of the Broadcom's Complaint Under Section 337 of the Tariff Act of 1930, as

25  Amended in the United States International Trade Commission is attached to the Vento

   Declaration as Exhibit 6.

26  [16] A copy of the Public Version of the Response of Respondent Qualcomm Incorporated to the

27  Complaint and Notice of Investigation in the ITC is attached to the Vento Declaration as

   Exhibit 7.

28

EXHIBIT _6-35_

1    Admission, focus on issues related to the Wireless Subnetwork Patents. The Commission

2    Investigative Staff has also served requests for production and interrogatories on both

3    Broadcom and Qualcomm. Both sides have devoted extensive efforts to locating and

4    gathering responsive documents; the parties have already produced tens of thousands of

5    pages of documents, and are preparing to produce many more, as well as planning to take

6    a substantial number of fact and expert depositions.

7         Pursuant to the ITC's scheduling order, fact discovery in the ITC Investigation will

8    close on November 18, 2005. Thus, the parties are more than two months into the five-

9    month fact discovery period. Expert discovery will end December 20, 2005, and a ten-

10   day trial will begin on January 31, 2006.

11   **C.    Qualcomm Requests a Stay of Another Case in Santa Ana and**

12   **Represents to the Central District That Qualcomm Will Litigate the**
     **Validity of Broadcom's Wireless Subnetwork Patents Before the ITC.**

13

14        On July 13, 2005, Qualcomm moved to stay the Santa Ana lawsuit (concerning the

15   *same patents at issue in the ITC*) pursuant to 28 U.S.C. § 1659, pending completion of the

16   ITC proceedings. Broadcom did not oppose that motion, and the Central District granted

17   the stay on August 4, 2005.

18        On July 13, 2005, Qualcomm also sought to stay a second lawsuit Broadcom had

19   filed in the Central District of California (before the same judge in Santa Ana) concerning

20   *five additional patents not at issue in the ITC*. Qualcomm urged a stay on the grounds that

21   it would be inefficient to conduct discovery simultaneously on the five patents in the ITC

22   (including the Wireless Subnetwork Patents) and on the five other patents in this second

23   Santa Ana Case. In so doing, Qualcomm affirmatively represented to the Court in Santa

24   Ana that it intended to litigate the proceeding before the ITC, and it did not disclose any

25   plan to ask this Court a month later to stop the ITC proceedings. In other words, far from

26   contending that Broadcom could not pursue the Wireless Subnetwork Patents outside of

27   this Court, Qualcomm assured Judge Selna in the Central District that those patents would

28   be litigated at the ITC, and litigated very quickly.

MCKENNA LONG &
ALDRIDGE LLP
ATTORNEYS AT LAW
SAN DIEGO

                                    6                              05 CV 1662

EXHIBIT  6 36

1       For example, Qualcomm represented to the Santa Ana court that, "as both parties

2  recognize, there will be exhaustive discovery of Qualcomm concerning its products as

3  they relate to the claims asserted in the ITC investigation. *Such discovery in the ITC is*

4  *already underway and will likely be completed by November 18, 2005*."[17]  Qualcomm also

5  said that: "the Broadcom-initiated ITC investigation is scheduled to proceed to trial in

6  January 2006, no matter how this Court decides the instant motion.  Whether or not this

7  motion, [sic] *the tactical advantage of having its case heard first still belongs to*

8  *Broadcom in the ITC*."[18]  Qualcomm also told the Santa Ana court that: "*the ITC*

9  *investigation will be completed, and the benefits of that case available for use here, in a*

10  *very short while*."[19]

11       Qualcomm offers no explanation whatsoever for its decision to tell Judge Selna

12  that the ITC Investigation (in which Broadcom asserts the Wireless Subnetwork Patents)

13  is rapidly progressing towards trial while holding back for this Court its wholly

14  inconsistent claim that Broadcom is not even *permitted* to litigate those claims at the ITC

15  or in Santa Ana.

16.    **D.**    **Three Months After the Santa Ana and ITC Complaints, Qualcomm**

17           **Files a Complaint in this Court Seeking To Halt the Two Earlier-Filed**
                **Cases (the "San Diego" Case).**

18

19       On August 22, 2005 — more than three months after Broadcom filed the Santa

20  Ana and ITC complaints, and more than a month after Qualcomm filed its responses in

21  both cases — Qualcomm filed the present complaint, together with an application for a

22

23

---

24  [17] *See* Vento Decl., Ex. 8 at 3 (Reply Memorandum in Support of Qualcomm's Motion to
    Consolidate Case Nos. 467 and to Stay Case No. 467, *Broadcom Corp. v. Qualcomm Inc.*, Civ.

25  No. 05-468 (D. Cal. filed Aug. 1, 2005) (emphasis added)).

26  [18] *See* Vento Decl., Ex. 8 at 14 (emphasis added).

  [19] *See* Vento Decl., Ex. 9 at 15 (Memorandum in Support of Qualcomm's Motion to Consolidate

27  Case Nos. 467 and to Stay Case No. 467, *Broadcom Corp. v. Qualcomm Inc.*, Civ. No. 05-468
  (filed July 13, 2005) (emphasis added)).

28

EXHIBIT  G-31

1  preliminary injunction to stop a major portion of the ITC Investigation in mid-stream.[20] In

2  this belated lawsuit, Qualcomm seeks declarations of non-infringement and invalidity of

3  the Wireless Subnetwork Patents at issue in the Santa Ana Case and ITC Investigation.

4       Qualcomm's Complaint and preliminary injunction papers in this case make no

5  mention of the fact that *it has already raised many of the same claims* as affirmative

6  defenses and/or counterclaims in the Santa Ana Case, and that *all* its federal law claims

7  here arise of out the same underlying dispute about Qualcomm's infringement of

8  Broadcom's Wireless Subnetwork Patents. Of the six federal law causes of action:

9   •  **Declarations of Noninfringement:** The First Cause of Action (Declaratory

10      Relief – Non-Infringement) corresponds with Qualcomm's Fifth and

11      Seventh Counterclaims in the Santa Ana Case and overlaps with

12      Qualcomm's Second Defense in that case.[21]

13   •  **Declarations of Invalidity:** The Second Cause of Action (Declaratory

14      Relief – Invalidity) amounts to the same thing as Qualcomm's Sixth and

15      Eighth Counterclaims in the Santa Ana Case and overlaps with Qualcomm's

16      Third Defense in that case.[22]

17   •  **Inequitable Conduct:** The Third Cause of Action (Declaratory Relief —

18      Inequitable Conduct) is essentially the same as the Eighth Affirmative

19      Defense in the ITC (Inequitable Conduct).[23]

20

21

22  [20] On July 1, 2005, Broadcom also filed a Complaint in the District of New Jersey, alleging that *Qualcomm has committed various violations of the antitrust laws of the United States.*
Qualcomm also filed a suit in this Court on July 11, 2005 alleging that Broadcom infringes seven

23  Qualcomm patents (*Broadcom Corp. v. Qualcomm, Inc.*, Case No. 05 CV 1392 B (BLM) (D. NJ. Filed July 11, 2005)). Neither of these cases is relevant to the present case.

24  [21] Qualcomm's First Cause of Action in this case also overlaps with its Sixth Affirmative Defense

25  in the ITC (Non-Infringement).

[22] Qualcomm's Second Cause of Action in this case also overlaps with its Third and Fourth

26  Affirmative Defenses in the ITC.

27  [23] As discussed *infra*, Qualcomm's Third Cause of Action should be dismissed for the additional reason that it has not been pled with particularity.

28

McKENNA LONG &
ALDRIDGE LLP
ATTORNEYS AT LAW
SAN DIEGO

8                                              05 CV 1662

EXHIBIT   6-38

1     •    <u>License Defense</u>: The Sixth Cause of Action in this case and the Sixth

2               Defense in the Santa Ana Case both claim that Broadcom has granted

3               Qualcomm a license to practice the two patents.[24]

4    *The remaining two federal law causes of action (Declaratory Relief—Implied License by*

5    *Legal Estoppel and Declaratory Relief—Implied License by Equitable Estoppel) seek*

6    declarations that Broadcom's patent claims are barred because of implied licenses. These

7    claims are squarely grounded in the same dispute between the parties – whether

8    Qualcomm has infringed the '379 and '872 patents – and, under Fed. R. Civ. P. Rule 13,

9    were required to be filed as counterclaims in the Santa Ana Case.

10        The remaining two causes of action in the San Diego Case (the Seventh and Eighth

11    *Causes of Action, Breach of Contract – Bluetooth RF Agreement and Permanent*

12    *Injunction respectively)* are state law claims. Qualcomm's Complaint (¶ 4) admits that

13    these state law claims belong in federal court only to the extent they are joined with

14    related federal claims. These state law claims would therefore need to be dismissed for

15    lack of subject matter jurisdiction *if the federal claims are dismissed.*

16                         **ARGUMENT**

17        Under settled law, district courts are not *required* to entertain declaratory judgment

18    claims, but rather have the discretion to decline to hear such claims if doing so will

19    advance the interests of justice. In addition, under the "first to file" rule, courts routinely

20    dismiss claims that duplicate those that have been (or could have been) brought in earlier-

21    filed litigation. Here, application of those principles requires dismissal of this

22    *improvidently-filed action.*

23        All six of Qualcomm's federal law causes of action here run afoul of the "first to

24    file" rule and should be dismissed. ·Qualcomm chose to raise four of these claims directly

25    as counterclaims or defenses in the Santa Ana Case and ITC Investigation, and it

26

27    ――――――――――――
[24] Qualcomm's Sixth Cause of Action here is the same as its Seventh Affirmative Defense in the ITC.

28

EXHIBIT   6-39

1   *conceded* in the Santa Ana Case that venue in the Central District was appropriate for the

2   counterclaims.  Qualcomm's two other federal law claims had to be raised as compulsory

3   counterclaims in the Santa Ana Case.  Once the six federal law claims are dismissed,

4   supplemental jurisdiction over Qualcomm's remaining state law causes of action

5   disappears as well.

6        Qualcomm's new contention that a forum selection clause in an old agreement

7   somehow requires disputes over the infringement of the Wireless Subnetwork Patents to

8   be brought in San Diego is incorrect and cannot save this Complaint from dismissal.

9   Leaving aside that Qualcomm offers no explanation why it waited to raise this issue until

10  three months after the ITC Investigation and Santa Ana Case were filed and discovery was

11  well underway in the ITC, the "first to file" rule establishes that it is *the court hearing the*

12  *earlier* filed suit that determines the application of any forum selection clause.  This is so

13  *even if one side contends that the clause requires litigation in the second court.*

14       Finally, Qualcomm's Third Cause of Action (Declaratory Relief—Inequitable

15  Conduct) must be dismissed because it was not pled with the particularity that the case

16  law and Fed. R. Civ. P. 9(b) require.

17  I.   **Qualcomm's Federal Law Claims Should Be Dismissed in Favor of the First-**
18       **Filed Action in Santa Ana and Before the ITC.**

19       A.   **The "First To File" Rule Directs Dismissal of Declaratory Judgment**
             **Actions Presenting Issues the Plaintiff Has Raised (or Should Have**
20            **Raised) As Counterclaims in a Prior-Filed Case.**

21       Qualcomm bases its federal claims on the Declaratory Judgment Act, 28 U.S.C.

22  § 2201.  As the Court has held, and as is settled law, "it is within the discretion of the

23  district court whether to hear [a] section 2201 declaratory relief action." *See Qualcomm,*

24  *Inc. v. GTE Wireless, Inc.*, 79 F. Supp.2d 1177, 1179 (S.D. Cal. 1999) (Brewster, J.)

25  (internal citations omitted).  "In fact, '[since] its inception, the Declaratory Judgment Act

26  has been understood to confer on federal courts unique and substantial discretion in

27  deciding whether to declare the rights of litigants." *Id.* (internal citations omitted).  In

28  particular, this Court held, declaratory judgment actions should be dismissed when

EXHIBIT  6-40

1  necessary to further "'the conservation of judicial resources and the avoidance of

2  duplicative litigation....'" *Id.* (internal citations omitted).

3      This desire to conserve court resources and to avoid duplication are the bases for

4  the "first to file rule," under which courts routinely transfer, stay, or dismiss actions that

5  involve the same parties and issues as previously filed litigation. *See Pacesetter Systems,*

6  *Inc. v. Medtronic, Inc.*, 678 F.2d 93, 94-95 (9th Cir. 1982). Federal Circuit precedent

7  governs the "first to file rule" in patent cases. *See Electronics Imaging, Inc. v. Coyle*, 394

8  F.3d 1341, 1346 (Fed. Cir. 2005) (*citing Serco Servs. Co., L.P. v. Kelley Co., Inc.*, 51 F.3d

9  1037, 1038 (Fed. Cir. 1995)); *see also SAES Getters S.p.A. v. Aeronex, Inc.*, 219 F. Supp.

10  2d 1081, 1089 (S.D. Cal. 2002) ("[b]ecause the first-filed rule is one that affects 'national

11  uniformity in patent practice,' this Court's application of it to this case is governed by

12  Federal Circuit authority") (citations omitted). Under Federal Circuit law, the first-filed

13  action should be followed "unless considerations of judicial and litigant economy, and the

14  just and effective disposition of disputes, require otherwise." *Serco Servs.*, 51 F.3d at

15  1038 (citations omitted). No such extraordinary circumstances are present here.

16      Importantly, the "first to file" rule also applies to claims that *should have been*

17  *raised* as compulsory counterclaims in the earlier-filed litigation, even if they were not

18  actually raised. *See* 6 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL

19  PRACTICE AND PROCEDURE § 1418 (2d ed. 2005) ("[i]deally once a court becomes aware

20  that an action on its docket involves a claim that should be a compulsory counterclaim in

21  another pending federal suit, it will stay its own proceedings or will dismiss the claim with

22  leave to plead it in the prior action."); *Sega of America, Inc. v. Signal Apparel Co., Inc.*,

23  1997 WL 414196, at *1 (N.D. Cal. 1997); *Colortyme Financial Services, Inc. v. Kivalina*

24  *Corp.*, 940 F. Supp. 269, 272 (D. Haw. 1996). Any other rule would gut the compulsory

25  counterclaim provisions of Fed. R. Civ. P. 13. *See* FED. R. CIV. P. 13(a) ("A pleading

26  *shall state as a counterclaim any claim which* at the time of serving the pleading the

27  pleader has against any opposing party, if it arises out of the transaction or occurrence that

28  is the subject matter of the opposing party's claim and does not require for its adjudication

MCKENNA LONG &
ALDRIDGE LLP
ATTORNEYS AT LAW
SAN DIEGO

11

05 CV 1662

-46-

1   the presence of third parties of whom the court cannot acquire jurisdiction."). "As the

2   Supreme Court has stated, Rule 13(a) 'was designed to prevent multiplicity of actions and

3   to achieve resolution in a single lawsuit of all disputes arising out of common matters.'"

4   *Adam v. Jacobs,* 950 F.2d 89, 93 (2d Cir. 1991) (*citing Southern Const. Co. v. Pickard,*

5   371 U.S. 57, 60 (1962)).

6       This Court has previously applied these rules to dismiss another Qualcomm patent

7   case that presented many of the same concerns for procedural gamesmanship as

8   Qualcomm's current case.  In *Qualcomm, Inc. v. GTE Wireless, Inc.*, GTE first sued

9   Qualcomm for patent infringement in the U.S. District Court for the Eastern District of

10   Virginia, and Qualcomm counterclaimed on the grounds, *inter alia,* that the GTE patents

11   were invalid, unenforceable, and not infringed.  *See* 79 F. Supp.2d at 1178.[25]  Three

12   months after GTE's complaint, Qualcomm filed a suit in this Court seeking a declaration

13   that the GTE patents were not infringed.  *See id.*  Qualcomm filed a motion in the first-

14   filed court (Virginia) to transfer that case here on *forum non conveniens* grounds —

15   appropriately, Qualcomm did not try, as it is attempting here, to have the second-filed

16   court resolve the forum issue.  The Virginia court then transferred the case here.  But

17   instead of consolidating the two cases and granting Qualcomm the procedural advantage

18   of being a plaintiff, this Court *sua sponte* dismissed Qualcomm's suit under the "first to

19   file" rule.  This Court held:

20   
21   
22   
23   
> [that the p]arallel case raises (or gives Qualcomm the
> opportunity to raise by defense and counterclaim) precisely
> the same issues that are raised in this action.  Both cases center
> around the '728 Patent.  However, GTE filed Civil No. 99-
> 2173-B ... nearly three months prior to when Qualcomm filed
> this suit. 'Generally, claims should be adjudicated in the forum
> of the first-filed action.'
>
>     ....

24   
25   
26   
> For the same reasons that federal courts regularly abstain from
> hearing declaratory relief cases when parallel state cases are
> pending, this Court exercises its discretion to decline to hear
> this declaratory relief action.  Most importantly, judicial

27   
---
[25] *See also* Vento Decl. Ex. 10.

28

EXHIBIT   6-42

1    economy and the avoidance of duplicative litigation argue in
     favor of dismissing this declaratory relief action.

2

3    79 F. Supp. 2d at 1179.  In particular, the Court held, it was important to apply the "first to

4    file" rule and dismiss the case to "discourage forum shopping and positioning," *Id.*

5         As detailed below, the Santa Ana Case — just like GTE's case — "raises (or gives

6    Qualcomm the opportunity to raise by defense and counterclaim) precisely the same

7    issues that are raised in this action."  *See id.*  Moreover, the concerns for "judicial

8    economy and the avoidance of duplicative litigation" that supported dismissal of

9    Qualcomm's earlier case apply here as well.  *See id.*  Finally, there is little doubt that the

10   present case represents the paradigmatic example of the "forum shopping and positioning"

11   that the Court held the "first to file" rule is intended to discourage.  *See id.*

12        **B.    Each of Qualcomm's Six Declaratory Judgment Claims Is (or Should**
           **Have Been Raised As) a Counterclaim or Defense in Santa Ana, and**
13         **Each Should Be Dismissed.**

14

15        Qualcomm elected not to move the Central District to dismiss the Santa Ana Case

16   for improper venue under Fed. R. Civ. P. 12(b)(3), but instead answered Broadcom's

17   complaint and submitted counterclaims of its own.  Qualcomm explicitly conceded that

18   venue in the Central District was appropriate for the counterclaims.[26]  Qualcomm also

19   assured the Central District that the parallel ITC Investigation would rapidly proceed to

20   trial.  *See supra* at 7.

21        Belatedly, and notwithstanding these representations, Qualcomm has filed six

22   causes of action for declaratory relief in this Court.  Simply placing them side-by-side

23   with Qualcomm's Santa Ana and ITC counterclaims and defenses makes clear that the

24   new claims raise the same issues as the earlier-filed ones.  Even the two claims not

25   explicitly raised earlier are plainly issues that *should* have been raised as compulsory

26

27   [26] *See* Vento Decl., Ex. 5 at ¶ 42.

28

McKenna Long &
Aldridge LLP
ATTORNEYS AT LAW
San Diego

13
- 42 -

05 CV 1662

EXHIBIT 6-43

1  counterclaims in the first-filed cases.  Accordingly, all six federal-law causes of action

2  should be dismissed under the "first to file" rule.

3          1.     First Cause of Action (Declaratory Relief—Non-infringement).

4        As the following side-by-side comparison shows, Qualcomm's First Cause of

5  Action in this case is substantively identical to two of its counterclaims in Santa Ana –

6  and should therefore be dismissed under the first to file rule:

| San Diego | Santa Ana |
|---|---|
| "Qualcomm has not infringed, contributorily infringed, or induced infringement of the asserted claims of the Subnetwork Patents." [The '379 and '872 Patents collectively] (Qualcomm Complaint at ¶ 17.) | "Qualcomm does not infringe, has not infringed, and does not and has not induced infringement or contributed to infringement of the '379 patent under any theory, including literal infringement or infringement under the doctrine of equivalents." (Qualcomm Answer/Counterclaims at ¶ 66.)[27] |
| | "Qualcomm does not infringe, has not infringed, and does not and has not induced infringement or contributed to infringement of the '872 patent under any theory, including literal infringement or infringement under the doctrine of equivalents." (Qualcomm Answer/Counterclaims at ¶ 76.)[28] |
| "Qualcomm is entitled to a declaratory judgment that Qualcomm does not infringe the asserted claims of the Subnetwork Patents." (Qualcomm Complaint at ¶ 18) | "Qualcomm requests declaratory judgment that Qualcomm does not infringe, directly or indirectly, any claim of the '379 patent." (Qualcomm Answer/Counterclaims at ¶ 68.) |

[27] In Paragraph 67 of its Answer and Counterclaims, Qualcomm asserts that "No claim of the '379 patent can validly be construed to cover any product made, used, sold, offered for sale, or imported by Qualcomm." (Qualcomm Answer/Counterclaims at ¶ 67.)

[28] In Paragraph 77 of its Answer and Counterclaims, Qualcomm asserts that "No claim of the '872 patent can validly be construed to cover any product made, used, sold, offered for sale, or imported by Qualcomm." (Qualcomm Answer/Counterclaims at ¶ 77.)

EXHIBIT  6-44

| | |
|---|---|
| | "Qualcomm requests declaratory judgment that Qualcomm does not infringe, directly or indirectly, any claim of the '872 patent." (Qualcomm Answer/Counterclaims at ¶ 78.) |

2.  Second Cause of Action (Declaratory Relief—Invalidity).

Qualcomm's claim for a declaratory judgment of invalidity in this case is likewise essentially identical to two of its counterclaims in Santa Ana – and should therefore be dismissed:

| San Diego | Santa Ana |
|---|---|
| "Each of the asserted claims of the Subnetwork Patents is invalid for failure to comply with the conditions and requirements of patentability set forth in the patent statutes, including 35 U.S.C. §§ 101, 102, 103 and/or 112." [The '379 and '872 Patents collectively] (Qualcomm Complaint at ¶ 20.) | "To the extent any claims of the '379 patent is found to be infringed by Qualcomm, that claim of the patent is invalid for failure to comply with one or more provisions of Title 35, United States Code, including but not limited to 35 U.S.C. §§ 101, 102, 103 and/or 112." (Qualcomm Answer/Counterclaims at ¶ 71.) |
| | "To the extent any claims of the '379 patent is found to be infringed by Qualcomm, that claim of the patent is invalid for failure to comply with one or more provisions of Title 35, United States Code, including but not limited to 35 U.S.C. §§ 101, 102, 103 and/or 112." (Qualcomm Answer/Counterclaims at ¶ 81.) |
| "Qualcomm is entitled to a declaratory judgment that each of the asserted claims in the Subnetwork Patents is invalid." (Qualcomm Complaint at ¶ 21.) | "Qualcomm requests declaratory judgment that to the extent any claims of the '379 patent is found to be infringed by Qualcomm, those claims of the '379 patent are invalid." (Qualcomm Answer/Counterclaims at ¶ 72.) |

McKENNA LONG &
ALDRIDGE LLP
ATTORNEYS AT LAW
SAN DIEGO

15

-2/4-

05 CV 1662

EXHIBIT G-45

| | "Qualcomm requests declaratory judgment that to the extent any claims of the '872 patent is found to be infringed by Qualcomm, those claims of the '872 patent are invalid." (Qualcomm Answer/Counterclaims at ¶ 82.) |
| --- | --- |

3.   Third Cause of Action (Declaratory Relief—Inequitable Conduct).

Qualcomm's Third Cause of Action pleads inequitable conduct, and is strikingly similar to its Eighth Affirmative Defense raised in the ITC.  While Qualcomm did not plead this as a counterclaim in Santa Ana, it is a compulsory counterclaim in that case under Rule 13.  *See* FED. R. CIV. P. 13(a); *see also Polymer Industrial Products Co. v. Bridgestone/Firestone, Inc.*, 347 F.3d 935, 938 (Fed. Cir. 2003) (holding as uniform national rule in patent cases that a claim for a declaration of noninfringement makes a counterclaim for patent infringement compulsory); *Hydranautics v. FilmTec Corp.*, 70 F.3d 533, 536 (9th Cir. 1995) (answer must state as counterclaim a claim that "arises out of the same transaction or occurrence"); *Competitive Technologies v. Fujitsu Ltd.*, 286 F. Supp. 2d 1118, 1135-39 (N.D. Cal. 2003) (holding that counterclaims are compulsory when they are based on the same "transaction or occurrence" as plaintiff's causes of action or defendant's affirmative defenses).  It should be dismissed for the reasons discussed above.

| San Diego | ITC |
| --- | --- |
| The '872 patent is unenforceable due to inequitable conduct of applicants and patentees before the United States Patent and Trademark Office. (Qualcomm Complaint at ¶ 23.) | The '872 patent is unenforceable due to inequitable conduct of Complainant's patentees and applicants before the United States Patent and Trademark Office.  The application which led to the '872 patent was |

EXHIBIT  G-46

| | | |
|---|---|---|
| 1 | The application which led to the '872 patent was subject to statutory double patenting rejection and a non-statutory double patenting rejection. That Applicant was obligated, but failed, to disclose to the examiner not only the patent it was aware of and which triggered the double patenting rejection, U.S. Patent No. 6,006,100, but also the prior art to that patent which led to multiple office action rejections. The applicants failed to comply with their obligations. (Qualcomm Complaint at ¶ 24.) | subject to statutory double patenting rejection and a non-statutory double patenting rejection. That Applicant was obligated, but failed, to disclose to the examiner not only the patent it was aware of and which triggered the double patenting rejection, U.S. Patent No. 6,006,100, but also the prior art to that patent which led to multiple office action rejections. (ITC Response, ¶ 137.) |
| 10 11 12 | Qualcomm is entitled to declaratory judgment that all the claims of the '872 patent are invalid, void and unenforceable. (Qualcomm Complaint at ¶ 25.) | |

4.   Fourth Cause of Action (Declaratory Relief—Implied License by Legal Estoppel).

Qualcomm's Fourth Cause of Action alleges that it is entitled to declaratory relief "that it has an implied license by legal estoppel to use, or promote the use of, or contribute to the system(s) or method(s) allegedly described in the Subnetwork Patents."[29] (Qualcomm Complaint at ¶ 31.) Qualcomm's claim is based, in part, on allegations that "Broadcom, with full knowledge, granted Qualcomm the right to use, or promote the use of, the system(s) or method(s) allegedly claimed in the Subnetwork Patents" and that "Broadcom is trying to negate Qualcomm's rights by use of later-acquired patents." (Qualcomm Complaint at ¶¶ 28, 30.) There can be no serious dispute that this claim arises out of the same transaction or occurrence as Broadcom's claims that Qualcomm infringes those same patents. See id. Qualcomm's Fourth Cause of Action is a

---

[29] Qualcomm's Sixth Affirmative Defense in the Santa Ana Case also alleges that "Qualcomm has an implied license to use the technology claimed in one or more of the patents in issue." (Qualcomm Answer/Counterclaims at ¶ 35.)

EXHIBIT  G-47

1    compulsory counterclaim in the Santa Ana Case action and should, therefore, be

2    dismissed.

3         5.    <u>Fifth Cause of Action (Declaratory Relief—Implied License by</u>

4              <u>Equitable Estoppel).</u>

5       Qualcomm's Fifth Cause of Action requests a declaratory judgment that "it has an

6    implied license by equitable estoppel to use, or promote the use of, or contribute to the

7    system(s) or method(s) allegedly described in the Subnetwork Patents." (Qualcomm

8    Complaint at ¶ 34.) This claim also arises out of the same transaction or occurrence as

9    Broadcom's claims that Qualcomm infringes the Wireless Subnetwork Patents. *See id.*

10    The Fifth Cause of Action is a compulsory counterclaim in the Santa Ana Case and

11    should, therefore, be dismissed.

12         6.    <u>Sixth Cause of Action (License).</u>

13       As the side-by-side comparison below shows, Qualcomm's Sixth Cause of Action

14    (License) in this case is substantively identical to its Sixth Affirmative Defense in Santa

15    Ana. As a matter of law (and logic) a claim for a declaratory judgment that a party has a

16    license to practice a patent surely arises out of the same transaction or occurrence as the

17    infringement claim that gives rise to the defense, and is, therefore, a compulsory

18    counterclaim. *See id.* This claim should, therefore, be dismissed

19

| San Diego | Santa Ana |
|---|---|
| "Qualcomm and Broadcom are members of the Bluetooth Special Interest Group (SIG) trade association.  The membership rules of the Bluetooth SIG require that members, including Broadcom, must allow other members to practice Bluetooth technology royalty-free." (Qualcomm Complaint at ¶ 36.) | "Qualcomm, Broadcom, Samsung, Motorola and LG Electronics are members of the Bluetooth Special Interest Group (SIG) trade association.  The membership rules of the Bluetooth SIG require that members, such as Broadcom, must allow other members to practice Bluetooth technology royalty-free.  Without admitting |

EXHIBIT G-48

| | |
|---|---|
| "Without admitting that Qualcomm or its products practice what is claimed in the Wireless Subnetwork Patents, to the extent that the practice of Bluetooth technology would require practice of such patents, that practice is licensed, royalty-free, according to the terms of the Bluetooth SIG." (*Qualcomm Complaint at ¶ 37.*) | that Qualcomm or its products practice what is claimed in the '379 and '872 patent, to the extent that the practice of Bluetooth technology would require practice of such patents, that practice is licensed, royalty-free, according to the terms of the Bluetooth SIG distributors, and customers have an express license to practice those patents." (Qualcomm Counterclaims at ¶ 37.) |
| "Qualcomm is entitled to declaratory judgment that it has a license to use, or promote the use of, or contribute to the system(s) or method(s) allegedly described in the Subnetwork Patents, to the extent those patents describe the practice of Bluetooth technology." (Qualcomm Complaint at ¶ 38.) | |

C.    There Is No Exception to the "First To File" Rule When a Forum Selection Clause Is Involved.

Qualcomm's newly-minted contention that Broadcom's Santa Ana and ITC claims are "inextricably intertwined" with a certain agreement – and therefore are subject to the agreement's forum selection clause – changes absolutely nothing.  It is well settled that the court *in which the first action is filed* should decide the effect, if any, of the forum selection clause and transfer the case if necessary.  The defendant may not turn to a second court, even if mentioned in the forum selection clause, to grab the case away. "The remedy for a party who is called to defend a complaint in a forum other than the one designated by the forum selection clause is by petition to the court where the action was brought for change of venue." *E. & J. Gallo Winery v. Andina Licores*, No. CVF05-0101 AWILJO, 2005 WL 1554001, at *9 (E.D. Cal. June 24, 2005).

*Sega of America, Inc. v. Signal Apparel Co.*, 1997 WL 414196, at *1 (N.D. Cal. 1997), is directly on point.  There, a licensing agreement stated that "[a]ny action or proceeding brought to enforce the terms of [that] Agreement shall be brought in … the Northern District of California (if under Federal law)."  *Id.* at *1.  Signal nevertheless

McKenna Long &
Aldridge LLP
Attorneys At Law
San Diego

19                                          05 CV 1662

-48-

EXHIBIT  6-49

1    sued Sega for breach of the agreement in Tennessee.  Sega then sued Signal for breach in

2    California.  Signal moved the Northern District of California to dismiss the case under the

3    "first to file" rule, and the court granted the motion, *notwithstanding that it was the court*

4    *named in the forum selection clause.*  As the Northern District made plain, "[t]he first

5    filed rule demands that the Tennessee court, not this one, decide whether the forum

6    selection of the Licensing Agreement requires transfer or dismissal" of the first-filed

7    action.  *See id.* (*citing Pumpelly v. Cook*, 106 F.R.D. 238, 240 (D.D.C. 1985).).

8    **II.    Qualcomm's Remaining State Law Claims (Causes of Action Seven and Eight)**
9    **Should Be Dismissed For Lack of Jurisdiction.**

10        The Seventh Cause of Action (Breach of Contract—Bluetooth RF Agreement) and

11   the Eighth Cause of Action (Permanent Injunction), which seeks a permanent injunction

12   based upon the breach of contract claim, are both state law claims.  *See Falkowski v.*

13   *Imation Corp.*, 309 F.3d 1123, 1131 (9th Cir. 2002) (characterizing breach of contract

14   claims as "garden variety state law claims").  The Complaint does not and could not

15   suggest that the Court would have jurisdiction over these claims in the absence of the

16   federal claims; on the contrary, it conceded that "[t]his Court has *supplemental*

17   *jurisdiction over the remaining state law claims..."* (Qualcomm Complaint at ¶ 4

18   (emphasis added).)  Because Qualcomm's federal claims should be dismissed, the state

19   law claims (which have no independent basis for federal jurisdiction) should be dismissed

20   as well.  Thus, the Seventh and Eighth Causes of Action should be dismissed as well.

21   **III.   Qualcomm's Third Cause of Action (Declaratory Relief – Inequitable**
22   **Conduct) Should Be Dismissed For the Additional Reason That It Is Not Pled**
23   **With the Requisite Particularity.**

24        The Federal Circuit has characterized the practice of routinely alleging inequitable

25   conduct – such as has been done here – as "an absolute plague," *Burlington Industries,*

26   *Inc. v. Dayco Corp.*, 849 F.2d 1418, 1422 (Fed. Cir. 1988), and it has repeatedly

27   admonished litigants for using inequitable conduct as "a magic incantation to be asserted

28   against every patentee." *FMC Corp. v. Manitowoc Co.*, 835 F.2d 1411, 1415 (Fed. Cir.

1    1987).  In part to deter this practice, the Federal Circuit has required that inequitable

2    conduct claims be pled with particularity.  *See Ferguson Beauregard/Logic Controls,*

3    *Division of Dover Resources, Inc. v. Mega Systems, LLC,* 350 F.3d 1327, 1344 (Fed. Cir.

4    2003) ) ("inequitable conduct ... must be pled with particularity."); *Chiron Corp. v.*

5    *Abbott Laboratories,* 156 F.R.D. 219, 220-21 (N.D. Cal. 1994) ("a plain reading of the

6    Federal Rules, the weight of authority, and sound public policy all require that pleadings

7    which allege inequitable conduct before the PTO comply with Rule 9(b).").

8         Here, Qualcomm's conclusory allegations fall far short of the applicable pleading

9    standard.  Qualcomm's Third Cause of Action (Declaratory Relief—Inequitable Conduct)

10   merely alleges as follows: "The applicants were obligated to disclose to the examiner not

11   only the patent that triggered the double patenting rejection, U.S. Patent No. 6,006,100,

12   but also the prior art to that patent, which led to multiple office action rejections.  The

13   applicants failed to comply with their obligations."  (Qualcomm Complaint at ¶ 24.)

14        Ignoring Fed. R. Civ. P. 9(b), Qualcomm's claim fails to allege at least the

15   following:

16   •    the specific prior art that the applicants allegedly were obligated to disclose;

17   •    the specific one or more of the "multiple office action rejections" it alludes

18        to;

19   •    why the prior art was allegedly material, especially in light of the prior art

20        that was disclosed;

21   •    why the prior art was allegedly non-cumulative of the prior art that was

22        disclosed;

23   •    which of the applicants allegedly knew the prior art was material and non-

24        cumulative, and the source of their alleged knowledge;

25   •    which applicants allegedly intended to deceive the PTO; or

26   •    the source of the alleged "obligation" to disclose all prior art to a patent that

27        leads to a double patenting rejection.

28

EXHIBIT  G-5

1   *See Frazier v. Roessel Cine Photo Tech, Inc.*, 417 F.3d 1230, 1234 (Fed. Cir. 2005)

2   ("Inequitable conduct requires a breach of the duty of candor that is both material and

3   undertaken with intent to deceive the Patent and Trademark Office."); *Syntex (U.S.A.)*

4   *LLC v. Apotex, Inc.*, 407 F.3d 1371, 1384 (Fed. Cir. 2005) (a claim for inequitable

5   conduct is shown by an affirmative misrepresentation of a material fact coupled with an

6   intent to deceive); *Molins PLC v. Textron, Inc.*, 48 F.3d 1172, 1179 (Fed. Cir. 1995)

7   (discussing standards for inequitable conduct).

8      Further, Qualcomm presumes that the applicants had a *per se* obligation to

9   disclose, in the pending application, the prior art cited during the prosecution of the other

10   issued patent, irrespective of whether that prior art was considered material to the pending

11   application. But there is no such obligation. Moreover, in this case, it was the applicants

12   themselves who disclosed the issued patent to the patent examiner and specifically

13   brought the claim similarity to the examiner's attention. In short, Qualcomm's inequitable

14   conduct claim is not only unsupported, but unsupportable.

15                              CONCLUSION

16      Qualcomm's Complaint asserts claims that are (1) duplicative of claims or defenses

17   pending in another federal court, (2) compulsory counterclaims to claims filed months ago

18   and still pending in the other federal court, or (3) state law claims that have no

19   independent basis for being brought in federal court.  It is, at its core, a thinly veiled

20   attempt to contravene the efficient and orderly administration of litigation.  Such

21   gamesmanship should not be rewarded – particularly when Qualcomm could have raised

22   its arguments about the putative forum selection clause in the proper court much earlier

23   and before the parties were in the thick of discovery.

24      For the reasons stated above, this Court should grant Broadcom's Motion to

25   Dismiss this duplicative, later filed case.  This Court should also dismiss Qualcomm's

26   Third Cause of Action (Declaratory Relief—Inequitable Conduct) for the additional

27   reason that it has not been pled with the requisite particularity.  In the alternative, this

28

EXHIBIT  6-52

1    Court should stay this case pending resolution of the prior pending Santa Ana litigation,

2    Case No. SAC05-468-JVS (MLGx) in the Central District of California.

3

4    Dated:  September 2, 2005              WILMER CUTLER PICKERING

5                                          HALE AND DORR LLP

6                                          and

                                           McKENNA LONG & ALDRIDGE LLP

7

8    By: _____

                                           Robert S. Brewer, Jr.

9

10                                         Attorneys for Defendant

                                           BROADCOM CORPORATION

11

12   SD:22138876.1

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

McKENNA LONG &                          23                        05 CV 1662
ALDRIDGE LLP
ATTORNEYS AT LAW
SAN DIEGO                              -52-

EXHIBIT __6-53__

1  William K. West, Jr. (*Pro Hac Vice*)
   Cecilia H. Gonzalez (*Pro Hac Vice*)
2  Bert C. Reiser (*Pro Hac Vice*)
   HOWREY LLP
3  1299 Pennsylvania Avenue, N.W.
   Washington, DC 20004
4  Telephone: (202) 783-0800
   Facsimile: (202) 383-6610
5  Email: westw@howrey.com
   Email: gonzalezc@howrey.com
6  Email: reiserb@howrey.com

7  Peter J. Chassman (*Pro Hac Vice*)
   HOWREY LLP
8  750 Bering Drive
   Houston, TX 77057-2198
9  Telephone: (713) 787-1400
   Facsimile: (713) 787-1440
10 Email: chassmanp@howrey.com

11 Christopher L. Kelley (SBN 166608)
   HOWREY LLP
12 301 Ravenswood Avenue
   Menlo Park, California 94025
13 Telephone: (650) 463-8100
   Facsimile: (650) 463-8400
14 Email: kellyc@howrey.com

15 Gregory S. Cordrey (SBN 190144)
   Elizabeth Hoult Fontaine (SBN 207557)
16 HOWREY LLP
   2020 Main Street
17 Irvine, California 92614
   Telephone: (949) 721-6900
18 Facsimile: (949) 721-6910
   Email: cordreyg@howrey.com
19 Email: fontainee@howrey.com

20 Attorneys for Defendant and Counterclaimant
   QUALCOMM INCORPORATED

21

22               UNITED STATES DISTRICT COURT
                 CENTRAL DISTRICT OF CALIFORNIA
23                    SOUTHERN DIVISION

24 BROADCOM CORPORATION,          )  Case No. SACV05-467-JVS (MLGx)
                                  )
25            Plaintiff,          )  ANSWER AND COUNTERCLAIMS OF
                                  )  DEFENDANT QUALCOMM
26    vs.                         )  INCORPORATED AND DEMAND FOR
                                  )  JURY TRIAL
27 QUALCOMM INCORPORATED,         )
                                  )
28            Defendant.          )

HOWREY LLP

DM 1053325743 v1

**EXHIBIT** _3_ _-53-_

**EXHIBIT** _6-54_

| | | |
|---|---|---|
| 1 | QUALCOMM INCORPORATED, | ) |
| 2 | Counterclaimant, | ) |
| 3 | vs. | ) |
| 4 | BROADCOM CORPORATION, | ) |
| 5 | Counterdefendant. | ) |
| 6 | | ) |

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

HOWREY LLP

-2-

DM_US\8225743.v1

EXHIBIT 6-55

07/11/05   14:45   HOWREY SIMON → 949 760 5200   NO. 402   P015/030

1    Defendant Qualcomm Incorporated ("Qualcomm") hereby answers the complaint filed by

2  Plaintiff Broadcom Corporation ("Broadcom").[1]   Qualcomm hereby responds to the numbered

3  paragraphs of the complaint, and in doing so denies the allegations of the complaint except as

4  specifically stated:

5

6                                   **COMPLAINT**

7        1.     Qualcomm admits that Broadcom complains as set forth in its complaint.

8                                   **THE PARTIES**

9        2.     Qualcomm admits that Broadcom is a California corporation with its principal place of

10  business at 16215 Alton Parkway, Irvine, California 92618.  Qualcomm is without sufficient

11  knowledge or information to form a belief as to the truth of the remaining allegations contained in

12  paragraph 2.

13       3.     Qualcomm admits that it is a Delaware corporation with its principal place of business

14  at 5775 Morehouse Drive, San Diego, California 92121.

15

16                          **JURISDICTION AND VENUE**

17       4.     Qualcomm admits that this Court has jurisdiction over the subject matter of this patent

18  infringement claim pursuant to 35 U.S.C. §§ 1 et seq., and 28 U.S.C. § 1338.

19       5.     Qualcomm denies that venue is proper in this judicial district pursuant to 28 U.S.C. §§

20  1391(b), 1391(c) and 1400(b).  Qualcomm also asserts that pursuant to 28 U.S.C. § 1404(a) this case

21  should be transferred to the United States District Court for the Southern District of California.

22

23

24  [1] Qualcomm intends to move this Court to stay this action, Case No. SACV05-467-JVS, pursuant to 28 U.S.C. § 1659 and
    this Court's inherent authority to control its docket, while a parallel action on five other patents asserted by Broadcom in the
25  same dispute proceeds at the International Trade Commission ("ITC").  Qualcomm requested opposing counsel for an
    extension of time to answer Broadcom's Complaint until the Court resolved the motion to stay.  If the Court granted the
26  stay, *Qualcomm would answer the Complaint upon conclusion of the ITC action.*  Opposing counsel refused.  Rather than
    burdening this Court with an *ex parte* motion requesting relief, Qualcomm elected to answer Broadcom's complaint.  The
27  answer, however, should not be interpreted as consent that this action should not stayed while the ITC action proceeds or
    that Qualcomm agrees that this action was properly brought in this Court.

28

HOWREY LLP

                                    -1-

DM_US\8225743.v1                  - 55 -

EXHIBIT C-56

# FACTUAL BACKGROUND

6.    Qualcomm admits that this action arises out of disputes between the parties concerning five patents.  Qualcomm denies that it infringes the patents.  Qualcomm lacks sufficient information on which to admit or deny the remaining allegations of paragraph 6 and, on that basis, denies the allegations.

7.    Qualcomm admits that U.S. Patent No. 6,847,686 B2 ("the '686 patent") is entitled "Video Encoding Device" and that the face of the patent indicates (1) that the date of the '686 patent is January 25, 2005; and (2) the listed inventors are Amir Morad and Leonid Yavits.  Qualcomm admits that a document purported to be a true copy of the '686 patent was attached as Exhibit A.  Qualcomm lacks sufficient information on which to admit or deny the remaining allegations of paragraph 7 and, on that basis, denies the allegations.

8.    Qualcomm admits that 6,285,865 B1 ("the '865 patent") is entitled "System and Method for On-Chip Filter Tuning" and that the face of the patent indicates (1) that the date of the '865 patent is September 4, 2001; and (2) the listed inventor is Ronald L. Mahany.  Qualcomm admits that a document purported to be a true copy of the '865 patent was attached as Exhibit B.  Qualcomm lacks sufficient information on which to admit or deny the remaining allegations of paragraph 8 and, on that basis, denies the allegations.

9.    Qualcomm admits that U.S. Patent No. 5,425,051 ("the '051 patent") is entitled "Radio Frequency Communication Network Having Adaptive Parameters" and that the face of the patent indicates (1) that the date of the '051 patent is January 13, 1995; and (2) the listed inventors are Pieter Vorenkamp, Klass Bult, and Frank Carr.  Qualcomm admits that a document purported to be a true copy of the '051 patent was attached as Exhibit C.  Qualcomm lacks sufficient information on which to admit or deny the remaining allegations of paragraph 9, on that basis, denies the allegations.

10.    Qualcomm admits that U.S. Patent No. 5,657,317 ("the '317 patent") is entitled "Hierarchical Communication System Using Premises, Peripheral and Vehicular Local Area Networking" and that the face of the patent indicates (1) that the date of the '317 patent is August 12, 1997; and (2) the listed inventors are Ronald L. Mahany, Guy J. West and Alan G. Bunte.  Qualcomm admits that a document purported to be a true copy of the '317 patent was attached as Exhibit D.

HOWREY LLP

-2-

-56-

EXHIBIT G-57

1  Qualcomm lacks sufficient information on which to admit or deny the remaining allegations of

2  paragraph 10 and, on that basis, denies the allegations.

3       11.    Qualcomm admits that U.S. Patent No. 6,389,010 B1 ("the '010 patent") is entitled

4  "Hierarchical Data Collection Network Supporting Packetized Voice Communications Among

5  Wireless Terminals and Telephones" and that the face of the patent indicates (1) that the date of the

6  '010 patent is May 14, 2002; and (2) the listed inventors are Joseph J. Kubler and Michael D. Morris.

7  Qualcomm admits that a document purported to be a true copy of the '010 patent was attached as

8  Exhibit E.  Qualcomm lacks sufficient information on which to admit or deny the remaining

9  allegations of paragraph 11 and, on that basis, denies the allegations.

10      12.    Qualcomm lacks sufficient information on which to admit or deny the allegations of

11  paragraph 12 and, on that basis, denies the allegations.

12      13.    Qualcomm directs the Court to the patents-in-suit for an accurate recitation of what is

13  stated therein.  Beyond what is stated therein, Qualcomm denies each and every allegation contained in

14  paragraph 13.

15      14.    Qualcomm denies each and every allegation contained in paragraph 14.

16      15.    Qualcomm denies each and every allegation contained in paragraph 15.

17

18                            **COUNT ONE**

19      16.    Qualcomm incorporates by reference its responses to paragraphs 1 through 15 above.

20      17.    Qualcomm denies each and every allegation contained in paragraph 17.

21      18.    Qualcomm denies each and every allegation contained in paragraph 18.

22                            **COUNT TWO**

23      19.    Qualcomm incorporates by reference its responses to paragraphs 1 through 15 above.

24      20.    Qualcomm denies each and every allegation contained in paragraph 20.

25      21.    Qualcomm denies each and every allegation contained in paragraph 21.

26

27                            **COUNT THREE**

28      22.    Qualcomm incorporates by reference its responses to paragraphs 1 through 15 above.

HOWREY LLP

DM_US\8225743.v1

EXHIBIT G-58

23.     Qualcomm denies each and every allegation contained in paragraph 23.

24.     Qualcomm denies each and every allegation contained in paragraph 24.

## COUNT FOUR

25.     Qualcomm incorporates by reference its responses to paragraphs 1 through 15 above.

26.     Qualcomm denies each and every allegation contained in paragraph 26.

27.     Qualcomm denies each and every allegation contained in paragraph 27.

## COUNT FIVE

28.     Qualcomm incorporates by reference its responses to paragraphs 1 through 15 above.

29.     Qualcomm denies each and every allegation contained in paragraph 29.

30.     Qualcomm denies each and every allegation contained in paragraph 30.

## PRAYER FOR RELIEF

Qualcomm denies that Broadcom is entitled to either the requested relief or any other or further relief.

## DEFENSES

Qualcomm hereby asserts the following defenses without undertaking or otherwise shifting any applicable burdens of proof. Qualcomm reserves the right to assert additional defenses, as warranted by facts learned through investigation and discovery.

## FIRST DEFENSE – FAILURE TO STATE A CLAIM

31.     Broadcom's complaint fails to state a claim on which relief can be granted.

## SECOND DEFENSE – NON-INFRINGEMENT

32.     Qualcomm does not infringe, has not infringed, and does not and has not induced infringement or contributed to infringement of U.S. Patent Nos. 6,847,686 B2 ("the '686 patent"); 6,285,865 B1 ("the '865 patent"); 5,425,051 ("the '051 patent"); 5,657,317 ("the '317 patent"); and 6,389,010 B1 ("the '010 patents") (collectively "the patents-in-suit") under any theory, including literal infringement or infringement under the doctrine of equivalents.

HOWREY LLP

DM_US\8225743.v1

-4-

-58-

EXHIBIT—6-59

## THIRD DEFENSE – INVALIDITY

33.    Each claim of the patents-in-suit is invalid for failure to comply with one or more provisions of Title 35, United States Code, including but not limited to 35 U.S.C. §§ 101, 102, 103, and 112.

## FOURTH DEFENSE – PROSECUTION HISTORY ESTOPPEL

34.    By reason of the proceedings in the United States Patent and Trademark Office during the prosecution of the application that resulted in issuance of the patents-in-suit, as shown by the prosecution history thereof, Broadcom is estopped from maintaining that any claim of the patents-in-suit covers any of Qualcomm's articles, equipment, products, or other activity engaged in by Qualcomm.

## SIXTH DEFENSE – LICENSE DEFENSE

35.    Qualcomm has an implied license to use the technology claimed in one or more of the patents in issue.

36.    Qualcomm's customers have an express license to the technology claimed in one or more of the patents in issue.

## COUNTERCLAIMS

Counterclaimant Qualcomm alleges the following counterclaims against Counterdefendant Broadcom:

37.    Qualcomm is a Delaware corporation with its principal place of business at 5775 Morehouse Drive, San Diego, California 92121.

38.    Broadcom is a California corporation with its principal place of business at 16215 Alton Parkway, Irvine, California 92618.

39.    This Court has subject matter jurisdiction over these counterclaims pursuant to 28 U.S.C. §§ 1331, 1338(a), 1367(a), 2201, and 2202, and 35 U.S.C. §§ 1, et seq.

40.    Broadcom has submitted to the personal jurisdiction of this Court.

41.    Venue is proper because Broadcom brought this action and consented to venue.

HOWREY LLP

-5-

DM_US\8225743.v1

## COUNTERCLAIM ONE
### DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE '686 PATENT

42.   Qualcomm repeats and realleges paragraphs 37–41 above as if fully set forth herein.

43.   Upon information and belief, Broadcom purports to be the assignee and lawful owner of all right, title and interest in and to the '686 patent, entitled "Video Encoding Device," which issued on January 25, 2005.

44.   Broadcom has sued Qualcomm in the present action, alleging infringement of the '686 patent.  Thus, an immediate, real and justiciable controversy exists between Qualcomm and Broadcom with respect to the alleged infringement of the '686 patent.

45.   Qualcomm does not infringe, has not infringed, and does not and has not induced infringement or contributed to infringement of the '686 patent under any theory, including literal infringement or infringement under the doctrine of equivalents.

46.   No claim of the '686 patent can validly be construed to cover any product made, used, sold, offered for sale, or imported by Qualcomm.

47.   Qualcomm requests declaratory judgment that Qualcomm does not infringe, directly or indirectly, any claim of the '686 patent.

## COUNTERCLAIM TWO
### DECLARATORY JUDGMENT OF INVALIDITY OF THE '686 PATENT

48.   Qualcomm repeats and realleges paragraphs 37-41 above as if fully set forth herein.

49.   An immediate, real and justiciable controversy exists between Qualcomm and Broadcom with respect to the invalidity of the '686 patent.

50.   To the extent any claim of the '686 patent is found to be infringed by Qualcomm, that claim of the patent is invalid for failure to comply with one or more provisions of Title 35, United States Code, including but not limited to 35 U.S.C. §§ 101, 102, 103, and 112.

51.   Qualcomm requests declaratory judgment that to the extent any claim of the '686 patent is infringed by Qualcomm, those claims of the '686 patent are invalid.

HOWREY LLP

DM US8225743.v1

-6-

-60-

EXHIBIT  6-61

## COUNTERCLAIM THREE
### DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE '865 PATENT

52.     Qualcomm repeats and realleges paragraphs 37-41 above as if fully set forth herein.

53.     Upon information and belief, Broadcom purports to be the assignee and lawful owner of all right, title and interest in and to the '865 patent, entitled "System and Method for On-Chip Filter Tuning," which issued on September 4, 2001.

54.     Broadcom has sued Qualcomm in the present action, alleging infringement of the '865 patent. Thus, an immediate, real and justiciable controversy exists between Qualcomm and Broadcom with respect to the alleged infringement of the '865 patent.

55.     Qualcomm does not infringe, has not infringed, and does not and has not induced infringement or contributed to infringement of the '865 patent under any theory, including literal infringement or infringement under the doctrine of equivalents.

56.     No claim of the '865 patent can validly be construed to cover any product made, used, sold, offered for sale, or imported by Qualcomm.

57.     Qualcomm requests declaratory judgment that Qualcomm does not infringe, directly or indirectly, any claim of the '865 patent.

## COUNTERCLAIM FOUR
### DECLARATORY JUDGMENT OF INVALIDITY OF THE '865 PATENT

58.     Qualcomm repeats and realleges paragraphs 37-41 above as if fully set forth herein.

59.     An immediate, real and justiciable controversy exists between Qualcomm and Broadcom with respect to the invalidity of the '865 patent.

60.     To the extent any claim of the '865 patent is found to be infringed by Qualcomm, that claim of the patent is invalid for failure to comply with one or more provisions of Title 35, United States Code, including but not limited to 35 U.S.C. §§ 101, 102, 103, and 112.

61.     Qualcomm requests declaratory judgment that to the extent any claim of the '865 patent is infringed by Qualcomm, those claims of the '865 patent are invalid.

HOWREY LLP

- 61 -

EXHIBIT 6-62

## COUNTERCLAIM FIVE
## DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE '051 PATENT

62.    Qualcomm repeats and realleges paragraphs 37-41 above as if fully set forth herein.

63.    Upon information and belief, Broadcom purports to be the assignee and lawful owner of all right, title and interest in and to the '051 patent, entitled "Radio Frequency Communication Network Having Adaptive Parameters," which issued on June 13, 1995.

64.    Broadcom has sued Qualcomm in the present action, alleging infringement of the '051 patent. Thus, an immediate, real and justiciable controversy exists between Qualcomm and Broadcom with respect to the alleged infringement of the '051 patent.

65.    Qualcomm does not infringe, has not infringed, and does not and has not induced infringement or contributed to infringement of the '051 patent under any theory, including literal infringement or infringement under the doctrine of equivalents.

66.    No claim of the '051 patent can validly be construed to cover any product made, used, sold, offered for sale, or imported by Qualcomm.

67.    Qualcomm requests declaratory judgment that Qualcomm does not infringe, directly or indirectly, any claim of the '051 patent.

## COUNTERCLAIM SIX
## DECLARATORY JUDGMENT OF INVALIDITY OF THE '051 PATENT

68.    Qualcomm repeats and realleges paragraphs 37-41 above as if fully set forth herein.

69.    An immediate, real and justiciable controversy exists between Qualcomm and Broadcom with respect to the invalidity of the '051 patent.

70.    To the extent any claim of the '051 patent is found to be infringed by Qualcomm, that claim of the patent is invalid for failure to comply with one or more provisions of Title 35, United States Code, including but not limited to 35 U.S.C. §§ 101, 102, 103, and 112.

71.    Qualcomm requests declaratory judgment that to the extent any claim of the '051 patent is infringed by Qualcomm, those claims of the '051 patent are invalid.

HOWREY LLP

EXHIBIT  6-63

**COUNTERCLAIM SEVEN**
**DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE '317 PATENT**

72.     Qualcomm repeats and realleges paragraphs 37-41 above as if fully set forth herein.

73.     Upon information and belief, Broadcom purports to be the assignee and lawful owner of all right, title and interest in and to the '317 patent, entitled "Hierarchical Communication System Using Premises, Peripheral and Vehicular Local Area Networking," which issued on August 12, 1997.

74.     Broadcom has sued Qualcomm in the present action, alleging infringement of the '317 patent.  Thus, an immediate, real and justiciable controversy exists between Qualcomm and Broadcom with respect to the alleged infringement of the '317 patent.

75.     Qualcomm does not infringe, has not infringed, and does not and has not induced infringement or contributed to infringement of the '317 patent under any theory, including literal infringement or infringement under the doctrine of equivalents.

76.     No claim of the '317 patent can validly be construed to cover any product made, used, sold, offered for sale, or imported by Qualcomm.

77.     Qualcomm requests declaratory judgment that Qualcomm does not infringe, directly or indirectly, any claim of the '317 patent.

**COUNTERCLAIM EIGHT**
**DECLARATORY JUDGMENT OF INVALIDITY OF THE '317 PATENT**

78.     Qualcomm repeats and realleges paragraphs 37-41 above as if fully set forth herein.

79.     An immediate, real and justiciable controversy exists between Qualcomm and Broadcom with respect to the invalidity of the '317 patent.

80.     To the extent any claim of the '317 patent is found to be infringed by Qualcomm, that claim of the patent is invalid for failure to comply with one or more provisions of Title 35, United States Code, including but not limited to 35 U.S.C. §§ 101, 102, 103, and 112.

81.     Qualcomm requests declaratory judgment that to the extent any claim of the '317 patent is infringed by Qualcomm, those claims of the '317 patent are invalid.

HOWREY LLP

DM_US\8225743.v1

EXHIBIT  G-64

## COUNTERCLAIM NINE
### DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE '010 PATENT

82.     Qualcomm repeats and realleges paragraphs 37-41 above as if fully set forth herein.

83.     Upon information and belief, Broadcom purports to be the assignee and lawful owner of all right, title and interest in and to the '010 patent, entitled "Hierarchical Data Collection Network Supporting Packetized Voice Communications Among Wireless Terminals and Telephones," which issued on May 14, 2002.

84.     Broadcom has sued Qualcomm in the present action, alleging infringement of the '010 patent.  Thus, an immediate, real and justiciable controversy exists between Qualcomm and Broadcom with respect to the alleged infringement of the '010 patent.

85.     Qualcomm does not infringe, has not infringed, and does not and has not induced infringement or contributed to infringement of the '010 patent under any theory, including literal infringement or infringement under the doctrine of equivalents.

86.     No claim of the '010 patent can validly be construed to cover any product made, used, sold, offered for sale, or imported by Qualcomm.

87.     Qualcomm requests declaratory judgment that Qualcomm does not infringe, directly or indirectly, any claim of the '010 patent.

## COUNTERCLAIM TEN
### DECLARATORY JUDGMENT OF INVALIDITY OF THE '010 PATENT

88.     Qualcomm repeats and realleges paragraphs 37-41 above as if fully set forth herein.

89.     An immediate, real and justiciable controversy exists between Qualcomm and Broadcom with respect to the invalidity of the '010 patent.

90.     To the extent any claim of the '010 patent is found to be infringed by Qualcomm, that claim of the patent is invalid for failure to comply with one or more provisions of Title 35, United States Code, including but not limited to 35 U.S.C. §§ 101, 102, 103, and 112.

91.     Qualcomm requests declaratory judgment that to the extent any claim of the '010 patent is infringed by Qualcomm, those claims of the '010 patent are invalid.

HOWREY LLP

-10-

DM_US\8225743.v1

EXHIBIT  6-65

## PRAYER FOR RELIEF ON QUALCOMM'S COUNTERCLAIMS

WHEREFORE, Qualcomm prays for the following relief:

1.      that any and all relief requested by Broadcom, as set forth in the Prayer for Relief of the Complaint, be denied and that the Complaint be dismissed with prejudice;

2.      that Qualcomm have judgment on its Counterclaims, including that the Court declare the '686, '865, '051, '317, and '010 patents invalid and that this Court declare that Qualcomm has not infringed, directly or contributorily, any claims of the '686, '865, '051, '317, and '010 patents; nor has Qualcomm induced or caused others to infringe, directly or indirectly, any claims of the '686, '865, '051, '317, and '010 patents;

3.      that this case be declared exceptional pursuant to 35 U.S.C. §285 and that cost of this action and their attorneys' fees be awarded to Qualcomm;

4.      that this Court grant such other and further relief to Qualcomm as this Court may deem just and equitable.

## JURY DEMAND

Qualcomm demands a trial by jury on all issues triable of right by a jury.

Dated: July 11, 2005                        HOWREY LLP


                                    By: _Elizabeth Hoult Fontaine_
                                        ELIZABETH HOULT FONTAINE

                                        Attorneys for Defendant
                                        QUALCOMM INCORPORATED

HOWREY LLP

-11-

-65-

DM_US\8225743.v1

EXHIBIT  6-66

**PROOF OF SERVICE**

STATE OF CALIFORNIA       )    ss.:
                           )
COUNTY OF ORANGE         )

     I am employed in the County of Orange, State of California.  I am over the age of 18 and not a party to the within action.  My business address is 2020 Main Street, Suite 1000, Irvine, California 92614.

     On July 11, 2005, I served on the interested parties in said action the within:

*ANSWER AND COUNTERCLAIMS OF DEFENDANT QUALCOMM INCORPORATED AND DEMAND FOR JURY TRIAL*

     by placing a true copy thereof in a sealed envelope(s) addressed as stated below and causing such envelope(s) to be deposited as indicated below.

Layn R. Phillips
Michael G. Ermer
Andra Barmash Greene
IRELL & MANELLA LLP
840 Newport Center Dr., Ste. 400
New Port Beach, CA 92660-6324
Facsimile: 949/760-5200

William F. Lee
Richard O'Neill
WILMER CUTLER PICKERING HALE AND
    DORR LLP
60 State Street
Boston, MA 92109
Facsimile: 617/526-5000

James L. Quarles III
Thomas Olson
Maria K. Vento
WILMER CUTLER PICKERING HALE AND
    DOOR LLP
1455 Pennsylvania Ave., N.W.
Washington, D.C. 20004
Facsimile: 202/942-8484

   [X]     (FEDERAL EXPRESS) I am readily familiar with this firm's practice of collection and processing of Federal Express mail.  Under that practice, the Federal Express mail would be deposited on that same day by Federal Express.

   [X]     (FACSIMILE) I caused the foregoing document to be served by facsimile transmission to each interested party at the facsimile machine telephone number(s) shown as stated above.

     I declare under penalty of perjury that I am employed in the office of a member of the bar of this Court at whose direction the service was made and that the foregoing is true and correct.

     Executed on July 11, 2005, at Irvine, California.

     Sandra J. Wilson                            _____
    (Type or print name)                                (Signature)

HOWREY LLP

DM_US\8225765.v1

- 66 -

EXHIBIT 6-67

William K. West, Jr. (*Pro Hac Vice*)
Cecilia H. Gonzalez (*Pro Hac Vice*)
Bert C. Reiser (*Pro Hac Vice*)
HOWREY LLP
1299 Pennsylvania Avenue, N.W.
Washington, DC 20004
Telephone: (202) 783-0800
Facsimile: (202) 383-6610
Email: westw@howrey.com
Email: gonzalezc@howrey.com
Email: reiserb@howrey.com

Peter J. Chassman (*Pro Hac Vice*)
HOWREY LLP
750 Bering Drive
Houston, TX 77057-2198
Telephone: (713) 787-1400
Facsimile: (713) 787-1440
Email: chassmanp@howrey.com

Christopher L. Kelley (SBN 166608)
HOWREY LLP
301 Ravenswood Avenue
Menlo Park, California 94025
Telephone: (650) 463-8100
Facsimile: (650) 463-8400
Email: kellyc@howrey.com

Gregory S. Cordrey (SBN 190144)
Elizabeth Hoult Fontaine (SBN 207557)
HOWREY LLP
2020 Main Street
Irvine, California 92614
Telephone: (949) 721-6900
Facsimile: (949) 721-6910
Email: cordreyg@howrey.com
Email: fontainee@howrey.com

Attorneys for Defendant and Counterclaimant
QUALCOMM INCORPORATED

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
SOUTHERN DIVISION

| | |
|---|---|
| BROADCOM CORPORATION,<br><br>Plaintiff,<br><br>vs.<br><br>QUALCOMM INCORPORATED,<br><br>Defendant. | Case No. SACV05-468-JVS (MLGx)<br><br>ANSWER AND COUNTERCLAIMS OF DEFENDANT QUALCOMM INCORPORATED AND DEMAND FOR JURY TRIAL |

HOWREY LLP

DM_US\8093319730.v1

**EXHIBIT** ___4___ - 67-

**EXHIBIT** G-68

| | |
|---|---|
| 1 | QUALCOMM INCORPORATED, ) |
| 2 |      Counterclaimant, ) |
| 3 | vs. ) |
| 4 | BROADCOM CORPORATION, ) |
| 5 |      Counterdefendant. ) |
| 6 | |

1

QUALCOMM INCORPORATED,

    Counterclaimant,

vs.

BROADCOM CORPORATION,

    Counterdefendant.

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

HOWREY LLP

DM US\8225730.v1

-2-

-68-

EXHIBIT  6-69

1    Defendant Qualcomm Incorporated ("Qualcomm") hereby answers the complaint filed by

2  Plaintiff Broadcom Corporation ("Broadcom").[1]  Qualcomm hereby responds to the numbered

3  paragraphs of the complaint, and in doing so denies the allegations of the complaint except as

4  specifically stated:

5

6                                    **COMPLAINT**

7       1.      Qualcomm admits that Broadcom complains as set forth in its complaint.

8                                    **THE PARTIES**

9       2.      Qualcomm admits that Broadcom is a California corporation with its principal place of

10  business at 16215 Alton Parkway, Irvine, California 92618.  Qualcomm is without sufficient

11  knowledge or information to form a belief as to the truth of the remaining allegations contained in

12  paragraph 2.

13      3.      Qualcomm admits that it is a Delaware corporation with its principal place of business

14  at 5775 Morehouse Drive, San Diego, California 92121.

15                                **JURISDICTION AND VENUE**

16      4.      Qualcomm admits that this Court has jurisdiction over the subject matter of this patent

17  infringement claim pursuant to 35 U.S.C. §§ 1 et seq., and 28 U.S.C. § 1338.

18      5.      Qualcomm denies that venue is proper in this judicial district pursuant to 28 U.S.C. §§

19  1391(b), 1391(c) and 1400(b).  Qualcomm also asserts that pursuant to 28 U.S.C. § 1404(a) this case

20  should be transferred to the United States District Court for the Southern District of California.

21

22

23

24  [1] Qualcomm intends to move this Court to stay this action, Case No. SACV05-468-JVS, pursuant to 28 U.S.C. § 1659 and
this Court's inherent authority to control its docket, while a parallel action proceeds at the International Trade Commission
25  ("ITC"). Qualcomm requested opposing counsel for an extension of time to answer Broadcom's Complaint until the Court
resolved the motion to stay. If the Court granted the stay, Qualcomm would answer the Complaint upon conclusion of the
26  ITC action. Opposing counsel refused. Rather than burdening this Court with an ex parte motion requesting relief,
Qualcomm elected to answer Broadcom's complaint. The answer, however, should not be interpreted as consent that this
27  action should not stayed while the ITC action proceeds or that Qualcomm agrees that this action was properly brought in
this Court.

28

HOWREY LLP

DM US\8225730.v1

-1-

-69-

EXHIBIT  G-70

## FACTUAL BACKGROUND

6.      Qualcomm admits that this action arises out of disputes between the parties concerning five patents. Qualcomm denies that it infringes the patents. Qualcomm lacks sufficient information on which to admit or deny the remaining allegations of paragraph 6 and, on that basis, denies the allegations.

7.      Qualcomm admits that U.S. Patent No. 6,374,311 ("the '311 patent") is entitled "Communication Network Having a Plurality of Bridging Nodes which Transmit a Beacon to Terminal Nodes in Power Saving State that It Has Messages Awaiting Delivery" and that the face of the patent indicates (1) that the date of the '311 patent is April 16, 2002; and (2) the listed inventors are Ronald L. Mahany, Robert C. Meier, and Ronald E. Luse. Qualcomm admits that a document purported to be a true copy of the '311 patent was attached as Exhibit A. Qualcomm lacks sufficient information on which to admit or deny the remaining allegations of paragraph 7 and, on that basis, denies the allegations.

8.      Qualcomm admits that U.S. Patent No. 6,714,983 B1 ("the '983 patent") is entitled "Modular, Portable Data Processing Terminal for Use in a Communication Network" and that the face of the patent indicates (1) that the date of the '983 patent is March 30, 2004; and (2) the listed inventors are Steven E. Koenck, Patrick W. Kinney, Ronald L. Mahany, Robert C. Meier, and Phillip Miller. Qualcomm admits that a document purported to be a true copy of the '983 patent was attached as Exhibit B. Qualcomm lacks sufficient information on which to admit or deny the remaining allegations of paragraph 8 and, on that basis, denies the allegations.

9.      Qualcomm admits that U.S. Patent No. 5,682,379 ("the '379 patent") is entitled "Wireless Personal Local Area Network" and that the face of the patent indicates (1) that the date of the '379 patent is October 28, 1997; and (2) the listed inventors are Ronald L. Mahany, Alan G. Bunte, Ronald E. Luse, Guy J. West, and Charles D. Gollnick. Qualcomm admits that a document purported to be a true copy of the '379 patent was attached as Exhibit C. Qualcomm lacks sufficient information on which to admit or deny the remaining allegations of paragraph 9 and, on that basis, denies the allegations.

EXHIBIT  G71

10.     Qualcomm admits that U.S. Patent No. 6,359,872 ("the '872 patent") is entitled "Wireless Personal Local Area Network" and that the face of the patent indicates (1) that the date of the '872 patent is March 19, 2002; and (2) the listed inventors are Ronald L. Mahany, Alan G. Bunte, Ronald E. Luse, Guy J. West, and Charles D. Gollnick.  Qualcomm admits that a document purported to be a true copy of the '872 patent was attached as Exhibit D.  Qualcomm lacks sufficient information on which to admit or deny the remaining allegations of paragraph 10 and, on that basis, denies the allegations.

11.     Qualcomm admits that U.S. Patent No. 6,583,675 B2 ("the '675 patent") is entitled "Apparatus and Method for Phase Lock Loop Gain Control Using Unit Current Sources" and that the face of the patent indicates (1) that the date of the '675 patent is June 24, 2003; and (2) the listed inventor is Ramon A. Gomez.  Qualcomm admits that a document purported to be a true copy of the '675 patent was attached as Exhibit E.  Qualcomm lacks sufficient information on which to admit or deny the remaining allegations of paragraph 11 and, on that basis, denies the allegations.

12.     Qualcomm lacks sufficient information on which to admit or deny the allegations of paragraph 12 and, on that basis, denies the allegations.

13.     Qualcomm directs the Court to the patents-in-suit for an accurate recitation of what is stated therein.  Beyond what is stated therein, Qualcomm denies each and every allegation contained in paragraph 13.

14.     Qualcomm denies each and every allegation contained in paragraph 14.

15.     Qualcomm denies each and every allegation contained in paragraph 15.

### COUNT ONE

16.     Qualcomm incorporates by reference its responses to paragraphs 1 through 15 above.

17.     Qualcomm denies each and every allegation contained in paragraph 17.

18.     Qualcomm denies each and every allegation contained in paragraph 18.

### COUNT TWO

19.     Qualcomm incorporates by reference its responses to paragraphs 1 through 15 above.

20.     Qualcomm denies each and every allegation contained in paragraph 20.

HOWREY LLP

DM_US\8225730.v1

-3-

- 71 -

EXHIBIT  G-72

21.   Qualcomm denies each and every allegation contained in paragraph 21.

## COUNT THREE

22.   Qualcomm incorporates by reference its responses to paragraphs 1 through 15 above.

23.   Qualcomm denies each and every allegation contained in paragraph 23.

24.   Qualcomm denies each and every allegation contained in paragraph 24.

## COUNT FOUR

25.   Qualcomm incorporates by reference its responses to paragraphs 1 through 15 above.

26.   Qualcomm denies each and every allegation contained in paragraph 26.

27.   Qualcomm denies each and every allegation contained in paragraph 27.

## COUNT FIVE

28.   Qualcomm incorporates by reference its responses to paragraphs 1 through 15 above.

29.   Qualcomm denies each and every allegation contained in paragraph 29.

30.   Qualcomm denies each and every allegation contained in paragraph 30.

## PRAYER FOR RELIEF

Qualcomm denies that Broadcom is entitled to either the requested relief or any other or further relief.

## DEFENSES

Qualcomm hereby asserts the following defenses without undertaking or otherwise shifting any applicable burdens of proof.  Qualcomm reserves the right to assert additional defenses, as warranted by facts learned through investigation and discovery.

## FIRST DEFENSE – FAILURE TO STATE A CLAIM

31.   Broadcom's complaint fails to state a claim on which relief can be granted.

## SECOND DEFENSE – NON-INFRINGEMENT

32.   Qualcomm does not infringe, has not infringed, and does not and has not induced infringement or contributed to infringement of U.S. Patent Nos. 6,374,311 ("the '311 patent");

-4-

HOWREY LLP

EXHIBIT 6-73

6,714,983 B1 ("the '983 patent"); 5,682,379 ("the '379 patent"); 6,359,872 ("the '872 patent");

6,583,675 B2 ("the '675 patent") (collectively "the patents-in-suit") under any theory, including literal

infringement or infringement under the doctrine of equivalents.

### THIRD DEFENSE – INVALIDITY

33.    Each claim of the patents-in-suit is invalid for failure to comply with one or more

provisions of Title 35, United States Code, including but not limited to 35 U.S.C. §§ 101, 102, 103,

and 112.

### FOURTH DEFENSE – PROSECUTION HISTORY ESTOPPEL

34.    By reason of the proceedings in the United States Patent and Trademark Office during

the prosecution of the application that resulted in issuance of the patents-in-suit, as shown by the

prosecution history thereof, Broadcom is estopped from maintaining that any claim of the patents-in-

suit covers any of Qualcomm's articles, equipment, products, or other activity engaged in by

Qualcomm.

### SIXTH DEFENSE – LICENSE DEFENSE

35.    Qualcomm has an implied license to use the technology claimed in one or more of the

patents in issue.

36.    Qualcomm's customers have an express license to the technology claimed in one or

more of the patents in issue.

37.    Qualcomm, Broadcom, Samsung, Motorola and LG Electronics are members of the

Bluetooth® Special Interest Group (SIG) trade association.  The membership rules of the Bluetooth®

SIG require that members, such as Broadcom, must allow other members to practice Bluetooth

technology royalty-free.  Without admitting that Qualcomm or its products practice what is claimed in

the '379 and/or '872 patent, to the extent that practice of Bluetooth® technology would require practice

of such patents, that practice is licensed, royalty-free, according to the terms of the Bluetooth®

SIG distributers, and customers have an express license to practice those patents.

HOWREY LLP

DM US\8225730.v1

-5-

- 73 -

EXHIBIT G-74

## COUNTERCLAIMS

Counterclaimant Qualcomm alleges the following counterclaims against Counterdefendant Broadcom:

38. Qualcomm is a Delaware corporation with its principal place of business at 5775 Morehouse Drive, San Diego, California 92121.

39. Broadcom is a California corporation with its principal place of business at 16215 Alton Parkway, Irvine, California 92618.

40. This Court has subject matter jurisdiction over these counterclaims pursuant to 28 U.S.C. §§ 1331, 1338(a), 1367(a), 2201, and 2202, and 35 U.S.C. §§ 1, et seq.

41. Broadcom has submitted to the personal jurisdiction of this Court.

42. Venue is proper because Broadcom brought this action and consented to venue.

## COUNTERCLAIM ONE
## DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE '311 PATENT

43. Qualcomm repeats and realleges paragraphs 38–42 above as if fully set forth herein.

44. Upon information and belief, Broadcom purports to be the assignee and lawful owner of all right, title and interest in and to the '311 patent, entitled "Communication Network Having a Plurality of Bridging Nodes which Transmit a Beacon to Terminal Nodes in Power Saving State that It Has Messages Awaiting Delivery," which issued on April 16, 2002.

45. Broadcom has sued Qualcomm in the present action, alleging infringement of the '311 patent. Thus, an immediate, real and justiciable controversy exists between Qualcomm and Broadcom with respect to the alleged infringement of the '311 patent.

46. Qualcomm does not infringe, has not infringed, and does not and has not induced infringement or contributed to infringement of the '311 patent under any theory, including literal infringement or infringement under the doctrine of equivalents.

47. No claim of the '311 patent can validly be construed to cover any product made, used, sold, offered for sale, or imported by Qualcomm.

48. Qualcomm requests declaratory judgment that Qualcomm does not infringe, directly or indirectly, any claim of the '311 patent.

EXHIBIT G-75

**COUNTERCLAIM TWO**
**DECLARATORY JUDGMENT OF INVALIDITY OF THE '311 PATENT**

49.     Qualcomm repeats and realleges paragraphs 38-42 above as if fully set forth herein.

50.     An immediate, real and justiciable controversy exists between Qualcomm and Broadcom with respect to the invalidity of the '311 patent.

51.     To the extent any claim of the '311 patent is found to be infringed by Qualcomm, that claim of the patent is invalid for failure to comply with one or more provisions of Title 35, United States Code, including but not limited to 35 U.S.C. §§ 101, 102, 103, and 112.

52.     Qualcomm requests declaratory judgment that to the extent any claim of the '311 patent is infringed by Qualcomm, those claims of the '311 patent are invalid.

**COUNTERCLAIM THREE**
**DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE '983 PATENT**

53.     Qualcomm repeats and realleges paragraphs 38-42 above as if fully set forth herein.

54.     Upon information and belief, Broadcom purports to be the assignee and lawful owner of all right, title and interest in and to the '983 patent, entitled "Modular, Portable Data Processing Terminal for Use in a Communication Network," which issued on March 30, 2004.

55.     Broadcom has sued Qualcomm in the present action, alleging infringement of the '983 patent. Thus, an immediate, real and justiciable controversy exists between Qualcomm and Broadcom with respect to the alleged infringement of the '983 patent.

56.     Qualcomm does not infringe, has not infringed, and does not and has not induced infringement or contributed to infringement of the '983 patent under any theory, including literal infringement or infringement under the doctrine of equivalents.

57.     No claim of the '983 patent can validly be construed to cover any product made, used, sold, offered for sale, or imported by Qualcomm.

58.     Qualcomm requests declaratory judgment that Qualcomm does not infringe, directly or indirectly, any claim of the '983 patent.

HOWREY LLP

DM_US\225730.v1

EXHIBIT 6-74

**COUNTERCLAIM FOUR**
**DECLARATORY JUDGMENT OF INVALIDITY OF THE '983 PATENT**

59.    Qualcomm repeats and realleges paragraphs 38-42 above as if fully set forth herein.

60.    An immediate, real and justiciable controversy exists between Qualcomm and Broadcom with respect to the invalidity of the '983 patent.

61.    To the extent any claim of the '983 patent is found to be infringed by Qualcomm, that claim of the patent is invalid for failure to comply with one or more provisions of Title 35, United States Code, including but not limited to 35 U.S.C. §§ 101, 102, 103, and 112.

62.    Qualcomm requests declaratory judgment that to the extent any claim of the '983 patent is infringed by Qualcomm, those claims of the '983 patent are invalid.

**COUNTERCLAIM FIVE**
**DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE '379 PATENT**

63.    Qualcomm repeats and realleges paragraphs 38-42 above as if fully set forth herein.

64.    Upon information and belief, Broadcom purports to be the assignee and lawful owner of all right, title and interest in and to the '379 patent, entitled "Wireless Personal Local Area Network," which issued on October 28, 1997.

65.    Broadcom has sued Qualcomm in the present action, alleging infringement of the '379 patent. Thus, an immediate, real and justiciable controversy exists between Qualcomm and Broadcom with respect to the alleged infringement of the '379 patent.

66.    Qualcomm does not infringe, has not infringed, and does not and has not induced infringement or contributed to infringement of the '379 patent under any theory, including literal infringement or infringement under the doctrine of equivalents.

67.    No claim of the '379 patent can validly be construed to cover any product made, used, sold, offered for sale, or imported by Qualcomm.

68.    Qualcomm requests declaratory judgment that Qualcomm does not infringe, directly or indirectly, any claim of the '379 patent.

HOWREY LLP

-8-

DM_US\8225730.v1

EXHIBIT C-7

**COUNTERCLAIM SIX**
**DECLARATORY JUDGMENT OF INVALIDITY OF THE '379 PATENT**

69.    Qualcomm repeats and realleges paragraphs 38-42 above as if fully set forth herein.

70.    An immediate, real and justiciable controversy exists between Qualcomm and Broadcom with respect to the invalidity of the '379 patent.

71.    To the extent any claim of the '379 patent is found to be infringed by Qualcomm, that claim of the patent is invalid for failure to comply with one or more provisions of Title 35, United States Code, including but not limited to 35 U.S.C. §§ 101, 102, 103, and 112.

72.    Qualcomm requests declaratory judgment that to the extent any claim of the '379 patent is infringed by Qualcomm, those claims of the '379 patent are invalid.

**COUNTERCLAIM SEVEN**
**DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE '872 PATENT**

73.    Qualcomm repeats and realleges paragraphs 38-42 above as if fully set forth herein.

74.    Upon information and belief, Broadcom purports to be the assignee and lawful owner of all right, title and interest in and to the '872 patent, entitled "Wireless Personal Local Area Network," which issued on March 19, 2002.

75.    Broadcom has sued Qualcomm in the present action, alleging infringement of the '872 patent. Thus, an immediate, real and justiciable controversy exists between Qualcomm and Broadcom with respect to the alleged infringement of the '872 patent.

76.    Qualcomm does not infringe, has not infringed, and does not and has not induced infringement or contributed to infringement of the '872 patent under any theory, including literal infringement or infringement under the doctrine of equivalents.

77.    No claim of the '872 patent can validly be construed to cover any product made, used, sold, offered for sale, or imported by Qualcomm.

78.    Qualcomm requests declaratory judgment that Qualcomm does not infringe, directly or indirectly, any claim of the '872 patent.

EXHIBIT G-78

## COUNTERCLAIM EIGHT
### DECLARATORY JUDGMENT OF INVALIDITY OF THE '872 PATENT

79.    Qualcomm repeats and realleges paragraphs 38-42 above as if fully set forth herein.

80.    An immediate, real and justiciable controversy exists between Qualcomm and Broadcom with respect to the invalidity of the '872 patent.

81.    To the extent any claim of the '872 patent is found to be infringed by Qualcomm, that claim of the patent is invalid for failure to comply with one or more provisions of Title 35, United States Code, including but not limited to 35 U.S.C. §§ 101, 102, 103, and 112.

82.    Qualcomm requests declaratory judgment that to the extent any claim of the '872 patent is infringed by Qualcomm, those claims of the '872 patent are invalid.

## COUNTERCLAIM NINE
### DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE '675 PATENT

83.    Qualcomm repeats and realleges paragraphs 38-42 above as if fully set forth herein.

84.    Upon information and belief, Broadcom purports to be the assignee and lawful owner of all right, title and interest in and to the '675 patent, entitled "Apparatus and Method for Phase Lock Loop Gain Control Using Unit Current Sources," which issued on June 24, 2003.

85.    Broadcom has sued Qualcomm in the present action, alleging infringement of the '675 patent. Thus, an immediate, real and justiciable controversy exists between Qualcomm and Broadcom with respect to the alleged infringement of the '675 patent.

86.    Qualcomm does not infringe, has not infringed, and does not and has not induced infringement or contributed to infringement of the '675 patent under any theory, including literal infringement or infringement under the doctrine of equivalents.

87.    No claim of the '675 patent can validly be construed to cover any product made, used, sold, offered for sale, or imported by Qualcomm.

88.    Qualcomm requests declaratory judgment that Qualcomm does not infringe, directly or indirectly, any claim of the '675 patent.

EXHIBIT 6-79

## COUNTERCLAIM TEN
## DECLARATORY JUDGMENT OF INVALIDITY OF THE '675 PATENT

89.    Qualcomm repeats and realleges paragraphs 38-42 above as if fully set forth herein.

90.    An immediate, real and justiciable controversy exists between Qualcomm and Broadcom with respect to the invalidity of the '675 patent.

91.    To the extent any claim of the '675 patent is found to be infringed by Qualcomm, that claim of the patent is invalid for failure to comply with one or more provisions of Title 35, United States Code, including but not limited to 35 U.S.C. §§ 101, 102, 103, and 112.

92.    Qualcomm requests declaratory judgment that to the extent any claim of the '675 patent is infringed by Qualcomm, those claims of the '675 patent are invalid.

## PRAYER FOR RELIEF ON QUALCOMM'S COUNTERCLAIMS

WHEREFORE, Qualcomm prays for the following relief:

1.    that any and all relief requested by Broadcom, as set forth in the Prayer for Relief of the Complaint, be denied and that the Complaint be dismissed with prejudice;

2.    that Qualcomm have judgment on its Counterclaims, including that the Court declare the '311, '983, '379, '872, and '675 patents invalid and that this Court declare that Qualcomm has not infringed, directly or contributorily, any claims of the '311, '983, '379, '872, and '675 patents; nor has Qualcomm induced or caused others to infringe, directly or indirectly, any claims of the '311, '983, '379, '872, and '675 patents;

3.    that this case be declared exceptional pursuant to 35 U.S.C. §285 and that cost of this action and their attorneys' fees be awarded to Qualcomm;

4.    that this Court grant such other and further relief to Qualcomm as this Court may deem just and equitable.

///
///
///

HOWREY LLP

-11-

DM_US\8225730.v1

EXHIBIT G-80

07/11/85. 14:45    HOWREY SIMON → 949 760 5200                    NO.482    P815/858

1                                   JURY DEMAND

2        Qualcomm demands a trial by jury on all issues triable of right by a jury.

3

4   Dated: July 11, 2005                    HOWREY LLP

5

6                                    By:  _Elizabeth Hoult Fontaine_
                                          ELIZABETH HOULT FONTAINE
7

8                                    Attorneys for Defendant
                                     QUALCOMM INCORPORATED
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

HOWREY LLP

                                         -12-

                                       - 86 -

DM_US\8225730.v1

EXHIBIT G-81

07/11/05  14:45   HOWREY SIMON → 949 760 5200                         NO.482  P.016/030

1                          **PROOF OF SERVICE**

2

3   STATE OF CALIFORNIA          }  ss.:

4   COUNTY OF ORANGE             }

5          I am employed in the County of Orange, State of California. I am over the age of 18 and not a
    party to the within action. My business address is 2020 Main Street, Suite 1000, Irvine, California
6   92614.

7          On July 11, 2005, I served on the interested parties in said action the within:

8   ANSWER AND COUNTERCLAIMS OF DEFENDANT QUALCOMM INCORPORATED
    AND DEMAND FOR JURY TRIAL
9
           by placing a true copy thereof in a sealed envelope(s) addressed as stated below and
10  causing such envelope(s) to be deposited as indicated below.

11  Layn R. Phillips                         William F. Lee
    Michael G. Ermer                         Richard O'Neill
12  Andra Barmash Greene                     WILMER CUTLER PICKERING HALE AND
    IRELL & MANELLA LLP                        DORR LLP
13  840 Newport Center Dr., Ste. 400         60 State Street
    New Port Beach, CA 92660-6324            Boston, MA 92109
14  Facsimile: 949/760-5200                  Facsimile: 617/526-5000

15  James L. Quarles III
    Thomas Olson
16  Maria K. Vento
    WILMER CUTLER PICKERING HALE AND
17  DOOR LLP
    1455 Pennsylvania Ave., N.W.
18  Washington, D.C. 20004
    Facsimile: 202/942-8484
19

20

21  [X]   (FEDERAL EXPRESS) I am readily familiar with this firm's practice of collection and
          processing of Federal Express mail. Under that practice, the Federal Express mail would be
22        deposited on that same day by Federal Express.

23  [X]   (FACSIMILE) I caused the foregoing document to be served by facsimile transmission to each
          interested party at the facsimile machine telephone number(s) shown as stated above.
24
           I declare under penalty of perjury that I am employed in the office of a member of the bar of
25  this Court at whose direction the service was made and that the foregoing is true and correct.

26         Executed on July 11, 2005, at Irvine, California.

27      _____              _____
            Sandra J. Wilson                      (Signature)
28         (Type or print name)

HOWREY LLP

DM_US\8225765.v1                        – 81 –

EXHIBIT  G-82

PUBLIC VERSION

## UNITED STATES INTERNATIONAL TRADE COMMISSION
## WASHINGTON D.C.

Before the Honorable Charles E. Bullock
Administrative Law Judge

|  |  |  |
|---|---|---|
| In the Matter of | ) | |
| | ) | |
| CERTAIN BASEBAND PROCESSOR CHIPS | ) | Investigation No. 337-TA-543 |
| AND CHIPSETS, TRANSMITTER AND | ) | |
| RECEIVER (RADIO) CHIPS, POWER | ) | |
| CONTROL CHIPS, AND PRODUCTS | ) | |
| CONTAINING SAME, INCLUDING | ) | |
| CELLULAR TELEPHONE HANDSETS | ) | |

## RESPONSE OF RESPONDENT QUALCOMM INCORPORATED TO THE COMPLAINT AND NOTICE OF INVESTIGATION

Respondent Qualcomm Incorporated ("Qualcomm" or "Respondent") hereby responds to the Complaint filed by Broadcom Corporation ("Broadcom" or "Complainant") on May 19, 2005, in the above captioned investigation and to the Notice of Investigation issued by the United States International Trade Commission ("the Commission") as published in 70 Fed. Reg. 35707-08 on June 21, 2005. Qualcomm responds to the numbered paragraphs of the Complaint as follows:[1]

### I.    INTRODUCTION

1.    Qualcomm admits that Complainant has filed a complaint requesting that the Commission commence an investigation pursuant to Section 337 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1337. Qualcomm denies it is engaged in the unlawful importation and

---

[1] For purposes of clarity and ease of reference, Qualcomm hereby responds to Broadcom's Complaint using the same format and titles Broadcom has chosen. This should not be construed as an admission on Qualcomm's part to any of the facts and/or allegations contained within Broadcom's Complaint.

**EXHIBIT** 5    - 8a -

EXHIBIT C683

sale within the United States of certain integrated circuits (or "chips") and certain products that incorporate those chips.

    2.    Qualcomm admits that it is the proposed Respondent.

    3.    Qualcomm admits that documents purported to be certified copies of U.S. Patent Nos. 6,374,311 B1 ("the '311 patent") and 6,714,983 B1 ("the '983 patent") are attached to the Complaint as Exhibits 1 and 2, respectively. Qualcomm admits that Broadcom accuses certain groups of products of infringing. Qualcomm admits that certain of its products are incorporated into CDMA handsets operating in accordance with the CDMA2000 1xEV-DO wireless technology standard. Qualcomm denies that it owns the CDMA2000 1xEV-DO wireless technology standard. The allegations concerning power control chips and GSM and GPRS wireless technology standards are so vague and ambiguous that Qualcomm is unable to form a response and, on that basis, denies the allegations. Qualcomm denies that its products infringe, directly or indirectly, the '311 and '983 patents. Qualcomm lacks sufficient information on which to admit or deny the remaining allegations of paragraph 3 and, on that basis, denies the remaining allegations of paragraph 3.

    4.    Qualcomm admits that documents purported to be certified copies of U.S. Patent Nos. 5,682,379 ("the '379 patent") and 6,359,872 B1 ("the '872 patent") are attached to the Complaint as Exhibits 3 and 4, respectively. Qualcomm admits that MSM6100 and MSM6500 chips and chipsets are incorporated into cellular telephone handsets and wireless handheld devices. Qualcomm denies that its products infringe, directly or indirectly, the '379 and '872 patents. Qualcomm lacks sufficient information on which to admit or deny the remaining allegations of paragraph 4 and, on that basis, denies the remaining allegations of paragraph 4.

    5.    Qualcomm admits that a document purported to be a certified copy of U.S. Patent No. 6,583,675 ("the '675 patent") is attached to the Complaint as Exhibit 5. Qualcomm admits that Qualcomm has a product called the RTR6300 chip, which is part of the MSM6300 chipset, and that, in certain cases, the MSM6300 chipset is sold for use in cellular telephone handsets. Qualcomm denies that its products infringe, directly or indirectly, the '675 patent. Qualcomm

2

EXHIBIT _G84_

lacks sufficient information on which to admit or deny the remaining allegations of paragraph 5 and, on that basis, denies the remaining allegations of paragraph 5.

6.      Qualcomm admits that Broadcom seeks a permanent exclusion order for Qualcomm baseband processor chips and chipsets, transmitter and receiver (radio) chips, and power control chips, and cellular telephones, wireless handhelds, and other electronic devices that incorporate those chips. Qualcomm also admits that Broadcom seeks a permanent cease and desist order, pursuant to Section 337(f), prohibiting importation into the United States, sales for importation, sales and/or offers for sale within the United States after importation of the accused chips and products containing same. Qualcomm lacks sufficient information on which to admit or deny the ownership interests of Broadcom in the asserted patents, and on that basis, denies those allegations. Qualcomm denies the remaining allegations of paragraph 6.

## II.      THE PARTIES

### A.      Complainant Broadcom Corporation

7.      Qualcomm admits that a document purported to be Broadcom's 2004 Annual Report is attached to the Complaint as Exhibit 6. Qualcomm lacks sufficient information on which to admit or deny the remaining allegations of paragraph 7 and, on that basis, denies the remaining allegations of paragraph 7.

8.      Qualcomm lacks sufficient information on which to admit or deny the allegations of paragraph 8 and, on that basis, denies the allegations.

9.      Qualcomm lacks sufficient information on which to admit or deny the allegations of paragraph 9 and, on that basis, denies the allegations.

10.      Qualcomm lacks sufficient information on which to admit or deny the allegations of paragraph 10 and, on that basis, denies the allegations.

### B.      Respondent Qualcomm Incorporated

11.      Qualcomm admits that it is a Delaware corporation with its principal place of business at 5775 Morehouse Drive, San Diego, CA 92121.

3

EXHIBIT _685_

12.     Qualcomm admits the allegations of paragraph 12, except that it denies that it owns the CDMA2000 1xED-VO wireless technology standard.

13.     Qualcomm admits it imports baseband processor chips and radio chips into the United States and that certain of such chips are incorporated into wireless handsets or other electronic devices.  Qualcomm denies the remaining allegations of paragraph 13.

III.     NON-TECHNICAL DESCRIPTION OF THE PATENTED TECHNOLOGY

A.     Sleep State/Scanning Technology

14.     The allegations of paragraph 14 are so vague and ambiguous that Qualcomm is unable to form a response and, on that basis, denies the allegations.

15.     The allegations of paragraph 15 are so vague and ambiguous that Qualcomm is unable to form a response and, on that basis, denies the allegations.

16.     Qualcomm lacks sufficient information on which to admit or deny the allegations relating to Broadcom's baseband processor chips and, on that basis, denies the allegations.  The remaining allegations of paragraph 16 are legal conclusions to which no response is required.

17.     The allegations of paragraph 17 are legal conclusions to which no response is required.

18.     Qualcomm lacks sufficient information on which to admit or deny the allegations of paragraph 18 and, on that basis, denies the allegations.

19.     Qualcomm lacks sufficient information on which to admit or deny the allegations of paragraph 19 and, on that basis, denies the allegations.

B.     Wireless Subnetwork Technology

20.     The allegations of paragraph 20 are so vague and ambiguous that Qualcomm is unable to form a response and, on that basis, denies the allegations.

21.     The allegations of paragraph 21 are so vague and ambiguous that Qualcomm is unable to form a response and, on that basis, denies the allegations.

4

EXHIBIT  G-86

22.     The allegations of paragraph 22 are so vague and ambiguous that Qualcomm is unable to form a response and therefore denies the allegations of paragraph 22.

23.     Qualcomm admits Bluetooth is a standard that relates to communications. The remaining allegations of paragraph 23 are so vague and ambiguous that Qualcomm is unable to form a response and therefore denies them.

24.     Qualcomm lacks sufficient information on which to admit or deny the allegations of paragraph 24 and, on that basis, denies the allegations.

### C.     Phase Lock Loop Technology

25.     The allegations of paragraph 25 are so vague and ambiguous that Qualcomm is unable to form a response and, on that basis, denies the allegations.

26.     Broadcom's allegations concerning the alleged "inventive" aspects of the '675 patent and what the '675 patent "indicates" constitute legal conclusions to which Qualcomm need not respond. The remaining allegations of paragraph 26 are so vague and ambiguous that Qualcomm is unable to form a response and, on that basis, denies the allegations.

27.     Qualcomm lacks sufficient information on which to admit or deny the allegations of paragraph 27 and, on that basis, denies the allegations.

### IV.     THE PATENTS AT ISSUE

#### A.     Sleep State/Scanning Frequency Patents

##### 1.     The '311 Patent

28.     Qualcomm admits that the '311 patent is entitled "Communication Network Having a Plurality of Bridging Nodes Which Transmit a Beacon to Terminal Nodes in Power Saving State That It Has Messages Awaiting Delivery" and that the face of the patent indicates (1) that the issue date of the '311 patent is April 16, 2002; (2) the listed inventors are Ronald L. Mahany, Robert C. Meier, and Ronald E. Luse. Qualcomm lacks sufficient information on

EXHIBIT  687

which to admit or deny the remaining allegations of paragraph 28 and, on that basis, denies the remaining allegations of paragraph 28.

29.    Qualcomm admits that the face of the '311 patent indicates that the application had a serial number 09/060287.   Qualcomm lacks sufficient information on which to admit or deny the remaining allegations of paragraph 29 and, on that basis, denies the remaining allegations of paragraph 29.

30.    The allegations of paragraph 30 contain legal conclusions as to which no response is required.   To the extent any response is required, Qualcomm denies the allegations of paragraph 30.

31.    Qualcomm admits that documents purported to be certified copies of assignment documents for the '311 patent are attached to the Complaint as Exhibit 8.   Qualcomm lacks sufficient information on which to admit or deny the remaining allegations of paragraph 31 and, on that basis, denies the remaining allegations of paragraph 31.

32.    Qualcomm admits that a document purported to be a list of foreign patents and foreign patent applications corresponding to the '311 patent is set forth in Exhibit 9.   Qualcomm lacks sufficient information on which to admit or deny the remaining allegations of paragraph 32 and, on that basis, denies the remaining allegations of paragraph 32.

33.    Qualcomm lacks sufficient information on which to admit or deny the allegations of paragraph 33 and, on that basis, denies the allegations of paragraph 33.

2.    The '983 Patent

34.    Qualcomm admits that the '983 patent is entitled "Modular, Portable Data Processing Terminal For Use in a Communication Network" and that the face of the patent indicates (1) that the issue date of the '983 patent is March 30, 2004; (2) the listed inventors are Steven E. Koenck, Patrick W. Kinney, Ronald L. Mahany, Robert C. Meier, and Phillip Miller. Qualcomm lacks sufficient information on which to admit or deny the remaining allegations of paragraph 34 and, on that basis, denies the remaining allegations of paragraph 34.

6

EXHIBIT  G-88

35.    Qualcomm admits that the face of the '983 patent indicates that (1) the application had a serial number 08/513,658, (2) the application was filed August 11, 1995. Qualcomm lacks sufficient information on which to admit or deny the remaining allegations of paragraph 35 and, on that basis, denies the remaining allegations of paragraph 35.

36.    The allegations of paragraph 36 contain legal conclusions as to which no response is required. To the extent any response is required, Qualcomm denies the allegations of paragraph 36.

37.    Qualcomm admits that documents purported to be certified copies of assignment documents for the '983 patent are attached to the Complaint as Exhibit 10. Qualcomm lacks sufficient information on which to admit or deny the remaining allegations of paragraph 37 and, on that basis, denies the remaining allegations of paragraph 37.

38.    Qualcomm admits that a document purported to be a list of foreign patents and foreign patent applications corresponding to the '983 patent is set forth in Exhibit 11. Qualcomm lacks sufficient information on which to admit or deny the remaining allegations of paragraph 38 and, on that basis, denies the remaining allegations of paragraph 38.

39.    Qualcomm lacks sufficient information on which to admit or deny the allegations of paragraph 39 and, on that basis, denies the allegations of paragraph 39.

B.    The Wireless Subnetwork Patents

1.    The '379 Patent

40.    Qualcomm admits that the '379 patent is entitled "Wireless Personal Local Area Network" and that the face of the patent indicates (1) that the issue date of the '379 patent is October 28, 1997; (2) the listed inventors are Ronald L. Mahany, Alan G. Bunte, Ronald E. Luse, Guy J. West, and Charles D. Gollnick. Qualcomm lacks sufficient information on which to admit or deny the remaining allegations of paragraph 40 and, on that basis, denies the remaining allegations of paragraph 40.

EXHIBIT _6-89_

41.     Qualcomm admits that the face of the '379 patent indicates that the application had a serial number 500,977.  Qualcomm lacks sufficient information on which to admit or deny the remaining allegations of paragraph 41 and, on that basis, denies the remaining allegations of paragraph 41.

42.     The allegations of paragraph 42 contain legal conclusions as to which no response is required.  To the extent any response is required, Qualcomm denies the allegations of paragraph 42.

43.     Qualcomm admits that documents purported to be certified copies of assignment documents for the '379 patent are attached to the Complaint as Exhibit 12.  Qualcomm lacks sufficient information on which to admit or deny the remaining allegations of paragraph 43 and, on that basis, denies the remaining allegations of paragraph 43.

44.     Qualcomm admits that a document purported to be a list of foreign patents and foreign patent applications corresponding to the '379 patent is set forth in Exhibit 13.  Qualcomm lacks sufficient information on which to admit or deny the remaining allegations of paragraph 44 and, on that basis, denies the remaining allegations of paragraph 44.

45.     Qualcomm lacks sufficient information on which to admit or deny the allegations of paragraph 45 and, on that basis, denies the allegations of paragraph 45.

2.     The '872 Patent

46.     Qualcomm admits that the '872 patent is entitled "Wireless Personal Local Area Network" and that the face of the patent indicates (1) that the issue date of the '872 patent is March 19, 2002; (2) the listed inventors are Ronald L. Mahany, Alan G. Bunte, Ronald E. Luse, Guy J. West, and Charles D. Gollnick.  Qualcomm lacks sufficient information on which to admit or deny the remaining allegations of paragraph 46 and, on that basis, denies the remaining allegations of paragraph 46.

47.     Qualcomm admits that the face of the '872 patent indicates that (1) the application has a serial number 08/959,432 and (2) the application was filed October 28, 1997.  Qualcomm

EXHIBIT C-90

lacks sufficient information on which to admit or deny the remaining allegations of paragraph 47 and, on that basis, denies the remaining allegations of paragraph 47.

48.     The allegations of paragraph 48 contain legal conclusions as to which no response is required. To the extent any response is required, Qualcomm denies the allegations of paragraph 48.

49.     Qualcomm admits that documents purported to be certified copies of assignment documents for the '872 patent are attached to the Complaint as Exhibit 14. Qualcomm lacks sufficient information on which to admit or deny the remaining allegations of paragraph 49 and, on that basis, denies the remaining allegations of paragraph 49.

50.     Qualcomm admits that a document purported to be a list of foreign patents and foreign patent applications corresponding to the '872 patent is set forth in Exhibit 15. Qualcomm lacks sufficient information on which to admit or deny the remaining allegations of paragraph 50 and, on that basis, denies the remaining allegations of paragraph 50.

51.     Qualcomm lacks sufficient information on which to admit or deny the allegations of paragraph 51 and, on that basis, denies the allegations of paragraph 51.

C.     The Phase Lock Loop Patent (the '675 Patent)

52.     Qualcomm admits that the '675 patent is entitled "Apparatus and Method for Phase Lock Loop Gain Control Using Current Sources" and that the face of the patent indicates (1) that the date of the '675 patent is June 24, 2003; (2) the listed inventor is Ramon A. Gomez. Qualcomm lacks sufficient information on which to admit or deny the remaining allegations of paragraph 52 and, on that basis, denies the remaining allegations of paragraph 52.

53.     Qualcomm admits that the face of the '675 patent indicates that (1) the application had a serial number 09/811,611; (2) the application was filed March 20, 2001; (3) has a publication number of 2002/0135428 A1; and (4) the application was published on September 26, 2002. Qualcomm lacks sufficient information on which to admit or deny the remaining allegations of paragraph 53 and, on that basis, denies the remaining allegations of paragraph 53.

9

EXHIBIT G91

54.     The allegations of paragraph 54 contain legal conclusions as to which no response is required.  To the extent any response is required, Qualcomm denies the allegations of paragraph 54.

55.     Qualcomm admits that documents purported to be certified copies of assignment documents for the '675 patent are attached to the Complaint as Exhibit 16.  Qualcomm lacks sufficient information on which to admit or deny the remaining allegations of paragraph 55 and, on that basis, denies the remaining allegations of paragraph 55.

56.     Qualcomm admits that a document purported to be a list of foreign patents and foreign patent applications corresponding to the '675 patent is set forth in Exhibit 17.  Qualcomm lacks sufficient information on which to admit or deny the remaining allegations of paragraph 56 and, on that basis, denies the remaining allegations of paragraph 56.

57.     Qualcomm lacks sufficient information on which to admit or deny the allegations of paragraph 57 and, on that basis, denies the allegations of paragraph 57.

**V.      UNLAWFUL AND UNFAIR ACTS OF PROPOSED RESPONDENT – PATENT INFRINGEMENT**

**A.      Infringement of the Sleep State/Scanning Frequency Patents**

**1.      Infringement of the '311 Patent**

58.     Qualcomm admits that the MSM6500 chip and chipset are designed to operate in accordance with certain communication protocols and/or standards.  Qualcomm denies the remaining allegations of paragraph 58.

59.     Qualcomm admits that documents purported to be photographs of Qualcomm's MSM6500 chipset in an LG VX8000 cellular telephone are attached to the Complaint as Exhibit C to the Declaration of Nelson R. Sollenberger ("Sollenberger (First) Declaration").  Qualcomm admits the documents purported to be printouts from Qualcomm's website related to Qualcomm's MSM6500 chip and chipset are also attached as Exhibit B to the Sollenberger (First) Declaration.

EXHIBIT  G92

Qualcomm lacks sufficient information on which to admit or deny the remaining allegations of paragraph 59 and, on that basis, denies the remaining allegations of paragraph 59.

60.   Qualcomm lacks sufficient information on which to admit or deny the allegations of paragraph 60 and, on that basis, denies the allegations.

61.   Qualcomm admits that the MSM6500 is designed such that it can be incorporated into a cellular telephone under certain circumstances. Qualcomm admits that the MSM6500 Chipset Solution brochure referenced in paragraph 61 states that the MSM6500™ Mobile Station Modem (MSM™) chipset and system software solution is a high-capacity high-speed wireless data solution that supports CDMA 2000® 1X, CDMA2000 1xEV-DO. Qualcomm admits that a claim chart purporting to apply claim 1 of the '311 patent to a representative accused article, and referenced exhibits, are attached to the Complaint as Exhibit E to the Sollenberger (First) Declaration. Qualcomm denies the remaining allegations of paragraph 61. Qualcomm specifically denies that it induces infringement of the '311 patent.

## 2.   Infringement of the '983 Patent

62.   Qualcomm admits that the MSM6250, MSM6255, MSM6275, MSM6280, MSM6300, MSM6500, MSM6550 and MSM6800 chips and chipsets are designed to operate in accordance with specific communication protocols and/or standards under certain circumstances. Qualcomm denies the remaining allegations of paragraph 62, and specifically denies that it induces or contributes to infringement of the '983 patent

63.   Qualcomm admits that documents purported to be photographs of Qualcomm's MSM6500 are attached to the Complaint as Exhibit D to the Declaration of Nelson R. Sollenberger ("the Sollenberger (Second) Declaration"). Qualcomm admits the documents purported to be printouts from Qualcomm's website are also attached as Exhibits B, F, G, H, and K to the Sollenberger (Second) Declaration. Qualcomm lacks sufficient information on which to admit or deny the remaining allegations of paragraph 63 and, on that basis, denies the remaining allegations of paragraph 63.

11

EXHIBIT  C-93

64.    Qualcomm lacks sufficient information on which to admit or deny the allegations of paragraph 64 and, on that basis, denies the allegations.

65.    Qualcomm admits that the MSM6500 is designed to be incorporated into a cellular telephone under certain circumstances. Qualcomm denies the remaining allegations of paragraph 65.

66.    Qualcomm admits that the referenced product description states that Qualcomm's "MSM6500™ Mobile Station Modem (MSM™) chipset and system software solution is a high-capacity, high-speed wireless data solution that supports CDMA2000® 1X, CDMA2000 1xEV-DO  Qualcomm denies the allegations of paragraph 66.

67.    Qualcomm admits that a claim chart purporting to apply claim 1 of the '983 patent to a representative accused article, along with exhibits referenced in the chart, are attached to the Complaint as Exhibit E to the Sollenberger (Second) Declaration.  Qualcomm denies the remaining allegations of paragraph 67.

### B.    Infringement of the Wireless Subnetwork Patents

#### 1.    Infringement of the '379 Patent

68.    Qualcomm admits that the MSM6100 chip and chipset can provide certain aspects of cellular telephone functionality.  Qualcomm denies the remaining allegations of paragraph 68, and specifically denies that it induces infringement of the '379 patent.

69.    Qualcomm admits that it offers and provides certain chipsets having certain communications capabilities.  Qualcomm also admits that it offers and provides a chipset named the MSM6100 chipset.  Qualcomm further admits that documents purported to be photographs a Motorola V710 handset including Qualcomm's MSM6100 chip are attached to the Complaint as Exhibit D to the Declaration of Kevin Cadieux ("the Cadieux Declaration").  Qualcomm admits the documents purported to be a copy of a printout from Qualcomm's website is also attached as Exhibit B to the Cadieux Declaration.  Qualcomm denies the remaining allegations of paragraph 69.

EXHIBIT  G-94

70.  Qualcomm lacks sufficient information on which to admit or deny the allegations of paragraph 70 and, on that basis, denies the allegations.

71.  Qualcomm admits that the MSM6100 is designed for use in cellular telephones under certain circumstances. Qualcomm admits that the referenced MSM6100 Chipset Solution data sheet states that the MSM6100 provides "solutions for global roaming across standards," and includes an "integrated Bluetooth® baseband processor for wireless connectivity to peripherals." Qualcomm denies the remaining allegations of paragraph 71 and denies that it induces infringement of the '379 patent.

72.  Qualcomm admits that a claim chart purporting to apply claim 2 of the '379 patent to a representative accused article, and referenced exhibits, are attached as Exhibit E to the Cadieux Declaration. Qualcomm denies the remaining allegations of paragraph 72.

### 2.  Infringement of the '872 Patent

73.  Qualcomm denies the allegations of paragraph 73.

74.  Qualcomm admits that documents purported to be photographs of Qualcomm's handset are attached to the Complaint as Exhibit D to the Cadieux Declaration. Qualcomm lacks sufficient information on which to admit or deny the remaining allegations of paragraph 74 and, on that basis, denies the remaining allegations of paragraph 74.

75.  Qualcomm lacks sufficient information on which to admit or deny the allegations of paragraph 75 and, on that basis, denies the allegations.

76.  Qualcomm denies the allegations of paragraph 76, and specifically denies that it induces or contributes to infringement of the '872 patent.

77.  Qualcomm admits that a claim chart purporting to apply claim 8 of the '872 patent to a representative accused article, and referenced exhibits, are attached as Exhibit G to the Cadieux Declaration. Qualcomm denies the remaining allegations of paragraph 77,

### C.  Infringement of the Phase Lock Loop Patent (the '675 Patent)

78.  Qualcomm denies the allegations of paragraph 78.

13
- 94 -

EXHIBIT G-95

79.    Qualcomm admits that a document purported to be a sales receipt for purchase of the Samsung SPH-a790 is attached as Exhibit I to the Declaration of Philip H. Sheridan ("the Sheridan Declaration").  Qualcomm lacks sufficient information on which to admit or deny the remaining allegations of paragraph 79 and, on that basis, denies the remaining allegations of paragraph 79.

80.    Qualcomm lacks sufficient information on which to admit or deny the allegations of paragraph 80 and, on that basis, denies the allegations.

81.    The allegations of paragraph 81 contain legal conclusions as to which no response is required.  To the extent any response is required, Qualcomm denies that it infringes the '675 patent.

82.    Qualcomm admits that a claim chart purporting to apply claim 33 of the '675 patent to a representative accused article, and referenced exhibits, are attached as Exhibit F to the Declaration of Ray Gomez.  Qualcomm denies the remaining allegations of paragraph 82.

## VI.    IMPORTATION

### A.    Imported Qualcomm Products that Infringe the Sleep State and Scanning Frequency Patents (the '311 and '983 Patents)

83.    Qualcomm denies the allegations of paragraph 83.

84.    Qualcomm admits that it offers its MSM6500 chipset for sale to manufacturers of handsets and wireless handhelds.  Qualcomm admits the documents purported to be printouts from Qualcomm's website are attached to as Exhibit B to the Sollenberger (First) Declaration and Exhibits B and G to the Sollenberger (Second) Declaration.  Qualcomm denies the remaining allegations of paragraph 84.

85.    Qualcomm admits the document purported to be a sales receipt for the LG VX8000, is contained in Exhibit A to the Sheridan Declaration.  Qualcomm lacks sufficient information on which to admit or deny the allegations of paragraph 85 and, on that basis, denies the allegations.

EXHIBIT  C-96

86.    Qualcomm admits that documents purported to be photographs of a physical casing of the LG VX 8000, and a photograph purportedly of a printed circuit board from the LG VX8000 showing a MSM6500 chipset are included in Exhibit D to the Sheridan Declaration. Qualcomm denies the remaining allegations of paragraph 86.

**B.    Imported Qualcomm Products that Infringe the Wireless Subnetwork Patents (the '379 and '872 Patents)**

87.    Qualcomm denies the allegations of paragraph 87.

88.    Qualcomm admits that Exhibit B to the Cadieux Declaration contains excerpts purported to be from Qualcomm's website.  Qualcomm admits that it offers its MSM6100 chipsets to manufacturers of handsets and wireless handhelds with an expectation that at least some of the MSM6100 chipsets may be used by manufacturers in products manufactured overseas that may be imported for sale within the United States, but Qualcomm denies the remaining allegations of paragraph 88.

89.    Qualcomm admits that a document purported to be a sales receipt for a Motorola V710 is attached as Exhibit E to the Sheridan Declaration.  Qualcomm lacks sufficient information on which to admit or deny the remaining allegations of paragraph 89 and, on that basis, denies the remaining allegations of paragraph 89.

90.    Qualcomm admits that documents purported to be photograph of a packaging and physical casing of the Motorola V710, and a photograph purportedly of a printed circuit board from the Motorola V710 containing the MSM6100 chipset are included in Exhibits F and H to the Sheridan Declaration.  Qualcomm denies the remaining allegations of paragraph 90.

**C.    Imported Qualcomm Products that Infringe the Phase Lock Loop Patents (the '675 Patent)**

91.    Qualcomm denies the allegations of paragraph 91.

92.    Qualcomm admits it offers for sale its RTR6300 chip for sale to manufactures of handsets with an expectation that at least some of the RTR6300 chips may be used by

15

-96-

EXHIBIT  C6-97

manufacturers in products manufactured overseas that may be imported for sale within the United States, but Qualcomm denies the remaining allegations of paragraph 92.

93.     Qualcomm admits that a document purported to be a sales receipt for the Samsung SPH-a790 is attached as Exhibit I to the Sheridan Declaration. Qualcomm lacks sufficient information on which to admit or deny the allegations of paragraph 93 and, on that basis, denies the allegations.

    **D.**    **HTSUS Classification**

94.     Qualcomm admits that Exhibit 25 purports to list item numbers under the Harmonized Tariff Schedules of the United States for the imported baseband processor chips, transmitter and receiver (radio) chips, power control chips, and chipsets, and for products containing those chips. Qualcomm denies the remaining allegations of paragraph 94.

**VII.**    **RELATED LITIGATION**

    **A.**    **Litigation Involving the Wireless Subnetwork Patents**

95.     Qualcomm lacks sufficient information on which to admit or deny the allegations of paragraph 95 and, on that basis, denies the allegations.

96.     Qualcomm lacks sufficient information on which to admit or deny the allegations of paragraph 96 and, on that basis, denies the allegations.

97.     Qualcomm admits that on May 18, 2005, Broadcom filed a complaint against Qualcomm in the United States District Court for the Central District of California, Southern Division, *Broadcom Corporation v. Qualcomm Incorporated*, Case No. SACV05-468 JVS (MLGx), alleging that Qualcomm's devices infringe the '311, '983, '379, '872, and '675 patents.

98.     Qualcomm lacks sufficient information on which to admit or deny the allegations of paragraph 98 and, on that basis, denies the allegations.

EXHIBIT _C-98_

VIII.      DOMESTIC INDUSTRY

     A.      **Domestic Industry Relating to the Sleep State/Scanning Technology Patents**

          1.      **Domestic Industry Relating to the '311 Patent**

99.      Qualcomm lacks sufficient information on which to admit or deny the allegations of paragraph 99 and, on that basis, denies the allegations.

100.      Qualcomm lacks sufficient information on which to admit or deny the allegations of paragraph 100 and, on that basis, denies the allegations.

101.      Qualcomm lacks sufficient information on which to admit or deny the allegations of paragraph 101 and, on that basis, denies the allegations.

102.      Qualcomm admits that a document purported to be a claim chart purporting to apply an exemplary claim of the '311 patent to the BCM4317 chip is attached as Exhibit D to the Declaration of Jeyhan Karaoguz ("the Karaoguz Declaration"). Qualcomm also admits that a physical exhibit purported to be a physical sample of the Broadcom BCM4317 chip is submitted with the Complaint. Qualcomm lacks sufficient information on which to admit or deny the allegations of paragraph 102 and, on that basis, denies the allegations.

103.      Qualcomm admits that the Declaration of Kourosh Kohantes is attached as Confidential Exhibit 22. Qualcomm lacks sufficient information on which to admit or deny the remaining allegations of paragraph 103 and, on that basis, denies the remaining allegations of paragraph 103.

104.      Qualcomm lacks sufficient information on which to admit or deny the allegations of paragraph 104 and, on that basis, denies the allegations.

          2.      **Domestic Industry Relating to the '983 Patent**

105.      Qualcomm lacks sufficient information on which to admit or deny the allegations of paragraph 105 and, on that basis, denies the allegations.

EXHIBIT G-99

106.    Qualcomm lacks sufficient information on which to admit or deny the allegations of paragraph 106 and, on that basis, denies the allegations.

107.    Qualcomm lacks sufficient information on which to admit or deny the allegations of paragraph 107 and, on that basis, denies the allegations.

108.    Qualcomm lacks sufficient information on which to admit or deny the allegations of paragraph 108 and, on that basis, denies the allegations.

109.    Qualcomm admits that a document purported to be a claim chart purporting to apply an exemplary claim of the '983 patent to the BCM2132 chip is attached as Exhibit N to the Sollenberger (Second) Declaration.  Qualcomm also admits that a physical exhibit purported to be a physical sample of the Broadcom BCM2132 chip is submitted with the Complaint. Qualcomm lacks sufficient information on which to admit or deny the remaining allegations of paragraph 109 and, on that basis, denies the remaining allegations of paragraph 109.

110.    Qualcomm lacks sufficient information on which to admit or deny the allegations of paragraph 110 and, on that basis, denies the allegations.

111.    Qualcomm lacks sufficient information on which to admit or deny the allegations of paragraph 111 and, on that basis, denies the allegations.

**B.    Domestic Industry Relating to the Wireless Subnetwork Patents (the '379 and '872 Patents)**

112.    Qualcomm lacks sufficient information on which to admit or deny the allegations of paragraph 112 and, on that basis, denies the allegations.

113.    Qualcomm lacks sufficient information on which to admit or deny the allegations of paragraph 113 and, on that basis, denies the allegations.

114.    Qualcomm lacks sufficient information on which to admit or deny the allegations of paragraph 114 and, on that basis, denies the allegations.

115.    Qualcomm admits that documents purported to be claim charts that purports to apply exemplary claims of the '379 and '872 patents to the BCM2035 chip are attached as Exhibit J and K to the Cadieux Declaration.  Qualcomm also admits that a physical exhibit

EXHIBIT 6-100

purported to be a physical sample of the Broadcom BCM2035 chip is submitted with the Complaint. Qualcomm lacks sufficient information on which to admit or deny the allegations of paragraph 115 and, on that basis, denies the allegations.

116.    Qualcomm lacks sufficient information on which to admit or deny the allegations of paragraph 116 and, on that basis, denies the allegations.

117.    Qualcomm lacks sufficient information on which to admit or deny the allegations of paragraph 117 and, on that basis, denies the allegations.

          C.    **Domestic Industry Relating to the Phase Lock Loop Patent (the '675 Patent)**

118.    Qualcomm lacks sufficient information on which to admit or deny the allegations of paragraph 118 and, on that basis, denies the allegations.

119.    Qualcomm lacks sufficient information on which to admit or deny the allegations of paragraph 119 and, on that basis, denies the allegations.

120.    Qualcomm admits that a document purported to be a claim chart that purports to apply an exemplary claim of the '675 patents to the BCM3440 chip is attached as Exhibit F to the Gomez Declaration. Qualcomm also admits that a physical exhibit purported to be a physical sample of the Broadcom BCM3440 chip is submitted with the Complaint. Qualcomm lacks sufficient information on which to admit or deny the allegations of paragraph 120 and, on that basis, denies the allegations.

121.    Qualcomm lacks sufficient information on which to admit or deny the allegations of paragraph 121 and, on that basis, denies the allegations.

122.    Qualcomm lacks sufficient information on which to admit or deny the allegations of paragraph 122 and, on that basis, denies the allegations.

**IX.    RELIEF**

    Qualcomm denies that Complainant is entitled to the requested relief.

EXHIBIT G-101

## RESPONSE TO NOTICE OF INVESTIGATION

Qualcomm denies violation of § 337 (19 U.S.C. § 1337) by reason of alleged infringement of claims 1-5, 7, 8, 13, 14, and 16-19 of U.S. Letters Patent 6,374,311; claims 1,4, 8, 9, 11, 14, and 17-24 of U.S. Letters Patent 6,714,983; claim 2 of U.S. Letters Patent 5,682,379; claim 8-11, and 13 of U.S. Letters Patent 6,359,872; and claim 33, 35, and 38 of U.S. Letters Patent 6,583,675. Upon information and belief, Qualcomm denies that a domestic industry exists or is in the process of being established as defined in subsection (a)(3) and as required by subsection (a)(2) of § 337 (19 U.S.C. § 1337(a)(2)-(3)).

## AFFIRMATIVE DEFENSES

Without altering the burdens of proof, Qualcomm asserts the following affirmative and other defenses. Qualcomm has not yet had sufficient time and opportunity to collect and review all of the information that may be relevant to the matters raised herein and, furthermore, that discovery of Complainant has only just begun. Qualcomm reserves the right to modify and/or expand these defenses and to take further positions and raise additional defenses as discovery proceeds in this investigation.

### FIRST AFFIRMATIVE DEFENSE

(The asserted claims of the '311 patent are invalid.)

123. The asserted claims of the '311 patent are invalid for failure to meet the requirements of 35 U.S.C. §§ 102, 103, and 112.

124. The asserted claims of the '311 patent are invalid for failure to satisfy the requirements of 35 U.S.C. § 112, first and second paragraphs. On information and belief, the '311 patent fails to satisfy the enablement and written description requirements of section 112. Furthermore, the written description and drawings of the '311 patent are not in such full, clear, concise and exact terms as to enable any person skilled in the art to make and use the same without undue experimentation. On information and belief, the asserted claims are further

EXHIBIT 6-102

invalid for indefiniteness and for failing to distinctly claim what the inventor viewed as his alleged invention.

Qualcomm reserves the right to alter or supplement its defenses with respect to the '311 patent as the investigation proceeds.

### SECOND AFFIRMATIVE DEFENSE

(The asserted claims of the '983 patent are invalid.)

125.   The asserted claims of the '983 patent are invalid for failure to meet the requirements of 35 U.S.C. §§ 102, 103, and 112.

126.   The asserted claims of the '983 patent are invalid for failure to satisfy the requirements of 35 U.S.C. § 112, first and second paragraphs.  On information and belief, the '983 patent fails to satisfy the enablement and written description requirements of section 112.  Furthermore, the written description and drawings of the '983 patent are not in such full, clear, concise and exact terms as to enable any person skilled in the art to make and use the same without undue experimentation.  On information and belief, the asserted claims are further invalid for indefiniteness and for failing to distinctly claim what the inventor viewed as his alleged invention.

Qualcomm reserves the right to alter or supplement its defenses with respect to the '983 patent as the investigation proceeds.

### THIRD AFFIRMATIVE DEFENSE

(The asserted claims of the '379 patent are invalid.)

127.   The asserted claims of the '379 patent are invalid for failure to meet the requirements of 35 U.S.C. § 102, 103, and 112.

128.   The asserted claims of the '379 patent are invalid for failure to satisfy the requirements of 35 U.S.C. § 112, first and second paragraphs.  On information and belief, the '379 patent fails to satisfy the enablement and written description requirements of section 112.  Furthermore, the written description and drawings of the '379 patent are not in such full, clear,

21

EXHIBIT G-103

concise and exact terms as to enable any person skilled in the art to make and use the same without undue experimentation. On information and belief, the asserted claims are further invalid for indefiniteness and for failing to distinctly claim what the inventor viewed as his alleged invention.

Qualcomm reserves the right to alter or supplement its defenses with respect to the '379 patent as the investigation proceeds.

## FOURTH AFFIRMATIVE DEFENSE

### (The asserted claims of the '872 patent are invalid.)

129. The asserted claims of the '872 patent are invalid for failure to meet the requirements of 35 U.S.C. § 102, 103, and 112.

130. The asserted claims of the '872 patent are invalid for failure to satisfy the requirements of 35 U.S.C. § 112, first and second paragraphs. On information and belief, the '872 patent fails to satisfy the enablement and written description requirements of section 112. Furthermore, the written description and drawings of the '872 patent are not in such full, clear, concise and exact terms as to enable any person skilled in the art to make and use the same without undue experimentation. On information and belief, the asserted claims are further invalid for indefiniteness and for failing to distinctly claim what the inventor viewed as his alleged invention.

Qualcomm reserves the right to alter or supplement its defenses with respect to the '872 patent as the investigation proceeds.

## FIFTH AFFIRMATIVE DEFENSE

### (The asserted claims of the '675 patent are invalid.)

131. The asserted claims of the '675 patent are invalid for failure to meet the requirements of 35 U.S.C. § 102, 103, and 112.

EXHIBIT _C-104_

132.    The asserted claims of the '675 patent are invalid for failure to satisfy the requirements of 35 U.S.C. § 112, first and second paragraphs.  On information and belief, the '675 patent fails to satisfy the enablement and written description requirements of section 112.  Furthermore, the written description and drawings of the '675 patent are not in such full, clear, concise and exact terms as to enable any person skilled in the art to make and use the same without undue experimentation.  On information and belief, the asserted claims are further invalid for indefiniteness and for failing to distinctly claim what the inventor viewed as his alleged invention.

Qualcomm reserves the right to alter or supplement its defenses with respect to the '675 patent as the investigation proceeds.

### SIXTH AFFIRMATIVE DEFENSE
#### (Non-Infringement)

133.    Qualcomm does not directly infringe, nor does it contribute to the infringement of, or induce the infringement of any valid claim of the asserted patents.

### SEVENTH AFFIRMATIVE DEFENSE
#### (License)

134.    Qualcomm has an implied license to use the technology described in one or more of the patents in issue.

135.    Importers, distributors, and customers of alleged infringing downstream products have an express license to the technology described in the '311, '983, '379 and '872 patents.

136.    Qualcomm, Broadcom, Samsung, Motorola and LG Electronics are members of the Bluetooth® Special Interest Group (SIG) trade association.  The membership rules of the Bluetooth® SIG require that members, including Broadcom, must allow other members to practice Bluetooth technology royalty-free.  Without admitting that Qualcomm or its products practice what is claimed in the '379 and/or '872 patent, to the extent that practice of Bluetooth®

EXHIBIT G-105

technology would require practice of such patents, that practice is licensed, royalty-free, according to the terms of the Bluetooth® SIG.

## EIGHTH AFFIRMATIVE DEFENSE

### (Inequitable Conduct)

137. The '872 patent is unenforceable due to inequitable conduct of Complainant's patentees and applicants before the United States Patent and Trademark Office. The application which led to the '872 patent was subject to a statutory double patenting rejection and a non-statutory double patenting rejection. The Applicant was obligated, but failed, to disclose to the examiner not only the patent it was aware of and which triggered the double patenting rejection, U.S. Patent No. 6,006,100, but also the prior art to that patent which led to multiple office action rejections.

## NINTH AFFIRMATIVE DEFENSE

### (Laches)

138. Broadcom is time barred under the doctrine of prosecution laches from recovering against Qualcomm because Broadcom, through its predecessor assignees of the patents in suit, unreasonably and unexplainably delayed the prosecution of these patents, including in particular, the '983 patent. Broadcom knew, or should have known, of the alleged infringing acts of Qualcomm prior to the issuance of the asserted patents in suit. In the interim, Qualcomm has invested time and money into building its related business and goodwill. To allow Broadcom to recover now, after its unreasonable delay, would result in material prejudice to Qualcomm.

## TENTH AFFIRMATIVE DEFENSE

### (Estoppel)

139. Broadcom is estopped from maintaining claims of patent infringement against Qualcomm.

24

~ /05 ~

EXHIBIT C6-106

**RESPONDENT'S STATEMENT UNDER 19 C.F.R. § 210.13(b)**

Pursuant to Commission Rule 210.13(b), Qualcomm provides the following information. By providing such information, Qualcomm only intends to supply the requisite data. Qualcomm specifically denies that any of the supplied data refers or relates to any unlawful act under Section 337 or otherwise.

Qualcomm does not itself manufacture the accused products. Rather, the products are made for Qualcomm by a number of third-party fabricators. A list of such fabricators is set forth in Confidential Exhibit A hereto.

To the extent the accused products are imported into the United States they are overwhelmingly imported by third parties as component parts in another product. Qualcomm does itself import limited numbers of accused product. Such importations have taken place under at least the following Harmonized Tariff Schedule numbers: 8525.20.9900; 8542.29.0010; 8542.29.0020; 8542.29.0030. Information regarding the number and value of such imports is set forth in Confidential Exhibit A hereto.

**CONCLUSION**

Wherefore, Qualcomm requests that the Commission:

(a)    determine that Qualcomm has not violated § 337 of the Tariff Act of 1930, as amended;

(b)    deny Complainant's request for a permanent exclusion order and for a cease and desist order;

(c)    determine that Qualcomm has not infringed U.S. Patents Nos. 6,374,311; 6,714,983; 5,682,379; 6,359,872; and 6,583,675.

EXHIBIT G-107

(d) determine that U.S. Patents Nos. 6,374,311; 6,714,983; 5,682,379; 6,359,872; and 6,583,675 are invalid.

(e) determine that there is no domestic industry.

Respectfully submitted,

William K. West, Jr.
Cecilia H. Gonzalez
Bert C. Reiser
HOWREY LLP
1299 Pennsylvania Ave., N.W.
Washington, D.C. 20004
(202) 783-0800

Counsel for
QUALCOMM INCORPORATED

Dated: July 11, 2005

EXHIBIT _G-108_

VERIFICATION OF
QUALCOMM INCORPORATED

I, James Lederer, declare:

I am Senior Vice President, Finance of Qualcomm Incorporated, respondent in this investigation, and I am authorized to make this Verification for and on the Company's behalf. I have read the foregoing RESPONSE OF RESPONDENT QUALCOMM INCORPORATED TO THE COMPLAINT AND NOTICE OF INVESTIGATION and know its contents. The contents thereof are true to the best of my knowledge, except as to those matters stated on information and belief and, as to those matters, I believe them to be true.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Date: July 11, 2005

                                James Lederer
                                Senior Vice President, Finance
                                Qualcomm Incorporated

-108-

EXHIBIT G-109

# EXHIBIT A

EXHIBIT $G$-$110$

PUBLIC VERSION
EXHIBIT A

Confidential Information
In Response To 19 C.F.R. § 210.13(b)

A.   Third party fabricators used by Qualcomm to fabricate products that Qualcomm understands are at issue in this investigation include, [                                                ].

B.   [
                                                                    ]. Based on preliminary reviews of Qualcomm's records, and subject to further review and analysis, Qualcomm states that it imported approximately [                ] that would include such products during Qualcomm's fiscal year 2004 (October 2003 – September 2004), with an approximate value of $[                ].

-110-

## CERTIFICATE OF SERVICE

I, Erika Weinstein, hereby certify that copies of RESPONSE OF RESPONDENT QUALCOMM INCORPORATED TO THE COMPLAINT AND NOTICE OF INVESTIGATION (PUBLIC VERSION), were served this 12th day of July 2005, as follows:

Honorable Marilyn R. Abbott                    Original plus six copies by hand
Secretary
U.S. International Trade Commission
500 E Street, SW, Room 112
Washington, DC 20436

Honorable Charles E. Bullock                   Two copies by hand
Administrative Law Judge
U.S. International Trade Commission
500 E. Street, SW, Room 317
Washington, DC 20436

Karin J. Norton                                One copy by hand
Office of Unfair Import Investigations
U.S. International Trade Commission
500 E. Street, SW, Room 401
Washington, DC 20436

*On Behalf of Complaint Broadcom Corporation:*

William F. Lee                                 One copy by Federal Express
Richard O'Neill                                One copy by E-mail
Wilmer Cutler Pickering Hale and Dorr LLP
60 State Street
Boston, MA 02109

James L. Quarles III                           One copy by hand
Michael D. Esch                                One copy by E-mail
Maria Vento
Wilmer Cutler Pickering Hale and Dorr LLP
1455 Pennsylvania Avenue, N.W.
Washington, DC 20004

Erika J. Weinstein

– *III* –

EXHIBIT G-12

1   William K. West, Jr. (*Pro Hac Vice*)
    Cecilia H. Gonzalez (*Pro Hac Vice*)
2   Bert C. Reiser (*Pro Hac Vice*)
    HOWREY LLP
3   1299 Pennsylvania Avenue, N.W.
    Washington, DC  20004
4   Telephone:  (202) 783-0800
    Facsimile:  (202) 383-6610
5   Email: westw@howrey.com
    Email: gonzalezc@howrey.com
6   Email: reiserb@howrey.com

7   Peter J. Chassman (*Pro Hac Vice*)
    HOWREY LLP
8   750 Bering Drive
    Houston, TX  77057-2198
9   Telephone:  (713) 787-1400
    Facsimile:  (713) 787-1440
10  Email:  chassmanp@howrey.com

11  Christopher L. Kelley (SBN 166608)
    HOWREY LLP
12  301 Ravenswood Avenue
    Menlo Park, California  94025
13  Telephone:  (650) 463-8100
    Facsimile:  (650) 463-8400
14  Email: kellyc@howrey.com

15  Gregory S. Cordrey (SBN 190144)
    Elizabeth Hoult Fontaine (SBN 207557)
16  HOWREY LLP
    2020 Main Street
17  Irvine, California  92614
    Telephone:  (949) 721-6900
18  Facsimile:  (949) 721-6910
    Email: cordreyg@howrey.com
19  Email: fontainee@howrey.com

20  Attorneys for Defendant and Counterclaimant
    QUALCOMM INCORPORATED

21

22                    UNITED STATES DISTRICT COURT
                      CENTRAL DISTRICT OF CALIFORNIA
23                         SOUTHERN DIVISION

24  BROADCOM CORPORATION,                )   Case No. SACV05-467-JVS (RNBx)
                                         )
25                Plaintiff,             )
                                         )   REPLY MEMORANDUM IN
26        vs.                            )   SUPPORT OF QUALCOMM'S
                                         )   MOTION TO CONSOLIDATE CASE
27  QUALCOMM INCORPORATED,               )   NOS. 467 AND 468 AND TO STAY
                                         )   CASE NO. 467
28                Defendant.             )

HOWREY LLP

DM_US\8226665.v2

EXHIBIT _____6_____  -112-

EXHIBIT 6-113

1 | QUALCOMM INCORPORATED,

2 |       Counterclaimant,

3 |   vs.

4 | BROADCOM CORPORATION,

5 |       Counterdefendant.

Date:        August 8, 2005
Time:        1:30 p.m.
Courtroom:  10C
Hon. James V. Selna

HOWREY LLP

DM US\8226665.v2

-113-

EXHIBIT G-114

# TABLE OF CONTENTS

Page

I.   INTRODUCTION ............................................................................. 1

II.  ARGUMENT .................................................................................... 2

    A.   The Inter-Relation of Case Nos. 467 and 468 is Far
       Greater than Broadcom Acknowledges............................................. 2

        1.   Broadcom admits that the same Qualcomm
            products are accused in both cases .......................................... 2

        2.   Broadcom is disingenuous about the substantial
            relationships between the patents asserted in Case
            Nos. 467 and 468........................................................................ 4

    B.   Broadcom Fails to Show How the Requested Stay Would
       Harm It.................................................................................................. 10

        1.   Broadcom exaggerates the length of the requested
            stay............................................................................................... 10

        2.   Broadcom exaggerates its need for quick trial and
            remedy ........................................................................................ 12

    C.   Broadcom's Two-Suit Strategy is an End Run of the
       Statutory Stay Provision ..................................................................... 13

HOWREY LLP

-i-

DM 1150226665.v2

EXHIBIT G215

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

HOWREY LLP

## TABLE OF AUTHORITIES

### CASES

*Alloc, Inc. v. Unilin Décor N.V.,*
    Case No. Civ.A. 03-253-GMS, 2003 WL 21640372 (D. Del. July 11, 2003) .. 13

*Filtrol Corp. v. Kelleher,*
    467 F.2d 242 (Fed. Cir. 1972)............................................................... 12

*Flexsys Americas, LP v. Kumho Tire, U.S.A., Inc.,*
    Case No. 5:05CV156, 2005 WL 1126750 (N.D. Ohio Apr. 29, 2005) ............. 13

*Hybritech Inc. v. Abbott Laboratories,*
    4 U.S.P.Q. 2d 1001 (C.D. Cal. 1987)..................................................... 12

*Intel Corp. v. Broadcom Corp.,*
    172 F. Supp. 2d 478 (D.Del. 2001)......................................................... 5

*Micron Tech., Inc. v. Mosel Vitelic Corp.,*
    1999 U.S. Dist. LEXIS 4792 (D. Idaho 1999).......................................... 13

*Nutrition 21 v. U.S.,*
    930 Fed. Cir. 867, 871 (Fed. Cir. 1991)................................................. 12

*Versa Corp. v. AG-Bag Int'l Ltd.,*
    2001 WL 34046241, 2 (D. Or. 2001)....................................................... 12

### STATUTES

28 U.S.C. § 1337(j)(4)............................................................................ 11

28 U.S.C. § 1659 ............................................................................... 4, 10

19 U.S.C. § 1337(c)............................................................................... 10

EXHIBIT C-116

I.   **INTRODUCTION**

Broadcom's Opposition to Qualcomm's motion is replete with generalities and unsupported, indeed unsupportable, statements by Broadcom.  Illustrative of Broadcom's rhetoric are the following:

- Broadcom alleges without any support, and contrary to Qualcomm's moving papers and applicable statutes, that the stay of Case No. 467 requested by Qualcomm will last until 2008 or longer.  Qualcomm seeks no such stay.  It merely seeks a stay until the ITC's determination in the related ITC investigation becomes final – likely by October 2006.

- Broadcom broadly argues that Case Nos. 467 and 468 are not related, despite the fact that each involves precisely the same Qualcomm products and despite the fact that several of the patents asserted in Case No. 467, including at least the '317 and the '010 patents, describe and/or claim subject matter identical to that described and claimed in at least four of the patents in issue in Case No. 468.

- Broadcom argues that it will be "irreparably prejudiced" and harmed if the requested stay is granted, but offers no evidence concerning the precise nature of such harm.  Indeed, Broadcom does not argue that it sells any product that competes with any Qualcomm product in any relevant market.

- Broadcom argues that it must be free to proceed to trial in Case No. 467, and receive its remedies, including injunction against Qualcomm, as quickly as possible.  However, it is undeniable that Broadcom's success in the ITC (with the attendant exclusion order) would obviate any need for an injunction from this Court.  Moreover, to follow the authority on which Broadcom principally relies for denial of the requested stay, *Micron Tech., Inc. v. Mosel Vitelic Corp.*, would actually result in delay of trial in Case No. 467 until the mandatory stay of Case No. 468 under section 1659 is dissolved; only discovery in Case No. 467 would proceed.  Thus,

HOWREY LLP

-1-

– /16 –

DM_US\8226665.v2

EXHIBIT  G-117

1   Broadcom's reliance on *Micron* demonstrates clearly that what Broadcom

2   actually desires is not a fast remedy, since that can readily be achieved in

3   the ITC, but to force Qualcomm to proceed simultaneously in closely

4   related cases before the ITC and this Court in circumvention of at least the

5   spirit of the mandatory stay provision of section 1659.

6  In sum, nothing in Broadcom's opposition requires denial of the stay requested in

7 Qualcomm's motion. Indeed, Broadcom has failed to meet any material aspect of

8 Qualcomm's motion with anything weightier than mere attorney argument. For these

9 reasons, as detailed further below, Qualcomm respectfully requests that its motion be

10 granted.

11 **II. ARGUMENT**

12  **A. The Inter-Relation of Case Nos. 467 and 468 is Far Greater than**

13    **Broadcom Acknowledges**

14    **1. Broadcom admits that the same Qualcomm products are**

15     **accused in both cases**

16  Broadcom grudgingly admits, as it must, that the *identical* Qualcomm products

17 are accused of infringing the patents asserted in Case Nos. 467 and 468.[1] Broadcom,

18 however, glosses over this fact, calling it "not surprising" and failing to address its

19 profound significance to the instant motion. In brief, the fact that the identical

20 Qualcomm products will be in issue in both cases is important because it illustrates how

21 discovery in each case overlaps with discovery in the other. In the absence of the

22 requested stay, this overlap will lead to needlessly repetitive and costly discovery of

23 Qualcomm witnesses and other resources. Broadcom's discovery of Qualcomm's

24 products will be spread out and, practically speaking, constant over the lives of the

25 cases. Such discovery practice would be wasteful, unduly burdensome, and avoidable.

26

27

28

[1] Broadcom Opp. at 18.

HOWREY LLP

DM_US\8226665.v2

-2-

- 117 -

EXHIBIT G-118

1    In the absence of a stay of Case No. 467, Broadcom will likely seek discovery

2  from Qualcomm with respect to its products at least three separate times. First, as both

3  parties recognize, there will be exhaustive discovery of Qualcomm concerning its

4  products as they relate to the claims asserted in the ITC investigation. Such discovery

5  in the ITC is already underway and will likely be completed by November 18, 2005.[2]

6  Second, Broadcom will seek discovery from the same or substantially the same group of

7  Qualcomm engineers, marketing, sales and other personnel concerning Qualcomm's

8  products as they relate to the patents and claims asserted in Case No. 467. Finally,

9  when the ITC completes its investigation and the stay of Case No. 468 is lifted,

10 Broadcom will come back for a third time to the same or substantially the same groups

11 of Qualcomm personnel for discovery of Qualcomm's products as they relate to claims

12 of the patents in Case No. 468 that were not litigated in the ITC investigation. The same

13 is true for both paper and deposition discovery. The costs associated with such

14 discovery, which includes both the obvious costs of making the requested documents

15 and personnel available to Broadcom, as well as the less easily quantifiable costs of

16 distraction associated with perpetual depositions and document searches, should not be

17 underestimated.

18    Thus, Qualcomm would be subjected to constant and largely repetitive discovery

19 concerning its products from now until after the stay in Case No. 468 is lifted and the

20 case is ready for trial. If anything in this case is "not surprising" it is that the whole

21 point of Broadcom's two-suit strategy before this Court is to keep the pressure on

22 Qualcomm in two jurisdictions on essentially the same issues for as long and as

23 constantly as possible. If it is successful, Broadcom will have defeated the policy aims

24

25

---

26  [2] *See* Joint Proposed Procedural Schedule at 2, attached to the Supplemental Declaration
    of Elizabeth Hoult Fontaine as Exhibit R. The parties jointly submitted this proposed
27  schedule on July 28, 2005, Qualcomm anticipates that in the near future the
    Administrative Law Judge will enter the proposed schedule as an order.
28

HOWREY LLP

- 3 -
~ 118 ~

EXHIBIT _C_ -119

1    of 28 U.S.C. § 1659, which are to protect a respondent in an ITC investigation from

2    precisely such tactics.

3         Should the Court grant a stay of Case No. 467 the discovery needed by Broadcom

4    can be conducted in a more reasonable and less burdensome manner.  There is simply

5    no reason to subject Qualcomm to the sort of perpetual discovery practice threatened by

6    Broadcom's multiple filing tactics.

7              2.    **Broadcom is disingenuous about the substantial relationships**

8                   **between the patents asserted in Case Nos. 467 and 468**

9         Broadcom argues that the patents in the two cases are "directed at different

10   technologies" and "are significantly different" from one case to the other.[3]  In making

11   these arguments Broadcom speaks in exceedingly general terms, focusing on

12   inconsequential statistics instead of the actual specifications and claim terms of the

13   asserted patents.  For example, Broadcom admits that the titles of the patents in issue in

14   both case share a number of key terms, but attempts to trivialize these relationships by

15   offering PTO searches showing that "8,466 patent" have "communication network" or

16   "communication system" in their titles, or that "757 patents" also use the word

17   "wireless."[4]  Whether these statistics are accurate or not is not relevant.  Except for

18   offering general, and transparently self-serving, characterizations of its patents,

19   Broadcom provides no specific facts to support the alleged lack of relationship between

20   the two groups of patents nor to explain the remarkable coincidence that Broadcom

21   claims *all ten* patents are infringed by *the same* Qualcomm "MSM" chips.

22        The real explanation for the related terms in the patent titles is that the patents are,

23   in fact, highly related and that Broadcom's assertions that they are not related are, at

24   best, disingenuous.  For example, although Broadcom admits that some of the patents in

25   issue in Case No. 467 are in the same family of patents as one in issue in Case No. 468,

26   _____

27   [3] Broadcom Opp. at 15.

28   [4] Broadcom Opp. at 17.

HOWREY LLP

DM_US\8226665.v2

-4-

-119-

EXHIBIT __G-120__

1  and even that '317 patent in Case No. 467 is the "grandparent" of the '983 patent

2  asserted in Case No. 468, it again seeks to minimize these relationships by arguing that

3  patents, like human beings, may be in the same family, yet be "very different from"

4  their ancestors.[5]  Broadcom conveniently declines to do any of the heavy lifting of

5  looking at the actual patent drawings, specifications or claims involved.

6       Even a cursory examination of some of the patents asserted in the two cases

7  demonstrates immediately their substantial relatedness.  For example, every single

8  drawing of the '379 and '872 patents (Case No. 468) is *also* contained in the '317 patent

9  (Case No. 467)[6].  Thus, Figures 28A, 28B, 29, 30, 31, 32, 33a, 33b, 33c, 34, 35 and 36

10 of the '317 patent correspond to Figures 1A, 1B, 2, 3, 4, 5, 6A, 6B, 6C, 7, 8 and 9 of the

11 '379 and 872 patents.[7]  The repetition of these figures in the '317 patent clearly

12 illustrates that the subject matter of these patents is certainly very much related.  The

13 inter-relationship of the patents, however, does not stop with the drawings.

14      Broadcom argues that "[t]he ITC patents relate generally to power conservation,

15 networks and subnetworks, and a phase lock loop circuit.  *None* of these same

16 inventions are at issue in the Case No. 467 patents."[8]  This statement is in one sense a

17 truism.  By law, each patent must be granted for a unique invention and "each claim of a

18 patent constitutes a separate invention and gives rise to separate rights."[9]  But the mere

19 fact that patents must be (or, at least should be) directed to different claimed

20 "inventions," does not mean that specific patents are not very closely related.  For

21 example, claim 35 of the '317 patent in issue in Case No. 467 claims the following

22 communication system that includes two separate networks:

23 ────────────────

24 [5] Broadcom Opp. at 16-17.

25 [6] The drawings are identical; only the reference numbers are different.

   [7] *Compare* Ex. E with Exs. J and K.

26 [8] Broadcom Opp. at 15 (emphasis added).

27 [9] *Intel Corp. v. Broadcom Corp.*, 172 F.Supp. 2d 478, 496 (D.Del. 2001) (citing *Jones v.

28 Hardy*, 727 F.2d 1524, 1528 (Fed. Cir. 1984)).

HOWREY LLP

-5-

-120-

DM_US\8226665.v2

EXHIBIT G-121

35.   A *communication system* comprising:

a premises local area *network*;

a spontaneous local area *network*;

a *roaming* computing *device* having *a first radio transceiver*

for communicating with the premises local area network and *a*

*second radio transceiver* for communicating with the

spontaneous local area network;

the roaming computing *device participating as a slave device*

in the premises local area network *while participating as a*

*master device* in the spontaneous local area network.[10]

Claim 2 of the '379 patent, which Broadcom has asserted in Case No. 468 and the ITC,
similarly claims a two-network communication system as follows:

2.   A *communication system* comprising:

a main radio *network*;

a radio *subnetwork*;

a *mobile* network *device* having *a first radio transceiver* for

communicating with the main radio network and *a second*

*radio transceiver* for communicating with the radio

subnetwork;

the mobile network *device participating as a slave device* to

the main radio network *while participating as a master device*

to the radio subnetwork.[11]

Although, the claims reproduced above contain subtly different words in select
places, it cannot be denied that the claims are nonetheless strikingly similar in their

---

[10] Ex. E, claim 35 (emphasis added).
[11] Ex. J, claim 2 (emphasis added).

HOWREY LLP

- 6 -

- 121 -

DM_US\8226665.v2

EXHIBIT G122

1   structure, wording and scope.  Both claim a communication system in which two

2   separate networks function together.  Inspection of the patent specifications shows that,

3   in each case, the networks are "RF" (radio frequency) networks.[12]  Moreover, claim 35

4   specifies a "roaming computing device" while claim 2 claims a "mobile network

5   device."  Again, the specifications reveal that these different terms apply to what

6   Broadcom will contend is essentially a "cell phone" handset in which Qualcomm's

7   "MSM" chips are employed.  Further, in each of claims 35 and 2, the 'mobile' or

8   'roaming' device is subservient in one network while being dominant in the regards to

9   the second network.  Indeed, both claims use *precisely the same terms*, "master" and

10  "slave," to describe and claim this relationship.  Thus, the same or very nearly the same

11  inventions are claimed in the '379 patent at issue in Case No. 468 and the ITC and in the

12  379 patent in issue in Case No. 467.  Clearly, the discovery taken and the arguments

13  *made by the parties, as well as the determinations reached by the Administrative Law*

14  *Judge and the Commission in the ITC concerning the '379 patent* (and '872 patent

15  which, despite Broadcom's obfuscations, is also a "two-network" patent[13]), bear

16  directly on the issues to be litigated and decided by this Court with respect to the '317

17  patent.

18        In addition, the '317 patent (in Case No. 467) also claims and describes methods

19  of operating the claimed communication system in order to reduce power (i.e., battery)

20  consumption of the 'mobile' or 'roaming' device.  For example, claim 47 of the '317

21  patent describes a 'two-network' communication system with power-saving features, as

22  follows:

23        47.   A communication system comprising:

24

25  [12] See '317 patent, Fontaine Decl., Ex. E, Col. 9, lines 36 – 41, Col. 10, lines 5 –14
    ("wireless (radio frequency) links"; "an RF link (binds) with the peripheral device");
26  '379 patent, Fontaine Decl., Ex. J, Col. 5, lines 47 – 49, Col. 8, line 66 to Col. 9, line 8.

    [13] See, e.g., Claim 8 of the '872 patent that is at issue in the ITC. Fontaine Decl., Ex. K,
27  Col. 16, lines 32 – 46 (a "stationary wireless network" and a "roaming wireless
    network").

28

EXHIBIT 6-123

1    a first RF local area network operating using a first

2    communication protocol;

3    a second RF local area network operating using a second

4    communication protocol;

5    a roaming computing device having a single transceiver

6    capable of participating in both the first and second RF local

7    area networks;

8    the roaming computing device participating as a slave device

9    in the first RF local area network pursuant to the first

10    communication protocol while participating as a master device

11    in the second RF local area network pursuant to the second

12    communication protocol; and

13    *the roaming computing device entering a state of low power*

14    *consumption when not communicating with either the first or*

15    *the second RF local area networks.*[14]

16   In particular, the specification at column 53 describes how the use of signals called

17   "HELLO messages" in communications between a base station and the master devices,

18   and between the master and slave devices, facilitate the claimed power saving.[15]  Thus,

19   although the '317 patent is characterized by Broadcom as relating to "memory for

20   storing a plurality of communications protocols and a control processor for managing

21   use with the plurality of protocols,"[16] having nothing to do with power saving, the

22   patent itself clearly claims and describes certain aspects of the use of HELLO messages

23   in the context of power conservation.  The use of such HELLO messages is *also*

24   centrally important to the '311 and '983 patents (in Case No. 468 and the ITC), which

25

---

26   [14] Ex. E, claim 47 (emphasis added).

27   [15] *See e.g.* Ex. E, col. 53, lines 23-56.

28   [16] Broadcom Opp. at 15-16.

HOWREY LLP

- 8 -

-123-

DM_US\8226665.v2

EXHIBIT G-124

1  patents Broadcom acknowledges also relate to power conservation.[17]  Indeed, the '311

2  patent is expressly directed to "A Communication Network Having a Plurality of

3  Bridging Nodes Which Transmit a Beacon to Terminal Nodes *in Power Saving State*

4  *That It Has a Message Awaiting Delivery*," and contains extensive description of the

5  use of HELLO messages in connection with power conservation.[18]  See, also, Claim 1

6  of the '311 patent, which expressly claims a terminal "having a wireless receiver

7  operable in a power saving state".[19]

8         In short, the examples above show that the '317 patent (in Case No. 467) is not

9  only closely related to patents in Case No. 468 and in the ITC, but indeed includes and

10  claims concepts and features described and/or claimed in the '379, '872, '311 and '983

11  patents of Case 468.

12         Similarly, the '010 patent in Case No. 467 is *also* a "two network" patent, like the

13  '379 and '872 patents in Case No. 468, and drawing Figures 28A, 28B, 29A, 30, 31, 32,

14  33A-C, 34, 35, and 36 are *also* identical (except for reference numerals) to Figs. 1A, 1B,

15  2, 3, 4, 5, 6A-C, 7, 8 and 9, respectively, of the '379 and '872 patents, just as in the '317

16  patent.[20]

17         Thus it is clear, despite Broadcom's broad and unsupported denials, that, even on

18  the basis of a preliminary analysis, patents asserted in Case No. 468 and the ITC are

19  *intimately related* to patents in issue in Case No. 467.  The effect of this relatedness, as

20  noted in Qualcomm's opening paper, is that some of the issues that will be decided by

21  the ITC may narrow or even eliminate issues and claims in Case No. 467.  Whether or

22  not this Court is "bound by" the determinations of the Commission, awaiting a result in

23

24

25  [17] Broadcom Opp. at 6.

26  [18] *See e.g.* Ex. H, cols. 3-19.

27  [19] '311 patent, Fontaine Decl., Ex. H, Col. 19, line 56 –to Col. 20, line 9.

28  [20] *Compare* '010 patent, Fontaine Decl., Ex. F, *with* '379 (Fontaine Decl., Ex. J) and
    '872 (Fontaine Decl., Ex. K) patents.

HOWREY LLP

- 9 -

- 124 -

DM_US\8226665.v2

EXHIBIT G 125

1  the ITC investigation before proceeding with Case No. 467 will likely streamline and

2  render more economical discovery and trial of the issues in the case.

3      B.    Broadcom Fails to Show How the Requested Stay Would Harm It

4      Broadcom argues unpersuasively that it will be significantly harmed if the Court

5  grants the stay requested by Qualcomm in its motion. Broadcom's arguments in this

6  connection are typically broad, over-stated and under-supported. As discussed below,

7  Broadcom had grossly exaggerated the length and impact of the stay requested by

8  Qualcomm. Broadcom has not established that prompt issuance of an injunction is

9  actually important to it, given that Broadcom has not shown that it makes a single

10 product that competes with Qualcomm in any relevant market. Finally, the authority on

11 which Broadcom chiefly relies for denial of Qualcomm's motion, *Micron Tech., Inc. v.*

12 *Mosel Vitelic Corp.*, is inconsistent with its position that it needs immediate discovery

13 and trial of Case No. 467. In fact, Broadcom will not be harmed by entry of the

14 requested stay of Case No. 467.

15      1.    Broadcom exaggerates the length of the requested stay

16     Broadcom argues in its Opposition that the stay requested by Qualcomm will last

17 "until 2008 or later,"[21] and that the stay would cripple its ability to enforce its patent

18 rights. Broadcom cites no authority in support of this fiction. Indeed, it appears that

19 Broadcom has not even bothered to read the governing statutory provision. Section

20 1659 provides that a stay entered pursuant thereto shall be in effect "until the

21 determination of the Commission becomes final."[22] Clearly, this period does not

22 include appeal to the Federal Circuit. Section 337 makes plain that the determinations

23 of the Commission may be appealed to the Federal Circuit "within 60 days after the

24 determination becomes final."[23] Thus "final," under both section 337 and section 1659,

25

---

26 [21] Broadcom Opp. at 14.

27 [22] 28 U.S.C. § 1659.

28 [23] 19 U.S.C. § 1337(c).

HOWREY LLP

- 10 -

DM_US\8226665.v2

EXHIBIT  G 126

1  refer to an event occurring before appeal to the Federal Circuit. Indeed, section 337

2  expressly provides that, in the case of a determination of violation of section 337, where

3  the President reviews but does not disapprove of the Commission's determination

4  within the sixty day presidential review period, the determination "shall become final on

5  the day after the close of such period or the day on which the President notifies the

6  Commission of his approval, as the case may be."[24] In the case of a determination of no

7  violation, the Commission's determination is final when issued. Thus, the latest the

8  Commission's determination will become final is sixty days after it issues. In this case,

9  pursuant to the target date established by the Administrative Law Judge in the ITC

10  investigation, the Commission will have completed its investigation by August 22,

11  2006.[25] If there is a determination of violation, that determination will be final within

12  sixty days, or October 22, 2006. Thus, the statutory stay under section 1659 will likely

13  be dissolved on or about October 22, 2006 – a matter of less than fifteen months from

14  now.[26]  Qualcomm has not requested a stay of Case No. 467 longer than that ordered

15  under section 1659 for Case No. 468.

16      Broadcom can hardly argue that the requested stay of fifteen months constitutes a

17  tremendous hardship. Indeed, when compared to some of the cases relied on by

18  Qualcomm for the proposition that an indefinite or lengthy stay can cause harm to a

19  plaintiff, the requested stay amounts to almost nothing at all. For example, in *Filtrol

20  Corp. v. Kelleher*, the district court was found not to have abused its discretion in

21  denying a motion to stay where there had already been "*seven years* of delay" when the

22

23

24

---

25  [24] 28 U.S.C. § 1337(j)(4).

26  [25] See Ex. Q to Fontaine Decl. at 1.

27  [26] Although Qualcomm recognizes that, with a court's permission, parties may agree to
extend a stay through appeal, a stay ordered strictly pursuant to the statutory authority of
section 1659 last only until the Commission's determination becomes final.

28

HOWREY LLP

- 11 -

-126-

EXHIBIT G-127

1 | motion was filed.[27] Inasmuch as no such delay is foreseeable in this instance, *Filtrol*

2 | has no applicability.

3 |         **2.**     **Broadcom exaggerates its need for quick trial and remedy**

4 |      Time and again Broadcom argues that the requested stay should be denied so that

5 | discovery in Case No. 467 can be quickly concluded, the matter tried, and a remedy

6 | enjoining Qualcomm and compensating Broadcom entered as quickly as possible. Yet

7 | Broadcom offers no explanation for why such an injunction is required so quickly.

8 | Broadcom argues that it will be "irreparably prejudiced" if the requested stay is granted,

9 | but offers no evidence that it manufactures any product that actually competes with a

10 | Qualcomm product in any relevant market. For example, in *Versa Corp. v. AG-Bag*

11 | *Int'l Ltd.*, relied on by Broadcom, the plaintiff and defendant competed for the same

12 | sales.[28] Similarly, in *Hybritech, Inc. v. Abbott Laboratories*, also relied on by

13 | Broadcom, the court noted that the parties were in competition for sales of like products

14 | and that the Abbott's sales were exceeding those of the plaintiff, Hybritech.[29] Under

15 | such circumstances irreparable harm is apparent.[30] Here, however, where Broadcom

16 | has not shown that it competes with Qualcomm, the notion that Broadcom will be

17 | irreparably prejudiced by the requested stay is simply not supportable.

18 |      Broadcom also ignores the fact that, if it is successful in the ITC, it will have

19 | obtained an exclusion order preventing Qualcomm from importing the products in issue

20 | in Case No. 467 into the United States. Should this occur, Broadcom would have no

21 | further need to obtain a speedy injunction against Qualcomm in Case No. 467.

22 |

23 | ———————————————————

[27] *Filtrol Corp. v. Kelleher*, 467 F.2d 242, 245 (Fed. Cir. 1972) (emphasis added).

24 | [28] *Versa Corp. v. AG-Bag Int'l Ltd.*, 2001 WL 34046241, *2 (D. Or. 2001).

25 | [29] *Hybritech Inc. v. Abbott Laboratories*, 4 U.S.P.Q.2d 1001, 1004 (C.D. Cal. 1987).

26 | [30] In the context of preliminary injunction, a plaintiff must show such competition. For example, in *Nutrition 21 v. U.S.*, 930 Fed. Cir. 867, 871 (Fed. Cir. 1991), the district court's grant of a preliminary injunction based on "possible" market share loss was

27 | reversed by the Federal Circuit. Even there, where the parties were locked in direct competition, a showing of actual market share loss was required. *Id.* at 868, 871-72.

28 |

HOWREY LLP

DM_US\8226665.v2

EXHIBIT G 128

1      That Broadcom actually desires quick resolution of Case No. 467, however, is

2   belied by its reliance on the *Micron* decision.  Broadcom extols *Micron* as the proper

3   way to handled Qualcomm's motion because it denied an outright stay of a case in

4   which different patents from those asserted in a parallel ITC investigation were in issue.

5   Broadcom, however, glosses over the fact that the Court in *Micron* recognized that the

6   cases were sufficiently related that they should be *tried together* and, consequently,

7   permitted *only discovery* in the non-parallel case to proceed.[31]

8      Thus, although the Court in *Micron* permitted discovery to proceed, it delayed

9   trial until the dissolution of the statutory stay would permit both the case parallel *to the*

10   ITC investigation and the case comprised of patents not in the ITC investigation to be

11   tried together.  This, of course, directly contradicts Broadcom's alleged desire to

12   proceed to trial in Case No. 467 as soon as possible.  Even if this Court were to adopt

13   the *Micron* approach, as opposed to the more reasonable approach taken by the courts in

14   *Flexsys* and *Alloc*[32], Broadcom would not receive an injunction or any other remedy

15   until the stay in Case No. 468 is dissolved and that case is ready for trial.  In the

16   meantime, Qualcomm would suffer the burdens and costs that section 1659 was meant

17   to address and remedy.

18      **C.   Broadcom's Two-Suit Strategy is an End Run of the Statutory Stay**

19             **Provision**

20      Although the result in *Micron* would be inconsistent with Broadcom's professed

21   goal of obtaining relief from Qualcomm's alleged infringement at the earliest possible

22   date, it would be consistent with the true goal of Broadcom's two-suit strategy before

23

24   [31] *Micron Tech., Inc. v. Mosel Vitelic Corp.*, 1999 U.S. Dist. LEXIS 4792, *14-15 (D.
     Idaho 1999).

25   [32]  *See Flexsys Americas, LP v. Kumho Tire, U.S.A., Inc.*, Case No. 5:05CV156, 2005
     WL 1126750 (N.D. Ohio Apr. 29, 2005); and, *Alloc, Inc. v. Unilin Décor N.V.*, Case
26   No. Civ.A. 03-253-GMS, 2003 WL 21640372 (D. Del. July 11, 2003) discussed at pp.
     10-12 of Qualcomm's opening brief.
27

28

HOWREY LLP

- 13 -

~128~

DM_US\8226665.v2

EXHIBIT G-129

1 this Court. That goal, as argued in Qualcomm's motion, is to end-run the statutory stay

2 provision of section 1659 and force Qualcomm at great expense and distraction, to

3 defend simultaneously against highly related litigations in the ITC and this Court.

4 Indeed, the Court should reject the holding in *Micron* for precisely this reason. *Micron*

5 sets up exactly the burdensome and uneconomical discovery scenario discussed above.

6 Namely, discovery now in the ITC on the claims in issue there from the patents asserted

7 in Case No. 468; more discovery later on the claims of the patents in issue in Case No.

8 467; and still more discovery even later on additional claims of the patents in issue in

9 issue in Case No. 468 when the stay of that case is lifted. Broadcom favors the method

10 of the Micron case not because it is an economical or sensible result – as noted above it

11 is not – but because it imposes on Qualcomm the two-front defense that Broadcom

12 chiefly desires.

13       Broadcom's allegation that Qualcomm seeks to stay Case No. 467 in order to gain

14 a tactical advantage against Broadcom is nonsensical. First, the Broadcom-initiated ITC

15 investigation is scheduled to proceed to trial in January 2006, no matter how this Court

16 decides the instant motion. Whether or not this motion is granted, the tactical advantage

17 of having its case heard first still belongs to Broadcom in the ITC. Qualcomm only

18 seeks the protection against Broadcom's tactical decision to bring multiple related

19 actions against it as envisioned by Congress in section 1659. Second, Qualcomm's

20 patent infringement action against Broadcom in the Southern District of California has

21 nothing whatsoever to with this action or the policy underlying section 1659. The

22 differences between the cases are obvious: whereas Broadcom's action against

23 Qualcomm in Case No. 467 is directed to the same Qualcomm products as are in issue

24 in the ITC and involves highly related patents, Qualcomm's action in the Southern

25 District of California are based on its own patents (and are obviously not related to those

26 asserted by Broadcom) and is directed against Broadcom's products. In short, it is

27

28

HOWREY LLP

DM_US\8226665.v2

EXHIBIT G 130

1  irrelevant to the instant motion.[33]  Third, Qualcomm has moved to stay only Case No.

2  467.  It has not moved, for example, to stay the *fourth* case filed by Broadcom against

3  Qualcomm, an antitrust-based case in the District of New Jersey.[34]  Thus, that case too

4  appears poised to proceed on whatever schedule that court orders.  Accordingly, the

5  assertion that grant of the instant motion will somehow seize the overall initiative for

6  Qualcomm is ludicrous.

7

8    **III. CONCLUSION**

9       For the foregoing reasons, and as set forth in Qualcomm's initial moving papers,

10  Qualcomm respectfully requests that the Court grant the requested relief and enter an

11  order consolidating Case Nos. 467 and 468 and staying both cases until the

12  Commission's determination in the related ITC investigation between Broadcom and

13  Qualcomm becomes final.

14

15

16

17

18

19

20

21

22

23

24

25  [33] If Broadcom truly believes there is something tactically unfair about the filing by Qualcomm in the Southern District of California, it is free to move to stay that

26  proceeding.  Yet, it has not done so.

[34] *See Broadcom Corp. v. Qualcomm Corp.*, Civil Action No. 3:2005cv03350 (D.N.J.

27  2005). A copy of Broadcom's complaint in that action is attached to the Supplemental Declaration of Elizabeth Hoult Fontaine as Exhibit S.

28

HOWREY LLP

- 15 -

- 130 -

EXHIBIT G-131

1

2 | Dated: August 1, 2005    HOWREY LLP

3

4            By: *Elizabeth Hoult Fontaine*

5             Elizabeth Hoult Fontaine (SBN 207557)

6             Attorneys for Defendant and Counterclaimant

7             QUALCOMM INCORPORATED

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

HOWREY LLP

- 16 -

- 131 -

DM_US\8226665.v2

EXHIBIT G-132

ORIGINAL

1   DAVID E. KLEINFELD (Bar No. 110734)
    E. JOSHUA ROSENKRANZ (*Pro Hac Vice*; N.Y. Bar No. 2224889)
2   BARRY J. TUCKER (Bar No. 164163)
3   HELLER EHRMAN LLP
    4350 La Jolla Village Drive, 7th Floor
4   San Diego, CA 92122-1246
    Telephone: +1.858.450.8400
5   Facsimile: +1.858.450.8499

6   WILLIAM K. WEST *(Pro Hac Vice)*
    CECILIA H. GONZALEZ *(Pro Hac Vice)*
7   BERT C. REISER *(Pro Hac Vice)*
    PETER J. CHASSMAN *(Pro Hac Vice)*
8   HOWREY LLP
9   1299 Pennsylvania Avenue
    Washington, DC 20004
10  Telephone: +1.202.783.0800
11  Facsimile: +1.202.383.6610

12  LOUIS M. LUPIN (Bar No. 120846)
    ALEXANDER H. ROGERS (Bar No. 131879)
13  THOMAS R. ROUSE (Bar No. 180119)
    ROGER W. MARTIN (Bar No. 195003)
14  QUALCOMM Incorporated
    5775 Morehouse Drive
15  San Diego, CA 92121
    Telephone: +1.858.587.1121
16  Facsimile: +1.858.658.2100

17  Attorneys for Plaintiff
18  QUALCOMM INCORPORATED

19                    UNITED STATES DISTRICT COURT

20                  SOUTHERN DISTRICT OF CALIFORNIA

21  QUALCOMM INCORPORATED,            Case No.: '05 CV 1662   JAH (MA)

22                       Plaintiff,   COMPLAINT FOR DECLARATORY
         v.                           RELIEF AND BREACH OF
23                                    CONTRACT (DEMAND FOR JURY
    BROADCOM CORPORATION,             TRIAL)
24                       Defendant.

25      Plaintiff QUALCOMM Incorporated ("QUALCOMM") for its complaint herein states:

26                                PARTIES

27      1.   Plaintiff QUALCOMM is a corporation organized and existing under the laws of

28  the state of Delaware, with its principal place of business in San Diego, California.

Heller
Ehrman LLP

COMPLAINT FOR DECLARATORY RELIEF AND BREACH OF CONTRACT (DEMAND FOR JURY TRIAL)

EXHIBIT __7__ -132-

EXHIBIT G-133

2.   Defendant Broadcom Corporation ("Broadcom") is a corporation organized and existing under the laws of the state of California, with its principal place of business in Irvine, California.

3.   QUALCOMM is informed and believes and thereon alleges that Broadcom is doing business in California and in this district.

## JURISDICTION AND VENUE

4.   This is an action for declaratory relief and breach of contract. The declaratory relief claims arise under the patent laws of the United States, Title 35 U.S.C. §§ 1 *et seq.* This Court has subject matter jurisdiction over these claims pursuant to 28 U.S.C. §§ 1331, 1338(a) and 2201-02. This Court has supplemental subject matter jurisdiction over the remaining state law claims pursuant to 28 U.S.C. § 1367.

5.   Venue is proper in this district under 28 U.S.C. §§ 1391(b) and (c), and 1400(b), as Broadcom resides and/or conducts substantial business in this district. In addition, the claims asserted in this action all arise out of or relate to a license agreement between the parties, called the "Bluetooth RF Agreement," which specifically provides that all such claims "shall be adjudicated only by a court of competent jurisdiction in the county of San Diego, State of California."

## GENERAL ALLEGATIONS

6.   On May 19, 2005, Broadcom filed a complaint against QUALCOMM in the International Trade Commission ("ITC"). Broadcom accuses QUALCOMM of infringement of five of its patents. This action may be referred to herein as the "ITC Action."

7.   One day earlier, on May 18, 2005, Broadcom sued QUALCOMM in the Central District of California, based on the same patents it asserts in the ITC Action. It simultaneously filed another suit in the same court based on five other patents. These actions may collectively be referred to herein as the "Central District Actions."

8.   In the ITC Action, Broadcom asserts a total of five patents against QUALCOMM. Of these, there are two patents that allegedly relate to wireless subnetwork technology. Those two

Heller
Ehrman LLP

1

COMPLAINT FOR DECLARATORY RELIEF AND BREACH OF CONTRACT (DEMAND FOR JURY TRIAL)

EXHIBIT G 134

patents will collectively be referred to herein as the "Subnetwork Patents."

### The Subnetwork Patents

9. Broadcom contends QUALCOMM has contributed to and induced infringement of U.S. Patent No. 5,682,379 ("the '379 patent"), entitled "Wireless Personal Local Area Network," issued on October 28, 1997, and allegedly acquired by Broadcom on December 24, 2002. A true and correct copy of the '379 patent is attached hereto as Exhibit 1. Broadcom contends that QUALCOMM infringes the '379 patent by virtue of participation in the implementation of Bluetooth technology in cellular handsets in conjunction with handset manufacturers and third party suppliers of Bluetooth RF chips.

10. Broadcom contends QUALCOMM has contributed to and induced infringement of U.S. Patent No. 6,359,872 B1 ("the '872 patent"), entitled "Wireless Personal Local Area Network," issued on October 28, 1997, and allegedly acquired by Broadcom on December 24, 2002. A true and correct copy of the '872 patent is attached hereto as Exhibit 2. Broadcom contends that QUALCOMM infringes the '872 by virtue of participation in the implementation of Bluetooth technology in cellular handsets in conjunction with handset manufacturers and third party suppliers of Bluetooth RF chips.

### The Bluetooth RF Agreement

11. On August 13, 2001, QUALCOMM and Broadcom signed the Bluetooth RF Agreement. Under the Bluetooth RF Agreement, QUALCOMM granted Broadcom a license to use its proprietary "BlueQ Interface Specification" "to develop a Bluetooth RF Unit that implements, and is compliant with" the specification. QUALCOMM then provided Broadcom with its proprietary technology relating to the implementation of Bluetooth functionality in a CDMA handset and expended considerable energy assisting Broadcom in its design and testing efforts relating to implementing Bluetooth chips in CDMA handsets. QUALCOMM also promised to, and did, include Broadcom on its list of approved vendors for Bluetooth RF chips.

12. When Broadcom signed the Bluetooth RF Agreement, it agreed to litigate "[a]ny dispute, claim or controversy arising out of or relating to th[e] Agreement, or the breach or

Heller
Ehrman LLP

2

COMPLAINT FOR DECLARATORY RELIEF AND BREACH OF CONTRACT (DEMAND FOR JURY TRIAL)

EXHIBIT  G·135

validity [t]hereof" in "a court of competent jurisdiction in the county of San Diego, State of California."

**Broadcom's Conduct After Execution of the Bluetooth RF Agreement**

13.    Broadcom alleges that, on December 24, 2002, it acquired the Subnetwork Patents it now asserts against QUALCOMM.

14.    Broadcom now claims the Subnetwork Patents relate to the Bluetooth technology which is the subject of the Bluetooth RF Agreement and alleges that the very activity it required of QUALCOMM pursuant to that Agreement constitutes infringement of the Subnetwork Patents.

15.    Broadcom never provided QUALCOMM with notice of the Subnetwork Patents, or claimed that the activity it encouraged and required by contract constituted alleged infringement, until shortly before it filed the actions now pending in the ITC and in the Central District of California.  Broadcom remained silent while it induced QUALCOMM to continue the activities it now contends constitute infringement.

**FIRST CAUSE OF ACTION**
**(Declaratory Relief--Non-Infringement)**

16.    QUALCOMM refers to and incorporates paragraphs 1 through 15 inclusive, as though fully set forth herein.

17.    QUALCOMM has not infringed, contributorily infringed, or induced infringement of the asserted claims of the Subnetwork Patents.

18.    QUALCOMM is entitled to a declaratory judgment that QUALCOMM does not infringe the asserted claims of the Subnetwork Patents.

**SECOND CAUSE OF ACTION**
**(Declaratory Relief--Invalidity)**

19.    QUALCOMM refers to and incorporates paragraphs 1 through 15 inclusive, as though fully set forth herein.

20.    Each of the asserted claims of the Subnetwork Patents is invalid for failure to comply with the conditions and requirements of patentability set forth in the patent statutes, including 35 U.S.C. § § 101, 102, 103 and/or 112.

Heller
Ehrman LLP

3

COMPLAINT FOR DECLARATORY RELIEF AND BREACH OF CONTRACT (DEMAND FOR JURY TRIAL)

EXHIBIT  G-136

21.     QUALCOMM is entitled to declaratory judgment that each of the asserted claims in the Subnetwork Patents is invalid.

**THIRD CAUSE OF ACTION**
(Declaratory Relief--Inequitable Conduct)

22.     QUALCOMM refers to and incorporates paragraphs 1 through 15 inclusive, as though fully set forth herein.

23.     The '872 patent is unenforceable due to the inequitable conduct of the applicants and patentees before the United States Patent and Trademark Office.

24.     The application that lead to the '872 patent was subject to a statutory double patenting rejection and a non-statutory double patenting rejection.  The applicants were obligated to disclose to the examiner not only the patent that triggered the double patenting rejection, U.S. Patent No. 6,006,100, but also the prior art to that patent, which led to multiple office action rejections.  The applicants failed to comply with their obligations.

25.     QUALCOMM is entitled to declaratory judgment that all of the claims of the '872 patent are invalid, void and unenforceable.

**FOURTH CAUSE OF ACTION**
(Declaratory Relief--Implied License by Legal Estoppel)

26.     QUALCOMM refers to and incorporates paragraphs 1 through 15 inclusive, as though fully set forth herein.

27.     Broadcom, with full knowledge, acquiesced in QUALCOMM's collaboration with Broadcom, with other third party Bluetooth RF chip providers and with handset manufacturers, to implement Bluetooth technology.

28.     Broadcom, with full knowledge, granted QUALCOMM the right to use, or promote the use of, the system(s) or method(s) allegedly claimed in the Subnetwork Patents.

29.     QUALCOMM relinquished valuable consideration, in the form of, among other things, providing to Broadcom its proprietary Bluetooth specifications, assisting Broadcom in the development and testing of its Bluetooth RF chips and promoting Broadcom to handset manufacturers as an approved Bluetooth RF provider and expending resources in the collaboration.

Heller
Ehrman LLP

4

COMPLAINT FOR DECLARATORY RELIEF AND BREACH OF CONTRACT (DEMAND FOR JURY TRIAL)

EXHIBIT  G-137

30. Broadcom is trying to negate QUALCOMM's rights by use of later-acquired patents.

31. QUALCOMM is entitled to declaratory judgment that it has an implied license by legal estoppel to use, or promote the use of, or contribute to the system(s) or method(s) allegedly described in the Subnetwork Patents.

### FIFTH CAUSE OF ACTION
#### (Declaratory Relief--Implied License by Equitable Estoppel)

32. QUALCOMM refers to and incorporates paragraphs 1 through 15, 26 through 31 and 35 through 38, inclusive, as though fully set forth herein.

33. Broadcom's course of conduct gave rise to a reasonable inference that it consented to QUALCOMM's alleged use the system(s) or method(s) allegedly described in the Subnetwork Patents.

34. QUALCOMM is entitled to declaratory judgment that it has an implied license by equitable estoppel to use, or promote the use of, or contribute to the system(s) or method(s) allegedly described in the Subnetwork Patents.

### SIXTH CAUSE OF ACTION
#### (License)

35. QUALCOMM incorporates by reference the allegations contained in paragraphs 1 through 15 and 26 through 34 inclusive, as though fully set forth herein.

36. QUALCOMM and Broadcom are members of the Bluetooth Special Interest Group (SIG) trade association. The membership rules of the Bluetooth SIG require that members, including Broadcom, must allow other members to practice Bluetooth technology royalty-free.

37. Without admitting that QUALCOMM or its products practice what is claimed in the Subnetwork Patents, to the extent that practice of Bluetooth technology would require practice of such patents, that practice is licensed, royalty free, according to the terms of the Bluetooth SIG.

38. QUALCOMM is entitled to declaratory judgment that it has a license to use, or promote the use of, or contribute to the system(s) or method(s) allegedly described in the Subnetwork Patents, to the extent those patents describe the practice of Bluetooth technology.

/////

Heller
Ehrman LLP

5

COMPLAINT FOR DECLARATORY RELIEF AND BREACH OF CONTRACT (DEMAND FOR JURY TRIAL)

EXHIBIT _C-138_

### SEVENTH CAUSE OF ACTION
(Breach of Contract--Bluetooth RF Agreement)

39.     QUALCOMM incorporates by reference the allegations contained in paragraphs 1 through 15 inclusive, as though fully set forth herein.

40.     The Bluetooth RF Agreement is a valid, enforceable contract.

41.     QUALCOMM has, at all times, fulfilled its duties and obligations under the Bluetooth RF Agreement.

42.     Broadcom breached the Bluetooth RF Agreement when it initiated action against QUALCOMM in the ITC and in the Central District of California, based on the Subnetwork Patents.

43.     QUALCOMM has been damaged as a direct result of Broadcom's breach, with the amount of damages to be determined at time of trial.

### EIGHTH CAUSE OF ACTION
(Permanent Injunction)

44.     QUALCOMM incorporates by reference the allegations contained in paragraphs 1 through 43 inclusive, as though fully set forth herein.

45.     The Bluetooth RF Agreement applies to Broadcom's claims against QUALCOMM in the ITC Action, to the extent those claims are predicated on the Subnetwork Patents.  Such claims must be litigated, if at all, in "a court of competent jurisdiction in the county of San Diego, State of California," pursuant to the Bluetooth RF Agreement.

46.     If Broadcom is not enjoined from participating in the ITC Action, to the extent the action is based upon the Subnetwork Patents, QUALCOMM will suffer irreparable harm, for which there is no adequate remedy at law.

47. QUALCOMM therefore seeks a permanent injunction, enjoining Broadcom from participating in the ITC Action, to the extent the action is based upon the Subnetwork Patents.

/////

/////

Heller
Ehrman LLP

6

COMPLAINT FOR DECLARATORY RELIEF AND BREACH OF CONTRACT (DEMAND FOR JURY TRIAL)

-138-

EXHIBIT G-139

## PRAYER

WHEREFORE, QUALCOMM prays for judgment against Broadcom as follows:

(a)   For a declaration that QUALCOMM has not infringed, contributorily infringed, or induced the infringement of the asserted claims of the Subnetwork Patents;

(b)   For a declaration that the asserted claims of the Subnetwork Patents are invalid;

(c)   For a declaration that the '872 patent is unenforceable due to inequitable conduct;

(d)   For a declaration that QUALCOMM has an implied license to use, promote the use of or contribute to the inventions allegedly described in the Subnetwork Patents;

(e)   For a declaration that QUALCOMM has a license to use, promote the use of, or contribute to the system(s) or method(s) allegedly described in the Subnetwork Patents.

(f)   For a permanent injunction enjoining Broadcom from participating in the ITC Action, to the extent the action is based upon the Subnetwork Patents or arises out of or relates to the Bluetooth RF Agreement;

(g)   For all proximately caused damages;

(h)   For pre-judgment and post-judgment interest as provided by law;

(i)   Attorneys' fees as appropriate;

(j)   For costs of suit herein; and

(k)   For such other and further relief as the Court deems equitable, just and proper.

### DEMAND FOR JURY TRIAL

In accordance with Fed. R. Civ. P. 38(b), QUALCOMM demands a trial by jury on all issues so triable.

August 22, 2005               Respectfully submitted,
                              HELLER EHRMAN LLP

                              By _____
                                 DAVID E. KLEINFELD
                                 E. JOSHUA ROSENKRANZ
                                 BARRY J. TUCKER

                                 Attorneys For Plaintiff
                                 QUALCOMM INCORPORATED

Heller
Ehrman LLP

7

COMPLAINT FOR DECLARATORY RELIEF AND BREACH OF CONTRACT (DEMAND FOR JURY TRIAL)

EXHIBIT G-140

COPY

1  DAVID E. KLEINFELD (Bar No. 110734)
   E. JOSHUA ROSENKRANZ (Pro Hac Vice; N.Y. Bar No. 2224889)
2  BARRY J. TUCKER (Bar No. 164163)
   HELLER EHRMAN LLP
3  4350 La Jolla Village Drive, 7th Floor
   San Diego, CA 92122-1246
4  Telephone: +1.858.450.8400
   Facsimile: +1.858.450.8499
5
6  WILLIAM K. WEST (Pro Hac Vice)
   CECILIA H. GONZALEZ (Pro Hac Vice)
7  BERT C. REISER (Pro Hac Vice)
   PETER J. CHASSMAN (Pro Hac Vice)
8  HOWREY LLP
9  1299 Pennsylvania Avenue
   Washington, DC 20004
10 Telephone: +1.202.783.0800
   Facsimile: +1.202.383.6610
11
12 LOUIS M. LUPIN (Bar No. 120846)
   ALEXANDER H. ROGERS (Bar No. 131879)
13 THOMAS R. ROUSE (Bar No. 180119)
   ROGER W. MARTIN (Bar No. 195003)
14 QUALCOMM Incorporated
   5775 Morehouse Drive
15 San Diego, CA 92121
   Telephone: +1.858.587.1121
16 Facsimile: +1.858.658.2100
17 Attorneys for Plaintiff
18 QUALCOMM INCORPORATED

RECEIVED

AUG 2 2 2005

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                        DEPUTY

19              UNITED STATES DISTRICT COURT

20             SOUTHERN DISTRICT OF CALIFORNIA

21 QUALCOMM INCORPORATED,        Case No. '05 CV 1662   JAH (JMA)

22         v.              Plaintiff,
                                     QUALCOMM INCORPORATED'S
23 BROADCOM CORPORATION,             APPLICATION FOR PRELIMINARY
                                     INJUNCTION TO ENFORCE FORUM
24                    Defendant.     SELECTION AGREEMENT

25         Pursuant to Federal Rule of Civil Procedure 65, Plaintiff QUALCOMM Incorporated

26 ("QUALCOMM") hereby applies for an order preliminarily enjoining and restraining Broadcom

27 Corporation and its agents, officers, subsidiaries, assigns, and all other persons in active concert or

28

Heller
Ehrman LLP

QUALCOMM INCORPORATED'S APPLICATION FOR PRELIMINARY INJUNCTION
TO ENFORCE FORUM SELECTION AGREEMENT

EXHIBIT    8    - 140

EXHIBIT  G 141

1  participation with them or who receive actual notice of this Order ("Broadcom") from asserting

2  U.S. Patent No. 5,682,379 or U.S. Patent No. 6,359,872 B1 (the "Subnetwork Patents") against

3  QUALCOMM's Bluetooth-related products and activities in the United States International Trade

4  Commission ("ITC").

5      QUALCOMM's application for injunctive relief is based on this Application, the

6  accompanying Memorandum of Points and Authorities; the Request for Judicial Notice; and the

7  declarations of Barry J. Tucker, Luis Pineda and Ricardo Federe filed herewith.

8

9  August 22, 2005                    Respectfully submitted,
10                                     HELLER EHRMAN LLP

11                                     By:
12                                         DAVID E. KLEINFELD
                                           E. JOSHUA ROSENKRANZ
13                                         BARRY J. TUCKER

14                                     Attorneys for Plaintiff
15                                     QUALCOMM INCORPORATED

16  SD 752475 v1
17
18
19
20
21
22
23
24
25
26
27
Heller  28
Ehrman LLP

                                      2

QUALCOMM INCORPORATED'S APPLICATION FOR PRELIMINARY INJUNCTION
TO ENFORCE FORUM SELECTION AGREEMENT

EXHIBIT C 142

1                             **PROOF OF SERVICE**

2       I am employed in the County of Orange, State of California. I am over the age of 18 and not a party to the within action. My business address is 840 Newport

3 Center Drive, Suite 400, Newport Beach, California 92660-6324.

4       On September 8, 2005, I served the foregoing document described as **DECLARATION OF MARIA K. VENTO IN SUPPORT OF BROADCOM'S**

5 **MOTION TO VACATE STAY TO ENJOIN A DUPLICATIVE, LATER FILED ACTION (CASE NO. 05 CV 1662 B (JMA) IN THE SOUTHERN**

6 **DISTRICT OF CALIFORNIA)** on each interested party, as stated on the attached service list.

7

8     [X]      (BY OVERNIGHT DELIVERY SERVICE) I served the foregoing document by FedEx/Overnite Express, an express service carrier

9             which provides overnight delivery, as follows. I placed a true copy of the foregoing document in sealed envelopes or packages designated by the express service carrier, addressed, as stated on the

10             attached service list, with fees for overnight delivery paid or provided for.

11

12               [X]     (BOX DEPOSIT) I deposited such envelopes or packages in a box or other facility regularly maintained

13                     by the express service carrier.

14               [ ]     (CARRIER PICK-UP) I delivered such envelopes or packages to an authorized carrier or driver authorized

15                     by the express service carrier to receive documents.

16     [X]    (BY FAX) I caused the foregoing document to be served by facsimile transmission from sending facsimile machine telephone

17             number (949) 760-5200 to each interested party at the facsimile machine telephone number shown on the attached service list. Each

18             transmission was reported as complete without error. A transmission report was properly issued by the sending facsimile machine for each

19             interested party served.

20       Executed on September 8, 2005, at Newport Beach, California.

21       I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

22

23           Sheryl L. Knight

24            (Type or print name)              (Signature)

25

26

27

28

                                            Declaration Of Maria K. Vento In Support Of Broadcom's
                                           Motion To Vacate Stay To Enjoin Duplicative Action

1351296

EXHIBIT __G-143__

| | | |
|---|---|---|
| 1 | William K. West, Jr., Esq.<br>Cecilia H. Gonzalez, Esq. | Counsel For Defendant Qualcomm |
| 2 | Bert C. Reiser, Esq.<br>Howrey LLP | |
| 3 | 1299 Pennsylvania Avenue, N.W.<br>Washington, DC 20004 | |
| 4 | Phone:   (202) 783-0800<br>Fax:      (202) 383-6610 | |
| 5 | | |
| 6 | Peter J. Chassman, Esq.<br>Howrey LLP | Counsel For Defendant Qualcomm |
| 7 | 750 Bering Drive<br>Houston, TX 77057-2198 | |
| 8 | Phone:   (713) 787-1400<br>Fax:      (713) 787-1440 | |
| 9 | Christopher L. Kelley, Esq. | Counsel For Defendant Qualcomm |
| 10 | Howrey LLP<br>301 Ravenswood Avenue<br>Menlo Park, CA 94025 | |
| 11 | Phone:   (650) 463-8100<br>Fax:      (650) 463-8400 | |
| 12 | | |
| 13 | Gregory S. Cordrey, Esq.<br>Elizabeth Hoult Fontaine | Counsel For Defendant Qualcomm |
| 14 | Howrey LLP<br>2020 Main Street<br>Irvine, CA 92614 | |
| 15 | Phone:   (949) 759-3934<br>Fax:      (949) 721-6910 | |
| 16 | | |
| 17 | | |
| 18 | | |
| 19 | | |
| 20 | | |
| 21 | | |
| 22 | | |
| 23 | | |
| 24 | | |
| 25 | | |
| 26 | | |
| 27 | | |
| 28 | | |

Declaration Of Maria K. Vento In Support Of Broadcom's
Motion To Vacate Stay To Enjoin Duplicative Action

1351296

EXHIBIT  G-14-4

```
****************************
***   MULTI TX/RX REPORT   ***
****************************

TX/RX NO              1325
PGS.                  145
TX/RX INCOMPLETE      -----
TRANSACTION OK        (1)    2#612#12023836610
                      (2)    2#612#17137871440
                      (3)    2#612#16504638400
                      (4)    2#612#7216910

ERROR INFORMATION     -----
```

### IRELL & MANELLA LLP

840 Newport Center Drive, Suite 400
Newport Beach, CA 92660-6324
Facsimile No.: (949) 760-5200
Telephone No.: (949) 760-0991

This communication may contain confidential or privileged information and may constitute inside information. It is intended only for the addressee. Any distribution, reading, copying, or use of this communication by anyone other than the addressee is strictly prohibited and may be unlawful. If you received this in error, please notify us immediately by telephone, and return the original communication to us at the above address by mail. You will be reimbursed for your reasonable expenses. Thank you.

**Multiple Facsimile Cover Sheet**                                     **VIA FACSIMILE**

**Date:**  September 8, 2005

**From:**  Michael G. Ermer

**No. of Pages:**  145
**(including cover page)**

**To the Following:**

| Name: | Company Name: | Facsimile No.: | Office/Home No.: |
|---|---|---|---|
| William K. West, Jr. | | (202) 383-6610 | |
| Cecilia H. Gonzalez | | | |
| Peter J. Chassman | | (713) 787-1440 | |
| Christopher L. Kelley | | (650) 463-8400 | |
| Gregory S. Cordrey | | (949) 721-6910 | |
| Elizabeth Hoult Fontaine | | | |

EXHIBIT _0-145_

COPY

IRELL & MANELLA LLP
Layn R. Phillips (103857) (lphillips@irell.com)
Michael G. Ermer (110496) (mermer@irell.com)
Andra Barmash Greene (123931) (agreene@irell.com)
Richard de Bodo (128199) (rdebodo@irell.com)
840 Newport Center Drive, Suite 400
Newport Beach, CA 92660-6324
Telephone:   (949) 760-0991

WILMER CUTLER PICKERING HALE AND DORR LLP
William F. Lee (william.lee@wilmerhale.com)
Mark Selwyn (mark.selwyn@wilmerhale.com)
Richard W. O'Neill (richard.o'neill@wilmerhale.com)
60 State Street
Boston, MA 02109
Telephone:   (617) 526-6000
Facsimile:   (617) 526-5000

SEP - 8 2005

WILMER CUTLER PICKERING HALE AND DORR LLP
James L. Quarles III (james.quarles@wilmerhale.com)
Thomas P. Olson (thomas.olson@wilmerhale.com)
Maria K. Vento (maria.vento@wilmerhale.com)
1455 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Telephone:   (202) 942-8400
Facsimile:   (202) 942-8484

Attorneys for Plaintiff and Counter-Defendant
BROADCOM CORPORATION

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| BROADCOM CORPORATION,<br><br>                    Plaintiff,<br><br>        vs.<br><br>QUALCOMM INCORPORATED,<br><br>                    Defendant.<br><br>_____<br><br>AND RELATED CROSS-ACTION. | Case No. SACV 05-468-JVS (RNBx)<br><br>**[PROPOSED] ORDER GRANTING BROADCOM CORPORATION'S MOTION TO VACATE STAY TO ENJOIN A DUPLICATIVE, LATER FILED ACTION (CASE NO. 05 CV 1662 B (JMA) IN THE SOUTHERN DISTRICT OF CALIFORNIA)**<br><br>Hon. James V. Selna<br><br>Date:        September 26, 2005<br>Time:       1:30 p.m.<br>Courtroom:   10C |

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

1351253

[Proposed] Order Granting Broadcom's Motion To Vacate
Stay To Enjoin Duplicative, Later Filed Action

EXHIBIT 4-1

1    Upon consideration of Plaintiff and Counter-Defendant Broadcom

2  Corporation's ("Broadcom") Motion To Vacate Stay To Enjoin A Duplicative, Later

3  Filed Action (Case No. 05 CV 1662 B (JMA) In The Southern District Of

4  California):

5      **IT IS HEREBY ORDERED THAT** the stay previously entered in this

6  above-captioned matter on August 2, 2005, is **VACATED** for the limited purpose of

7  **ENJOINING** Defendant and Counter-Plaintiff Qualcomm Incorporated

8  ("Qualcomm") from litigating the claims asserted against Broadcom in the lawsuit

9  styled *Qualcomm Inc. v. Broadcom Corp.*, Case No. 05 CV 1662 B (JMA),

10  currently pending in the Southern District of California.  Qualcomm is hereby so

11  ENJOINED.

12

13

14  Dated: _____          _____

15                                          Hon. James V. Selna
                                            Judge, United States District Court

16

17

18

19

20

21

22

23

24

25

26

27

28

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

1351253                                    -1-

EXHIBIT 4-2

**PROOF OF SERVICE**

1

2     I am employed in the County of Orange, State of California. I am over the age of 18 and not a party to the within action. My business address is 840 Newport

3   Center Drive, Suite 400, Newport Beach, California 92660-6324.

4     On September 8, 2005, I served the foregoing document described as **[PROPOSED] ORDER GRANTING BROADCOM CORPORATION'S**

5 **MOTION TO VACATE STAY TO ENJOIN A DUPLICATIVE, LATER FILED ACTION (CASE NO. 05 CV 1662 B (JMA) IN THE SOUTHERN**

6 **DISTRICT OF CALIFORNIA)** on each interested party, as stated on the attached service list.

7

8    [X]    (BY OVERNIGHT DELIVERY SERVICE) I served the foregoing document by FedEx/Overnite Express, an express service carrier

9            which provides overnight delivery, as follows. I placed a true copy of the foregoing document in sealed envelopes or packages designated by the express service carrier, addressed, as stated on the

10          attached service list, with fees for overnight delivery paid or provided for.

11

12        [X]    (BOX DEPOSIT) I deposited such envelopes or packages in a box or other facility regularly maintained by the express service carrier.

13

14        [ ]    (CARRIER PICK-UP) I delivered such envelopes or packages to an authorized carrier or driver authorized by the express service carrier to receive documents.

15

16    [X]    (BY FAX) I caused the foregoing document to be served by facsimile transmission from sending facsimile machine telephone

17            number (949) 760-5200 to each interested party at the facsimile machine telephone number shown on the attached service list. Each

18          transmission was reported as complete without error. A transmission report was properly issued by the sending facsimile machine for each interested party served.

19

20    Executed on September 8, 2005, at Newport Beach, California.

21    I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

22

23

24       Sheryl L. Knight                     (Signature)
       (Type or print name)

25

26

27

28

1351253

**EXHIBIT** H-3

| | |
|---|---|
| 1 | William K. West, Jr., Esq. | Counsel For Defendant Qualcomm |

1  William K. West, Jr., Esq.
2  Cecilia H. Gonzalez, Esq.
   Bert C. Reiser, Esq.
3  Howrey LLP
   1299 Pennsylvania Avenue, N.W.
4  Washington, DC 20004
   Phone:    (202) 783-0800
5  Fax:       (202) 383-6610

Counsel For Defendant Qualcomm

6  Peter J. Chassman, Esq.
   Howrey LLP
7  750 Bering Drive
   Houston, TX 77057-2198
8  Phone:    (713) 787-1400
   Fax:       (713) 787-1440

Counsel For Defendant Qualcomm

9  Christopher L. Kelley, Esq.
   Howrey LLP
10 301 Ravenswood Avenue
   Menlo Park, CA 94025
11 Phone:    (650) 463-8100
   Fax:       (650) 463-8400

Counsel For Defendant Qualcomm

12 Gregory S. Cordrey, Esq.
13 Elizabeth Hoult Fontaine
   Howrey LLP
14 2020 Main Street
   Irvine, CA 92614
15 Phone:    (949) 759-3934
   Fax:       (949) 721-6910

Counsel For Defendant Qualcomm

16
17
18
19
20
21
22
23
24
25
26
27
28

[Proposed] Order Granting Broadcom's Motion To Vacate
Stay To Enjoin Duplicative, Later Filed Action

1351253

EXHIBIT  4-4

```
                    *******************************
               ***    MULTI TX/RX REPORT    ***
                    *******************************

TX/RX NO            1324
PGS.                5
TX/RX INCOMPLETE    (2)    2#424#17137871440
TRANSACTION OK      (1)    2#424#12023836610
                    (3)    2#424#16504638400
                    (4)    2#424#7216910

ERROR INFORMATION   -----
```

## IRELL & MANELLA LLP

840 Newport Center Drive, Suite 400
Newport Beach, CA 92660-6324
Facsimile No.: (949) 760-5200
Telephone No.: (949) 760-0991

This communication may contain confidential or privileged information and may constitute inside information. It is intended only for the addressee. Any distribution, reading, copying, or use of this communication by anyone other than the addressee is strictly prohibited and may be unlawful. If you received this in error, please notify us immediately by telephone, and return the original communication to us at the above address by mail. You will be reimbursed for your reasonable expenses. Thank you.

*135(253*

**Multiple Facsimile Cover Sheet**                                    **VIA FACSIMILE**

**Date:**    September 8, 2005

**From:**    Michael G. Ermer

**No. of Pages:**    5
(including cover page)

**To the Following:**

| Name: | Company Name: | Facsimile No.: | Office/Home No.: |
|---|---|---|---|
| William K. West, Jr. Cecilia H. Gonzalez | | (202) 383-6610 | |
| Peter J. Chassman | | (713) 787-1440 | |
| Christopher L. Kelley | | (650) 463-8400 | |
| Gregory S. Cordrey Elizabeth Hoult Fontaine | | (949) 721-6910 | |

EXHIBIT  H-5

COPY

1  IRELL & MANELLA LLP
Layn R. Phillips (103857) (lphillips@irell.com)
2  Michael G. Ermer (110496) (mermer@irell.com)
Andra Barmash Greene (123931) (agreene@irell.com)
3  Richard de Bodo (128199) (rdebodo@irell.com)
840 Newport Center Drive, Suite 400
4  Newport Beach, CA 92660-6324
Telephone:  (949) 760-0991
5  Facsimile:   (949) 760-5200

6  WILMER CUTLER PICKERING HALE AND DORR LLP
William F. Lee (william.lee@wilmerhale.com)
7  Mark D. Selwyn (mark.selwyn@wilmerhale.com)
Richard W. O'Neill (richard.o'neill@wilmerhale.com)
8  60 State Street
Boston, MA 02109
9  Telephone:  (617) 526-6000
Facsimile:   (617) 526-5000
10
WILMER CUTLER PICKERING HALE AND DORR LLP
11 James L. Quarles III (james.quarles@wilmerhale.com)
Thomas P. Olson (thomas.olson@wilmerhale.com)
12 Maria K. Vento (maria.vento@wilmerhale.com)
1455 Pennsylvania Avenue, N.W.
13 Washington, D.C. 20004
Telephone:  (202) 942-8400
14 Facsimile:   (202) 942-8484

15 Attorneys for Plaintiff and Counter-Defendant
BROADCOM CORPORATION
16

FILED

SEP 22 2005

CLERK, U.S. DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
SOUTHERN DIVISION AT SANTA ANA
DEPUTY

17            UNITED STATES DISTRICT COURT

18            CENTRAL DISTRICT OF CALIFORNIA

19                  SOUTHERN DIVISION

20 BROADCOM CORPORATION,            )  Case No. SACV05-468-JVS (RNBx)
                                    )
21            Plaintiff,            )  **BROADCOM CORPORATION'S**
       vs.                         )  **REPLY MEMORANDUM IN**
22                                  )  **FURTHER SUPPORT OF ITS**
   QUALCOMM INCORPORATED,           )  **MOTION TO VACATE STAY AND**
23                                  )  **ENJOIN A DUPLICATIVE, LATER**
            Defendant.              )  **FILED ACTION (CASE NO. 05 CV**
24                                  )  **1662 B (JMA) IN THE SOUTHERN**
                                    )  **DISTRICT OF CALIFORNIA)**
25 AND RELATED CROSS-ACTION         )
                                    )  Hon. James V. Selna
26                                  )
                                    )  Date:        September 8, 2005
27                                  )  Time:        To Be Submitted
                                    )  Courtroom:   10C
28

EXHIBIT I-1

1387878

## TABLE OF CONTENTS

Page

I.    INTRODUCTION AND SUMMARY OF ARGUMENT............................ 1

II.   ARGUMENT.................................................................................... 4

      A.    The Statutory Stay Does Not Prevent This Court From
            Entering An Injunction To Protect Its Jurisdiction. ............................ 4

            1.    Both The Act And Its Legislative History Make
                  Clear That The Stay Applies Only To Litigating The
                  Substance Of The Patent Claims Before The ITC,
                  Not The Entire District Court Proceeding. .................................. 4

            2.    Qualcomm's Own Conduct Demonstrates That It
                  Believes The Court May Continue To Rule On
                  Motions, Despite The Stay.......................................................... 6

      B.    Under The "First To File" Rule, Qualcomm Should Be
            Enjoined From Pursuing The San Diego Litigation. .......................... 7

            1.    The Case Law Supports Routine Application Of The
                  First To File Rule Here. .............................................................. 8

            2.    Equity Supports Application Of The First To File
                  Rule Here. ................................................................................ 10

            3.    The Existence Of The Stay Does Not Create An
                  Exception To The First To File Rule. ........................................ 13

      C.    Qualcomm Did Not Act "Immediately" Or "Follow The
            Federal Circuit's Roadmap. ............................................................. 13

      D.    Qualcomm's Scenarios For What Will Happen In San
            Diego If An Injunction Is Granted Have No Basis. ........................... 16

      E.    The Bluetooth RF Agreement Grants A License From
            Qualcomm To Broadcom – Not The Other Way Around.................. 18

III.  CONCLUSION. ................................................................................ 20

Broadcom's Reply In Further Support Of Its Motion To
Vacate Stay & Enjoin A Duplicative, Later Filed Action

1387878

EXHIBIT I-2

# TABLE OF AUTHORITIES

## FEDERAL CASES

*American Patriot Ins. Agency v. Mutual Risk Mgmt LTD*,
    364 F.3d 884 (7th Cir. 2004)................................................................16

*Argueta v. Banco Mexicano, S.A.*,
    87 F.3d 320 (9th Cir. 1996)................................................................10

*Asset Allocation & Mgmt. Co. v. W. Employers Ins. Co.*,
    892 F.2d 566 (7th Cir. 1989)................................................................17

*Ciena Corp. v. Nortel Networks, Inc.*,
    2005 WL 1189881 (E.D. Tex. May 19, 2005) ...................................13, 14-16

*Decker Coal Co. v. Commonwealth Edison Co.*,
    805 F.2d 834 (9th Cir. 1986)................................................................7-8, 17

*E. & J. Gallo Winery v. Andina Licores*,
    2005 WL 1554001 (E.D. Cal. June 24, 2005)............................................7, 10

*E. & J. Gallo Winery v. Encana Energy Serv., Inc.*,
    2005 WL 1657063, at *11 (E.D. Cal. July 6, 2005)....................................11

*Electronics for Imaging, Inc. v. Coyle*,
    394 F.3d 1341 (Fed. Cir. 2005)............................................................8, 9, 10

*Genentech, Inc. v. Eli Lilly and Company*,
    998 F.2d 931 (Fed. Cir. 1993)..............................................................8, 9, 10

*Lab. Corp. of Am. Holdings v. Chiron Corp.*,
    384 F.3d 1326 (Fed. Cir. 2004).............................................................7, 17

*Martin v. Graybar Elec. Co.*,
    266 F.2d 202 (7th Cir. 1959)................................................................17

*Mitel Networks, Inc. v. Rates Tech., Inc.*,
    Case No. SA CV 04-1086 JVS (ANx) (Selna, J.) ......................................8-9

*Nat'l Equip. Rental, Ltd. v. Fowler*,
    287 F.2d 43 (2d Cir. 1961) ..................................................................17

*Qualcomm, Inc. v. GTE Wireless, Inc.*,
    79 F. Supp. 2d 1177 (S.D. Cal. 1999) ...................................................9

*Sega of America, Inc. v. Signal Apparel Co.*,
    1997 WL 414196 (N.D. Cal. July 14, 1997)............................................7, 10

*Serco Servs. Co., L.P. v. Kelley Co., Inc.,*
    51 F.3d 1037 (Fed. Cir. 1995) ........................................................................9

*Texas Instruments v. Tessera, Inc.,*
    231 F.3d 1325 (Fed. Cir. 2000) ...................................................... 3, 13, 14-16

## FEDERAL STATUTES

19 U.S.C. § 2112(d) ...........................................................................................4

19 U.S.C. § 3511(a)(2) ........................................................................................5

19 U.S.C. § 3512(d) ...........................................................................................5

28 U.S.C. § 1659 .........................................................................................*passim*

## OTHER AUTHORITIES

H.R. Rep. No. 103-826(I) *as reprinted in* 1994 U.S.C.C.A.N. 3773,
    3783, 3794 .................................................................................................5

Statement of Administrative Action To Accompany H.R. 103-826(I),
    H.R. Rep. No. 103-316 *as reprinted in* 1994 U.S.C.C.A.N. 4040,
    4076 ...........................................................................................................5

Uruguay Round Agreements Act § 321(b)(1)(A),
    Pub. L. No. 103-465 (1994).........................................................................4

Broadcom's Reply In Further Support Of Its Motion To
Vacate Stay & Enjoin A Duplicative, Later Filed Action

EXHIBIT I-4

## I.   INTRODUCTION AND SUMMARY OF ARGUMENT.

Qualcomm's Opposition tells two contradictory stories, sometimes on the same page. Qualcomm says it knew from the start that "the appropriate venue was 'the United States District Court for the Southern District of California'" and denied venue immediately. (Qualcomm Opp. at 6: 3-10.) Yet, Qualcomm also insists (just a few lines below) that it was so overwhelmed by the "blizzard" of litigation – in reality, just parallel cases in the ITC and this Court about five patents, with a separate docket in this Court for five patents not before the ITC[1] – that Qualcomm did not even discover the Bluetooth RF Agreement, or the alleged forum problems specific to the two Wireless Subnetwork patents, until months later. (*See* Qualcomm Opp. at 6:13-24.)

Neither story reflects well on Qualcomm. If the first is true, Qualcomm should have moved to dismiss for improper venue and not assured this Court that it would litigate the ITC proceedings to completion.[2] If, on the other hand, Qualcomm discovered the Bluetooth RF Agreement and its forum selection clause several months into the ITC Investigation, that Agreement can hardly be as "inextricably intertwined" with the facts of this case as Qualcomm now suggests, and Qualcomm's initial references to venue in its answer were mere boilerplate – not a serious attempt to bring the forum selection clause to the Court's attention.

But regardless of the story, Qualcomm's arguments against Broadcom's requested injunction fall flat.

---

[1]   The fourth case Qualcomm includes in its "litigation frenzy" is an entirely independent antitrust case filed a month and a half after the actions at issue here. (*See* Qualcomm Opp. at 4.) That case has no relevance to the current motions, which is why Qualcomm ignores it after this single mention.

[2]   Contrary to what Qualcomm maintains, it *is* seeking to avoid this Court's jurisdiction. Qualcomm's argument that only the Southern District of California may hear this dispute threatens this Court's jurisdiction just as much as that of the ITC. (*See* Qualcomm Opp. at 12-13.)

EXHIBIT _I-5_

1    *First*, the Court has authority to enter the injunction notwithstanding the

2    current stay.  The text of 28 U.S.C. § 1659 and the legislative history make clear that

3    the stay under that section applies only to litigating the substance of the patent

4    claims before the ITC, not to litigating about procedural matters such as those raised

5    by this motion.  Indeed, Qualcomm's actions speak louder than its advocacy:  even

6    after the case was stayed, Qualcomm continued to ask the Court to rule on *its*

7    motion to consolidate the case with another, never once suggesting that the stay

8    disabled the Court from acting.  And, the Court did, in fact, rule on Qualcomm's

9    motion despite the stay.

10   *Second*, this is a case where the "first to file" rule applies, and that is

11   dispositive.  Even Qualcomm concedes that "*Broadcom is correct* that the forum

12   selection question would ordinarily be decided in the court in which the case was

13   first filed" – namely, this Court.[3]  All factors point to applying the "ordinar[y]" rule

14   here.  Qualcomm's San Diego lawsuit is entirely duplicative of its litigation here,

15   and is largely just a back-door attempt to correct its failure to file a Rule 12(b)(3)

16   motion in this Court.  In addition, despite Qualcomm's effort in its Opposition to put

17   a different face on the matter, Qualcomm represented to this Court that it would

18   litigate the Wireless Subnetwork patents in the ITC and bring the ITC's findings

19   back here.[4]  Qualcomm's suggestion that the statutory stay prevents application of

20   the "first to file" rule both mischaracterizes the scope of the stay and glosses over

21   the fact that any procedural bind in which Qualcomm now finds itself in is of its

22   own making.

23

---

24   [3]   *See* Qualcomm Opp. at 21 (emphasis added).

25   [4]   In its August 1, 2005 brief filed in this Court, for example, Qualcomm
26   specifically discussed the expected "determinations ... by the Administrative Law
     Judge and the Commission in the ITC concerning the '379 patent [] and '872 patent"
27   (the Wireless Subnetwork Patents), which would "bear directly on the issues to be
28   litigated and decided by this Court." (*See* Vento Decl., Ex. 6 at 7.)

1    *Third*, Qualcomm most certainly did not act "immediately"[5] or follow the

2    "settled procedure prescribed by the Federal Circuit"[6] for litigating forum selection

3    clauses.  The litigant in *Texas Instruments v. Tessera, Inc.* — the case Qualcomm

4    insists "prescribe[s] exactly how" a litigant should proceed[7] — filed for injunctive

5    relief *just seven days* after the other party filed its ITC complaint, well before the

6    ITC even opened an investigation.  By contrast, Qualcomm waited *three months*

7    after Broadcom's ITC complaint to run to San Diego – so long that 80 percent of the

8    time allotted for fact discovery in the ITC will have run by the time Qualcomm's

9    motion in San Diego will be heard.

10    *Fourth*, Qualcomm's predictions of a jurisdictional meltdown if the Court

11    grants Broadcom's injunction are far-fetched.  The injunctive relief Broadcom is

12    requesting is common in cases where a litigant improperly shops for a second

13    forum.

14    *Finally*, Qualcomm's repeated suggestion that Broadcom does not and cannot

15    dispute the application of the forum selection clause is wrong.  Broadcom's Opening

16    Brief clearly stated Broadcom's position that Qualcomm inaccurately portrays the

17    Bluetooth RF Agreement as a license from Broadcom to Qualcomm when in fact it

18    is the other way around, i.e. there is no license from Broadcom to Qualcomm and

19    therefore no license defense.[8]

20

21

---

22    [5]  *See* Qualcomm Opp. at 6.

23    [6]  *See* Qualcomm Opp. at 2.

24    [7]  *See* Qualcomm Opp. at 9.

25    [8]  *See* Broadcom Corporation's Memorandum in Support of Its Motion to Vacate
26    Stay To Enjoin A Duplicative, Later-Filed Action (Case No. 05 CV 1662 B (JMA)
      In The Southern District of California) ("Broadcom Br.") at 8 ("Although
27    Qualcomm depicts this agreement as a license from Broadcom to Qualcomm, to the
28    extent any license is given it is from Qualcomm to Broadcom.").

II.   **ARGUMENT.**

    A.   **The Statutory Stay Does Not Prevent This Court From Entering An Injunction To Protect Its Jurisdiction.**

        1.   **Both The Act And Its Legislative History Make Clear That The Stay Applies Only To Litigating The Substance Of The Patent Claims Before The ITC, Not The Entire District Court Proceeding.**

Qualcomm's contention that the issuance of a stay under 28 U.S.C. § 1659 shuts down the *entire* proceeding in the district court is erroneous. First, that is not what the statute says. By its express terms, Section 1659 directs the district court to "stay … proceedings" *not* in their entirety, but only "with respect to any claim that involves the same issues involved in the proceeding before the [ITC]." 28 U.S.C. § 1659. Qualcomm concedes that its claim concerning the forum selection clause does not involve "the same issues" pending before the ITC; indeed, it contends that it would have been "futile" to ask the ITC to rule on Qualcomm's forum selection clause arguments because the ITC *would not even have entertained* those arguments.[9] By the same token, the ITC would never opine on the procedural issue here – whether the "first to file" rule requires that a patent case proceed in one federal court and not another.

Moreover, the history of Section 1659 confirms that a stay applies only with respect to substantive litigation concerning the claims pending before the ITC, not to the district court case as a whole. Section 1659 was enacted as part of legislation implementing the U.S. commitments in the Uruguay Round of trade negotiations under GATT.[10] Pursuant to statutory authority governing the negotiation of trade agreements,[11] the President submitted proposed implementing legislation to

---

[9]   *See* Qualcomm Opp. at 17.

[10]   Uruguay Round Agreements Act § 321(b)(1)(A), Pub. L. No. 103-465 (1994).

[11]   *See* 19 U.S.C. § 2112(d).

1  Congress, together with a "Statement of Administrative Action" detailing the U.S.

2  commitments and explaining how the proposed legislation would work.[12]  The

3  President's Statement of Administrative Action describes exactly what would be

4  stayed under Section 1659:

5              The new section requires a district court to stay its

6              proceedings, at the request of a respondent in a section 337

7              proceeding, in respect of any claim that involves the same

8              issues as those pending before the ITC.  *Such issues would*

9              *involve questions of patent validity, infringement, and any*

10             *defenses that might be raised in those proceedings.*  The

11             district court may use its *discretionary* authority to stay

12             *any other claims* before it.[13]

13      This is not some stray piece of legislative history:  Congress specifically

14  ratified the Statement of Administrative Action as part of the legislation, *see* 19

15  U.S.C. § 3511(a)(2), and provided that the Statement "shall be regarded as an

16  *authoritative* expression by the United States concerning the interpretation and

17  application of ... this Act *in any judicial proceeding* in which a question arises

18  concerning such interpretation or application."  19 U.S.C. § 3512(d) (emphasis

19  added).

20      The Statement of Administrative Action – which provides the "authoritative"

21  construction of Section 1659 for these purposes – makes clear that Qualcomm is

22  wrong.  *First*, it clarifies that the automatic stay applies to individual claims, not the

23  proceeding as a whole; a stay may be mandatory with respect to some claims, but

24

25  [12]  *See* H.R. Rep. No. 103-826(I), at 11, 22, *as reprinted in* 1994 U.S.C.C.A.N.
    3773, 3783, 3794 (explaining history).

26
    [13]  Statement of Administrative Action To Accompany H.R. 103-826(I), H.R. Rep.
27  No. 103-316, at 705, *as reprinted in* 1994 U.S.C.C.A.N. 4040, 4076 (emphasis

28  added).

1  "discretionary" with respect to the "any other[s]."  *Second*, the automatic stay

2  applies only to substantive litigation over the "issues," such as "questions of patent

3  validity" and "infringement" – not to purely procedural matters such as application

4  of the first-filed rule.  *Finally*, the stay applies only to "defenses that might be raised

5  in those [ITC] proceedings," and Qualcomm itself flatly states that it could not have

6  raised its forum selection clause defense at the ITC: "'If ... [the Complainant] has

7  failed to honor a promise that it made not to file a complaint at the Commission, it

8  appears that [the respondent's] remedy, if any would lie in the District Court.'"[14]

9  Similarly, the ITC could not consider the matters raised by the present motion.

10     This Court clearly has authority to consider Broadcom's motion and enter an

11 injunction against Qualcomm's attempt to evade the Court's jurisdiction.

12
13     **2.     Qualcomm's Own Conduct Demonstrates That It Believes
              The Court May Continue To Rule On Motions, Despite The
              Stay.**
14

15     Equally telling, Qualcomm's actions contradict its advocacy.  Even after the

16 Court stayed this case under 28 U.S.C. § 1659, Qualcomm continued to pursue

17 motions it had filed in this (stayed) docket, the Court heard oral argument in this

18 (stayed) docket, and at Qualcomm's request, the Court continued to enter orders in

19 this (stayed) docket.

20     As the Court will recall, on the same day Qualcomm filed its Motion To Stay

21 Case Pursuant to 28 U.S.C. § 1659, it also filed – *in both this case and Case No. 467*

22 – a Motion To Consolidate Case Nos. 467 and 468 and Stay Case No. 467.  This

23 Court quickly granted the first motion (which was unopposed) on August 2, staying

24 this case pursuant to Section 1659.  But the second motion remained pending.

25 ───────────────

26 [14]  *See* Qualcomm Opp. at 17 (citing to *In the Matter of Certain Semiconductor
     Chips wit Minimized Chip Package Size and Products Containing Same*, ITC

27 Investigation No. 337-TA-432, Order No. 5 at 40 (Qualcomm Request for Judicial

28 Notice, Ex. 2)).

1    Despite the Section 1659 stay, Qualcomm had no problem continuing to

2 pursue its Motion to Consolidate the stayed case with Case No. 467.  At the oral

3 argument on August 8, 2005, Qualcomm did not suggest that the Section 1659 stay

4 deprived the Court of jurisdiction to issue any further orders.  On August 16, 2005,

5 this Court denied Qualcomm's Motion to Consolidate and entered orders in *both the*

6 *stayed and unstayed cases.*  In light of Qualcomm's desire to have the Court

7 continue ruling on *its* motions after the Section 1659 stay, its current protests about

8 the effect of the stay ring hollow.

9    **B.    Under The "First To File" Rule, Qualcomm Should Be Enjoined**

10    **From Pursuing The San Diego Litigation.**

11    Qualcomm concedes that pursuant to the first to file rule, "the forum selection

12 question would ordinarily be decided in the court in which the first case was filed" –

13 here, this Court.[15]  *See E. & J. Gallo Winery v. Andina Licores*, No. CVF05-0101

14 AWILJO, 2005 WL 1554001, at *9 (E.D. Cal. June 24, 2005) ("The remedy for a

15 party who is called to defend a complaint in a forum other than the one designated

16 by the forum selection clause is by petition to the court where the action was

17 brought for change of venue."); *Sega of America, Inc. v. Signal Apparel Co.*, No. C-

18 97-1392-VRW, 1997 WL 414196, at *1 (N.D. Cal. July 14, 1997) ("first filed rule

19 demands that the [first-filed] court, not this one, decide whether the forum selection

20 of the Licensing Agreement requires transfer or dismissal" of the first-filed action

21 (internal citations omitted)).

22    Likewise, Qualcomm does not dispute that under settled law, the first-filed

23 court may enjoin the parties from proceeding in a later-filed action.  *See e.g., Lab.*

24 *Corp. of Am. Holdings v. Chiron Corp.*, 384 F.3d 1326, 1333 (Fed. Cir. 2004)

25 (affirming district court decision to enjoin parties from proceeding in later-filed

26 action); *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir.

27 ────────────────

28 [15]  *See* Qualcomm Opp. at 21.

1  1986) ("When a district court has jurisdiction over all parties involved, it may enjoin

2  later filed actions.").

3       Knowing that there is a strong presumption that the first to file rule should be

4  applied absent "exceptional circumstances," and that this Court has the power to

5  enjoin it, Qualcomm offers a distorted rendition of the facts – and of the case law –

6  in an effort to suggest that this is a special case in which the Court should decline to

7  follow the usual rules.  In fact, as we show here, this is a particularly *strong* case for

8  applying the normal first to file rule and staying the second-filed case.

9          **1.**    **The Case Law Supports Routine Application Of The First To**

10               **File Rule Here.**

11       The first-filed rule applies "unless considerations of judicial and litigation

12  economy, and the just and effective disposition of disputes, requires otherwise."

13  *Electronics for Imaging, Inc. v. Coyle*, 394 F.3d 1341, 1347 (Fed. Cir. 2005)

14  (dismissal was abuse of discretion when first-filed rule was not followed).  A court

15  should apply the first-filed rule unless it would be "unjust or inefficient to continue

16  the first-filed action."  *Genentech, Inc. v. Eli Lilly and Company*, 998 F.2d 931, 938

17  (Fed. Cir. 1993) (*abrogated on other grounds by Wilton v. Seven Falls Co.*, 515 U.S.

18  277 (1995)).

19       Finding no factually analogous decision to cite in its Opposition, Qualcomm

20  turns the caselaw on its head.

21       Qualcomm cites two cases in which the court declined to apply the first to file

22  rule; both are easily distinguishable.  In both of these cases, the first-filed action was

23  for a *declaratory judgment* (*e.g.*, of non-infringement), and a second action alleging

24  infringement was filed shortly thereafter.  For example, in *Mitel Networks, Inc. v.*

25  *Rates Tech., Inc.*, Case No. SA CV 04-1086 JVS (ANx) (Selna, J.), the first-filed

26  action was a declaratory judgment action filed just *one day* before a patent

27

28

1387878

EXHIBIT __I-12__

1 | infringement action was filed in another court.[16] As the Federal Circuit has

2 | observed, this fact pattern is distinguishable from the situation here. In *Serco Servs.*

3 | *Co., L.P. v. Kelley Co., Inc.*, for example, the Federal Circuit recognized that, where

4 | the first-filed action is for a *declaratory judgment*, whether a party intended to

5 | preempt a lawsuit for affirmative relief by the "real" plaintiff (the patent owner) is a

6 | factor in determining whether to apply the first-filed rule. 51 F.3d 1037, 1038 (Fed.

7 | Cir. 1995). Not so here, where Broadcom's first-filed suit seeks affirmative relief

8 | (*e.g.*, an injunction and damages for patent infringement), and Qualcomm's *second-*

9 | *filed* suit is for a declaratory judgment. And the timing makes this case still less like

10 | *Mitel* – since here three months, rather than one day, passed before Qualcomm filed

11 | its second, duplicative suit.

12 | Moreover, Qualcomm's cases are readily distinguishable for another reason:

13 | unlike with a lawsuit for affirmative relief, "it is within the discretion of the district

14 | court whether to hear [a] section 2201 declaratory relief action." *See Qualcomm,*

15 | *Inc. v. GTE Wireless, Inc.*, 79 F. Supp. 2d 1177, 1179 (S.D. Cal. 1999) (Brewster, J.)

16 | (internal citations omitted). "In fact, '[since] its inception, the Declaratory

17 | Judgment Act has been understood to confer on federal courts unique and

18 | substantial discretion in deciding whether to declare the rights of litigants." *Id.*

19 | (internal citations omitted). Thus, in each of the cases on which Qualcomm relies,

20 | but unlike this case, the Court had discretion under the Declaratory Judgment Act to

21 | dismiss the first-filed case.

22 | Finally, Qualcomm's Opposition fails to mention that the two Federal Circuit

23 | cases it does cite, *Electronics for Imaging* and *Genentech*, held that the district

24 |

25 |

26 | [16] The *Mitel* case is distinguishable for the additional reason there the "witnesses, documents and other evidence" in both cases were "located in" the jurisdiction of

27 | the second filed court. *See Mitel Networks, Inc. v. Rates Technology, Inc.*, Case No. SA CV 04-1086 JVS (ANx) (Selna, J.) at 7.

28 |

Broadcom's Reply In Further Support Of Its Motion To
Vacate Stay & Enjoin A Duplicative, Later Filed Action
EXHIBIT 1-13

1387878                          - 9 -

1  court's decision *not* to abide by the first to file rule *was* an abuse of discretion.  *See*

2  *Electronics for Imaging*, 394 F.3d at 1348; *Genentech*, 998 F.2d at 938.

3        Qualcomm also contends, without explanation, that it was not obliged to raise

4  its forum selection clause claims in this Court.  But that is incorrect.  As Qualcomm

5  does not dispute, enforcement of a (claimed) forum selection clause must ordinarily

6  (as the *Sega* and *Gallo* cases explain) be sought in the *first-filed* court, through a

7  motion to dismiss under Rule 12(b)(3) (as the *Argueta* case, discussed below,

8  explains).  Qualcomm's only excuse for not doing so – that the Section 1659 stay

9  provision prevented it from filing such a motion – is mistaken for the reasons

10  discussed above.

11        **2.   Equity Supports Application Of The First To File Rule Here.**

12        Qualcomm's own conduct demonstrates that "considerations of judicial and

13  litigation economy, and the just and effective disposition of disputes" require this

14  Court to apply, *not* abandon, the first-filed rule.

15        *First*, after sitting silently for three months, Qualcomm, with the filing of the

16  San Diego case, seeks to halt, in the midst of what it acknowledges is the

17  Commission's "meteoric" discovery process,[17] the ITC's investigation of the

18  allegation that Qualcomm is infringing the two Wireless Subnetwork Patents.  As

19  Qualcomm concedes, discovery in this ITC Investigation is proceeding at a

20  ferocious clip.

21        *Second*, as Qualcomm does not dispute, the proper vehicle to raise a claim

22  that a lawsuit has been filed in violation of a forum selection clause is a motion to

23  dismiss under Rule 12(b)(3).  *See Argueta v. Banco Mexicano, S.A.*, 87 F.3d 320,

24  324 (9th Cir. 1996) (motion to dismiss premised on enforcement of forum selection

25  clause should be treated as a 12(b)(3) motion to dismiss for improper venue).

26  Having failed to do that, Qualcomm now seeks to employ a back-door method to

27

28  [17]   *See* Qualcomm Opp. at 9.

1387878

**EXHIBIT** I-14

1 | achieve the same result:  running to another federal court to file a duplicative action.

2 | Qualcomm is wrong not just as to the venue (San Diego vs. Santa Ana) but as to

3 | timing:  parties must challenge venue, if ever, in the earliest stages of the litigation.

4 | *See E. & J. Gallo Winery v. Encana Energy Serv., Inc.*, No. CVF03-5412 AWILJO,

5 | 2005 WL 1657063, at *11 (E.D. Cal. July 6, 2005) (A party cannot "sit on its forum

6 | selection rights, allowing a court to invest its resources in the resolution of the

7 | action, until such time as things go unfavorably.  To allow late invocation of a

8 | forum selection clause would be to countenance forum shopping at its most

9 | wasteful.").  Because ITC proceedings move so quickly, a three-month delay in this

10 | context is equivalent to a much longer delay in a normal district court case.

11 | *Finally*, and perhaps most importantly, Qualcomm seeks this relief in San

12 | Diego even though, in its filings in *this* Court in late July and early August 2005,

13 | Qualcomm assured the Court that it *did* plan to litigate about these five patents at the

14 | ITC.[18]  For example, Qualcomm told the Court on August 1, 2005 that "*the ITC*

15 | *investigation will be completed, and the benefits of that case available for use here,*

16 | *in a very short while.*"[19]  In its Opposition, Qualcomm attempts to explain away its

17 | assurances to this Court.  But Qualcomm's explanations make no sense.

18 | Qualcomm defends the particular statements that Broadcom quoted in its

19 | initial brief by saying that those statements are supposedly "true" because *three of*

20 | *the five patents* will be litigated at the ITC, even if Qualcomm obtains an injunction

21 | against ITC litigation over the Wireless Subnetwork Patents.[20]  But in committing

22 | itself to the ITC litigation in its late July and early August filings, Qualcomm said

23 | nothing to limit its arguments to three of the five patents at issue in the ITC, or to

24 | ────────────────

25 | [18] *See* "Broadcom Br." at 5-6 (quoting Qualcomm representations).

26 | [19] *See* Declaration of Maria K. Vento in Support of Broadcom Corp.'s Motion to
Vacate Stay To Enjoin A Duplicative, Later-Filed Action ("Vento Decl."), Ex. 1

27 | at 15 (emphasis added).

28 | [20] *See* Qualcomm Opp. at 3, 14.

1  exclude the Wireless Subnetwork Patents from those arguments.  Indeed,

2  Qualcomm's July/August stay briefs are *filled* with detailed discussions of the

3  Wireless Subnetwork Patents being litigated at the ITC.[21]  The import of

4  Qualcomm's briefs was thus clear:  it would be litigating about all five patents,

5  including the Wireless Subnetwork Patents, at the ITC.

6       If there were any doubt about the matter, though, it is eliminated by

7  Qualcomm's representation to the Court *specifically about the two Wireless*

8  *Subnetwork Patents* (Patent Nos. '379 and '872):

9            Clearly, the discovery taken and the arguments made by

10            the parties, as well as the determinations reached by the

11            Administrative Law Judge and the Commission in the ITC

12            concerning the '379 patent (and '872 patent which, despite

13            Broadcom's obfuscations, is also a 'two-network' patent)

14            bear directly on the issues to be litigated and decided by

15            this Court with respect to the '317 patent.[22]

16       Even if Qualcomm's strained reading of certain of its earlier assurances were

17  credible (which it is not), Qualcomm cannot reconcile the quoted specific, express

18  representation – that there would be "determinations" reached by the Administrative

19  Law Judge and the Commission itself *about the Wireless Subnetwork Patents* – with

20  its new contention that it is improper for Broadcom to pursue those same patent

21  claims at the ITC.

22       To grant Qualcomm's motion would be to reward it for making, and then

23  contradicting, these assurances to the Court.  Such a result surely would not further

24  "judicial and litigation economy, and the just and effective disposition of disputes."

25

26

---

27  [21]  *See, e.g.,* Vento Decl., Ex. 1 at 3, 4, 5, 7, 9.

28  [22]  *See* Vento Decl., Ex. 6 at 7.

### 3.   The Existence Of The Stay Does Not Create An Exception To The First To File Rule.

Qualcomm also insists that the Section 1659 stay creates "another natural exception" to the first to file rule, because "[i]f ... this Court had no authority to lift the stay, then Qualcomm could not bring [its] motion for a preliminary injunction in this case," freeing Qualcomm to run to a second court.[23]  Leaving aside that Qualcomm is incorrect about the scope of the statutory stay provision (as set forth above), if Qualcomm were now in a bind, it would be one entirely of its own making.

Two and a half months elapsed between the time the Complaint was filed and the issuance of the Section 1659 stay.  Qualcomm made the choice to forgo raising the forum selection clause during this entire time, and Qualcomm also made the choice to waive its chance to move to dismiss for improper venue under Fed. R. Civ. P. 12(b)(3) by filing an answer and counterclaims.  Qualcomm's claimed worry that it might have "risk[ed] missing its 30-day deadline for a mandatory stay"[24] had it tried to file a Rule 12(b)(3) motion is not plausible; as discussed below, the parties in the cases Qualcomm relies on (*Tessera* and *Ciena*) managed to file forum selection clause motions in district court even *before* the ITC formally instituted the investigations in those cases.

### C.   Qualcomm Did Not Act "Immediately" Or "Follow The Federal Circuit's Roadmap.

Qualcomm next suggests that it followed the "settled procedure prescribed by the Federal Circuit,"[25] moving "immediately"[26] to file suit to stop the ITC's

---

[23]  *See* Qualcomm Opp. at 18.

[24]  *See* Qualcomm Opp. at 13.

[25]  *See* Qualcomm Opp. at 2.

[26]  *See* Qualcomm Opp. at 6.

1   investigation.  Qualcomm's definition of "immediate" is curious.  Broadcom filed

2   its ITC complaint on May 19, 2005.  Qualcomm waited a month while the ITC

3   decided whether to open an investigation, which it did on June 16.  Qualcomm then

4   waited *another* month, almost running out the full 30-day clock for seeking a stay of

5   the parallel district court proceeding under 28 U.S.C. § 1659.  And then Qualcomm

6   waited yet a *third* month, finally filing its San Diego lawsuit and application for a

7   preliminary injunction on August 22, 2005.

8        By contrast, the movant in *Texas Instruments v. Tessera, Inc.* – the case that

9   Qualcomm insists is "the Federal Circuit's roadmap" that "prescribe[s] exactly how

10  a litigant in QUALCOMM's position should" enforce a forum selection clause[27] –

11  filed for a TRO and preliminary injunction just seven days after the other party filed

12  its ITC complaint, which was more than three weeks before the ITC even *instituted*

13  its investigation. *See Texas Instruments v. Tessera, Inc.*, 231 F.3d 1325, 1327 (Fed.

14  Cir. 2000).  Similarly, the movant in the only other case Qualcomm cites filed for its

15  injunction just three weeks after the other party's ITC complaint, and again before

16  the ITC initiated an investigation. *See Ciena Corp. v. Nortel Networks, Inc.*, No.

17  2:05 CV 14, 2005 WL 1189881, at *2 (E.D. Tex. May 19, 2005).[28]  By waiting three

18  months until after Broadcom's ITC complaint to file its PI Application, Qualcomm

19  hardly acted "immediately"; on the contrary, given what Qualcomm describes as the

20  "meteoric" pace of ITC litigation,[29] Qualcomm delayed so long that by the time the

21

22

23

---

24  [27]  *See* Qualcomm Opp. at 9.

25  [28]  In *Ciena*, the complaint was filed in the ITC on February 25, 2005, and the
    motion for a preliminary injunction was filed on March 14, 2005 – before the ITC
26  investigation was instituted on March 24, 2005.  *See Ciena*, No. 2:05 CV 14, 2005
    WL 1189881, at *2.
27

28  [29]  *See* Qualcomm Opp. at 9.

1  Court in San Diego could rule on the PI Application, almost *80 percent* of the time

2  allotted for fact discovery will already have run.[30]

3       A close examination of *Tessera* reveals just how different that case was. On

4  February 1, 2000, Texas Instruments ("TI") sued Tessera in the Central District of

5  California, seeking a declaration that certain Tessera patents were invalid and that

6  TI did not infringe them. *See id.* at 1327.  Almost two months later, on March 28,

7  2000, Tessera filed a proposed complaint in the ITC, alleging that TI's products

8  infringed the same patents. *Id.*  One week later (April 4, 2000) – and more than

9  three weeks before an investigation was even instituted by the ITC – TI applied for a

10  TRO and asked the Central District to enjoin Tessera from proceeding with the

11  later-filed ITC Action. *Id.*  TI's motion was based on a patent license agreement

12  that explicitly covered the patents at issue and provided that "'any litigation between

13  the parties relating to this Agreement shall take place in California.'" *Id.*

14       But unlike TI, Qualcomm did *not* file the first action.  Unlike in *Tessera*, the

15  contract at issue here is *not* a license *from* the plaintiff, and does not refer to the

16  patents in question.[31]  Finally, as noted above, Qualcomm waited *three months* – not

17  seven days – before raising the forum selection clause issue, even though

18  Qualcomm had filed many papers during that time to which the clause would have

19  been acutely relevant.[32]

20       Qualcomm's excuses for waiting that long are unavailing.  Qualcomm's

21  suggestion that its "priority" instead had to be obtaining the stay under 28 U.S.C.

22

23  [30]  Judge Brewster has postponed the oral argument on Qualcomm's motion for a preliminary injunction and Broadcom's motion to dismiss until October 7, 2005.

24  [31]  As discussed in more detail in Part II.E., the Bluetooth RF Agreement explicitly

25  states that it is not a patent license agreement.

26  [32]  Why Qualcomm insists the relevant time period is the six weeks beginning with the filing of the Santa Ana answer is unclear. (*See, e.g.*, Qualcomm Opp. at 3.)  The

27  *Tessera* and *Ciena* movants realized the need to move for an injunction quickly and

28  both managed to make their motions well before the ITC instituted investigations.

1  § 1659 is specious.[33]  The process of filing for a Section 1659 stay is trivial: the stay

2  is mandatory, Broadcom did not oppose it, and Qualcomm's Section 1659 motion

3  was a mere four pages long.[34]  Qualcomm knew that it wanted the stay at least as

4  early as June 19, when it asked Broadcom to consent; only it can say why it needed

5  nearly another full month to file the motion.[35]  In addition, there is no reason why

6  Qualcomm had to wait until filing for the Section 1659 stay before it could move to

7  stop the ITC proceedings:  the movants in both *Tessera* and *Ciena* swung into action

8  as soon as the proposed ITC complaints were filed, and both managed to make their

9  motions before the ITC even *instituted* investigations on those complaints.[36]

10  Finally, even if there were some reason for Qualcomm to wait until after the Section

11  1659 motion before moving to stop the ITC case, there would be no excuse for

12  waiting yet another month before acting.

13  **D.    Qualcomm's Scenarios For What Will Happen In San Diego If An**
         **Injunction Is Granted Have No Basis.**
14

15  To ensure that this threshold jurisdictional issue raised by Qualcomm's filing

16  of a duplicative action are addressed before any Court addresses the merits of

17  Qualcomm's substantive preliminary injunction papers, Broadcom quickly filed

18  _____
    [33]  *See* Qualcomm Opp. at 1; *see also id.* at 5.

19  [34]  A copy of Defendant Qualcomm Incorporated's Notice Of Motion And
20  Unopposed Motion To Stay Pursuant To 28 U.S.C. § 1659(a) is attached to the
    Declaration Of Maria K. Vento In Support Of Broadcom Corporation's Reply
21  Memorandum In Further Support Of Its Motion To Vacate Stay And Enjoin A
22  Duplicative Later Filed Action ("Vento R.Decl.") as Exhibit 1.

23  [35]  Similarly, Qualcomm cannot point to the burden of answering the complaint as a
    reason for delay; it is only because Qualcomm waited so long to move for a Section
24  1659 stay that the time for its answer came due.

25  [36]  Qualcomm argues that *American Patriot Ins. Agency v. Mutual Risk Mgmt LTD*,
26  364 F.3d 884 (7th Cir. 2004) supports it because the court found that the party did
    not wait too long to enforce a forum selection clause.  But there, unlike here, the
27  case was put on hold so the parties could settle the case, and virtually no litigation
28  occurred. *Id.* at 887.  Here the facts are radically different.

1 papers in both this Court and in the Southern District of California after receiving

2 Qualcomm's San Diego papers. Broadcom's filings in both Courts are directed

3 towards ensuring that the jurisdictional issues are resolved first and in the proper

4 forum. In so doing, Broadcom was candid with both Courts and Qualcomm,

5 informing Qualcomm of its intent to file in both Courts before filing in either, and

6 attaching a copy of the brief filed in the Southern District to its filings in this Court

7 and a copy of the brief filed in this Court to its filings in the Southern District.[37]

8       Contrary to Qualcomm's suggestion, the relief Broadcom seeks here is not

9 "extraordinary;" it is a well-accepted way to address a later-filed, duplicative

10 action.[38] *See, e.g., Lab. Corp. of Am. Holdings v. Chiron Corp.*, 384 F.3d 1326

11 (Fed. Cir. 2004); *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843

12 (9th Cir. 1986); *Asset Allocation & Mgmt. Co. v. W. Employers Ins. Co.*, 892 F.2d

13 566, 572 (7th Cir. 1989) (power to enjoin a second ... lawsuit is based on the court's

14 inherent ability to manage complex litigation economically); *Nat'l Equip. Rental,*

15 *Ltd. v. Fowler*, 287 F.2d 43, 46 (2d Cir. 1961) ("an injunction should issue enjoining

16 the prosecution of the second suit to prevent the economic waste involved in

17 duplicating litigation which would have an adverse effect on the prompt and

18 efficient administration of justice ..."); *Martin v. Graybar Elec. Co.*, 266 F.2d 202,

19 204 (7th Cir. 1959) (absent "unusual circumstances ... 'the party filing later in time

20 should be enjoined from further prosecution of his suit'" (internal citations

21 omitted)).

22       Granting Broadcom's motion to enjoin Qualcomm from pursuing its later-

23 filed duplicative action will not "put Judge Brewster in [an] awkward position" and

24 create a jurisdictional tangle. As the list of cases above shows, there is ample

25

26 [37] To further ensure that the threshold jurisdictional issue would be raised first,
27 Broadcom sought an expedited schedule in both Courts.

28 [38] *See* Qualcomm Opp. at 1.

1  precedent for enjoining a party from proceeding improperly in another tribunal;

2  indeed, that is exactly the relief that Qualcomm seeks (improperly on the facts here)

3  as to two of the patents in the ITC proceeding.  Qualcomm does not cite any

4  authority for the proposition that chaos will result from the issuance of a routine

5  order of this sort, and we are aware of none.

6       If Qualcomm were truly concerned about issues of "comity and jurisdiction,"

7  it would have asked *this* Court to grant whatever relief it claimed it needed.  Having

8  made the affirmative decision to seek out a second forum, Qualcomm cannot now

9  assert that it is improper for Broadcom to raise the threshold, jurisdictional issue in

10  each of the Courts that stand to be affected by Qualcomm's forum-shopping.

11  **E.    The Bluetooth RF Agreement Grants A License From Qualcomm**
12  **To Broadcom – Not The Other Way Around.**

13       Qualcomm spends pages of its brief on the purported merits of its forum

14  selection clause argument, and asserts (incorrectly) that Broadcom does not

15  challenge the applicability of the clause to its patent claims over the Wireless

16  Subnetwork Patents.[39]  In other places, Qualcomm takes the opposite tack, urging

17  the Court not to "stray from the threshold question" of *"who decides"* and attempt to

18  determine "the ultimate question, *where should the litigations be?*"[40]

19       In fact, the forum selection clause of the 2001 Bluetooth RF Agreement does

20  *not* apply to Broadcom's claims that Qualcomm infringes the Wireless Subnetwork

21  Patents.[41]  Because this motion does not call on the Court to resolve the applicability

22  of the forum selection clause, we address that issue only briefly here.[42]  Even a

23

24  [39]  *See* Qualcomm Opp. at 3, 6-10, 13.

25  [40]  *See* Qualcomm Opp. at 19-20.

26  [41]  *See* Broadcom Br. at 8.

27  [42]  Broadcom has addressed this issue in detail in its Opposition To Qualcomm
    Incorporated's Application For A Preliminary Injunction, which is attached to the
28  Vento Reply Declaration as Exhibit 2.

1  cursory review of the facts, however, shows that the forum selection clause does not

2  apply to any of Broadcom's patent claims.

3        In May 2000, Qualcomm and Broadcom entered into their first, preliminary

4  agreement relating to Bluetooth technology. That contract – the "Mutual

5  Nondisclosure Agreement" – expressly provides that neither party licensed any

6  intellectual property rights to the other: "No license to a party of any … patent … is

7  either granted or implied by this Agreement or any disclosure hereunder …."

8        It was another eighteen months before Qualcomm and Broadcom entered into

9  the August 2001 Bluetooth RF Agreement. Qualcomm's briefs (both here and in

10  San Diego) imply that the Agreement is a license *from Broadcom to Qualcomm*. A

11  reading of the Agreement shows the contrary is true:  the Agreement is a license

12  *from Qualcomm to Broadcom.*  Specifically, Qualcomm gives Broadcom access to

13  information about Qualcomm's chips so that Broadcom can develop compatible

14  Bluetooth RF chips.

15        The second "WHEREAS" clause of the Agreement, for example, states that

16  "Broadcom desires to *receive* a license to use [Qualcomm's] Blue Q Technical

17  Information … to develop an RF [chip]" that will work with CDMA cell phones.

18  The substantive provisions of the Agreement state that Qualcomm will give

19  Broadcom certain technical information (¶ 2) and that Broadcom will use that

20  information to try to develop a Bluetooth RF chip (¶¶ 3-4). If Broadcom succeeded,

21  Qualcomm agreed to tell vendors that the Bluetooth RF chip complies with

22  Qualcomm's standards (¶ 5). The Agreement is *not* a license from Broadcom to

23  Qualcomm, but the reverse:  a license *from* Qualcomm allowing Broadcom to use

24  certain technical information so that Broadcom could create Bluetooth RF chips.

25        Subsequent to entering the Bluetooth RF Agreement, the parties again

26  confirmed, in a separate agreement, that no license from Broadcom to Qualcomm

27  exists:  the June 2003 "Memorandum of Understanding" between Qualcomm and

28  Broadcom, like the 2000 Nondisclosure Agreement, confirms that "[n]o license of

1   intellectual property rights, including but not limited to patents … is granted" by
2   either party.

3   In short:  the Bluetooth RF Agreement is a license from Qualcomm to
4   Broadcom, not the other way around, and neither that agreement nor any other
5   agreement between the parties conveyed any relevant intellectual property rights to
6   Qualcomm.  Broadcom's patent claims about the Wireless Subnetwork Patents thus
7   do not fall within the forum selection clause of the Agreement.

8   **III.    CONCLUSION.**

9   This is a classic case for application of the first-filed rule:  the second-filed
10  lawsuit is for a declaratory injunction about the same matters addressed in the first-
11  filed suit, and was filed long after the first-filed suit.  The statutory stay provision
12  (Section 1659) does not prevent this Court from resolving procedural matters such
13  as this, any more than it prevented the Court from considering Qualcomm's motion
14  for consolidation even after the stay was entered.

15  For the foregoing reasons, the Court should enjoin Qualcomm from
16  proceeding with its duplicative, later-filed San Diego case.

17  Dated:  September 22, 2005               Respectfully submitted,

18                                          IRELL & MANELLA LLP

19

20

21                                          By:
                                            Layn R. Phillips
22                                          Attorneys for Plaintiff and Counter-
                                            Defendant
23                                          BROADCOM CORPORATION

24

25

26

27

28

Broadcom's Reply In Further Support Of Its Motion To
Vacate Stay & Enjoin A Duplicative, Later Filed Action

EXHIBIT  I-24

## PROOF OF SERVICE

1

2      I am employed in the County of Orange, State of California. I am over the age of 18 and not a party to the within action. My business address is 840 Newport

3  Center Drive, Suite 400, Newport Beach, California 92660-6324.

4      On September 22, 2005, I served the foregoing document described as **BROADCOM CORPORATION'S REPLY MEMORANDUM IN FURTHER**

5  **SUPPORT OF ITS MOTION TO VACATE STAY AND ENJOIN A DUPLICATIVE, LATER FILED ACTION (CASE NO. 05 CV 1662 B (JMA)**

6  **IN THE SOUTHERN DISTRICT OF CALIFORNIA)** on each interested party, as stated on the attached service list.

7

8      [X]      (BY FAX) I caused the foregoing document to be served by facsimile transmission from sending facsimile machine telephone number (949) 760-5200 to each interested party at the facsimile

9              machine telephone number shown on the attached service list. Each transmission was reported as complete without error. A transmission

10             report was properly issued by the sending facsimile machine for each interested party served.

11

12     [X]      (BY OVERNIGHT DELIVERY SERVICE) I served the foregoing document by FedEx/Overnite Express, an express service carrier

13             which provides overnight delivery, as follows. I placed a true copy of the foregoing document in sealed envelopes or packages designated by the express service carrier, addressed, as stated on the

14             attached service list, with fees for overnight delivery paid or provided for.

15

16             [X]      (BOX DEPOSIT) I deposited such envelopes or packages in a box or other facility regularly maintained by the express service carrier.

17

18             [ ]      (CARRIER PICK-UP) I delivered such envelopes or packages to an authorized carrier or driver authorized by the express service carrier to receive documents.

19

20     Executed on September 22, 2005, at Newport Beach, California.

21     I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

22

23     _____          _____
          Sheryl L. Knight                              *(Signature)*

24        (Type or print name)

25

26

27

28

EXHIBIT I-25

1387878

| | | |
|---|---|---|
| 1 | William K. West, Jr., Esq. | Counsel For Defendant Qualcomm |
| 2 | Cecilia H. Gonzalez, Esq.<br>Bert C. Reiser, Esq. | |
| 3 | Howrey LLP<br>1299 Pennsylvania Avenue, N.W. | |
| 4 | Washington, DC 20004<br>Phone:   (202) 783-0800 | |
| 5 | Fax:     (202) 383-6610 | |
| 6 | Peter J. Chassman, Esq.<br>Howrey LLP | Counsel For Defendant Qualcomm |
| 7 | 750 Bering Drive<br>Houston, TX 77057-2198 | |
| 8 | Phone:   (713) 787-1400<br>Fax:     (713) 787-1440 | |
| 9 | Christopher L. Kelley, Esq. | Counsel For Defendant Qualcomm |
| 10 | Howrey LLP<br>301 Ravenswood Avenue | |
| 11 | Menlo Park, CA 94025<br>Phone:   (650) 463-8100 | |
| 12 | Fax:     (650) 463-8400 | |
| 13 | Gregory S. Cordrey, Esq.<br>Elizabeth Hoult Fontaine, Esq. | Counsel For Defendant Qualcomm |
| 14 | Howrey LLP<br>2020 Main Street | |
| 15 | Irvine, CA 92614<br>Phone:   (949) 759-3934<br>Fax:     (949) 721-6910 | |
| 16 | | |
| 17 | | |
| 18 | | |
| 19 | | |
| 20 | | |
| 21 | | |
| 22 | | |
| 23 | | |
| 24 | | |
| 25 | | |
| 26 | | |
| 27 | | |
| 28 | | |

1387878

EXHIBIT  I-26

COPY

1   IRELL & MANELLA LLP
    Layn R. Phillips (103857) (lphillips@irell.com)
2   Michael G. Ermer (110496) (mermer@irell.com)
    Andra Barmash Greene (123931) (agreene@irell.com)
3   Richard de Bodo (128199) (rdebodo@irell.com)
    840 Newport Center Drive, Suite 400
4   Newport Beach, CA 92660-6324
    Telephone:  (949) 760-0991
5   Facsimile:   (949) 760-5200

6   WILMER CUTLER PICKERING HALE AND DORR LLP
    William F. Lee (william.lee@wilmerhale.com)
7   Mark Selwyn (mark.selwyn@wilmerhale.com)
    Richard W. O'Neill (richard.o'neill@wilmerhale.com)
8   60 State Street
    Boston, MA 02109
9   Telephone:  (617) 526-6000
    Facsimile:   (617) 526-5000
10

11  WILMER CUTLER PICKERING HALE AND DORR LLP
    James L. Quarles III (james.quarles@wilmerhale.com)
12  Thomas P. Olson (thomas.olson@wilmerhale.com)
    Maria K. Vento (maria.vento@wilmerhale.com)
13  1455 Pennsylvania Avenue, N.W.
    Washington, D.C. 20004
14  Telephone:  (202) 942-8400
    Facsimile:   (202) 942-8484

15  Attorneys for Plaintiff and Counter-Defendant
16  BROADCOM CORPORATION

17                    UNITED STATES DISTRICT COURT

18                   CENTRAL DISTRICT OF CALIFORNIA

19                        SOUTHERN DIVISION

20  BROADCOM CORPORATION,              )  Case No. SACV05-468-JVS (RNBx)
                                       )
21              Plaintiff,             )  **DECLARATION OF MARIA K.
                                       )  VENTO IN SUPPORT OF
22          vs.                        )  BROADCOM CORPORATION'S
                                       )  REPLY MEMORANDUM IN
23  QUALCOMM INCORPORATED,             )  FURTHER SUPPORT OF ITS
                                       )  MOTION TO VACATE STAY TO
24          Defendant.                 )  ENJOIN A DUPLICATIVE, LATER
                                       )  FILED ACTION (CASE NO. 05 CV
25                                     )  1662 B (JMA) IN THE SOUTHERN
                                       )  DISTRICT OF CALIFORNIA)
26  ─────────────────────────────     )
    AND RELATED CROSS-ACTION.          )  Hon. James V. Selna
27                                     )
                                       )  Date:         September 8, 2005
28                                     )  Time:         To Be Submitted
                                       )  Courtroom:    10C

Declaration Of Maria K. Vento In Support Of Broadcom's
Reply Memorandum In Further Support Of Its Motion To
Vacate Stay To Enjoin A Duplicative Later Filed Action

1387821

EXHIBIT 5-1

1    I, Maria K Vento, declare as follows:

2    1.    I am an associate at the law firm of Wilmer Cutler Pickering Hale and

3    Dorr LLP, co-counsel for Plaintiff and Counter-Defendant Broadcom Corp.

4    ("Broadcom") in the above-entitled action.  I am licensed to practice law in the

5    Commonwealths of Virginia and Massachusetts and the District of Columbia, and

6    am admitted *pro hac vice* before this Court in this matter.  I am familiar with the

7    facts set forth herein, and if called as a witness, I could and would testify

8    competently to those facts under oath.

9    2.    Attached hereto as Exhibit 1 is a true and correct copy of Defendant

10   Qualcomm Incorporated's Notice Of Motion And Unopposed Motion To Stay

11   Pursuant To 28 U.S.C. § 1659(a) and Supporting Memorandum of Points and

12   Authorities.

13   3.    Attached hereto as Exhibit 2 is a true and correct copy of Broadcom

14   Corporation's Opposition To Qualcomm Incorporated's Application For A

15   Preliminary Injunction filed on September 19, 2005 in Case No. 05 CV 1662 B

16   (JMA) in the Southern District of California.

17   I declare under penalty of perjury under the laws of the United States of

18   America that the foregoing is true and correct.

19   Executed on September 22, 2005, at Washington, D.C.

20

21                    _Maria K. Vento_

22                    Maria K. Vento

23

24

25

26

27

28

Declaration Of Maria K. Vento In Support Of Broadcom's
Reply Memorandum In Further Support Of Its Motion To
Vacate Stay To Enjoin A Duplicative Later Filed Action

1387821                                    - 1 -

EXHIBIT  J-2



1 | William K. West, Jr. (*Pro Hac Vice*)
Cecilia H. Gonzalez (*Pro Hac Vice*)
2 | Bert C. Reiser (*Pro Hac Vice*)
HOWREY LLP
3 | 1299 Pennsylvania Avenue, N.W.
Washington, DC 20004
4 | Telephone: (202) 783-0800
Facsimile: (202) 383-6610
5 | Email: westw@howrey.com
Email: gonzalezc@howrey.com
6 | Email: reiserb@howrey.com

7 | Peter J. Chassman (*Pro Hac Vice*)
HOWREY LLP
8 | 750 Bering Drive
Houston, TX 77057-2198
9 | Telephone: (713) 787-1400
Facsimile: (713) 787-1440
10 | Email: chassmanp@howrey.com

11 | Christopher L. Kelley (SBN 166608)
HOWREY LLP
12 | 301 Ravenswood Avenue
Menlo Park, California 94025
13 | Telephone: (650) 463-8100
Facsimile: (650) 463-8400
14 | Email: kellyc@howrey.com

15 | Gregory S. Cordrey (SBN 190144)
Elizabeth Hoult Fontaine (SBN 207557)
16 | HOWREY LLP
2020 Main Street
17 | Irvine, California 92614
Telephone: (949) 721-6900
18 | Facsimile: (949) 721-6910
Email: cordreyg@howrey.com
19 | Email: fontainee@howrey.com

20 | Attorneys for Defendant and Counterclaimant
QUALCOMM INCORPORATED

21 |

22 |    UNITED STATES DISTRICT COURT
    CENTRAL DISTRICT OF CALIFORNIA
23 |    SOUTHERN DIVISION

24 | BROADCOM CORPORATION,          ) Case No. SACV05-468-JVS (MLGx)
25 |          Plaintiff,            ) DEFENDANT QUALCOMM
                                    ) INCORPORATED'S NOTICE OF
26 |     vs.                        ) MOTION AND UNOPPOSED
                                    ) MOTION TO STAY PURSUANT TO
27 | QUALCOMM INCORPORATED,         ) 28 U.S.C. § 1659(a) AND
                                    ) SUPPORTING MEMORANDUM OF
28 |          Defendant.           ) POINTS AND AUTHORITIES

HOWREY LLP

EXHIBIT _____1_____   -2-   EXHIBIT 5-3

| | | |
|---|---|---|
| 1 | QUALCOMM INCORPORATED, | Date:        August 8, 2005 |
| 2 | Counterclaimant, | Time:        1:30 p.m.<br>Courtroom:  10C |
| 3 | vs. | Hon. James V. Selna |
| 4 | BROADCOM CORPORATION, | |
| 5 | Counterdefendant. | |
| 6 | | |
| 7 | | |

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE THAT on August 8, 2005, at 1:30 p.m., or as soon thereafter as the matter may be heard, in the United States District Court, Central District of California, Southern Division, located at 411 West Fourth Street, Room 1053, Santa Ana, California 92701, Courtroom 10C, before the Hon. James V. Selna, Defendant Qualcomm Incorporated ("Defendant") will move to stay this action in its entirety pursuant to 28 U.S.C. § 1659. This Motion is made following the conference of counsel pursuant to Civ. L.R. 7-3, which took place on July 11, 2005, and is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the pleadings on file in this action, and upon such other matters presented to the Court at the time of the hearing.

## RELIEF SOUGHT

Pursuant to 28 U.S.C. § 1659(a), Defendant seeks a stay of this action in its entirety until the date that the determination of the United States International Trade Commission (the "ITC") becomes final in proceedings pending before the ITC that involve the same issues between the same parties.

HOWREY LLP

EXHIBIT J-4

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

Plaintiff Broadcom Corporation ("Plaintiff") has filed complaints with the ITC and this Court that raise the same issues – alleged infringement of certain patents – between the same parties. Where, as here, Defendant files a timely request pursuant to 28 U.S.C. § 1659(a), the Court "shall stay" the civil action until the date that "the determination of the [ITC] becomes final" in the proceedings pending before the ITC. *See* 28 U.S.C. § 1659(a). Accordingly, Defendant respectfully requests that this Court enter an Order staying this action in its entirety pursuant to 28 U.S.C. § 1659(a). On July 11, 2005, counsel for Plaintiff advised Defendant's counsel that Plaintiff does not intend to oppose this Motion.

### II.   STATEMENT OF FACTS

On May 18, 2005, Plaintiff filed a Complaint in this action against the Defendants, alleging infringement by Defendant of U.S. Patent Nos. 6,374,311 ("the '311 patent"), 6,714,983 B1 ("the '983 patent"), 5,682,379 ("the '379 patent"), 6,359,872 ("the '872 patent") and 6,583,675 ("the '675 patent").

On May 19, 2005, Plaintiff filed a Complaint with the ITC under Section 337 of the Tariff Act of 1930 ("Section 337"), 19 U.S.C. § 1337. The ITC Complaint alleges infringement by Defendant of the very same patents at issue in the present action. On June 16, 2005, the ITC instituted an investigation in response to Plaintiff's Complaint, naming the Defendant herein as Respondent in the ITC investigation and placing in issue the same five patents as are asserted in the instant matter. *See* ITC Notice of Investigation, attached hereto as Exhibit A.

### III.   LEGAL STANDARDS

This Motion is brought pursuant to 28 U.S.C. § 1659(a), which provides as follows:

> **(a) Stay.** – In a civil action involving parties that are also parties to a proceeding before the [ITC] under section 337 of the Tariff Act of 1930, at the request of a party to the civil action that is also a respondent in the

HOWREY LLP

EXHIBIT 5-5

1  proceeding before the [ITC], *the district court shall stay*, until the
2  determination of the [ITC] becomes final, proceedings in the civil action
   with respect to any claim that involves the same issues involved in the
3  proceeding before the [ITC], but only if such request is made within -
4       **(1)** 30 days after the party is named as a respondent in the
        proceeding before the [ITC], or
5       **(2)** 30 days after the district court action is filed, whichever is later.[1]

6  **IV.   ARGUMENT**

7       In the present action, Plaintiff asserts infringement of the same patents that it

8  asserts in the proceedings currently before the ITC. *See* Exhibit A. In such situations, a

9  stay of the civil action until the date of final resolution of the ITC proceeding is required

10 by 28 U.S.C. § 1659(a), so long as the request is made within 30 days after the party is

11 named as a respondent in the proceeding before the ITC, or 30 days after the district

12 court action is filed. *See* 28 U.S.C. § 1659(a).

13      Defendant has requested, in a timely manner under the statute, a stay of this

14 action by filing this Motion within the 30-day period required by the statute – *i.e.*,

15 within 30 days after the ITC investigation was instituted and Defendant was named as

16 Respondent in the proceeding (June 16, 2005). Accordingly, pursuant to 28 U.S.C. §

17 1659(a), Defendant is entitled to an automatic stay of this proceeding. *See Flexsys*

18 *Americas, LP v. Kumho Tire, U.S.A., Inc.*, Case No. 5:05CV156, 2005 WL 1126750, at

19 *2 (N.D. Ohio Apr. 29, 2005) (granting stay, "[b]ased on the mandatory nature of the

20 stay provision...").[2]

21 **V.   CONCLUSION**

22      Defendant respectfully requests that this Court stay the present action until the

23 date that the determination of the ITC becomes final in the proceeding pending before

24 the ITC that involves the same issues between the same parties. Because Plaintiff's

25 _____

26 [1] *See* 28 U.S.C. § 1659(a) (2005) (emphasis added).

27 [2] A copy of the *Flexsys* case is attached as Exhibit N to the Fontaine Declaration in
   support of Qualcomm's Motion to Consolidate Case Nos. 467 and 468 and to Stay Case
28 No. 467, filed concurrently with this Motion.

HOWREY LLP

EXHIBIT 5-6

1  counsel has indicated that Plaintiff will not oppose this Motion, Defendant respectfully

2  requests that the Court determine this Motion without oral argument.[3]

3

4  Dated:  July 13, 2005                    HOWREY LLP

5

6                                          By: *Elizabeth Hoult Fontaine*

7                                          Elizabeth Hoult Fontaine (SBN 207557)

8                                          Attorney for Defendant and Counterclaimant
                                           QUALCOMM INCORPORATED
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27  _____
    [3] *See* Civ. L.R. 7-16.
28

HOWREY LLP

-6-

EXHIBIT  J-7

## UNITED STATES INTERNATIONAL TRADE COMMISSION
### Washington, D.C.

In the Matter of

**CERTAIN BASEBAND PROCESSOR CHIPS
AND CHIPSETS, TRANSMITTER AND
RECEIVER (RADIO) CHIPS, POWER
CONTROL CHIPS, AND PRODUCTS
CONTAINING SAME, INCLUDING
CELLULAR TELEPHONE HANDSETS**

Inv. No. 337-TA-543

### NOTICE OF INVESTIGATION

AGENCY:  U.S. International Trade Commission

ACTION:  Institution of investigation pursuant to 19 U.S.C. §1337

SUMMARY:  Notice is hereby given that a complaint was filed with the U.S. International Trade Commission on May 19, 2005, under section 337 of the Tariff Act of 1930, as amended, 19 U.S.C. §1337, on behalf of Broadcom Corporation of Irvine, California.  Supplements to the complaint were filed on June 7 and 10, 2005.  The complaint as supplemented alleges violations of section 337 in the importation into the United States, the sale for importation, and the sale within the United States after importation of certain baseband processor chips and chipsets, transmitter and receiver (radio) chips, power control chips, and products containing same, including cellular telephone handsets, by reason of infringement of claims 1-5, 7, 8; 13, 14, and 16-19 of U.S. Patent No. 6,374,311, claims 1, 4, 8, 9, 11, 14, and 17-24 of U.S. Patent No. 6,714,983, claim 2 of U.S. Patent No. 5,682,379, claims 8-11 and 13 of U.S. Patent No. 6,359,872, and claims 33, 35, and 38 of U.S. Patent No. 6,583,675.  The complaint further alleges that there exists an industry in the United States as required by subsection (a)(2) of section 337.

The complainant requests that the Commission institute an investigation and, after the investigation, issue a permanent exclusion order and a permanent cease and desist order.

ADDRESSES:  The complaint and supplements, except for any confidential information contained therein, are available for inspection during official business hours (8:45 a.m. to 5:15 p.m.) in the Office of the Secretary, U.S. International

Trade Commission, 500 E Street, S.W., Room 112, Washington, D.C. 20436, telephone 202-205-2000. Hearing impaired individuals are advised that information on this matter can be obtained by contacting the Commission's TDD terminal on 202-205-1810. Persons with mobility impairments who will need special assistance in gaining access to the Commission should contact the Office of the Secretary at 202-205-2000. General information concerning the Commission may also be obtained by accessing its internet server at http://www.usitc.gov. The public record for this investigation may be viewed on the Commission's electronic docket (EDIS) at http://edis.usitc.gov.

FOR FURTHER INFORMATION CONTACT: Karin J. Norton, Esq., Office of Unfair Import Investigations, U.S. International Trade Commission, telephone 202-205-2606.

AUTHORITY: The authority for institution of this investigation is contained in section 337 of the Tariff Act of 1930, as amended, and in section 210.10 of the Commission's Rules of Practice and Procedure, 19 C.F.R. §210.10 (2004).

SCOPE OF INVESTIGATION: Having considered the complaint, the U.S. International Trade Commission, on June 15, 2005, ORDERED THAT –

　　　　(1)　　Pursuant to subsection (b) of section 337 of the Tariff Act of 1930, as amended, an investigation be instituted to determine whether there is a violation of subsection (a)(1)(B) of section 337 in the importation into the United States, the sale for importation, or the sale within the United States after importation of certain baseband processor chips or chipsets, transmitter or receiver (radio) chips, power control chips, or products containing same, including cellular telephone handsets, by reason of infringement of one or more of claims 1-5, 7, 8, 13, 14, and 16-19 of U.S. Patent No. 6,374,311, claims 1, 4, 8, 9, 11, 14, and 17-24 of U.S. Patent No. 6,714,983, claim 2 of U.S. Patent No. 5,682,379, claims 8-11 and 13 of U.S. Patent No. 6,359,872, and claims 33, 35, and 38 of U.S. Patent No. 6,583,675, and whether an industry in the United States exists as required by subsection (a)(2) of section 337.

　　　　(2)　　For the purpose of the investigation so instituted, the following are hereby named as parties upon which this notice of investigation shall be served:

　　　　　　　　(a)　The complainant is–

　　　　　　　　　　Broadcom Corporation
　　　　　　　　　　16215 Alton Parkway
　　　　　　　　　　Irvine, California 92618

　　　　　　　　(b)　The respondent is the following company alleged to be

2

Exhibit ___A___
Page ___6___    - 8 -

EXHIBIT ___5-9___

in violation of section 337 and upon which the complaint is to be served:

> Qualcomm Incorporated
> 5775 Morehouse Drive
> San Diego, CA  92121

    (c)    Karin J. Norton, Esq., Office of Unfair Import Investigations, U.S. International Trade Commission, 500 E Street, S.W., Suite 401, Washington, D.C. 20436, who shall be the Commission investigative attorney, party to this investigation; and

    (3)    For the investigation so instituted, the Honorable Charles E. Bullock is designated as the presiding administrative law judge.

A response to the complaint and the notice of investigation must be submitted by the named respondent in accordance with section 210.13 of the Commission's Rules of Practice and Procedure, 19 C.F.R. §210.13. Pursuant to 19 C.F.R. §§201.16(d) and 210.13(a), such response will be considered by the Commission if received no later than 20 days after the date of service by the Commission of the complaint and the notice of investigation. Extensions of time for submitting the response to the complaint will not be granted unless good cause therefor is shown.

Failure of the respondent to file a timely response to each allegation in the complaint and in this notice may be deemed to constitute a waiver of the right to appear and contest the allegations of the complaint and to authorize the administrative law judge and the Commission, without further notice to the respondent, to find the facts to be as alleged in the complaint and this notice and to enter both an initial determination and a final determination containing such findings, and may result in the issuance of a limited exclusion order or a cease and desist order or both directed against the respondent.

By order of the Commission.

> Marilyn R. Abbott
> Secretary to the Commission

Issued: June 16, 2005

3

1

**PROOF OF SERVICE**

2

3  STATE OF CALIFORNIA      )   ss.:

4  COUNTY OF ORANGE      )

5      I am employed in the County of Orange, State of California. I am over the age of 18 and not a

6  party to the within action. My business address is 2020 Main Street, Suite 1000, Irvine, California 92614.

7      On July 13, 2005, I served on the interested parties in said action the within document(s):

8  DEFENDANT QUALCOMM INCORPORATED'S NOTICE OF MOTION AND UNOPPOSED MOTION TO STAY PURSUANT TO 28 U.S.C. § 1659(a) AND

9  SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES

10  by placing a true copy thereof in a sealed envelope(s) addressed as stated below and causing

11  such envelope(s) to be deposited as indicated below.

12  Layn R. Phillips                     William F. Lee
    Michael G. Ermer                   Richard O'Neill

13  Andra Barmash Greene            WILMER CUTLER PICKERING HALE AND
    IRELL & MANELLA LLP               DORR LLP

14  840 Newport Center Dr., Ste. 400      60 State Street
    Newport Beach, CA 92660-6324       Boston, MA 02109

15  Facsimile: 949/760-5200             Facsimile: 617/526-5000

16  James L. Quarles III
    Thomas Olson

17  Maria K. Vento
    WILMER CUTLER PICKERING HALE AND

18     DOOR LLP
    1455 Pennsylvania Ave., N.W.

19  Washington, D.C. 20004
    Facsimile: 202/942-8484

20  [X]   (FEDERAL EXPRESS) I am readily familiar with this firm's practice of collection and

21  processing of Federal Express mail. Under that practice, the Federal Express mail would be deposited on that same day by Federal Express.

22  [X]   (FACSIMILE) I caused the foregoing document(s) to be served by facsimile transmission to

23  each interested party at the facsimile machine telephone number(s) shown as stated above.

24      I declare under penalty of perjury that I am employed in the office of a member of the bar of this Court at whose direction the service was made and that the foregoing is true and correct.

25      Executed on **July 13, 2005**, at Irvine, California.

26

27  _____
    Sandra J. Wilson

28

HOWREY LLP

DM_US\8225766...

– /0 –

EXHIBIT  5-11

1  ROBERT S. BREWER, JR. (SBN 65294)
   JAMES S. MCNEILL (SBN 201663)
2  MCKENNA LONG & ALDRIDGE LLP
   750 B Street, Suite 3300
3  San Diego, CA 92101
   Telephone (619) 595-5400
4  Facsimile (619) 595-5450

5  WILLIAM F. LEE (pro hac vice pending)
   MARK D. SELWYN (pro hac vice pending)
6  WILMER CUTLER PICKERING
      HALE AND DORR, LLP
7  60 State Street
   Boston, MA 02109
8  Telephone (617) 526-6000
   Facsimile (617) 526-5000

9
   JAMES L. QUARLES III (pro hac vice pending)
10 THOMAS P. OLSON (pro hac vice pending)
   MARIA K. VENTO (pro hac vice pending)
11 WILMER CUTLER PICKERING
      HALE AND DORR, LLP
12 1455 Pennsylvania Avenue, N.W.
   Washington, DC 20004
13 Telephone (202) 942-8400
   Facsimile (202) 942-8484

14
   Attorneys for Defendant
15 BROADCOM CORPORATION

16              UNITED STATES DISTRICT COURT

17             SOUTHERN DISTRICT OF CALIFORNIA

18

19 QUALCOMM INCORPORATED,          Case No. 05 CV 1662 B (JMA)

20          Plaintiff,             **BROADCOM CORPORATION'S
                                   OPPOSITION TO QUALCOMM
21      v.                         INCORPORATED'S APPLICATION FOR A
                                   PRELIMINARY INJUNCTION**
22 BROADCOM CORPORATION,

23          Defendants.            Date:    October 7, 2005
                                   Time:    9:00 a.m.
24                                 Judge:   Hon. Rudi M. Brewster

25

26

27

28

MCKENNA LONG &
ALDRIDGE LLP
ATTORNEYS AT LAW
SAN DIEGO                                                    05 CV 1662

EXHIBIT___2___  -11-  EXHIBIT 5-12

## Table of Contents

I.     INTRODUCTION. ...............................................................................................2

II.    FACTUAL BACKGROUND. ...............................................................................2

    A.     Qualcomm Actively Pursues Bluetooth Technology Entirely
        Independent Of Any Dealings With Broadcom. .....................................2

    B.     Qualcomm's Dealings With Broadcom About Bluetooth. ......................2

III.   PROCEDURAL BACKGROUND. .......................................................................2

    A.     May 2005: ................................................................................................2

    B.     June 2005: ...............................................................................................2

    C.     July 2005: ................................................................................................2

    D.     August 2005: ...........................................................................................2

    E.     September 2005: ......................................................................................2

    F.     October 2005 – September 2006: ...........................................................2

IV.    ARGUMENT. ....................................................................................................2

    A.     Qualcomm's Forum Selection Clause Argument Has No
        Chance of Success On The Merits. .........................................................2

        1.     No Court Has Granted An Injunction To Enforce A
            Forum Selection Clause Against An ITC Investigation Where
            The Movant Has Waited This Long To Assert The Clause. .......................2

        2.     Qualcomm Has Sought To Enforce The Forum Selection
            Clause In The Wrong Court. .......................................................................2

        3.     Broadcom's Infringement Claims Do Not "Arise Out Of,"
            And Are Not "Related To," The Bluetooth RF Agreement. ........................2

            a)     Qualcomm's Portrayal (In Its Brief) Of The Agreement
                Is Contradicted By Its Own Declaration And Press
                Releases. .......................................................................................2

            b)     The Bluetooth RF Agreement Grants A License From
                 Qualcomm To Broadcom – Not The Other Way Around. ..............2

    B.     Qualcomm Will Not Be Irreparably Injured Without An Injunction. ......2

    C.     The Balance Of Hardships And Equities Weighs Heavily Against
        Qualcomm. ..............................................................................................2

    D.     Allowing Qualcomm To Derail The ITC Investigation This Far Into
        The Proceedings Would Not Serve The Public Interest. ........................2

MCKENNA LONG &
ALDRIDGE LLP
ATTORNEYS AT LAW
SAN DIEGO

i

05 CV 1662

-12-

EXHIBIT J-13

V.      CONCLUSION...................................................................................................2

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

MCKENNA LONG &
ALDRIDGE LLP
ATTORNEYS AT LAW
SAN DIEGO

- ii -

05 CV 1662

EXHIBIT  J-14

**Table of Authorities**

**Federal Cases**

*Am. Patriot Ins. Agency v. Mutual Risk Mgmt. Ltd.,*
   364 F.3d 884 (7th Cir. 2004) ...................................................................................... 21

*Argueta v. Banco Mexicano, S.A.,*
   87 F.3d 320 (9th Cir. 1996) .................................................................................. 7, 13

*Ciena Corp. v. Nortel Networks Inc.,*
   2005 WL 1189881 (E.D. Tex. May 19, 2005) ........................................................... 12

*City of South Pasadena v. Mineta,*
   284 F.3d 1154 (9th Cir. 2002) ................................................................................... 13

*Daewoo Motor Am., Inc. v. Dongbu Fire Ins. Co.,*
   289 F. Supp. 2d 1127 (C.D. Cal. 2001) ................................................................. 13-14

*E. & J. Gallo Winery v. Andina Licores,*
   2005 WL 1554001 (E.D. Cal. June 24, 2005) ........................................................... 13

*E. & J. Gallo Winery v. Encana Energy Serv., Inc.,*
   2005 WL 1657063 (E.D. Cal. July 6, 2005) .............................................................. 21

*Manetti-Farrow, Inc. v. Gucci Am., Inc.,*
   858 F.2d 509 (9th Cir. 1988) ..................................................................................... 17

*Pacsetter Sys., Inc. v. Medtronic, Inc.,*
   678 F.2d 93 (9th Cir. 1982) ................................................................................... 20-21

*Playboy Enters., Inc. v. Netscape Communications Corp.,*
   55 F. Supp. 2d 1070 (C.D. Cal. 1999) ...................................................................... 18

*Programmed Tax Sys. Inc. v. Raytheon Co.,*
   419 F. Supp. 1251 (S.D.N.Y. 1976) .......................................................................... 18

*Pumpelly v. Cook,*
   106 F.R.D. 238 (D.D.C. 1985)................................................................................... 13

*Sega of Am., Inc. v. Signal Apparel Co., Inc.,*
   1997 WL 414196 (N.D. Cal. July 14, 1997)........................................................... 2, 13

*Stokely-Van Camp, Inc. v. Coca-Cola Co.,*
   1987 WL 6300 (N.D. Ill. Jan. 30, 1987)................................................................... 18

*Texas Instruments Inc. v. Tessera, Inc.,*
   231 F.3d 1325 (Fed. Cir. 2000) .......................................................................... passim

*Tompkins Seals, Inc. v. West Co.,*
   1985 WL 4952 (E.D. Pa. Dec 17, 1985)................................................................... 20

McKenna Long &
Aldridge LLP
Attorneys at Law
San Diego

iii

05 CV 1662

EXHIBIT 5-15

1

## Federal Statutes

2

28 U.S.C. § 1659...................................................................................... 14, 19

3

4

## Other Authorities

5

Mark A. Garfinkel, ITC Provides a Timely Swat Against Foreign Knockoffs-Some
    Risks, But Plaintiffs Like the Timetable, Corp. Legal Times Feb. 1994.............................. 20

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

McKenna Long &
ALDRIDGE LLP
ATTORNEYS AT LAW
SAN DIEGO

- iv -

05 CV 1662

EXHIBIT J-16

# I.   INTRODUCTION.

Qualcomm's application for a preliminary injunction is a part of its untimely and improper attempt to avoid the jurisdiction of the U.S. District Court for the Central District of California and to derail an investigation in the United States International Trade Commission that is less than five months from trial. It should be denied for the same reasons that Qualcomm's lawsuit must be dismissed.[1]

Qualcomm let three months pass after Broadcom filed its Central District and ITC complaints before filing this lawsuit and motion. Not once during this time did Qualcomm even *mention* the Agreement it now says is "inextricably intertwined" with Broadcom's patent claims,[2] nor did it bring the Agreement's forum selection clause to the Central District's attention or contend that the ITC is an improper forum. Instead, Qualcomm sat on its hands while the parties spent huge amounts of money and time in full-bore discovery at the ITC.

As an initial – and dispositive – matter, Qualcomm will not succeed on its forum selection clause argument. *First*, Qualcomm cites no case, and Broadcom is aware of none, in which any court has *ever* enjoined an ITC investigation based on a forum selection clause when the movant has waited this long to invoke the clause. Qualcomm's assertion that "airtight Federal Circuit authority" permits injunctions "under exactly these circumstances"[3] is wrong. This "authority" turns out to be a single case, *Texas Instruments v. Tessera, Inc.*, that is quite different. *See* 231 F.3d 1325 (Fed. Cir. 2000). In *Tessera*, the party seeking to enforce the forum selection clause filed *first* in the desired forum *two months ahead* of any ITC complaint; once the ITC complaint was filed, the party moved for a TRO and preliminary injunction just *seven days* later – even

---

[1]   On September 2, 2005, Broadcom moved to dismiss this action because it is duplicative of an action which has been pending in the Central District of California since May 18, 2005. Under the first-to-file rule, this later-filed action should be dismissed or stayed pending resolution of the first-filed action, notwithstanding the presence of a forum selection clause. That Motion is pending before this Court and is also scheduled for argument on October 3, 2005.

[2]   *See* Qualcomm's Memorandum of Points and Authorities in Support of Qualcomm's Application for Preliminary Injunction to Enforce Forum Selection Clause ("Qualcomm Br.") at 15.

[3]   *See* Qualcomm Br. at 2.

McKENNA LONG &
ALDRIDGE LLP
ATTORNEYS AT LAW
SAN DIEGO

05 CV 1662

–16–

EXHIBIT J-17



1  before the ITC formally opened an investigation. *See* 231 F.3d at 1327. To be comparable to

2  *Tessera*, Qualcomm would need to have brought this motion for preliminary injunction on May

3  25, not August 22.

4      *Second*, Qualcomm has filed its forum selection clause motion in the wrong court: the

5  case law requires Qualcomm to seek any such relief in the first-filed court (the Central District),

6  not in this Court. *See, e.g., Sega of Am., Inc. v. Signal Apparel Co., Inc.*, No. C-97-1392-VRW,

7  1997 WL 414196, at \*1 (N.D. Cal. July 14, 1997) ("first filed rule demands that the [first-filed]

8  court, not this one, decide whether the forum selection of the Licensing Agreement requires

9  transfer or dismissal" of the first-filed action). Yet, Qualcomm never even brought this forum

10  selection clause to the attention of the Central District.

11      *Third*, Qualcomm is wrong that Broadcom's patent infringement claims about the

12  Wireless Subnetwork Patents are covered by the forum selection clause in the "Bluetooth RF

13  Agreement" (hereafter "Agreement")[4] it untimely invokes. In fact, Qualcomm's fairy tale has the

14  Bluetooth RF Agreement exactly backwards: far from being something that Broadcom "induced"

15  Qualcomm to sign in order to obtain Qualcomm's assistance in promoting Broadcom's products,[5]

16  the Agreement is something Qualcomm made Broadcom sign before Qualcomm would make

17  available its proprietary CDMA chip interfaces, without which Broadcom could not make a

18  CDMA compatible product *at all*. And far from granting some kind of license to Qualcomm to

19  use Broadcom's intellectual property (as Qualcomm suggests to justify its far-fetched estoppel

20  defenses), the whole point of the Agreement is to license *Qualcomm's* intellectual property – the

21  proprietary interfaces – to Broadcom.

22      Nor is Qualcomm's storytelling confined to the Agreement. Contrary to the tale told in its

23  brief, Qualcomm was aggressively working to develop Bluetooth capability long before it entered

24  _____

[4]  A copy of the Bluetooth RF Agreement was attached as Exhibit 3 to the Declaration of
25  Luis Pineda in Support of Application for Preliminary Injunction ("Pineda Decl."), filed by
Qualcomm on August 22, 2005. As discussed in Broadcom's Memorandum of Points and
26  Authorities in Support of Its Motion to Dismiss, the "Wireless Subnetwork Patents" are U.S.
Patent Nos. 5,682,379 and 6,359,872.
27  [5]  *See* Qualcomm Br. at 4-6.

28

McKENNA LONG &
ALDRIDGE LLP
ATTORNEYS AT LAW
SAN DIEGO

- 2 -

05 CV 1662

-17-

EXHIBIT 5-18

1    into the Agreement with Broadcom that it now highlights. To take just one example: Qualcomm

2    announced joint Bluetooth efforts with *another* company – Ericsson – eighteen months *before* the

3    August 2001 Agreement with Broadcom. *See infra* at II.A. The effort by Qualcomm to portray

4    itself as the fairy godmother victimized by her ungrateful ward is, in fact, a fairy tale.

5        Qualcomm's arguments regarding irreparable injury and the other preliminary injunction

6    factors likewise fall flat. Qualcomm mentioned nothing about injury – much less the irreparable

7    kind – when it told Judge Selna on August 1, 2005 that "discovery in the ITC is already underway

8    and will likely be completed by November 18, 2005,"[6] and that "the ITC investigation will be

9    completed, and the benefits of that case available for use here, in a very short while."[7] Surely, the

10   public interest would not be served if Qualcomm is permitted to sit on a venue defense, represent

11   to another Court that the ITC Investigation will continue, and then succeed in having this Court

12   enjoin the investigation it just represented would soon be completed.

13       Accordingly, Qualcomm's belated attempt to usurp the authority of the Central District

14   and to derail a far-advanced ITC Investigation should be rejected.

15   **II.    FACTUAL BACKGROUND.**

16   **A.    Qualcomm Actively Pursues Bluetooth Technology Entirely Independent Of
17              Any Dealings With Broadcom.**

18       Qualcomm's brief fosters the impression that Qualcomm decided to sleep through the

19   Bluetooth revolution, until awakened by Broadcom and successfully "prodded" to "d[o]

20   Broadcom's bidding" by finally agreeing to employ Bluetooth technology.[8] According to

21   Qualcomm, an August 2001 contract between Qualcomm and Broadcom, called the "Bluetooth

22   RF Agreement" was the "enticement" that finally lured Qualcomm to join the Bluetooth

23   movement.[9]

---

[6]    *See* Declaration of Maria K. Vento In Support of Broadcom Corporation's Opposition to
24   Qualcomm Incorporated's Application for Preliminary Injunction to Enforce Forum Selection
25   Agreement ("Vento Decl."), Ex. 1 at 3.

[7]    *See* Vento Decl., Ex. 2 at 15.
26
[8]    Qualcomm Br. at 1.
27
[9]    Qualcomm Br. at 21.

28

- 3 -                                        05 CV 1662

-18-

EXHIBIT J-19

1    Qualcomm's own public statements reveal that Qualcomm was active in Bluetooth

2    technology from its outset, years before entering the Bluetooth RF Agreement with Broadcom:

3         • In 1998 – years before any discussions with Broadcom – "Qualcomm joined the

4    Bluetooth 1.0 SIG" (that is, the first Bluetooth Special Interest Group) "as an Early Adopter."[10]

5         • In February 2000, Qualcomm publicly boasted about its agreement with Ericsson

6    Microelectronics "to jointly develop and market the world's first wireless technology solution

7    supporting both the Bluetooth standard and the CDMA digital wireless standard."[11]  Qualcomm's

8    senior vice president of marketing and product management boasted: "Together, we [Qualcomm

9    and Ericsson] will drive to expand the number of applications possible by tightly integrating

10   Bluetooth with CDMA technology."[12]

11        • Also in February 2000, Qualcomm introduced a new chipset – the MSM3300 –

12   that "integrat[es] Bluetooth digital baseband processing into a comprehensive CDMA chipset and

13   system software solution."[13]

14        • In June 2000, Qualcomm demonstrated a Bluetooth unit – featuring an Ericsson

15   Bluetooth radio chip – at a trade show.[14]

16        • In November 2000, Qualcomm proudly announced its role in "the world's first

17   over-the-air demonstration of a Bluetooth equipped laptop communicating wirelessly with a

18   [CDMA] handset via a Bluetooth dial-up network."[15]

19        • Also in November 2000, Qualcomm "accepted an Associate Membership in the

20   Bluetooth 1.2 Special Interest Group."[16]  Qualcomm executive Johan Lodenius highlighted

21   Qualcomm's plans for Bluetooth technology:  "'As the world becomes increasingly wireless, the

---

[10]    *See* Vento Decl., Ex. 3 at 1.  In December 1999, other companies (Lucent, Microsoft, Motorola and 3Com) joined the Bluetooth 1.0 SIG and the 1.2 SIG was formed.  *See id.*

[11]    *See* Vento Decl., Ex. 4 at 1.

[12]    *See id.*

[13]    *See* Vento Decl., Ex. 5 at 2.

[14]    *See* Vento Decl., Ex. 6 at 1.

[15]    *See* Vento Decl., Ex. 7 at 1.

[16]    *See* Vento Decl., Ex. 3 at 1.

McKenna Long &
Aldridge LLP
Attorneys at Law
San Diego

05 CV 1662

EXHIBIT 5-20

1   ability to easily connect a wide variety of digital devices, from handsets to laptops to Personal

2   Digital Assistants to home and office computer systems, becomes more vital.'"[17]  Mr. Lodenius

3   went on:  "'[Qualcomm's] increased involvement in the Bluetooth SIG will allow us to continue

4   to drive the development and deployment of advanced CDMA solutions for the next generation of

5   wireless technologies and services....'"[18]

6       **B.**    **Qualcomm's Dealings With Broadcom About Bluetooth.**

7       It was not until May 2000 that Qualcomm and Broadcom entered into their first,

8   preliminary agreement relating to Bluetooth technology.  That contract – the "Mutual

9   Nondisclosure Agreement" – expressly provides that neither party licensed any intellectual

10  property rights to the other:  "No license to a party of any...patent...is either granted or implied

11  by this Agreement or any disclosure hereunder...." [19]  *See* Pineda Decl, Ex. 1 at ¶ 4.

12      It was still another eighteen months before Qualcomm and Broadcom entered into the

13  contract – the Bluetooth RF Agreement – Qualcomm now claims to be vital to its decision to

14  employ Bluetooth technology.  Qualcomm's brief suggests that the Agreement is a license *from*

15  *Broadcom to Qualcomm.*  A reading of the Agreement shows the contrary is true:  the Agreement

16  is a license *from Qualcomm to Broadcom.*  Specifically, Qualcomm gives Broadcom access to

17  information about Qualcomm's chips so that Broadcom can develop compatible Bluetooth RF

18  chips.[20]  The Agreement contains no license whatsoever from Broadcom to Qualcomm.

19      In June 2003, Qualcomm and Broadcom entered into a further "Memorandum of

20  Understanding."  Like the 2000 Nondisclosure Agreement, the MOU confirms that "[n]o license

21  of intellectual property rights, including but not limited to patents...is granted" by either party.[21]

22

23

---

24  [17]    *See id.*

   [18]    *See id.*

25  [19]    *See* Qualcomm Br. at 4-5; *see also id.* at 6 (citing the parties' May 18, 2000 non-

26  disclosure agreement as the "first step toward their eventual collaboration").

   [20]    *See* Pineda Decl., Ex. 3 at ¶¶ 2-4, 10-11.

27  [21]    *See* Pineda Decl., Ex. 4 at ¶ 15.

28

05 CV 1662

EXHIBIT  J-21

III.   **PROCEDURAL BACKGROUND.**

Broadcom and Qualcomm are now engaged in five separate patent litigations, in three different tribunals.[22] In the months during which Qualcomm was silent about the supposedly binding forum selection clause, litigation involving the Wireless Subnetwork Patents proceeded rapidly in other forums.[23]

A.   **May 2005:**

On **May 18, 2005,** Broadcom filed two complaints against Qualcomm in the Central District of California, alleging that Qualcomm's cell phone chips and chipsets infringe ten Broadcom patents. The first case, *Santa Ana I* (Case No. 05-CV-00467-JVS-RNB), involves five patents not at issue in the ITC Investigation. The second case, *Santa Ana II* (Case No. 05-CV-00468-JVS-RNB), involves the five patents being litigated in the ITC Investigation.

Seeking the quickest possible resolution of its claims, the following day, **May 19, 2005,** Broadcom filed a complaint with the ITC pursuant to 19 U.S.C. § 337, alleging that Qualcomm infringes the five patents at issue in *Santa Ana II* (including the two Wireless Subnetwork Patents at issue in Qualcomm's PI Application) and asking the Commission to begin an investigation. Unlike in the *Tessera* case it relies upon, Qualcomm stayed silent about the supposedly binding forum selection clause.

B.   **June 2005:**

On **June 16, 2005,** the ITC issued a Notice of Investigation naming Qualcomm as a respondent ("ITC Investigation"). As the rules permit, the parties began discovery almost immediately – on **June 22, 2005** – when Broadcom served its First Set of Requests for Production. Clearly prepared for battle in the ITC, the next day, **June 23, 2005,** Qualcomm

---

[22]   On July 1, 2005, Broadcom filed a Complaint in the District of New Jersey, alleging that Qualcomm has committed various antitrust violations. *Broadcom Corp. v. Qualcomm Inc.*, Case No. 3:05-cv-03350-MLC-JJH (D.N.J. July 1, 2005).

[23]   In its Memorandum of Points and Authorities in Support of Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), Or, in the Alternative to Stay Pending Resolution of a Prior-Pending Case ("Motion to Dismiss") (filed with this Court on September 2, 2005) Broadcom has provided a procedural history for each of these cases.

McKenna Long &
Aldridge LLP
Attorneys At Law
San Diego

- 6 -

05 CV 1662

-21-

EXHIBIT   5-22

1   served its First Set of Requests for Production. A few days later, on **June 27, 2005**, Broadcom

2   served its First Set of Interrogatories and its Second Set of Requests for Production. At no time

3   during June did Qualcomm say a word about the Agreement or its forum selection clause.

4        **C.**    **July 2005:**

5        Both parties continued their initial discovery pursuit in earnest, with Broadcom serving its

6   Second Set of Interrogatories on **July 5, 2005**, and Qualcomm serving its Second Set of Requests

7   for Production and its First Set of Interrogatories, and Broadcom serving its Third Set of Requests

8   for Production all on **July 7, 2005**.

9        On **July 11, 2005**, Qualcomm filed its Response to the Complaint in the ITC, and its

10   Answers and Counterclaims in the *Santa Ana I* and *Santa Ana II* cases.

11        Qualcomm's **July 11** Answer in Santa Ana II raised a number of counterclaims and

12   affirmative defenses that are essentially the same as its later-filed federal law claims in *Santa*

13   *Diego II*. For example, Qualcomm sought a declaration in *Santa Ana II* that it does not infringe

14   the Wireless Subnetwork Patents and that those two patents are invalid. These are the same

15   declaratory rulings that Qualcomm seeks in its First and Second Causes of Action in the present

16   case. Qualcomm's responsive pleading in *Santa Ana II* also asserted affirmative defenses of non-

17   infringement (Second Defense) and invalidity (Third Defense), as well as a license defense (Sixth

18   Defense). These defenses are the same as Qualcomm's First, Second, and Sixth Causes of Action

19   in the present case. Similarly, Qualcomm's response in the ITC Investigation asserts a number of

20   affirmative defenses that overlap with Qualcomm's claims in the instant case.

21        Equally – if not more – important, Qualcomm chose to file an Answer and Counterclaim

22   in *Santa Ana II* but did not file a motion to dismiss for improper venue under Fed. R. Civ. P.

23   12(b)(3), or for any other reason.[24] Similarly, Qualcomm did not then and has not since asked the

24   Santa Ana Court to enjoin the ITC litigation.

25

26   [24]    Well-settled law holds that a claim that a lawsuit has been filed in violation of a forum
selection clause is a motion to dismiss under Rule 12(b)(3). *See Argueta v. Banco Mexicano,*

27   *S.A.*, 87 F.3d 320, 324 (9th Cir. 1996) (motion to dismiss premised on enforcement of forum
selection clause should be treated as a 12(b)(3) motion to dismiss for improper venue).

28

MCKENNA LONG &
ALDRIDGE LLP
ATTORNEYS AT LAW
SAN DIEGO

-7-

05 CV 1662

EXHIBIT J-23

1    Far from complaining that Broadcom was barred from proceeding in the ITC over the

2    Wireless Subnetwork Patents, on July 13, 2005, in an effort to persuade Judge Selna to exercise

3    his discretion to stay *Santa Ana I*, Qualcomm assured the Santa Ana Court that it intended to

4    litigate – and quickly – all the patents before the ITC.  In Qualcomm's words:

5        •  "[A]s both parties recognize, there will be exhaustive discovery of Qualcomm

6    concerning its products as they relate to the claims asserted in the ITC investigation. *Such*

7    *discovery in the ITC is already underway and will likely be completed by November 18, 2005.*"[25]

8        •    "[T]he Broadcom-initiated ITC investigation is scheduled to proceed to trial in

9    January 2006, no matter how this Court decides the instant motion.  Whether or not this motion is

10   granted, the tactical advantage of having its case heard first still belongs to Broadcom in the

11   ITC."[26]

12       •    "[T]he ITC investigation will be completed, and the benefits of that case available

13   for use here, in a very short while."[27]

14       While the Santa Ana Court considered the motion to stay that litigation, the parties

15   continued with voluminous discovery in the ITC Investigation.  On July 25, 2005, Broadcom

16   served its Third Set of Interrogatories.  The next day, on July 26, 2005, Qualcomm served its

17   Third Set of Requests for Production.  And Qualcomm sat silent for another month about the

18   Agreement and its forum selection clause.

19       **D.    August 2005:**

20       On August 4, 2005, the Santa Ana Court granted Qualcomm's unopposed Motion to Stay

21   *Santa Ana II* in light of the pending ITC Investigation (which Qualcomm now seeks to terminate

22   in substantial part).  On August 10, 2005, the parties began producing tens of thousands of pages

23   of documents.  For the first three weeks of August, as discovery in the ITC continued, Qualcomm

24   made no mention of any forum selection issue.

---

25

26   [25]   *See* Vento Decl., Ex. 1 at 3 (emphasis added).

27   [26]   *See* Vento Decl., Ex. 1 at 14.

     [27]   *See* Vento Decl., Ex. 2 at 15.

28

EXHIBIT  J-24

1      On **August 22, 2005**, Qualcomm filed this case and simultaneously filed its PI

2  Application.[28] Qualcomm's papers here make no mention of the fact that it has already raised

3  many of the same claims as affirmative defenses and/or counterclaims in *Santa Ana II*, and that

4  all its federal law claims here arise out of the same underlying dispute about Qualcomm's

5  infringement of Broadcom's Wireless Subnetwork Patents.[29]

6      Even after filing this case, Qualcomm has continued an aggressive discovery campaign in

7  the ITC over the Wireless Subnetwork Patents.  Qualcomm served its Fourth Set of Requests for

8  Production and Second Set of Interrogatories and more than 300 Requests for Admission on

9  **August 23, 2005**; many of these discovery requests are aimed at the Wireless Subnetwork

10  Patents.  The next day, **August 24, 2005**, the Commission Investigative Staff served Requests for

11  Production and Interrogatories on both Broadcom and Qualcomm, including requests directed to

12  the Wireless Subnetwork Patents.

13      **E.**    **September 2005:**

14      On **September 2, 2005**, Broadcom moved to dismiss or, in the alternative, to stay this

15  action pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), pending resolution of the prior pending

16  *Santa Ana II* case.  The following week, on **September 6, 2005**, Qualcomm served its Second Set

17  of Requests for Admission in the ITC – bringing its total number of RFAs served on Broadcom to

18  more than 500 (again, many relating to the Wireless Subnetwork Patents).  That same day,

19  Qualcomm served an ITC subpoena on the Bluetooth standards body (the Bluetooth "SIG").  On

20  **September 8, 2005**, Broadcom alerted the Santa Ana Court of Qualcomm's recent filing of this

21  duplicative litigation, and asked for expedited briefing on a motion to enjoin Qualcomm from

22  going forward with this case.[30]  Over Qualcomm's opposition, the next day, **September 9, 2005**,

23

24  _____

   [28]    Broadcom was served with these documents on August 24, 2005.

25     [29]    In its Motion to Dismiss Broadcom has provided a detailed explanation of the duplicative nature of these claims.

26     [30]    A copy of Broadcom Corporation's Memorandum in Support of Its Motion to Vacate Stay

27  to Enjoin A Duplicative, Later-Filed Action filed in *Santa Ana II* is attached to the Vento Declaration as Exhibit 8.

28

MCKENNA LONG &
ALDRIDGE LLP
ATTORNEYS AT LAW
SAN DIEGO

05 CV 1662

EXHIBIT 5-25

1     the Santa Ana Court granted Broadcom's motion for expedited briefing. Argument on that

2     motion will be heard on Monday, **September 26, 2005**.

3         **F.**     **October 2005 – September 2006:**

4         The parties have begun discovery in the *Santa Ana I* case, and have a scheduling

5     conference in front of Judge Selna in **October 2005**. Fact discovery in the ITC will end less than

6     two months from the filing of this brief, on **November 18, 2005**. The cutoff for expert discovery

7     in the ITC as well as the deadline for submitting summary determination motions is **December**

8     **20, 2005**, and trial will begin **January 30, 2006**. The initial determination in the ITC is due **May**

9     **22, 2006**, and the Final Determination is expected **August 22, 2006**.

10 **IV.**     **ARGUMENT.**

11         Qualcomm's reliance on the forum selection clause fails for at least three reasons. First,

12     the case upon which Qualcomm so heavily relies (*Tessera*) does not support its position. As

13     discussed below, the facts in *Tessera* do not resemble those here. And Qualcomm offers no case

14     in which an injunction was granted on the facts here – a respondent waits months before raising a

15     venue issue that it says should derail an investigation midstream. Second, interpretation of the

16     applicability of the forum selection clause is for the first-filed Court – here the Central District –

17     rather than this Court. Finally, Qualcomm's argument is belied by the explicit terms of the

18     agreements.

19         Qualcomm's arguments regarding irreparable harm, the balance of hardships, and the

20     public interest also fail. Any suggestion that Qualcomm will suffer irreparable injury if forced to

21     continue to litigate in the ITC is contradicted by Qualcomm's own prolonged and inexcusable

22     delay in raising the issue. Equally unpersuasive is Qualcomm's suggestion that the balance of

23     hardships requires an injunction. It is Broadcom that will be harmed if the ITC Investigation is

24     abruptly halted after months of discovery have been completed and only months prior to trial.

25     Similarly, the public interest will not be served if Qualcomm is permitted to sit on a venue

26     defense, represent to another Court that the ITC Investigation will continue, and then obtain an

27     injunction from this Court enjoining much of the investigation it just represented would be soon

28     completed.

EXHIBIT 5-26

A.    **Qualcomm's Forum Selection Clause Argument Has No Chance of Success On The Merits.**

1.    **No Court Has Granted An Injunction To Enforce A Forum Selection Clause Against An ITC Investigation Where The Movant Has Waited This Long To Assert The Clause.**

Qualcomm's argument for a preliminary injunction to block the ITC Investigation over the Wireless Subnetwork Patents relies almost exclusively on *Texas Instruments Inc. v. Tessera, Inc.* 231 F.3d 1325 (Fed. Cir. 2000). But the facts of *Tessera* – in which the ITC respondent (Texas Instruments) was a model of diligence – bear no relationship to this case.

What happened in *Tessera* is the following: on February 1, 2000, Texas Instruments ("TI") sued Tessera in the Central District of California, seeking a declaration that certain Tessera patents were invalid and that TI did not infringe them. *See id.* at 1327. Almost two months later, on March 28, 2000, Tessera filed a proposed complaint in the ITC, alleging that TI's products infringed the same patents. *Id.* One week later (April 4, 2000) – and more than three weeks before an investigation was even instituted by the ITC – TI applied for a TRO and asked the Central District to enjoin Tessera from proceeding with the later-filed ITC Action. *Id.* TI's motion was based on a patent license agreement that explicitly covered the patents at issue and provided that "'any litigation between the parties relating to this Agreement shall take place in California.'" *Id.*

This case is radically different.[31] Unlike in *Tessera*, the accused infringer here (Qualcomm) did *not* file the first action in the forum it claimed was required. Unlike in *Tessera*, the contract at issue here is *not* a license *from* the plaintiff, and does not refer to the patents in question. And unlike the diligent accused infringer in *Tessera*, the accused infringer here (Qualcomm) has been extraordinarily – and inexcusably – tardy in raising the forum selection clause issue. In *Tessera*, TI sought an injunction against the ITC investigation a week after the patent owner filed a proposed complaint, and more than three weeks before the ITC actually

---

[31]    As discussed in more detail herein, the Bluetooth RF Agreement explicitly states that it is not a patent license agreement. *See* Pineda Decl., Ex. 3 at ¶ 6.

EXHIBIT J-27

1  instituted the case. *Id.* at 327. Here, Qualcomm elected to wait *three months* before even raising

2  the issue – while filing many papers to which the forum selection clause would have been acutely

3  relevant. During these three months – an eternity in "ITC time" given the lightning pace of ITC

4  Investigations – both Qualcomm and Broadcom engaged in massive discovery efforts at the ITC.

5  With a fact discovery cutoff looming on November 18, 2005, the rapid pace of discovery is not

6  surprising. Yet Qualcomm said nothing through all this about the Agreement or its forum

7  selection clause. As a result of Qualcomm's silence and delay, this Court will not even hear

8  argument on the PI Application until the month before fact discovery closes in the ITC

9  Investigation.

10      Worse yet – and totally unlike *Tessera* – here the alleged infringer *specifically assured a*

11  *federal court that it planned to litigate about the patents in question in the ITC*. It is, frankly,

12  difficult to grasp what is behind Qualcomm's present motion, given its statements to the Central

13  District just a few weeks ago, such as this: "[A]s both parties recognize, there will be exhaustive

14  discovery of Qualcomm concerning its products as they relate to the claims asserted in the ITC

15  Investigation. *Such discovery in the ITC is already underway and will likely be completed by*

16  *November 18, 2005.*"[32]

17      The facts of the only other case Qualcomm cites – *Ciena Corp. v. Nortel Networks Inc.* –

18  are equally remote from this case. As in *Tessera*, and unlike here, the agreement, by its terms,

19  applied to patent infringement actions; critically, as in *Tessera*, the respondent in the ITC moved

20  promptly for an injunction, filing its injunction papers less than three weeks after the draft ITC

21  Complaint was filed, and before the ITC Investigation was actually instituted. *See Ciena* No.

22  2:05 CV 14, 2005 WL 1189881, at *2 (E.D. Tex. May 19, 2005). Qualcomm points to no case

23  where any Court has enjoined an ITC Investigation after such a prolonged delay – and we are

24  aware of none.

25

26

27  _____

[32]      *See* Vento Decl, Ex. 1 at 3 (emphasis added).

28

MCKENNA LONG &
ALDRIDGE LLP
ATTORNEYS AT LAW
SAN DIEGO

- 12 -

05 CV 1662

-27-

EXHIBIT  5-28

1  **2.  Qualcomm Has Sought To Enforce The Forum Selection Clause In**
2      **The Wrong Court.**

3      Courts within the Ninth Circuit have made clear that the court in which the first action is

4  filed should decide the effect, if any, of the forum selection clause, transferring the case if

5  necessary. *See e.g., E. & J. Gallo Winery v. Andina Licores*, No. CVF05-0101 AWILJO, 2005

6  WL 1554001, at *9 (E.D. Cal. June 24, 2005) ("The remedy for a party who is called to defend a

7  complaint in a forum other than the one designated by the forum selection clause is by petition to

8  the court where the action was brought for change of venue."); *Sega of America, Inc. v. Signal*

9  *Apparel Co.*, No. C-97-1392-VRW, 1997 WL 414196, at *1 (N.D. Cal. July 14, 1997).

10     The *Sega* case is directly on point. There, the licensing agreement stated that "[a]ny

11 action or proceeding brought to enforce the terms of [that] Agreement shall be brought in … the

12 Northern District of California (if under Federal law)." *Id.* at *1. Signal nevertheless sued Sega

13 for breach of the agreement in Tennessee. *Id.* Sega then sued Signal for breach in California. *Id.*

14 Signal filed a motion the Northern District of California to dismiss the case under the "first to

15 file" rule, which the court granted, *notwithstanding that it was the court named in the forum*

16 *selection clause. Id.* As the Northern District made plain, "[t]he first filed rule demands that the

17 Tennessee court, not this one, decide whether the forum selection of the Licensing Agreement

18 requires transfer or dismissal" of the first-filed action. *See id.* (citing *Pumpelly v. Cook*, 106

19 F.R.D. 238, 240 (D.D.C. 1985)).

20     Thus, if Qualcomm wished to ask a court to consider whether the forum selection clause

21 of the Agreement bars Broadcom's ITC Investigation over the Wireless Subnetwork Patents, it

22 was required to do so in the Central District – the first filed court. [33]

23

24 [33]   Well-settled law also holds that the proper vehicle to raise a claim that a lawsuit has been
   filed in violation of a forum selection clause is a motion to dismiss under Rule 12(b)(3).  *See*
25 *Argueta v. Banco Mexicano, S.A.*, 87 F.3d 320, 324 (9th Cir. 1996) (motion to dismiss premised
   on enforcement of forum selection clause should be treated as a 12(b)(3) motion to dismiss for
26 improper venue).  Qualcomm failed to raise the forum selection clause in *Santa Ana II*, and has,
   therefore, waived the right to do so.  *See City of South Pasadena v. Mineta*, 284 F.3d 1154, 1156
27 (9th Cir. 2002) ("most jurisdictional objections – such as defects in personal jurisdiction, venue or
   service of process – are waived unless asserted early in the litigation"); *Daewoo Motor Am., Inc.*
28
McKENNA LONG &
ALDRIDGE LLP
ATTORNEYS AT LAW
SAN DIEGO

*(footnote continued on next page)*
05 CV 1662

-28-

1       Moreover, Qualcomm's suggestion that the statutory stay provision, 28 U.S.C. § 1659,

2 prevented Qualcomm from raising the forum selection clause in Santa Ana is shown to be wrong

3 by the very case it touts as "airtight Federal Circuit authority."[34]  In *Tessera*, TI did exactly what

4 Qualcomm claims it was somehow prevented from doing: TI sought an immediate TRO in

5 federal court to block the prospective ITC investigation. *See Tessera*, 231 F.3d at 1327.  The

6 statutory stay provision was no problem for TI, and it is no excuse for Qualcomm's delay here.

7          **3.**     **Broadcom's Infringement Claims Do Not "Arise Out Of," And Are**

8                 **Not "Related To," The Bluetooth RF Agreement.**

9       Qualcomm claims the Agreement is relevant because Qualcomm plans to assert defenses

10 to Broadcom's Wireless Subnetwork Patent claims that "arise out of" or "relate to" the

11 Agreement.[35]  As we show here, Qualcomm is mistaken about both the facts and the law.

12          **a)**     **Qualcomm's Portrayal (In Its Brief) Of The Agreement Is**

13               **Contradicted By Its Own Declaration And Press Releases.**

14       Qualcomm's Brief suggests Qualcomm had no independent interest in Bluetooth

15 technology, but was lured into Bluetooth by Broadcom – and specifically by the Agreement.[36]

16       This tale is contradicted not only by Qualcomm's own public statements at the time but

17 also by the Declaration of a Qualcomm executive that Qualcomm submitted in support of its

18 application.  For example:

19       **Incorrect assertion in brief:**  Qualcomm's decision to promote Bluetooth technology

20 generally (as opposed to endorsing Broadcom's Bluetooth RF chips) was made at "Broadcom's

21 bidding."[37]

22

23 *(footnote continued from previous page)*

24 *v. Dongbu Fire Ins. Co.*, 289 F. Supp. 2d 1127, 1131-32 (C.D. Cal. 2001) ("The right to object to improper venue is waived by failing to interpose a timely and sufficient objection.").

25 [34]   *See* Qualcomm Br. at 2.

26 [35]   *See* Qualcomm Br. at 12.

27 [36]   *See e.g.*, Qualcomm Br. at 4-6.

    [37]   *See* Qualcomm Br. at 1.

28

EXHIBIT 530



1   **Qualcomm's Declaration**:  The declaration of Qualcomm's executive, Luis Pineda,

2   makes clear that Qualcomm's decision to develop Bluetooth capability was its own, and that

3   Broadcom was one of several Bluetooth vendors with which it decided to work.  Mr. Pineda says

4   this: "QUALCOMM supported Bluetooth development in collaboration with *Bluetooth RF*

5   *providers, such as* Broadcom, with the expectation that handset manufacturers would eventually

6   increasingly demand Bluetooth capability in handsets."[38]  Confirming that point, the documents

7   attached to Mr. Pineda's declaration show that seven months before the Agreement, Qualcomm

8   told Broadcom that Qualcomm had already developed "a proprietary specification for a Bluetooth

9   RF unit."[39]

10   **Qualcomm's Press Releases**:  Qualcomm's press releases confirm that its decision to

11   promote Bluetooth technology was not made at Broadcom's bidding.  Indeed, long before the

12   Bluetooth RF Agreement (in August 2001), Qualcomm had publicly announced numerous

13   collaborations with *other* companies (such as Ericsson) to develop and promote Bluetooth

14   capability in cell phones; announced specific Bluetooth-enabled cell phones models; and joined

15   the Bluetooth SIG as an Associate Member.  *See supra* at II.A (quoting press releases).

16   **Misleading assertion in brief**:  In May 2000, when Qualcomm entered into a preliminary

17   agreement (a Mutual Nondisclosure Agreement) with Broadcom, "no one had yet incorporated

18   Bluetooth technology into CDMA mobile phones."[40]

19   **Qualcomm's Press Releases**:  Whether cell phone manufacturers had actually put a

20   Bluetooth-enabled chip into a cell phone at that time, *Qualcomm was actively encouraging them*

21   *to do so*, entirely independent of any contract with Broadcom.  In February 2000, for example,

22   Ericsson and Qualcomm announced "an agreement to jointly develop and market the world's first

23   wireless technology solution, supporting both the *Bluetooth* standard and the CDMA digital

24   wireless standard," which they intended to promote "*to handset and mobile device manufacturing*

25   _____

26   [38]    Pineda Decl., ¶ 7 (emphasis added).

27   [39]    *See* Pineda Decl., Ex. 2, ¶ 1.

28   [40]    *See* Qualcomm Br. at 4.

EXHIBIT J-31

1    *companies.*"[41]  A few weeks later, Qualcomm unveiled a specific chipset – the MSM 3300 – that

2    "provides the most efficient wireless modem solution available, *integrating Bluetooth digital*

3    *baseband processing* into a comprehensive CDMA chipset…"[42]

4                                          * * * * * * *

5          **Erroneous assertion in brief**:  "Broadcom *required* QUALCOMM to provide handset

6    manufacturers with a list of qualified Bluetooth vendors" including third parties.[43]

7          **What the Agreement actually says**:  "Upon successful completion of the development

8    of the Bluetooth RF Unit by Broadcom, QUALCOMM will *include Broadcom* on its list of

9    vendors of Bluetooth RF Units that comply with the BlueQ Interface Specification…"[44]  In other

10   words, Qualcomm promised to tell vendors that Broadcom had a compatible Bluetooth RF chip.

11                  b)      **The Bluetooth RF Agreement Grants A License From**
                            **Qualcomm To Broadcom – Not The Other Way Around.**
12

13         The purpose of the Bluetooth RF Agreement is simple and easy to understand from even a

14   quick review of the document:  Qualcomm agreed to give Broadcom certain technical information

15   so that Broadcom could create – and eventually sell – Bluetooth RF chips compatible with

16   Qualcomm's chips.[45]  The second "WHEREAS" clause of the Agreement, for example, states that

17   "Broadcom desires to *receive* a license to use [Qualcomm's] Blue Q Technical Information . . . to

18   develop an RF [chip]" that will work with CDMA cell phones.[46]  The substantive provisions of

19   the Agreement state that Qualcomm will give Broadcom certain technical information (¶ 2) and

20   that Broadcom will use that information to try to develop a Bluetooth RF chip (¶¶ 3-4).  If

21   Broadcom succeeded, Qualcomm agreed to tell vendors that the Bluetooth RF chip complies with

22

23   _____
     [41]      *See* Vento Decl., Ex. 4 at 1 (emphasis added).

24   [42]      *See* Vento Decl., Ex. 5 at 2 (emphasis added).

     [43]      Qualcomm Br. at 12 (emphasis in original); *see id.* at 18 ("Agreement *required*
25   Qualcomm to create a list of approved vendors").

26   [44]      *See* Pineda Decl., Ex. 3 at ¶ 5 (emphasis added).

     [45]      *See* Pineda Decl., Ex. 3 at ¶¶ 1-20.
27   [46]      Pineda Decl., Ex. 3, at 1 (emphasis added).

28

                                          EXHIBIT  J-32

1  Qualcomm's standards (¶ 5). The Agreement is *not* a license from Broadcom to Qualcomm, but

2  the reverse: a license *from* Qualcomm allowing Broadcom to use certain technical information so

3  that Broadcom could create Bluetooth RF chips. In fact, the Bluetooth-related agreements

4  between Qualcomm and Broadcom that discuss the possibility of a licenses *from* Broadcom

5  makes clear that Broadcom does *not* grant any such license. The parties' May 2000 Mutual

6  Nondisclosure Agreement – which by its terms remained in effect until May 18, 2005 –

7  unequivocally states that: "[n]o license to a party of any...patent...is either granted or implied by

8  this Agreement or any disclosure hereunder..."[47] In June 2003, Qualcomm and Broadcom

9  entered into a further "Memorandum of Understanding." Like the 2000 Nondisclosure

10  Agreement, the MOU confirms that "[n]o license of intellectual property rights, including but not

11  limited to patents...is granted" by either party.[48]

12      Given the language of the Agreement as well as the equally clear language in the

13  additional agreements between the parties, Qualcomm's argument that Broadcom has granted

14  Qualcomm a license and that Broadcom's patent infringement claims about the Wireless

15  Subnetwork Patents, therefore, "arise under" or "relate to" the Bluetooth RF Agreement

16  collapses. Resolution of Broadcom's claims that Qualcomm infringes Broadcom's patents do not

17  require "analyzing whether the parties were in compliance with the contract," *Manetti-Farrow,*

18  *Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 514 (9th Cir. 1988), because the plain language of the

19  Agreement – and the previous Mutual Nondisclosure Agreement and subsequent Memorandum of

20  Understanding between the parties – show that Broadcom did *not* grant (either explicitly or

21  implicitly) Qualcomm any form of patent license. Broadcom's claims that Qualcomm infringes

22  the Wireless Subnetwork Patents are not "inextricably intertwined" with an Agreement the sole

23  purpose of which was for *Qualcomm to provide Broadcom* with proprietary information.[49]

---

24  [47]    *See* Pineda Decl., Ex. 1 at ¶ 4. Further, in the Second Memorandum of Understanding,
25  signed after the Bluetooth RF Agreement, the parties confirmed that the Mutual Nondisclosure
   Agreement remained in effect. *See* Pineda Decl., Ex. 4.

26  [48]    *See* Pineda Decl., Ex. 4 at ¶ 15.

27  [49]    Qualcomm's contention that it will show "legal" or "equitable" estoppel based on the
   Bluetooth RF Agreement (Qualcomm Br. at 18-21) makes no sense given the facts described

28
McKenna Long &
Aldridge LLP
Attorneys at Law
San Diego

- 17 -

*(footnote continued on next page)*
05 CV 1662

EXHIBIT  J-33

1    Qualcomm's claim to the contrary is based upon a tortured reading of the agreements and its

2    blatantly inaccurate assertion that Broadcom led an unwilling Qualcomm to begin using

3    Bluetooth – a claim contradicted by Qualcomm's own factual declaration and public statements.

4         **B.    Qualcomm Will Not Be Irreparably Injured Without An Injunction.**

5         For five reasons, Qualcomm's "irreparable injury" argument fails.

6         *First*, courts have long held that a party's claim of irreparable injury becomes less and less

7    credible the longer it waits to seek injunctive relief. *See Playboy Enters., Inc. v. Netscape*

8    *Communications Corp.*, 55 F. Supp. 2d 1070, 1090 (C.D. Cal. 1999) (delay in seeking injunctive

9    relief demonstrates the lack of any irreparable harm) (citing *Stokely-Van Camp, Inc. v. Coca-Cola*

10   *Co.*, No. 86 C 6159, 1987 WL 6300 (N.D. Ill. Jan. 30, 1987) ("the fact that [plaintiff] waited for

11   three months indicates a lack of need for the extraordinary remedy of a preliminary injunction."));

12   *see also Programmed Tax Sys. Inc. v. Raytheon Co.*, 419 F. Supp. 1251, 1255 (S.D.N.Y. 1976)

13   (preliminary injunction denied based on four-month delay in seeking relief). Here, Qualcomm's

14   voluntary three-month delay in seeking relief simply cannot be squared with the notion that it was

15   suffering irreparable injury.

16        *Second*, because ITC investigations (by statute) are required to move so quickly, a delay

17   of three months in seeking injunctive relief is equivalent to a significantly longer delay in a

18   district court case. With a November 2005 fact discovery cutoff and a January 2006 trial date,

19   discovery (and expert preparation) in the ITC Investigation has proceeded at a furious pace

20   commencing a few days after the case was instituted. During the months that Qualcomm held its

21   tongue, the parties spent countless hours (and hundreds of thousands, if not millions of dollars)

22

23   *(footnote continued from previous page)*

     above. As Qualcomm admits (*id.* at 18), legal estoppel requires that the plaintiff have granted a

24   "license" or "assignment" of rights. But the Bluetooth RF Agreement is a license *from*

     Qualcomm *to* Broadcom, not the other way around, and thus could not support such a defense.

25   (As discussed above, the only document that discusses a license *from* Broadcom says that

     Broadcom does *not* grant any license to Qualcomm.) And as Qualcomm admits (*id.* at 20),

26   equitable estoppel requires that Broadcom have given an "*affirmative grant*" of consent or

     permission to use Broadcom's patented technology, and that Qualcomm "*relied*" on that

27   affirmative grant (emphasis added). For the reasons discussed above, both contentions are

     baseless, based on the Agreement and Qualcomm's own statements.

28

McKENNA LONG &
ALDRIDGE LLP
ATTORNEYS AT LAW
SAN DIEGO

- 18 -                                                    05 CV 1662

EXHIBIT 534

1    exchanging voluminous written discovery, reviewing and producing documents, selecting and

2    working with experts, and engaging in numerous meet and confer conferences. And not just the

3    parties – the ITC Staff as well. Indeed, fact discovery in the ITC is set to close the month after

4    this motion is heard.

5        *Third*, Qualcomm's delay is wholly unexcused. As discussed above, its effort to suggest

6    that it had to stay silent because of the statutory stay provision (28 U.S.C. § 1659) is destroyed by

7    the very case it relies on – *Tessera*. Qualcomm's PI Application offers no other explanation for

8    its delay.

9        *Fourth*, as discussed above, Qualcomm specifically assured the Central District a few

10   weeks ago that it planned to litigate the ITC Investigation to conclusion, and made no mention of

11   any "injury" it was suffering by litigating in that forum. *See supra* at III (quoting Qualcomm

12   briefs).

13       *Fifth*, Qualcomm's suggestion that an ITC investigation threatens it with irreparable injury

14   because the ITC (but not a District Court) can issue an "exclusion order"[50] – *i.e.*, blocking imports

15   at the border – is contradicted by its *own* concession on the next page: "[T]his Court can fashion

16   an injunctive remedy that will allow [Broadcom] much the same relief it could obtain before the

17   ITC' ... The only relief that Broadcom could not receive directly from this Court is the Customs

18   Service's automatic seizure of any infringing imports, but, as one court has observed, Broadcom

19   'can take the additional step of requesting they do so[.]'"[51]

20       **C.     The Balance Of Hardships And Equities Weighs Heavily Against Qualcomm.**

21       Qualcomm asserts that Broadcom would not be harmed by an injunction because

22   (a) Broadcom originally brought suit in the Central District, proving that it is comfortable

23   litigating in California federal courts, and (b) at the end of the day, "this Court can grant

24   [Broadcom] any relief it could have obtained in the ITC."[52] These arguments miss the point.

25

26   [50]   *See* Qualcomm Br. at 22.

27   [51]   Qualcomm Br. at 23 (internal citations omitted).

     [52]   *See* Qualcomm Br. at 23 (citation omitted).

28

McKenna Long &
Aldridge LLP
Attorneys At Law
San Diego

- 19 -                    05 CV 1662

EXHIBIT 5-35

1   Broadcom would be irreparably injured by the derailment and indeterminate delay in resolution of

2   its infringement claims, especially after having spent an enormous sum of money and time on the

3   ITC Investigation – and all because Qualcomm sat on a potential venue defense while the bills

4   mounted and the case progressed. It is no answer to tell Broadcom that it might be able to recycle

5   some of the discovery in new litigation or, in a few years, obtain some of the same relief it might

6   have received if the ITC Investigation were permitted to finish. Broadcom would still lose the

7   main benefit of bringing an ITC investigation: the chance for an expedited and certain

8   vindication of its patent rights that comes fast enough to minimize the harm Qualcomm's

9   infringing products are causing in the domestic market. *See Tompkins Seals, Inc. v. West Co.*,

10  C.A. No. 85-4929, 1985 WL 4952, at *3 (E.D. Pa. Dec 17, 1985) (multiple suits in numerous

11  district courts against all infringers would have to be filed to reach equivalent result of ITC

12  exclusion orders directing United States Customs Service to exclude all infringing products from

13  entry into the United States, including those produced or imported by persons who were not

14  parties to the ITC's investigation); *see also* Mark A. Garfinkel, ITC Provides a Timely Swat

15  Against Foreign Knockoffs-Some Risks, But Plaintiffs Like the Timetable, Corp. Legal Times

16  Feb. 1994, at 38 (because the ITC can issue both exclusion orders barring the importation of

17  infringing items and cease and desist orders against domestic distributors of the goods, an ITC

18  proceeding provides "one-stop shopping" for complainants who can "obtain nationwide exclusion

19  of infringing imports and halt sales from existing inventories in a single action.").

20
21      **D.    Allowing Qualcomm To Derail The ITC Investigation This Far Into The
              Proceedings Would Not Serve The Public Interest.**

22      It is difficult to see how granting Qualcomm's requested injunction could possibly serve

23  the public interest. The "first to file" rule, which required Qualcomm to raise its venue defense in

24  the Central District, is based on important concerns for judicial economy and comity – concerns

25  that Qualcomm flouted by sitting on the venue defense, filing duplicative litigation (and creating

26  a jurisdictional conflict) in this Court, and wasting the time of not just Broadcom but also the ITC

27  Administrative Law Judge and Commission Investigative Staff. *See e.g., Pacsetter Sys., Inc. v.*

28

McKENNA LONG &
ALDRIDGE LLP
ATTORNEYS AT LAW
SAN DIEGO

- 20 -                    05 CV 1662

-35-          EXHIBIT 5-36



1   *Medtronic, Inc.*, 678 F.2d 93, 94-95 (9th Cir. 1982) (first-to-file rule is a "generally recognized

2   doctrine of federal comity" and of "sound judicial administration," which is "not to be

3   disregarded lightly") (internal citations omitted). Moreover, courts make clear that a venue

4   defense, like a forum selection clause, should be deemed waived when a defendant's

5   gamesmanship causes a plaintiff to "invest[] resources in preparing for suit in the . . . chosen

6   forum" unnecessarily, or "waste[] judicial effort." *See Am. Patriot Ins. Agency v. Mutual Risk

7   Mgmt. Ltd.*, 364 F.3d 884, 887-88 (7th Cir. 2004) (Posner, J.) (citations omitted);[53] *E. & J. Gallo

8   Winery v. Encana Energy Serv., Inc.*, No. CVF03-5412 AWJLJO, 2005 WL 1657063, at *11

9   (E.D. Cal. July 6, 2005) ("party cannot sit on its forum selection rights, allowing a court to invest

10  its resources in the resolution of the action until such time as things go unfavorably. To allow late

11  invocation of a forum selection clause would be to countenance forum shopping at its most

12  wasteful."). Qualcomm's maneuvering caused all these things, and there is no reason why it

13  should be rewarded with an injunction.

14  **V.   CONCLUSION.**

15         Qualcomm's preliminary injunction motion is part of a wrongful effort to usurp the

16  authority of the Central District of California and to derail a large portion of a far-advanced ITC

17  Investigation. Qualcomm's forum selection arguments would fail even if Qualcomm had raised

18  them in timely manner, because Broadcom's patent infringement claims about the Wireless

19  Subnetwork Patents do not relate to, or arise under, the Bluetooth RF Agreement, which clearly is

20  concerned with a license from Qualcomm to Broadcom, and not vice versa. But Qualcomm's

21  delay in raising the issue (while the ITC Investigation was racing through discovery proceedings),

22  and its assurances to the Central District that it was content to litigate in the ITC, foreclose its

23  motion in any event.

24

25  [53]   The Seventh Circuit in *American Patriot Insurance* did permit the defendant to assert a
    forum selection clause nine months from the start of litigation, but only because the proceedings
26  had been stayed that entire time, save for some small amount of informal discovery, while the
    parties attempted to settle the case. *See* 364 F.3d at 887. By contrast, the ITC Investigation is
27  very far along, discovery has been massive, and the ITC Investigative Staff has spent
    considerable resources on the investigation.

28

MCKENNA LONG &
ALDRIDGE LLP
ATTORNEYS AT LAW
SAN DIEGO

- 21 -                                                        05 CV 1662

-36-

EXHIBIT  5-37

1        For the foregoing reasons, Broadcom respectfully requests that this Court deny

2  Qualcomm's Application for a Preliminary Injunction.

3  Dated: September 19, 2005        WILMER CUTLER PICKERING

4                        HALE AND DORR LLP

5                       and

                        McKENNA LONG & ALDRIDGE LLP

6

7                    By: _____

                        Robert S. Brewer, Jr.

8

                        Attorneys for Defendant

9                        BROADCOM CORPORATION

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT J-38

<u>Qualcomm Incorporated v. Broadcom Corporation</u>
United States District Court (Southern District) Case No. 05 CV 1662 B (JMA)

### CERTIFICATE OF SERVICE

I, Jim McNeill, attorney for Defendant Broadcom Corporation certify that I caused to be served upon the following counsel a copy of the following document(s) entitled

- **BROADCOM CORPORATION'S OPPOSITION TO QUALCOMM INCORPORATED'S APPLICATION FOR A PRELIMINARY INJUNCTION; AND**

- **DECLARATION OF MARIA K. VENTO IN SUPPORT OF BROADCOM CORPORATION'S OPPOSITION TO QUALCOMM INCORPORATED'S APPLICATION FOR PRELIMINARY INJUNCTION TO ENFORCE FORUM SELECTION AGREEMENT**

via personal service, overnight mail (VIA UPS), facsimile or first class mail, as indicated below:

| | |
|---|---|
| David E. Kleinfield, Esq.<br>E. Joshua Rosenkranz Esq.<br>Barry J. Tucker, Esq.<br>HELLER EHRMANLLP<br>4350 La Jolla Village Drive, 7th Floor<br>San Diego, CA 92122<br>Phone: (858) 450-8400/Fax: (858) 450-8499 | **Attorneys for Plaintiff**<br>**QUALCOMM INCORPORATED** |

**VIA PERSONAL DELIVERY**

| | |
|---|---|
| William K. West, Esq.<br>Cecilia H. Gonzalez, Esq.<br>Bert C. Reiser, Esq.<br>Peter J. Chassman, Esq.<br>HOWREY LLP<br>1299 Pennsylvania Avenue<br>Washington DC 20004<br>Phone: (202) 783-0800/Fax : (202) 383-6610 | **Attorneys for Plaintiff**<br>**QUALCOMM INCORPORATED** |

**VIA UPS OVERNIGHT**

-38-

05CV1662

EXHIBIT J-39

1 | Louis M. Lupin, Esq.                    Attorneys for Plaintiff
   | Alexander H. Rogers, Esq.              QUALCOMM INCORPORATED
2 | Thomas R. Rouse, Esq.
   | Roger W. Martin, Esq.
3 | QUALCOMM INCORPORATED
   | 5775 Morehouse Drive
4 | San Diego, CA 92121
   | Phone: (858) 587-1121/Fax: (858) 658-2100
5 |
   | **VIA UPS OVERNIGHT**
6 |
7 |    Executed September 19, 2005, at San Diego, California.
8 |
9 |                                    _____
10|                                              Jim McNeill
11|
   | SD:22138660.1
12|
13|
14|
15|
16|
17|
18|
19|
20|
21|
22|
23|
24|
25|
26|
27|
28|

## PROOF OF SERVICE

I am employed in the County of Orange, State of California. I am over the age of 18 and not a party to the within action. My business address is 840 Newport Center Drive, Suite 400, Newport Beach, California 92660-6324.

On September 22, 2005, I served the foregoing document described as **DECLARATION OF MARIA K. VENTO IN SUPPORT OF BROADCOM CORPORATION'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION TO VACATE STAY TO ENJOIN A DUPLICATIVE, LATER FILED ACTION (CASE NO. 05 CV 1662 B (JMA) IN THE SOUTHERN DISTRICT OF CALIFORNIA)** on each interested party, as stated on the attached service list. ·

[X]      **(BY FAX)** I caused the foregoing document to be served by facsimile transmission from sending facsimile telephone number (949) 760-5200 to each interested party at the facsimile machine telephone number shown on the attached service list. Each transmission was reported as complete without error. A transmission report was properly issued by the sending facsimile machine for each interested party served.

[X]      **(BY OVERNIGHT DELIVERY SERVICE)** I served the foregoing document by FedEx/Overnite Express, an express service carrier which provides overnight delivery, as follows. I placed a true copy of the foregoing document in sealed envelopes or packages designated by the express service carrier, addressed, as stated on the attached service list, with fees for overnight delivery paid or provided for.

         [X]      **(BOX DEPOSIT)** I deposited such envelopes or packages in a box or other facility regularly maintained by the express service carrier.

         [ ]      **(CARRIER PICK-UP)** I delivered such envelopes or packages to an authorized carrier or driver authorized by the express service carrier to receive documents.

Executed on September 22, 2005, at Newport Beach, California.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Sheryl L. Knight
_____
(Type or print name)

_____
(Signature)

EXHIBIT __J-41__

1387821

| | |
|---|---|
| 1 | William K. West, Jr., Esq. | Counsel For Defendant Qualcomm |

1   William K. West, Jr., Esq.                    Counsel For Defendant Qualcomm
    Cecilia H. Gonzalez, Esq.
2   Bert C. Reiser, Esq.
    Howrey LLP
3   1299 Pennsylvania Avenue, N.W.
    Washington, DC 20004
4   Phone:   (202) 783-0800
    Fax:     (202) 383-6610
5
    Peter J. Chassman, Esq.                      Counsel For Defendant Qualcomm
6   Howrey LLP
    750 Bering Drive
7   Houston, TX 77057-2198
    Phone:   (713) 787-1400
8   Fax:     (713) 787-1440

9   Christopher L. Kelley, Esq.                  Counsel For Defendant Qualcomm
    Howrey LLP
10  301 Ravenswood Avenue
    Menlo Park, CA 94025
11  Phone:   (650) 463-8100
    Fax:     (650) 463-8400

12
    Gregory S. Cordrey, Esq.                     Counsel For Defendant Qualcomm
13  Elizabeth Hoult Fontaine, Esq.
    Howrey LLP
14  2020 Main Street
    Irvine, CA 92614
15  Phone:   (949) 759-3934
    Fax:     (949) 721-6910

16

17

18

19

20

21

22

23

24

25

26

27

28

**EXHIBIT  J-42**

Declaration Of Maria K. Vento In Support Of Broadcom's
Reply Memorandum In Further Support Of Its Motion To
Vacate Stay To Enjoin A Duplicative Later Filed Action

1387821